William M. Audet (CA 117456)
Adel A. Nadji (CA 232599)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: 415.568.2555
Facsimile: 415.568.2556

T. Joseph Snodgrass, Pro Hac Vice
Shawn M. Raiter, Pro Hac Vice
Kelly A. Swanson, Pro Hac Vice
LARSON KING, LLP
30 E. 7th Street, Suite 2800
Saint Paul, MN 55101
Telephone: 651-312-6500
Facsimile: 651-312-6618

*Attorneys for Plaintiffs and
The Class Members*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| MONTE RUSSELL, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO AND COMPANY,<br><br>Defendant. | Case No. C–07-3993-CW<br><br>**DECLARATION OF T. JOSEPH SNODGRASS IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT** |

I, T. Joseph Snodgrass, declare:

1.    I am a partner with the firm Larson · King, LLP, counsel for the Plaintiff, Monte Russell, and others similarly situated.  I am an attorney licensed to practice in the State of Minnesota and my admission to practice in the Northern District of California on a pro hac vice basis was granted on August 17, 2007.  I have personal knowledge of the matters stated herein and if called as a witness, I could and would competently testify to the following:

2.    Kelly A. Swanson, an associate with my firm, attempted to contact defense counsel, Glenn L. Briggs and Theresa A. Kading of the law firm Hodel Briggs Winter LLP, by telephone to discuss whether Wells Fargo would provide its written consent to allow Plaintiff Monte Russell to amend his Complaint as contemplated by Fed. R. Civ. 15(a)(2).  Ms. Swanson was unable to speak with either Mr. Briggs or Ms. Kading directly, and was directed by the firm's receptionist to leave them voicemail messages.  Ms. Swanson left a voicemail message for Ms. Kading advising her of the reason for her call and requesting that Ms. Kading please return her telephone call.  Ms. Swanson then left a similar message with Mr. Briggs' secretary.  As of the time of this filing, neither Mr. Briggs nor Ms. Kading had returned Ms. Swanson's telephone call.

3.    Attached hereto as Exhibit A is a true and correct copy of the proposed First Amended Complaint.

4.    Attached hereto as Exhibit B is a true and correct copy of the following unpublished cases:

> *Wells Fargo Loan Processor Overtime Pay Litig.*, No. C 07-01841 MHP, 2008 WL 2397424 (N.D. Cal. June 10, 2008);
>
> *EZPawn Fair Labor Standards Act Litig.*, 2008 WL 2513682 (W.D. Tex. June 18, 2008;

I declare under penalty of perjury of the laws of the United States of America and the State of California that the foregoing is true and correct to the best of my knowledge. Executed this 24th day of July 2008, at Saint Paul, Minnesota.

1

2    Dated: July 24, 2008                    /s/ *T. Joseph Snodgrass*
                                             T. Joseph Snodgrass
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

EXHIBIT A

William M. Audet (California State Bar No. 117456)
Adel Nadji (California State Bar No.232599)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, California  94105
ANadji@audetlaw.com
Telephone:     (415) 568-2555
Facsimile:      (415) 568-2556

T. Joseph Snodgrass (*Pro Hac Vice*)
jsnodgrass@larsonking.com
Kelly A. Swanson (*Pro Hac Vice*)
kswanson@larsonking.com
LARSON KING, LLP
2800 Wells Fargo Place
30 East 7th Street
St. Paul, Minnesota 55101
Telephone:  (651) 312-6500
Facsimile:   (651) 312-6619

Attorneys for Plaintiffs,
MONTE RUSSEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE RUSSELL and Daniel Friedman, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO AND COMPANY and WELLS FARGO BANK, N.A., <br><br> Defendants. | Case No.: CASE NO: C 07 3993 CW <br><br> **FIRST AMENDED COMPLAINT** <br><br> and <br><br> **DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs Monte Russell and Daniel Friedman (collectively referred to herein as the "Named Plaintiffs"), by and through their attorneys, state and allege as follows:

**THE PLAINTIFFS**

1.      Individual and representative Named Plaintiff Monte Russell resides in Glendale, Arizona.  Plaintiff Russell is a former employee of Defendant Wells Fargo & Company and

1   Defendant Wells Fargo Bank, N.A (collectively referred to herein as "Defendants" or "Wells

2   Fargo").  He was employed by Defendants from 1998 until September 2006.

3       2.      Individual and representative Named Plaintiff Dan Friedman resides in Solana

4   Beach, California.  Plaintiff Friedman is a former employee of Wells Fargo.  He was employed

5   by Defendants from June 2001 to January 2007.

6       3.      Each Named Plaintiff has provided his written consent to participate in this

7   litigation as required by 29 U.S.C. § 216(b).  A copy of Named Plaintiff Monte Russell's consent

8   to join this action was filed with the Court on August 6, 2007 in accordance with 29 U.S.C. §

9   216(b).  A copy of Named Plaintiff Friedman's consent to join this action was filed with the

10  Court on July 24, 2008 in accordance with 29 U.S.C. § 216(b).

11      5.      In addition to the Named Plaintiffs, twenty-three (23) current or former employees

12  (collectively referred to herein as "Opt-In Plaintiffs") agreed to join this action as party plaintiffs

13  under the FLSA.  The Opt-In Plaintiffs' consents to join this action were filed with the Court on

14  July 24, 2008 in accordance with 29 U.S.C. § 216(b).

15                          **THE DEFENDANTS**

16      6.      Defendant Wells Fargo & Company is a Delaware corporation with its

17  headquarters in San Francisco, California.  On its website, Wells Fargo & Company describes

18  itself as "a diversified financial services company providing banking, insurance, investments,

19  mortgage and consumer finance through more than 6,000 stores, the Internet and other

20  distribution channels across North America and internationally."

21      7.      Defendant Wells Fargo Bank, N.A. is a National Association incorporated under

22  the laws of the United States.  Defendant Wells Fargo Bank, N.A. provides financial services

23  throughout the United States and the world, and maintains its headquarters in San Francisco,

24  California.

25      8.      Upon information and belief, Defendant Wells Fargo Bank, N.A. is a subsidiary or

26  affiliated entity of Defendant Wells Fargo & Company.

27      9.      Upon information and belief, Defendant Wells Fargo Bank, N.A. is so organized

28  and controlled and its business conducted in such a manner as to make it merely an agency,

FIRST AMENDED COMPLAINT

1    instrumentality, adjunct, or alter ego of Defendant Wells Fargo & Company.  In the alternative,

2    and to the extent necessary, the Named Plaintiffs should be allowed to pierce the corporate veil

3    of Defendant Wells Fargo & Company.

4        10.    Upon information and belief, and at all times relevant hereto, both Defendant

5    Wells Fargo & Company and Defendant Wells Fargo Bank, N.A. were "employers" of the

6    Named Plaintiffs, as that term is defined by the federal and state laws pled herein.  29 U.S.C. §

7    203(d), California Labor Code § 18 and California Wage Order No. 4(H).

8        11.    Upon further information and belief, and at all times relevant hereto, the Named

9    Plaintiffs were "employees" of both Defendant Wells Fargo & Company and Defendant Wells

10   Fargo Bank, N.A., as that term is defined by the federal and state laws pled herein.  29 U.S.C. §

11   203(e), California Wage Order No. 4(F).

12       12.    Upon information and belief, Defendant Wells Fargo & Company and Defendant

13   Wells Fargo Bank, N.A. are "joint employers" of the Named Plaintiffs.  Defendants are not

14   "completely disassociated with respect to the employment" of the Named Plaintiffs.  29 C.F.R. §

15   791.2(b)(3).

16       13.    Upon information and belief, and at all times relevant hereto, Defendant Wells

17   Fargo & Company was aware of the applicable federal and state laws and regulations governing

18   employee exemptions from entitlement to overtime compensation as they relate to the employees

19   in its Technology Information Group.

20       14.    Upon further information and belief, Defendant Wells Fargo & Company has

21   previously been involved in litigation involving employee wage and hour claims related to the

22   misclassification of its or its affiliated entities' computer technology employees as "exempt"

23   from entitlement to overtime compensation under federal and state wage and hour laws.  *See,*

24   *e.g., Gerlach, et al.  v. Wells Fargo & Co., et al.*, No. CV 05-0585 CW (N.D. Cal.).

25       15.    Defendant Wells Fargo & Company's knowledge concerning the propriety of

26   classifying computer technology employees whose primary work duties are similar to or identical

27   to the Named Plaintiffs and the federal and state classes they seek to represent, as "exempt" from

28   federal and state overtime requirements, renders Defendant Wells Fargo & Company responsible

FIRST AMENDED COMPLAINT

1    and liable in whole or in part for the wage and hour violations alleged herein.

2        16.    Upon information and belief, Defendant Wells Fargo & Company and Defendant

3    Wells Fargo Bank, N.A. are an "enterprise" engaged in commerce within the meaning of 29

4    U.S.C. § 203(r).  The Named Plaintiffs were employed in Defendants' enterprise.  Defendants, at

5    present, and at all times relevant to this lawsuit, are engaged in the performance of related

6    activities through unified operation or common control for a common business purpose.

7                          **JURISDICTION AND VENUE**

8        17.    Jurisdiction over the Named Plaintiffs' federal claim are based upon:  (a) Section

9    16(b) of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §216(b), which

10   authorizes employees to bring civil actions in state or federal court to recover damages for an

11   employer's failure to pay overtime wages as required by the FLSA; and (b) 29 U.S.C. §§ 1331

12   and 1337.

13       18.    This Court also has original jurisdiction over this action under the Class Action

14   Fairness Act, 28 U.S.C. § 1332(d).

15       19.    In addition, jurisdiction over Plaintiff Daniel Friedman's claims under California

16   law is based upon this Court's power to exercise supplemental jurisdiction over these claims

17   under 28 U.S.C. § 1367.

18       20.    Personal Jurisdiction over Defendants is proper because Defendants are licensed

19   to do business in this state and is headquartered and doing business in San Francisco, California.

20       21.    Venue is proper because this is a venue in which a substantial part of the events or

21   omissions giving rise to the claims occurred.

22                          **FACTUAL ALLEGATIONS**

23       22.    The Named Plaintiffs bring this action against Wells Fargo.  The Named Plaintiffs

24   are former Wells Fargo Technology Information Group (upon information and belief, formerly

25   known as Wells Fargo Service Company) employees, with the job title "PC/LAN Engineer,"

26   whose primary duties were to provide computer support to Wells Fargo.  The Named Plaintiffs

27   did not supervise any employees.  Wells Fargo misclassified the Named Plaintiffs' positions as

28   exempt from the overtime provisions of FLSA, as described below.  The Named Plaintiffs'

---

FIRST AMENDED COMPLAINT

1    primary duties, however, made them nonexempt employees.

2          23.    The Named Plaintiffs bring this action on behalf of themselves and all persons

3    (hereinafter "FLSA Employees") who were employed by Wells Fargo nationwide as Technology

4    Information Group employees, who held the position of PC/LAN Engineer 3, PC/LAN Engineer

5    4, or PC/LAN Engineer 5, and who were paid a salary and treated as exempt from the laws

6    requiring overtime for some period of time after November 1, 2004 through the date of the final

7    disposition of this action (the "FLSA Period").  Plaintiffs reserve the right to include other job

8    titles for positions undertaking similar tasks but bearing different job titles.

9          24.    Plaintiff Daniel Friedman also brings this action on behalf of himself and all

10   persons (hereinafter the "California Class") who were employed by Wells Fargo in California as

11   Technology Information Group employees, who were paid a salary and treated as exempt from

12   California laws requiring overtime at any time within the four years prior to this Amended

13   Complaint's filing date through the date of the final disposition of this action (the "California

14   Class Period").  Plaintiffs reserve the right to include other job titles for positions undertaking

15   similar tasks but bearing different job titles.

16         25.    The Named Plaintiffs allege that Wells Fargo unlawfully classified the Named

17   Plaintiffs, the FLSA Employees, and the California Class members as exempt from overtime pay

18   provisions under FLSA and California wage and hour laws.  The Named Plaintiffs, the FLSA

19   Employees, and members of the California Class worked overtime or on-call hours, as defined by

20   FLSA and applicable California wage and hour laws, and are and have been entitled to premium

21   compensation at one and one-half times the regular hourly rate ("overtime compensation") for

22   those hours.  Further, Plaintiff Daniel Friedman and members of the California class are and have

23   been entitled to overtime compensation at a rate of one and one-half for hours worked between

24   eight and twelve in a day, and at twice the regular hourly rate for overtime hours over twelve in a

25   day.

26         26.    Wells Fargo has willfully refused to pay the Named Plaintiffs, the FLSA

27   Employees and California Class members the required overtime compensation for overtime

28   hours worked, and has failed to keep time records as required by applicable federal and

FIRST AMENDED COMPLAINT

1    California laws.

2        27.    The primary duties of the Named Plaintiffs, the FLSA Employees and California

3    Class members were or are to provide computer support services to Wells Fargo by following

4    and implementing well-established company instructions and procedures.  A PC/LAN Engineer's

5    primary duties include fixing or troubleshooting computer hardware and installing software

6    according to instructions or specifications established by others in the Technology Information

7    Group, or implementing changes to computer hardware according to instructions or

8    specifications established by others in the Technology Information Group.  Although the job

9    titles given to the Named Plaintiffs, the FLSA Employees and California Class members suggest

10   that their jobs require exceptional expertise, they are really technicians, not "engineers" or

11   "analysts."

12       28.    On April 7, 2008, this Court authorized the form and dissemination of Notice of

13   Collective Action Claims under the Fair Labor Standards Act ("Notice") to certain putative

14   collective action members in an effort to facilitate a private mediation between Plaintiff Monte

15   Russell, on behalf of himself and others similarly situated, and Wells Fargo.  *See* April 7, 2008

16   Order (ECF No. 22).  Notice was not disseminated to the entirety of the putative collective action

17   class, but rather Notice was issued to 111 current and former PC/LAN Engineers 3 and 4 who

18   had not received any payment of back pay from Wells Fargo to date.

19       29.    Per the Court's request, and in lieu of filing putative collective action members'

20   opt-in forms with the Court, Plaintiff Monte Russell and Wells Fargo agreed to treat the receipt

21   date stamp placed on each individual's consent to join or "opt-in" form as received by the Notice

22   Administrator, Rust Consulting, Inc., as the date of filing in this action.  However, the parties

23   further agreed that nothing in their letter agreement was intended to modify any of the previous

24   tolling agreements entered into between the parties.

25       30.    Plaintiff Monte Russell and Wells Fargo entered into an agreement tolling the

26   statute of limitations for claims raised in Plaintiff Monte Russell's initial Complaint on behalf of

27   the Opt-in Plaintiffs from November 1, 2007 until the completion of the opt-in notice period,

28   June 7, 2008.  *See* Stipulation as to Form and Dissemination of Collective Action Notice and

---

FIRST AMENDED COMPLAINT

1    Continuation of Case Management Conference at ¶ 4 (ECF No. 21). In addition, Plaintiff Monte

2    Russell and Wells Fargo agreed to toll the statute of limitations for claims raised in the initial

3    Complaint on behalf of the FLSA Employees who had received a payment of back pay from

4    Wells Fargo until 30 days after the conclusion of the parties' private mediation efforts. *Id.*

5                          **COLLECTIVE ACTION ALLEGATIONS**

6          31.    The Named Plaintiffs bring the First Cause of Action for violation of FLSA as a

7    collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. § 216(b), on behalf of all FLSA

8    Employees, as defined in paragraph 23 and 24.

9          32.    The Named Plaintiffs and the FLSA Employees are similarly situated, had

10   substantially similar job requirements and pay provisions, and were subject to Defendant Wells

11   Fargo's common practice, policy, or plan of refusing to pay overtime in violation of FLSA and

12   unlawfully characterizing FLSA Employees as exempt employees.

13         33.    The First Cause of Action may be brought and maintained as an "opt-in"

14   collective action under Section 16(b) of FLSA, 29 U.S.C. § 216(b), for all claims asserted by the

15   Named Plaintiffs under FLSA, since the Named Plaintiffs' claims are similar to the claims of the

16   FLSA Employees.

17         34.    The names and addresses of the FLSA Employees are available from Wells Fargo.

18   Notice will be provided to the FLSA Employees via first class mail to the last known address of

19   their employer, and will be published in national publications.

20                        **CALIFORNIA CLASS ACTION ALLEGATIONS**

21         35.    Plaintiff Daniel Friedman brings the Second, Third, Fourth, Fifth, and Sixth

22   Causes of Action for violation of California's wage and hour and unfair competition laws as a

23   class action, pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

24         36.    The California Class is so numerous that joinder of all members is impracticable.

25   The exact size of the putative class is unknown, but may be determined from records maintained

26   by Wells Fargo. Upon information and belief, Plaintiff Daniel Friedman alleges that during the

27   California Class Period Wells Fargo has employed at least 100 persons who satisfy the definition

28   of the California Class.

---

FIRST AMENDED COMPLAINT

37.    Common questions of law and fact exist as to members of the California Class, including, but not limited to, the following:

a.    Whether Defendants unlawfully failed to pay overtime compensation to Plaintiff Daniel Friedman and to California Class members in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and the California Labor Code and related regulations, Cal. Labor Code §§ 201, 202, 203, 226, 510, 1174, 1174.5, and 1194, Cal. Wage Order No. 4-2001.

b.    Whether Plaintiff Friedman and the California Class members are non-exempt from entitlement to overtime compensation for overtime hours worked under the overtime pay requirements of California law;

c.    Whether Defendants' policy and practice of classifying Plaintiff Daniel Friedman and the California Class members as exempt from overtime entitlement under California law and Defendants' policy and practice of failing to pay overtime to the California Class members violates applicable provisions of California law, including applicable statutory and regulatory authority;

d.    Whether Defendants unlawfully failed to keep and furnish employees with records of hours worked, in violation of Labor Code §§ 226 and 1174;

e.    Whether Defendants' policy and practice of failing to pay its employees all wages due within the time required by law after their employment ended violates California law; and

f.    The proper measure of damages sustained and the proper measure of restitution recoverable by members of the California Class.

38.    Plaintiff Daniel Friedman's claims are typical of those of the California Class members' claims.  Plaintiff Daniel Friedman, like other California Class members, was subjected to Defendant's common practice, policy or plan of refusing to pay overtime in violation of California law.  Plaintiff Daniel Friedman's job duties and claims were and are typical of those of other California Class members.

39.    Plaintiff Daniel Friedman will fairly and adequately represent and protect the

---

FIRST AMENDED COMPLAINT

1    interest of the California Class.  Plaintiff Daniel Friedman has no conflicts with the members of

2    the California Class.  Counsel for Plaintiff Daniel Friedman possess the requisite resources and

3    are experienced in complex class actions, the FLSA, and state wage and hour litigation.

4         40.    Defendants have acted or refused to act on grounds generally applicable to the

5    California Class, making appropriate declaratory and injunctive relief with respect to Plaintiff

6    Daniel Friedman and the California Class as a whole.  Plaintiff Daniel Friedman and the

7    California Class are entitled to injunctive relief to end Defendants' common and uniform practice

8    of failing to properly compensate California Class members for all overtime work performed for

9    the benefit of Defendants.  Fed. R. Civ. P. 23(b)(2).

10        41.    The questions of law and fact common to the putative class members predominate

11   over any questions affecting only individual California Class members, and a class action is

12   superior to other available methods for the fair and efficient adjudication of this controversy.

13   Fed. R. Civ. P. 23(b)(3).  More specifically, members of the proposed California Class have little

14   or no interest in individually controlling the prosecution of separate actions.  Plaintiff Daniel

15   Friedman is not aware of any other litigation concerning the controversy already commenced by

16   the proposed California Class.  In addition, it is desirable to concentrate the litigation of the

17   claims in this Court because Defendants are headquartered in this District; do a substantial

18   amount of business in this District; and because many of the acts complained of and giving rise

19   to the claims alleged occurred in California and in this District.  *Id.*

20        42.    This action is manageable as a class action because, compared to any other

21   method such as individual interventions or the consolidation of individual actions, a class action

22   is more fair and efficient.  Defendants' common and uniform policies and practices unlawfully

23   treated members of the California Class as exempt from overtime pay requirements.  The

24   damages suffered by individual California Class members are small compared to the expense and

25   burden associated with individual prosecution of this litigation.  Moreover, class certification is

26   superior to other available methods of resolving this controversy because it will obviate the need

27   for unduly duplicative litigation that might result in inconsistent judgments about Defendants'

28   pay practices.

---

FIRST AMENDED COMPLAINT

43.     Plaintiffs intend to send notice to all members of the California Class consistent with the requirements of Fed. R. Civ. P. 23.

**FIRST CAUSE OF ACTION**

**(VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938 BROUGHT BY NAMED PLAINTIFFS MONTE RUSSELL AND DANIEL FRIEDMAN ON BEHALF OF THEMSELVES AND THE FLSA EMPLOYEES)**

44.     The Named Plaintiffs, on behalf of themselves and all FLSA Employees, re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

45.     The FLSA regulates, among other things, the payment of all hours worked, including overtime pay by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 207(a)(1).  At all relevant times, Defendants have been, and continue to be, "employers" engaging in interstate commerce or in the production of goods for commerce, within the meaning of FLSA, 29 U.S.C. § 203.  Defendants have employed and continue to employ employees, including certain Opt-in Plaintiffs and members of the putative collective action class.

46.     The FLSA requires each covered employer, such as Defendant Wells Fargo and Company and Defendant Wells Fargo Bank, N.A., to compensate all nonexempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a week.

47.     The Named Plaintiffs and the FLSA Employees are entitled to be paid overtime compensation for all overtime hours worked.

48.     At all relevant times, Wells Fargo had a policy and practice of failing and refusing to pay overtime pay to the Named Plaintiffs and the FLSA Employees for their hours worked in excess of forty (40) hours per week.

49.     By failing to compensate the Named Plaintiffs and the FLSA Employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Wells Fargo has violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

---

FIRST AMENDED COMPLAINT

50.     By failing to record, report, or compensate the Named Plaintiffs and the FLSA Employees, Wells Fargo has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of 29 U.S.C. §§ 201 et seq., including 29 U.S.C. § 211(c) and § 216(b).

51.     The Named Plaintiffs and the FLSA Employees are entitled to damages equal to the amount of all uncompensated time, including overtime premium pay within the three years preceding the filing of this complaint, plus periods of equitable tolling.  Wells Fargo's failure to pay overtime to the Named Plaintiffs and the FLSA Employees was "willful" within the meaning of Section 6(a) of the Portal-to-Portal Pay Act, as amended, 29 U.S.C. § 255(a), because Wells Fargo did not act in good faith in failing to pay proper overtime pay, and had no reason to believe that its failure to do so was not a violation of the FLSA, within the meaning of Section 11 of the Portal-to-Portal Pay Act, as amended, 29 U.S.C. § 260.  Accordingly, the Named Plaintiffs and the FLSA Employees are entitled to an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described above, pursuant to Section 16(b) of the FLSA. Alternatively, should the Court find that Wells Fargo did not act willfully in failing to pay overtime pay, the Named Plaintiffs and the FLSA employees are entitled to an award of prejudgment interest at the applicable legal rate.  Reasonable attorneys' fees and costs, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), should also be awarded.

### SECOND CAUSE OF ACTION

### (CAL. WAGE ORDER NO. 4-2001; CAL. LABOR CODE §§ 510, 1194 BROUGHT BY NAMED PLAINTIFF DANIEL FRIEDMAN ON BEHALF OF HIMSELF AND THE CALIFORNIA CLASS)

52.     Named Plaintiff Daniel Friedman, on behalf of himself and the California Class, re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

53.     California law requires an employer, such as Wells Fargo, to pay overtime compensation to all non-exempt employees for all hours worked over forty per week, or over eight per day.  Cal. Labor Code § 510(a).

54.     Throughout the California Class Period, Named Plaintiff Daniel Friedman and the

---

FIRST AMENDED COMPLAINT

1    California Class members were non-exempt employees entitled to be paid overtime

2    compensation for all overtime hours worked.

3          55.    Throughout the California Class Period, Named Plaintiff Daniel Friedman and the

4    California Class members worked in excess of eight hours in a workday and/or forty hours in a

5    workweek.  Named Plaintiff Daniel Friedman and certain California Class members also worked

6    in excess of twelve hours in a workday.

7          56.    Named Plaintiff Daniel Friedman and members of the California Class did not

8    qualify under any exemption from the requirement that Defendant pay overtime compensation

9    under California law.  Therefore, Named Plaintiff Daniel Friedman and members of the

10   California Class are entitled to be paid overtime compensation for all overtime hours worked.

11         57.    During the California Class Period, Wells Fargo misclassified Named Plaintiff

12   Daniel Friedman and members of the California Class as exempt from overtime pay entitlement

13   and failed and refused to pay them overtime premium pay for their overtime hours worked.

14         58.    As a direct and proximate result of Wells Fargo's unlawful conduct, as set forth

15   herein, Named Plaintiff Daniel Friedman and members of the California Class have sustained

16   damages, including loss of earnings for hours of overtime worked on behalf of Wells Fargo in an

17   amount to be determined at trial, prejudgment interest, reasonable attorneys' fees, and costs of

18   suit, pursuant to statute.  Cal. Labor. Code § 1194(a).

19                            **THIRD CAUSE OF ACTION**

20   **(CALIFORNIA WAGE PAYMENT PROVISIONS, CAL. LABOR CODE §§ 201, 202, &**
21   **203, BROUGHT BY PLAINTIFF FRIEDMAN ON BEHALF OF HIMSELF AND THE**
     **CALIFORNIA CLASS)**

22         59.    Named Plaintiff Daniel Friedman, on behalf of himself and the California Class,

23   re-alleges and incorporates by reference each and every allegation set forth in the preceding
24
     paragraphs.

25         60.    California Labor Code §§ 201 and 202 require Wells Fargo to pay its employees
26
     all wages due within the time specified by law.  California Labor Code § 203 provides that if an

27   employer willfully fails to timely pay such wages, the employer must continue to pay the subject

28   employees' wages until the back wages are paid in full or an action is commenced, up to a

---

FIRST AMENDED COMPLAINT

1  maximum of thirty days of wages.

2       61.    Named Plaintiff Daniel Friedman and members of the California Class whose

3  employment with Wells Fargo have ceased are entitled to unpaid compensation, but to date have

4  not received such compensation.

5       62.    More than thirty days have passed since Named Plaintiff Daniel Friedman and

6  certain California Class members left Wells Fargo's employ.

7       63.    As a consequence of Defendant's willful conduct in not paying compensation for

8  all hours worked, Named Plaintiff Daniel Friedman and California Class members whose

9  employment ended during the California Class Period are entitled to thirty days' wages under

10 Cal. Labor Code § 203, together with interest thereon and attorneys' fees and costs.

11                          **FOURTH CAUSE OF ACTION**

12  **(CALIFORNIA RECORD-KEEPING PROVISIONS, CAL. WAGE ORDER NO. 4-2001;
13  CAL LABOR CODE §§ 226, 1174, & 1174.5, BROUGHT BY NAMED PLAINTIFF
    FRIEDMAN ON BEHALF OF HIMSELF AND THE CALIFORNIA CLASS)**

14       64.    Named Plaintiff Daniel Friedman, on behalf of himself and the California Class,

15  re-alleges and incorporates by reference each and every allegation set forth in the preceding

16  paragraphs.

17       65.    Wells Fargo knowingly and intentionally failed to provide timely, accurate,

18  itemized wage statements including, *inter alia*, hours worked, to Named Plaintiff Daniel

19  Friedman and to members of the California Class in accordance with § 226(a) and applicable

20  IWC Wage Orders.  Such failure caused injury to Named Plaintiff Daniel Friedman and the

21  California Class members.  At all times relevant hereto, Wells Fargo has failed to maintain

22  records of hours worked by Named Plaintiff Daniel Friedman and California Class members as

23  required under Labor Code § 1174(d).

24       66.    Named Plaintiff Daniel Friedman and members of the California Class are entitled

25  to and seek injunctive relief requiring Wells Fargo to comply with Labor Code §§ 226(a) and

26  1174(d), and further seek penalties under Labor Code §§ 226(e) and 1174.5, including the greater

27  of all actual damages or fifty dollars ($50) per employee for the initial pay period in which the

28  violation occurred and one hundred dollars ($100) per employee for each violation in a

---

FIRST AMENDED COMPLAINT

1 subsequent pay period.

2 **FIFTH CAUSE OF ACTION**

3
4 **(CALIFORNIA MEAL AND REST PERIOD PROVISIONS, CAL. WAGE ORDER NO. 4-2001; CAL. LABOR CODE §§ 218.5, 226.7, & 512 BROUGHT BY NAMED PLAINTIFF FRIEDMAN ON BEHALF OF HIMSELF AND THE CALIFORNIA CLASS)**

5
6 67.    Named Plaintiff Daniel Friedman, on behalf of himself and the California Class, re-alleges and incorporates by reference each and every allegation set forth in the preceding

7 paragraphs.

8
9 68.    Named Plaintiff Daniel Friedman and members of the California Class regularly worked in excess of five-hour shifts without being afforded at least a half-hour meal break in

10 which they were relieved of all duty, as required by Labor Code §§ 226.7 and 512, and Wage

11 Order No. 4-2001, § 11(a).

12 69.    In addition, Named Plaintiff Daniel Friedman and members of the California

13 Class regularly worked without being afforded at least one ten-minute rest break, in which they

14 were relieved of all duty, per four hours of work performed or major fraction thereof, as required

15 by §§ 226.7 and Wage Order No. 4-2001, § 12.

16 70.    As a result of Wells Fargo's failure to afford proper meal periods, it is liable to

17 Named Plaintiff Daniel Friedman and members of the California Class for one hour of additional

18 pay at the regular rate of compensation for each workday that the proper meal periods were not

19 provided, pursuant to Labor Code § 226.7 and Wage Order No. 4-2001, § 11(b).

20 71.    As a result of Wells Fargo's failure to afford proper rest periods, it is liable to

21 Named Plaintiff Daniel Friedman and members of the California Class for one hour of additional

22 pay at the regular rate of compensation for each workday that the proper rest periods were not

23 provided, pursuant to Labor Code § 226.7 and Wage Order No. 4-2001, § 12(b).

24 **SIXTH CAUSE OF ACTION**

25
26 **(CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200 *et seq.* BROUGHT BY PLAINTIFF FRIEDMAN ON BEHALF OF HIMSELF AND THE CALIFORNIA CLASS)**

27
28 72.    Named Plaintiff Daniel Friedman, on behalf of himself and the California Class, re-alleges and incorporates by reference each and every allegation set forth in the preceding

---

1   paragraphs.

2       73.    The foregoing conduct, as alleged, violates the California Unfair Competition Law

3   ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*  Section 17200 of the Cal. Bus. & Prof. Code

4   prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair business acts or

5   practices.

6       74.    Beginning at a date unknown to Named Plaintiff Daniel Friedman, but at least

7   four years prior to the filing of this action, Wells Fargo committed acts of unfair competition, as

8   defined by the UCL, by, among other things, engaging in the acts and practices described and

9   alleged herein.  Wells Fargo's conduct as alleged herein has injured Named Plaintiff Daniel

10  Friedman and members of the California Class by wrongfully denying them earned wages, and

11  therefore was substantially injurious to Named Plaintiff Daniel Friedman and the California

12  Class.

13      75.     Wells Fargo engaged in unfair competition in violation of the UCL by violating,

14  *inter alia*, each of the following laws.  Each of these violations constitutes an independent and

15  separate violation of the UCL:

16          a.    The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*;

17          b.    California Labor Code § 1194;

18          c.    California Labor Code §§ 201, 202, 203, 204, and 226;

19          d.    California Labor Code § 1174; and

20          e.    California Labor Code § 510, which provides in relevant part:

21              Any work in excess of eight hours in one workday and any
22              work in excess of 40 hours in any one workweek and the
                first eight hours worked on the seventh day of work in any
23              one workweek shall be compensated at the rate of no less
                than one and one-half times the regular rate of pay for an
24              employee.  Any work in excess of 12 hours in one day shall
                be compensated at the rate of no less than twice the regular
25              rate of pay for an employee.  In addition, any work in
                excess of eight hours on any seventh day of a workweek
26              shall be compensated at the rate of no less than twice the
27              regular rate of pay of an employee.

28      76.    Wells Fargo's course of conduct, acts, and practices in violation of the California

    laws referenced above constitute a separate and independent violation of the UCL.  Wells

1    Fargo's conduct described herein violates the policy or spirit of such laws or otherwise

2    significantly threatens or harms competition.

3        77.    The unlawful and unfair business practices and acts of Wells Fargo, described

4    above, have injured Named Plaintiff Daniel Friedman and members of the California Class in

5    that they were wrongfully denied the payment of earned overtime wages.

6        78.    Named Plaintiff Daniel Friedman, on behalf of himself and the California Class,

7    seek recovery of attorneys' fees and costs of this action to be paid by Wells Fargo, as provided

8    by the UCL and California Labor Code §§ 218, 218.5, and 1194.

9        79.    Named Plaintiff Daniel Friedman, on behalf of himself and the California Class,

10   seek restitution in the amount of the respective unpaid wages earned and due at a rate not less

11   than one and one-half times the regular rate of pay for work performed in excess of forty hours in

12   a workweek, or eight hours in a day, and double the regular rate of pay for work performed in

13   excess of twelve hours per day.

14                    **SEVENTH CAUSE OF ACTION**

15   **(DECLARATORY JUDGMENT BROUGHT BY PLAINTIFFS MONTE RUSSELL AND**
16   **DANIEL FRIEDMAN ON BEHALF OF THEMSELVES AND ALL OTHER**
     **PLAINTIFFS)**

17       80.    The Named Plaintiffs, on behalf of themselves and all Plaintiffs, re-allege and

18   incorporate by reference each and every allegation set forth in the preceding paragraphs.

19       81.    Upon information and belief, Wells Fargo claims to have established a fluctuating

20   workweek-agreement with each Plaintiff during the relevant time periods at issue, regardless of

21   where he or she may reside, such that to the extent Wells Fargo is liable to Plaintiffs on the

22   federal wage and hour claims asserted herein, each Plaintiff is entitled only to additional half-

23   time pay for those hours worked in excess of forty (40) hours during the particular workweeks in

24   which previously unpaid overtime is owed.

25       82.    Any purported universal nationwide agreement between Wells Fargo and

26   Plaintiffs is invalid because the majority of Opt-in Plaintiffs, as well as Named Plaintiff Daniel

27   Friedman, reside in jurisdictions where the application of the fluctuating workweek method of

28   computing overtime compensation is not permitted, recognized and/or applied under state wage

FIRST AMENDED COMPLAINT

1  and hour laws.

2      83.     Any purported universal nationwide agreement between Wells Fargo and

3  Plaintiffs is therefore invalid because an employer like Wells Fargo cannot maintain a fluctuating

4  workweek employment agreement under federal law where it is expressly prohibited in multiple

5  states.

6      84.     Upon information and belief, Wells Fargo has recognized that a fluctuating

7  workweek agreement never existed between Wells Fargo and its California PC/LAN Engineers

8  3, PC/LAN Engineers 4, and PC/LAN Engineers 5 employees.  Upon further information and

9  belief, Wells Fargo has paid back wages to certain current and former employees who held the

10  positions of PC/LAN Engineer 3, PC/LAN Engineer 4, or PC/LAN Engineer 5 in the state of

11  California during the relevant time periods based on the traditional time-and-a-half rate of

12  overtime compensation pursuant to 29 U.S.C. § 207(a), but without liquidated damages.

13      85.     In light of the foregoing, the Named Plaintiffs and putative class members seek a

14  declaratory judgment as follows:

15          a.    That, at no time relevant hereto did a universal, nationwide agreement

16              exist between Wells Fargo and Plaintiffs to compensate any and all

17              overtime hours worked by PC/LAN Engineers 3, PC/LAN Engineers 4,

18              and PC/LAN Engineers 5 employees, utilizing a half-time premium rate

19              pursuant to the fluctuating workweek method of calculating overtime

20              compensation under the FLSA, 29 C.F.R. § 778.114; and

21          b.    That, in the event Wells Fargo is found liable to Plaintiffs on the federal

22              wage and hour claims asserted herein, the fluctuating workweek method

23              of computing unpaid overtime at half the employee's regular hourly rate

24              of pay for all hours worked over forty (40) is inapplicable due to state law

25              considerations.

26          c.    That the back wages owed to Plaintiffs as a result of Wells Fargo's

27              misclassification of PC/LAN Engineers 3, PC/LAN Engineers 4, and

28              PC/LAN Engineers 5 as "exempt" from overtime pay requirements must

---

FIRST AMENDED COMPLAINT

1        be computed at the traditional time-and-a-half rate pursuant to 29 U.S.C. §

2        207(a).

3      d.    That the requirements for establishing a fluctuating workweek agreement

4        do not otherwise exist under the facts of this case.

5      **PRAYER FOR RELIEF**

6      WHEREFORE, Named Plaintiffs Monte Russell and Daniel Friedman, on behalf of

7 themselves and all members of the FLSA Employee Class, pray for judgment as follows:

8      1.    Designation of this action as a collective action on behalf of the proposed FLSA

9 Employee Class and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

10     2.    Designation of the Named Plaintiffs Monte Russell and Daniel Friedman as

11 Representatives of the FLSA Employees;

12     3.    Declaring the rights and obligations of the parties as prayed for;

13     4.    An award of damages, including liquidated damages, to be paid by Wells Fargo;

14     5.    Costs of action incurred herein, including expert fees;

15     6.    Attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

16     7.    Pre- and post-judgment interest, as provided by law; and

17     8.    Such injunctive and equitable relief as the Court may deem just and proper.

18     WHEREFORE, Plaintiff Daniel Friedman on behalf of himself and all members of the

19 California Class, pray for judgment as follows:

20     9.    Designation of this action as a class action on behalf of the California Class;

21     10.    Designation of Plaintiff Daniel Friedman as a Representative of the California

22 Class;

23     11.    A declaratory judgment that the practices complained of herein are unlawful under

24 California law;

25     12.    Appropriate equitable and injunctive relief to remedy Defendant's violations of

26 California law, including but not necessarily limited to an order enjoining Defendant from

27 continuing its unlawful practices;

28     13.    Appropriate statutory penalties;

FIRST AMENDED COMPLAINT

1       14.     Damages and restitution, including waiting time penalties, meal and rest break

2 violation payments; record-keeping penalties, and overtime wages to be paid by Defendant Wells

3 Fargo according to proof;

4       15.     Costs of the action incurred herein, including expert fees;

5       16.     Attorneys' fees and costs of suit, including expert fees;

6       17.     Pre- and post-judgment interest, as provided by law; and

7       18.     For any other and further relief the Court may deem just or equitable.

8

9 Dated:_____     Respectfully submitted,

10                         AUDET & PARTNERS, LLP

11

12 _____

13                         William M. Audet (California State Bar No. 117456)
Adel Nadji (California State Bar No. 232599)

14                         221 Main Street, Suite 1460
San Francisco, California  94105

15                         fsmith@larsonking.com
Telephone:    (415) 568-2555

16                         Facsimile:    (415) 568-2556

17

18                         T. Joseph Snodgrass (*Pro Hac Vice*)
Kelly A. Swanson (*Pro Hac Vice*)

19                         LARSON • KING, LLP

20                         2800 Wells Fargo Place
30 East 7th Street

21                         St. Paul, Minnesota 55101
Telephone:    (651) 312-6500

22                         Facsimile:    (651) 312-6619

23                         Attorneys for Plaintiffs MONTE RUSSELL and
DANIEL FRIEDMAN

24 Lk: 1233724

25

26

27

28

# EXHIBIT B

EXHIBIT B

Slip Copy
Slip Copy, 2008 WL 2397424 (N.D.Cal.)
**2008 WL 2397424 (N.D.Cal.)**

# H

In re Wells Fargo Loan Processor Overtime Pay
Litigation
N.D.Cal.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
In re WELLS FARGO LOAN PROCESSOR
OVERTIME PAY LITIGATION.
This Document Relates To: All Actions.
**No. C 07-01841 MHP.**

June 10, 2008.

Joan Eve Trimble, Callahan, McCune & Willis,
APLC Los Angeles Office, Los Angeles, CA, Leeh
A. Dibello, Callahan, McCune & Willis, San Fran-
cisco Office, San Francisco, CA, Ashlea Gayle
Schwarz, Eric Landon Dirks, George Allan Hanson,
Norman E. Siegel, Stueve Siegel Hanson Woody
LLP, Kansas City, MO, for Plaintiffs.
Glenn Lansing Briggs, Theresa Ann Kading, Hodel
Briggs Winter LLP, Irvine, CA, Joan B. Tucker
Fife, Robert Spagat, Winston & Strawn LLP, San
Francisco, CA, Denise K. Drake, Eric Paul Kelly,
Kansas City, MO, for Defendant.

## *MEMORANDUM & ORDER*

MARILYN HALL PATEL, District Judge.

## Re: Plaintiffs' Motion for Leave to File Amended Complaint

**\*1** This multidistrict litigation arises from two ac-
tions against defendant Wells Fargo Home Mort-
gage ("Wells Fargo") on behalf of defendant's "loan
processors," a group of employees consisting of
mortgage sales associates, mortgage assistants, and
loan document specialists.[FN1] Plaintiffs allege that
Wells Fargo has failed to pay overtime compensa-
tion in violation of state and federal law. Now be-
fore the court is plaintiffs' motion for leave to file
an amended complaint. Having considered the
parties' arguments and submissions, and for the
reasons stated below, the court enters the following

memorandum and order.

> FN1. A similar, but separate multidistrict
> action is also currently before this court.
> That action is captioned *In re Wells Fargo
> Home Mortgage Overtime Pay Litigation*
> and has been assigned case number MDL
> 06-1770 MHP. Like the present action, the
> 06-1770 action involves allegations of fail-
> ure to pay overtime in accordance with
> state and federal law and is brought against
> the same defendant Wells Fargo. Unlike
> the present action which concerns "loan
> processors," the 06-1770 action involves a
> different group of plaintiffs employed as
> "home mortgage consultants" whose duties
> involve marketing and selling mortgages.

## *BACKGROUND*

This litigation arises from two separate actions:
*Bowne v. Wells Fargo Home Mortgage,* No.
06-2020 (D.Kan.) and *Basore v. Wells Fargo Home
Mortgage,* No. 07-0461 (N.D.Cal.). The *Bowne* ac-
tion was filed on January 19, 2006 in the District of
Kansas, while the *Basore* action was filed on Janu-
ary 23, 2007 in the Northern District of California.
On June 22, 2007, the Judicial Panel on Mul-
tidistrict Litigation transferred *Bowne* to this Court
for coordinated pretrial proceedings with *Basore,*
pursuant to 28 U.S.C. section 1407. Plaintiffs in the
*Bowne* and *Basore* actions are represented by the
same attorneys. Both actions involve alleged viola-
tions of state and federal overtime compensation
and wage and hour laws. Both actions involve a
group of plaintiffs referred to as "loan processors"
who perform clerical tasks and assist in the pro-
cessing of mortgage loan applications. *See* Def.'s
Mem. for Transfer for Coordinated Pre-Trial Pro-
ceedings to JPMDL; Exh. A, *Bowne* Complaint
(hereinafter "*Bowne* Complaint"); Exh. C, *Basore*
Complaint (hereinafter "*Basore* Complaint").

The *Bowne* matter involves a single collective ac-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

tion for violation of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* On October 23, 2006, before *Bowne* was transferred to this district for coordinated pretrial proceedings, the parties stipulated to the conditional certification of a limited collective action. The limited collective action consisted of two subclasses:

1. All current and former retail "loan processors" employed by Wells Fargo within the previous three years from the date of the filing of this stipulation who were employed in the United States whose records show they recorded overtime, but whose records also show they were not paid for in excess of five (5) hours of that overtime; and

2. All current and former retail "loan processors" employed by Wells Fargo within the previous three years form the date of the filing of this stipulation who were employed in Region 10 [consisting of Iowa, Missouri, portions of Kansas, and portions of Illinois].

The parties submitted an agreed upon notice to the court on November 9, 2006, and notice was sent to the class members in early December 2006. Ultimately, 68 individuals opted into the FLSA collective action in the *Bowne* matter.

*2 One year after the *Bowne* action was filed in the District of Kansas and while the class notice period in the *Bowne* action was pending, the *Basore* matter was filed in this district. In contrast to the *Bowne* matter, the *Basore* matter is more expansive. The *Basore* matter involves not only a nationwide FLSA collective action brought pursuant to 29 U.S.C. section 216(b), but also two class actions brought pursuant to Federal Rule of Civil Procedure 23.

One putative class action in the *Basore* matter is brought by plaintiff Brenda McMillan ("McMillan"), a resident of Charlotte, North Carolina who worked for Wells Fargo as a loan pro-

cessor in that location. McMillan seeks to represent a nationwide class of current and former Wells Fargo loan processors based on California Business and Professions Code section 17200 *et seq.* (hereinafter "section 17200"), for which the unlawful, unfair, and fraudulent business practice alleged is violation of the overtime provisions of the federal FLSA. McMillan alleges that the unlawful practices and policies in this case emanated from California.

The other putative class action in the *Basore* matter is brought by plaintiff Mary Basore ("Basore"), a resident of Van Nuys, California who worked for Wells Fargo as a loan processor in the location where she resides. Basore seeks to represent a California class of current and former loan processors based on violations of: (1) section 17200, with predicate violations based on state and federal wage and hour law; (2) California Labor Code section 510 requiring payment of overtime compensation; (3) California Labor Code sections 512 and 226.7 requiring meal and rest breaks; and (4) California Labor Code sections 201-03 requiring payment of all compensation due and owing at termination.

After *Bowne* was transferred to this district for coordinated pretrial proceedings with *Basore,* this court entered an amended case management order on November 13, 2007. The order stated that it was the responsibility and duty of lead counsel to file a consolidated complaint. The order also imposed a number of pretrial deadlines, which were subsequently extended by the parties' stipulation. Under the court's case management order and subsequent stipulations, defendant's motion to dismiss the section 17200 claims was due March 21, 2008, class discovery was closed on March 31, 2008, and plaintiffs' motion for class and collective action certification was due April 15, 2008. Defendant filed its motion to dismiss the section 17200 claims on March 20, 2008. The next day, on March 21, 2008, plaintiffs filed a consolidated complaint. Docket No. 31 (hereinafter "Consolidated Complaint"). Plaintiffs filed their motion for class and collective action certification on April 15, 2008.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

On March 31, 2008, Wells Fargo filed a motion to strike the consolidated complaint because it made material amendments for which plaintiffs had not sought leave of court. Plaintiffs responded on April 9, 2008. In their response, plaintiffs opposed Wells Fargo's motion to strike and in the alternative, moved to amend the complaint. Wells Fargo filed its reply on April 11, 2008 and a hearing on Wells Fargo's motion to strike was held on April 28, 2008. At the hearing, the court determined that plaintiffs' consolidated complaint made material amendments for which plaintiffs had not sought leave of court. The court deemed plaintiffs' reply to defendant's motion to strike as the opening brief in a motion for leave to amend, and ordered further briefing. Defendant filed an opposition to plaintiffs' motion for leave to amend on May 12, 2008 and plaintiffs filed a reply on May 19, 2008. When the court determined at the April 28, 2008 hearing that further briefing was necessary, the court vacated the briefing schedule and hearing dates set for the class certification motion.

*3 Plaintiffs do not dispute that the consolidated complaint contains material amendments for which the plaintiffs did not seek leave of court to file. The proposed amendments for which plaintiffs now seek leave of court are as follows:

1. The consolidated complaint seeks to merge the *Bowne* and *Basore* FLSA collective actions into a single action, even though an FLSA collective action has already been certified and 68 individuals have already opted into the action in the *Bowne* matter.

2. The consolidated complaint omits five of the six named plaintiffs in the *Bowne* action-Andersen, Hesterberg, Lovrien, Hejlik, and Gering.

3. The consolidated complaint for the first time names as a defendant "Wells Fargo & Co." which is a not a party to the consolidated proceedings and has not been served.

4. The consolidated complaint seeks to add new

claims for relief in the *Basore* matter for the putative class action brought by California plaintiff Mary Basore. These new claims are for Wells Fargo's alleged failure to provide itemized statements of time worked in violation of California Labor Code section 226, and Wells Fargo's alleged failure to pay for all hours worked in violation of California Labor Code section 218.

5. The consolidated complaint also alleges for the first time that the consolidated actions are brought on behalf of current and former nonexempt "Team Members," rather than the narrower group of "loan processors" initially alleged. The group of non-exempt "Team Members" includes approximately 100,000 employees in 373 separate job classifications.

6. Finally, the consolidated complaint seeks to toll the statute of limitations for the newly added "Team Members" who are not loan processors.

Below, the court discusses whether leave should be granted for plaintiffs to file each of these proposed amendments.

*LEGAL STANDARD*

Federal Rule of Civil Procedure 15(a)(2) provides that leave to file amended pleadings should be freely granted "when justice so requires." The Ninth Circuit weighs four factors when considering a Rule 15(a) motion to amend: (1) bad faith in bringing the motion; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment. *Griggs v. Pace American Group, Inc.,* 170 F.3d 877, 880-81 (9th Cir.1999).

*DISCUSSION*

Plaintiffs argue as a threshold matter that within the "unique context of the MDL proceedings, Plaintiffs' counsel filed what is analogous to a first operative complaint."Pls.' Opp. at 9. In this context, plaintiffs argue, the consolidated complaint is not "subject to

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

the amendment requirements of Rule 15(a)."*Id.*The court does not agree. Neither the court's case management order nor MDL procedures generally exempt plaintiffs from seeking leave of court to file a consolidated complaint that makes material amendments to the existing complaints. The court's order states, "Lead Counsel for Plaintiffs shall have the following responsibilities and duties: ... To file a consolidated complaint."Docket No. 12, Amended Case Management Order, ¶ 8C. Nowhere does the court's order permit plaintiffs to amend a complaint without leave of court. The order permits *filing* of a complaint that consolidates the allegations of the extant complaints, no more and no less.

**\*4** A further threshold issue concerns plaintiffs' assertion that the consolidated complaint *"amends* and *supersedes* all previous complaints."Consolidated Complaint ¶ 7 (emphases added). Again, however, the court's directive to plaintiffs to file a consolidated complaint is clear. It speaks to filing a consolidated complaint, and says nothing about amending or superseding the extant complaints in the *Bowne* and *Basore* matters. Should any doubt remain, the court hereby **ORDERS** that, unless otherwise directed, the filing of a consolidated complaint is done for the purpose of facilitating ease of the docket's administration and management. It does not constitute inception of a new "case or controversy," thereby superseding and rendering moot the pending separate actions which the court made clear in its case management order and now reiterates here, were consolidated for *pretrial* proceedings. *See*Manual for Complex Litigation, Fourth, 224 n. 668. As the court's case management order states, the order "does not constitute a determination that these actions shall be consolidated for trial."Docket No. 12, Amended Case Management Order ¶ 1.

For similar and related reasons, the court **DENIES** plaintiffs' motion for leave to amend to merge the *Basore* and *Bowne* FLSA collective actions into a single action. The consolidated complaint states, "Plaintiffs Bowne, Basore, and McMillan bring

*their* FLSA claim as an 'opt-in' collective action" and labels the action as a *"Nationwide* Collective Action." Docket No. 31, Consolidated Complaint ¶ 77. There are three problems with the way in which this action is pled. First, it conflates the *Bowne* and *Basore* actions. The *Bowne* matter was filed in the District of Kansas almost a year prior to the filing of the *Basore* matter in this district, and unlike the *Basore* matter, a collective action has already been certified and 68 individuals have already opted into the *Bowne* collective action. Second, the consolidated complaint recasts the *Bowne* action as a nationwide action even though the action that was certified was specifically limited to "Region 10" consisting of Iowa, Missouri, portions of Kansas, and portions of Illinois. Third, the consolidated complaint attempts to broaden the *Bowne* collective action from "loan processors" a s it was originally certified to "Team Members."

Consolidation "is a procedural device designed to promote judicial economy."*Cole v. Schenley Indus., Inc.,* 563 F.2d 35, 38 (2d. Cir.1977). It does not result in merger of the actions nor does it change the rights of the parties.*Id.; see also Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 496-97, 53 S.Ct. 721, 77 L.Ed. 1331 (1933) (consolidation is only a matter of "convenience and economy in administration;" it "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit in another"). Even if the court could merge the FLSA collective actions into a single action, it would be inappropriate to do so here because the *Bowne* action has already been conditionally certified as a collective action, notice has been sent, and the opt-in period has expired. Moreover, the *Basore* complaint expressly defines the putative collective action as excluding plaintiffs who have already opted into the *Bowne* collective action and who remain parties to that action. *Basore* Complaint ¶ 94. To now merge the two collective actions would conflate the issues and class members and would amount to a "do-over" of the *Bowne* collective action. Lest there be any confusion among the court and the parties, the court

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

hereby **ORDERS** that, unless otherwise directed, the filing of a consolidated complaint shall not effect merger of the *Basore* and *Bowne* actions.

**\*5** Having discussed and denied plaintiffs' first proposed amendment, the court now turns to the five remaining amendments as listed in the Background section of this order. The second amendment proposes to omit five of the six named plaintiffs in the *Bowne* action-Hesterberg, Andersen, Lovrien, Hejlik, and Gering. Plaintiffs explained at the hearing that these five plaintiffs, although not specifically identified in the consolidated complaint, have not been "dropped" from the action as defendant asserts. Moreover, plaintiffs explained further that these five plaintiffs were not lead or named plaintiffs, but rather, were plaintiffs who opted into the collective action at an early date and were therefore, specifically identified when the *Bowne* complaint was amended. Insofar as plaintiffs' proposed amendment seeks to omit or drop any plaintiffs, the court **DENIES** plaintiffs' request. To avoid any confusion between the parties, the court hereby **ORDERS** that the consolidated complaint retain any plaintiffs who were specifically identified in the extant complaints. The third amendment proposes to add an additional defendant Wells Fargo & Co. The court **GRANTS** leave for plaintiffs to make the third amendment because it is neither futile nor made in bad faith, and although the addition of Wells Fargo & Co. could have been made at an earlier date, the addition is not prejudicial given that the court will adjust the case management scheduling order to give all parties sufficient opportunity to respond to the amendment.

The fourth amendment plaintiffs propose is to add new claims to the *Basore* matter for the putative California class action brought by California plaintiff Mary Basore. These new claims are for Wells Fargo's alleged failure to provide itemized statements of time worked and Wells Fargo's alleged failure to pay for all hours worked in violation of California Labor Code sections 226 and 218. The court recognizes that disputed issues remain as

to whether the addition of these claims are futile due to the statute of limitations. However, any current disputes may be resolved at a later time. Although plaintiffs' claims could have been asserted at an earlier time, plaintiffs' request to amend is not brought in bad faith and any prejudice to defendant may be mitigated by adjusting the dates in the case management scheduling order. The court **GRANTS** leave for the California plaintiff in the *Basore* matter to add new claims for relief for failure to provide itemized pay statements and for failure to pay all hours worked.

The fifth and sixth amendments are related to plaintiffs' proposed expansion of the class definition to include not just "loan processors," but all non-exempt employees under the general title of "Team Members." Plaintiffs explain that the amendments were precipitated by the recent discovery of what plaintiffs allege to be a "seminal document" concerning defendant's compensation policies. According to plaintiffs, it was not until after February 20, 2008 that defendant produced an executive summary of the company's compensation policy describing Wells Fargo's then-existing payroll practices in which all non-exempt Team Members, including loan processors, were paid according to a "Standard Hours" policy. Hanson Dec., Exh. D (filed under seal).

**\*6** The "Standard Hours" policy was in effect until January 1, 2006. Under the policy, all non-exempt employees were assumed to have worked a standard number of hours, and overtime was not paid unless the employee obtained manager approval. After January 1, 2006, Wells Fargo abandoned the Standard Hours policy and adopted a "Positive Pay" policy under which employees were paid for actual hours worked and manager approval was not required for overtime.

Plaintiffs insist that it diligently filed the consolidated complaint after obtaining the "crucial" Standard Hours discovery. Plaintiffs also accuse Wells Fargo of "covering up" the "crucial" document and "concealing" the Standard Hours policy. Accord-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

ingly, plaintiffs argue that their proposed amendment to expand the class to cover all non-exempt "Team Members" subject to the "Standard Hours" policy is not the product of undue delay, even though the proposed amendment came at the eve of the close of class discovery and the deadline to file a class and collective action certification motion.

In response, defendant argues, and the court agrees, that the record belies plaintiffs' representations. On August 14, 2006, Wells Fargo produced to plaintiffs in the *Bowne* action plaintiffs' personnel files and three iterations of defendant's employee handbook. Kelly Supp. Dec., Exhs. 1-4. The personnel files contain an "Employee Profile" for each plaintiff and expressly identifies the "Standard Hours" allocated to each of them, explaining that the number of "Standard Hours" are "the number of hours the position is regularly paid for each week."*Id.,* Exh. 1.

Moreover, the employee handbook specifically identifies the group of employees known as "Team Members," the same group of employees plaintiffs now claim it only learned about through the recently produced executive summary. *Id.,* Exh. 2 at WF000720 (showing that the title of the employee handbook is "Handbook for Wells Fargo *Team Members"* ) (emphasis added). The terms "team member" and "non-exempt team member" are used repeatedly throughout the handbook. *See e.g., Id.* at WF000773-WF000774. Nowhere does the handbook imply that the policies contained within the handbook are limited to only Team Members who are loan processors.

The employee handbook also explicitly addresses the Standard Hours policy, the same policy plaintiffs claim was revealed only recently in the PPI document. It defines "Standard Hours" as follows:

> A set number of hours that a team member works each week, which will be paid without the need to process a timecard. Standard hours are *not* the same as scheduled hours-for example, a team

member may have standard hours of nine hours per week, but based on business needs may be scheduled for 3 hours on Monday, Wednesday and Friday one week and 4 1/2 hours on Tuesday and Thursday the next.

*Id.* at WF000844. The handbook goes on to explain Wells Fargo's overtime policies in relevant part as follows:

\*7 Reporting Overtime

> If you're in a nonexempt position, you are entitled to pay for all hours actually worked, even those that exceed your regular schedule. Therefore, you must report *all* hours worked. And if you think you're going to need to work overtime, you need to get your supervisor's authorization before you work additional hours. Overtime affects your business unit's plan and budget, so it's important that your supervisor approves in advance.

\* \* \*

Nonexempt Overtime

> Weekly-If you're nonexempt, you receive overtime pay of 1 1/2 time your pay (including any shift differential), or "time and a half," if you work more than 40 hours in a workweek. Paid Time Off and holidays are not counted as "work" hours for overtime purposes. You must report all the hours you work, and you need to get your supervisor's approval before you work any over- time.

> Daily-Some states also have provisions for paying nonexempt overtime pay based on daily work hours-for example, if you work more than 12 hours in one day. Check with your supervisor or HR consultant to see if this applies in your area. Overtime requirements for your state are also posted in your workplace.

*Id.* at WF000774. Later versions of the employee handbook, which were also produced to plaintiffs,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

contain comparable language. *See Id.,* Exhs. 3, 4. Thus, plaintiffs knew, or should have known in August 2006 at the latest what the "Standard Hours" policy was, how it operated, and that it applied to all non-exempt Wells Fargo Team Members, including loan processors.

Plaintiffs demonstrated an early awareness of these facts. In January 2006 they alleged in the *Bowne* complaint that "[p]laintiffs and all similarly situated employees are victims of a *uniform and company-wide compensation policy."Bowne* Complaint ¶ 33 (emphasis added). In January 2007, after Wells Fargo produced the personnel files and employee handbook in August 2006 in connection with the *Bowne* matter, plaintiffs alleged in the *Basore* complaint that "the most obvious reason" for the systematic underpayment of overtime "is because it was Wells Fargo's policy for workers to only work *'pre-approved'* overtime hours."*Basore* Complaint ¶ 20 (emphasis added). "Because of this policy," the *Basore* plaintiffs alleged, "many workers who did not have their overtime pre-approved were not paid for their overtime hours worked."*Id.* This is the same allegation that plaintiffs now make in the consolidated complaint and which they claim is "newly" discovered-that as a result of the Standard Hours policy which assumed a set number of hours and which required manager approval prior to compensation for overtime, defendant systematically underpaid employees for overtime hours.

In sum, the court finds that plaintiffs' fifth proposed amendment to expand the class to all "Team Members" is the result of undue delay. The court is not persuaded that the information in the recently produced document is "seminal" or "crucial" insofar as it explains the Standard Hours policy and its application to all Team Members. Much of the information contained in the recently produced document had already been disclosed to plaintiffs in other documents produced by defendant in August 2006. Even if every single detail regarding the Standard Hours policy was not laid out in full view, pertinent features of the policy were disclosed in the August

2006 discovery and these disclosed features were sufficient to support a class definition encompassing all Team Members subject to the Standard Hours policy..

*\*8 Nevertheless, the court must also balance other factors in considering whether to grant leave for plaintiffs to amend. The court does not find that the request to amend is made in bad faith. Moreover, although the amendment will prejudice defendant since additional class discovery and briefing may be necessary, any prejudice may be mitigated by the court's adjustment of the case scheduling order. The court will ensure that defendant has sufficient opportunity to prepare and respond to the newly expanded class definition.

Finally, the amendment is not futile. Defendant argues that the Standard Hours policy is simply an accounting system that is not unlawful. To the extent that the unlawful conduct is the result of individual managers violating the Standard Hours policy by refusing to approve overtime, defendant argues that plaintiffs' claims are futile because the claims are not suitable for class treatment. Whether the Standard Hours system is lawful or unlawful, and whether a class can be properly maintained based on defendant's adoption of the Standard Hours policy, are questions that do not render plaintiffs' proposed amendment futile at the pleading stage. These questions will be more appropriately addressed in future class certification or summary judgment motions.

On balance, although the court finds that plaintiffs' proposed fifth amendment is untimely, the court finds that the amendment is not made in bad faith and is not futile and moreover, any prejudice to the defendant may be mitigated by adjusting the case scheduling order. Accordingly, the court **GRANTS** plaintiffs' proposed fifth amendment to expand the class definition to include all non-exempt "Team Members."

The sixth and final proposed amendment concerns tolling of the statute of limitations for the newly added "Team Members" who are not loan processors.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

At the current time, the court finds that questions remain as to whether the claims of "Team Members" who are not loan processors may be equitably tolled. These questions remain open and should be addressed more fully in a subsequent motion.

*CONCLUSION*

Plaintiffs' motion for leave to file an amended complaint is **GRANTED IN PART** and **DENIED IN PART.** The consolidated complaint filed on March 21, 2008 (Docket No. 31) is stricken. Plaintiffs shall have fourteen (14) days from the date of this order to file an amended and consolidated complaint consistent with this memorandum and order. Thereafter, defendant shall have fourteen (14 days) to file an answer or to otherwise respond. The Clerk shall contact the parties to re-schedule the dates for briefing and hearing on the class and collective action certification motion.

IT IS SO ORDERED.

N.D.Cal.,2008.
In re Wells Fargo Loan Processor Overtime Pay Litigation
Slip Copy, 2008 WL 2397424 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2513682 (W.D.Tex.)
**2008 WL 2513682 (W.D.Tex.)**

In re Texas EZPawn Fair Labor Standards Act Lit-
igation
W.D.Tex.,2008.
Only the Westlaw citation is currently available.
United States District Court,W.D. Texas,Austin Di-
vision.
In re TEXAS EZPAWN FAIR LABOR STAND-
ARDS ACT LITIGATION.
June 18, 2008.

### GENERAL ORDER

ANDREW W. AUSTIN, United States Magistrate
Judge.
*1 Before the Court are Defendant's Motion for
Partial Summary Judgment on the Calculation of
Damages, if Any, filed on March 4, 2008
("Motion"), Plaintiffs' Response in Opposition to
Defendant's Partial Motion for Summary Judgment
on the Calculation of Damages, if Any, filed on
March 31, 2008 ("Response"), Plaintiff's Objec-
tions to Defendant's Summary Judgment Evidence,
filed on March 31, 2008, Defendant's Reply to
Plaintiff's Response to Defendant's Motion for Par-
tial Summary Judgment on the Calculation of Dam-
ages, if Any, filed on April 8, 2008 ("Reply"), De-
fendant's Objections to Plaintiff's Summary Judge-
ment Evidence, filed on April 8, 2008, and Defend-
ant's Response to Plaintiff's Objections to Defend-
ant's Summary Judgment Evidence, filed on April
8, 2008. The foregoing pleadings were filed in each
of the cases identified in the attached Appendix.

### I. BACKGROUND

The cases identified in the attached Appendix are
Fair Labor Standards Act ("FLSA") cases involving
allegations that Defendant Texas EZPawn, L.P.
("EZPawn") improperly classified employees and
failed to pay them overtime compensation as re-
quired by the FLSA. EZPawn is the owner and op-
erator of more than 100 retail pawn and short-term

loan establishments throughout Texas. Plaintiffs are
former assistant store managers who claim they
were improperly classified as exempt employees
under the FLSA and not compensated for hours
worked in excess of forty per week as required by
29 U.S.C. § 207(a)(1). EZPawn claims Plaintiffs
were properly classified as exempt and are not en-
titled to any overtime compensation.

EZPawn seeks partial summary judgment concern-
ing the proper method of calculating damages. EZ-
Pawn argues that the appropriate method of calcu-
lating damages in misclassification cases such as
those presently before the Court is the fluctuating
workweek method found at 29 C.F.R. § 778.114.
According to EZPawn, the United States Court of
Appeals for the Fifth Circuit's decision in *Blackmon
v. Brookshire Grocery Company* requires that, in
the event Plaintiffs establish liability, they are only
entitled to half of their hourly rate of pay for each
hour worked over forty. *See Blackmon v. Brook-
shire Grocery Co.,* 835 F.2d 1135, 1138 (5th
Cir.1988).

In response, Plaintiffs make three arguments. First,
Plaintiffs argue EZPawn waived its argument that
the fluctuating workweek method of calculating
damages applies in this case because it was not pled
in Defendant's initial responsive pleading as re-
quired by Rule 8. Second, they argue the fluctuat-
ing workweek method of calculating damages is not
applicable as a matter of law. Third, Plaintiffs argue
fact issues preclude summary judgment. Having
considered the Motion, Response, Reply, and oral
argument of the parties, the Court is of the opinion
that the fluctuating workweek method of calculat-
ing damages is not applicable to the cases identified
in the attached Appendix, and that Defendant's Mo-
tion should therefore be denied.[FN1]

> FN1. Because in reaching its decision the
> Court need not rely upon the evidence ob-
> jected to by the parties, Plaintiff's Objec-
> tions to Defendant's Summary Judgment

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Evidence and Defendant's Objections to Plaintiff's Summary Judgement Evidence are OVERRULED AS MOOT.

## II. ANALYSIS

### A. Summary Judgment Standard

**\*2** Under Federal Rule of Civil Procedure 56, a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."FED. R. CIV. P. 56(c)."Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."*Flath v. Garrison Pub. Sch. Dist. No. 51,* 82 F.3d 244, 246 (8th Cir.1996) (internal quotations omitted)."An issue is material if its resolution could affect the outcome of the action."*Commerce and Indus. Ins. Co. v. Grinell Corp.,* 280 F.3d 566, 570 (5th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986)). In deciding whether a fact issue exists, the court "must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."*Id.*

"[T]he nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."*Caboni v. Gen. Motors Corp.,* 278 F.3d 448, 451 (5th Cir.2002). The nonmovant may not rely on mere allegations in the pleadings. *Id.* Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Prods., Inc.,* 44 F.3d 308, 312 (5th Cir.1995). Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 777 (5th Cir.1997). The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court."*James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### B. Fluctuating Workweek Pleading Requirements

Federal Rule of Civil Procedure 8 requires that a party state any affirmative defense or avoidance in a responsive pleading. FED. R. CIV. P. 8(a). Plaintiffs argue that EZPawn has waived the fluctuating workweek "defense" because it failed to timely raise the defense in its initial responsive pleading as required by Rule 8 of the Federal Rules of Civil Procedure. According to Plaintiffs, the fluctuating workweek is a defense that must be timely pled because it is a method by which an employer may avoid paying damages for unpaid overtime. In response, EZPawn argues that the fluctuating workweek is not an affirmative defense, but rather a method of calculating damages, the application of which is a matter of law for the Court to decide.

The Court agrees with EZPawn that the damage theory is not an affirmative defense required to be pled by Rule 8. *See Hopkins v. Tex. Mast Climbers, L.L.C.,* No. Civ. A. H-04-1884, 2005 WL 3435033, at \*7 (S.D.Tex. Dec.14, 2005) (noting that the fluctuating workweek is not a defense or exemption to the FLSA, but rather an interpretive bulletin addressing a permissible payment scheme under the FLSA). Even if Rule 8 required EZPawn to affirmatively plead the damage methodology, there is no waiver of a defense when a defendant raises the issue at a "pragmatically sufficient time" and the plaintiff is not prejudiced in responding. *Lucas v. United States,* 807 F.2d 414, 418 (5th Cir.1986). Here, the issue of whether the fluctuating workweek method of calculating damages applies to this

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

case was raised sufficiently early so as to avoid any unfair surprise. Plaintiffs have made no showing of prejudice due to the absence of an allegation in EZ-Pawn's responsive pleadings that the method applies in this case. They have had ample time to address the issue in response to EZPawn's Motion and during oral argument. Moreover, as EZPawn correctly points out in footnote eight of its Reply, Plaintiffs' counsel has been on notice of EZPawn's position regarding the fluctuating workweek method of calculating damages since at least September 26, 2007. Therefore, Plaintiffs' waiver argument is without merit.

## C. The Fluctuating Workweek Method of Calculating Overtime Pay

*3 The FLSA requires that non-exempt employees be paid at least one and one-half times their regular rate of pay for all hours over forty worked during a particular week. 29 U.S.C. § 207(a). In 1968 the Department of Labor issued a bulletin interpreting this section of the Act to address the payment of overtime to salaried employees "who do not customarily work a regular schedule of hours."29 C.F.R. § 778.114(c). The bulletin was issued in response to two Supreme Court cases that had addressed payment of overtime to employees who had fluctuating hours from week to week, and who wished to receive a predictable, flat rate of pay. *See Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942); *Walling v. A.H. Belo Corp.,* 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942). Neither of these cases concerned a misclassified employee, but rather both involved non-exempt workers who employers were paying on a salary basis.[FN2]In resolving the confusion that lingered after the decisions, the Department of Labor adopted an interpretation of § 207(a) consistent with the *Missel* decision.*O'Brien v. Town of Agawam,* 350 F.3d 279, 287 n. 15 (1st Cir.2003) (noting that § 778.114 represents the Secretary of Labor's implementation of *Overnight Motor Transport Company v. Missel* ).[FN3] The relevant portions of the bulletin provide:

FN2. A thorough description of the cases, and the history of the flexible workweek compensation method, can be found in *Hunter v. Sprint Corp.,* 453 F.Supp.2d 44, 55-58 (D.D.C.2006).

FN3. In *Missel,* the Supreme Court addressed the application of the FLSA's overtime provisions to an employee who contracted to work fluctuating hours for a fixed wage. The employer contended that as long as the employee received a rate of regular pay sufficient to cover the minimum wage plus time and one-half for hours above the statutory maximum, the arrangement complied with the FLSA and no additional overtime was due.*Missel,* 316 U.S. at 575. The Court disapproved of the arrangement and held that the FLSA requires regular pay plus 150% of the regular rate of pay for hours above the statutory maximum, not just the minimum wage.*Id.* at 577-78.The Court rejected the employer's argument because there was no provision for payment of compensation above the regular rate of pay if the employee worked more hours than his regular rate of pay would cover, including time and one-half for all hours above the statutory maximum, and because there was no cap on the number of hours that the employee could be required to work. *Id.* at 581.The Supreme Court reasoned that one of the intended effects of the FLSA "was to require extra pay for overtime work by those covered by the act even though their hourly wages exceeded the statutory minimum."*Id.* at 577.Essentially, the ruling prohibits employers and employees from contracting out of the FLSA.

(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

\* \* \*

(c) The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours in not worked. Typically, such salaries are paid to em-

ployees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight-time compensation for long workweeks as well as short ones, under the circumstances of the employment as a whole .... On the other hand, where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act cannot be rested on any application of the fluctuating workweek overtime formula.

**\*4** 29 C.F.R. § 778.114.

The Department's bulletin requires that five factors be present before an employer may use the fluctuating workweek method to pay a non-exempt employee: (1) a clear understanding between the parties; (2) varying hours worked from week to week; (3) payment of a fixed salary, regardless of the number of hours worked during a particular week; (4) payment of a salary equal to or greater than minimum wage; and (5) payment of compensation in addition to the salary for all overtime hours worked. *See* 29 C.F.R. § 778.114(a); *Rainey v. Am. Forest and Paper Ass'n, Inc.,* 26 F.Supp.2d 82, 100; *see also Conne v. Speedee Cash,* No. 06-60377, 2007 U.S.App. LEXIS 17480, at \*3-4, 2007 WL 2113627 (5th Cir. July 23, 2007) (including requirement that employee receive additional compensation for overtime). The additional payment required by the fifth element is half of the regular hourly rate of pay for each hour worked over forty. *See* 29 C.F.R. § 778.114(a). The reasoning underlying the half hourly pay rate as opposed to the standard time and one-half rate is that, by way of agreement, the employee has already been compensated for all base hourly pay including the hours worked over forty. *See* 29 C.F.R. § 778.114(b).

### D. Section 778.114 as a Means of Calculating Damages

EZPawn argues that the methodology contained in

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

29 C.F.R. § 778.114 is appropriate to determine the unpaid overtime due Plaintiffs, should it be determined that Plaintiffs were not exempt from overtime pay. Plaintiffs oppose the use of the formula for damages, contending that it is inapplicable to a misclassification case, and that even if it is potentially applicable to such a case, there are fact questions remaining for trial on whether some of the requirements of the bulletin have been met. Section 778.114 is silent regarding whether it may be used as a method of calculating damages in misclassification cases. Further, the Court has been unable to locate any statute, regulation, or Department of Labor opinion addressing use of the fluctuating workweek formula as a method for calculating damages, and the parties have cited to none. Obviously the bulletin has no application to an employee who is exempt from overtime pay, as its purpose is to provide approval for a method of paying overtime to *non-exempt* employees. By definition, in a misclassification situation the employer enters the employment relationship with the understanding that no overtime compensation is due to the employee, and thus the employer will never have applied the rule to the employee prior to the suit being filed. Thus, in advocating that the formula be used to calculate the damages here, EZPawn is asking the Court to apply the rule retroactively, as it is undisputed that neither EZPawn nor the Plaintiffs broached the topic of a "flexible workweek" payment scheme at any time.

A number of courts-some with more analysis than others-have approved use of the fluctuating workweek compensation scheme of § 778.114 as a method of calculating damages in FLSA misclassification cases. *See, e.g., Blackmon,* 835 at 1138 (finding that the correct method of calculating overtime in case where an employer and employee had agreed on a fixed salary for varying hours was multiplying the regular rate of pay by one-half for each hour worked over forty), *Saizon v. Delta Concrete Prods. Co.,* 209 F.Supp.2d 639, 640 (M.D.La.2002) (following *Blackmon* ). Other courts have concluded that it is inappropriate to apply the compens-

ation scheme to a misclassification case. *E.g., Rainey,* 26 F.Supp.2d at 100 (refusing to apply the fluctuating workweek method of calculating damages where the employer classified the employee as exempt under the FLSA and did not pay contemporaneous overtime premiums). Courts also disagree regarding the factors necessary to trigger the fluctuating workweek as a permissible method of calculating damages. *See Hunter,* 453 F.Supp.2d at 59 (comparing cases to illustrate the disagreement regarding whether the fluctuating workweek method of calculating damages requires the contemporaneous payment of overtime or whether the method may be used to retroactively calculate unpaid overtime for an employee improperly classified as exempt).[FN4]

> FN4. In reaching its decision today, the Court has reviewed all cases identified by the parties that discuss the use of the fluctuating workweek, as well as additional cases located by the Court's research, including all of the following: *Yadav v. Coleman Oldsmobile, Inc.,* 538 F.2d 1206 (5th Cir.1976); *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135 (5th Cir.1988); *Cox. v. Brookshire Grocery Co.,* 919 F.2d 354 (5th Cir.1990); *Samson v. Apollo Resources, Inc.,* 242 F.3d 629 (5th Cir.2001); *Condo v. Sysco Corp.,* 1 F.3d 599 (7th Cir.1993); *Mayhew v. Wells,* 125 F.3d 216 (4th Cir.1997); *Valerio v. Putnam Assocs., Inc.,* 173 F.3d 35 (1st Cir.1999); *Conne v. Speedee Cash,* No. 06-60377, 2007 U.S.App. LEXIS 17480, 2007 WL 2113627 (5th Cir. July 23, 2007); *Spires v. Ben Hill County,* 745 F.Supp. 690 (M.D.Ga.1990); *Burgess v. Catawba County,* 805 F.Supp. 341 (W.D.N.C.1992); *Zoltek v. Safelite Glass Corp.,* 884 F.Supp. 283 (N.D.Ill.1995); *Dingwall v. Friedman Fisher Assocs., P.C.,* 3 F.Supp.2d 215 (N.D.N.Y.1998); *Braddock v. Madison County,* 34 F.Supp.2d 1098, 1105 (S.D.Ind.1998); *Rainey v. Am. Forest and*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*Paper Ass'n, Inc.,* 26 F.Supp.2d 82 (D.D.C.1998); *Cowan v. Treetop Enters.,* 163 F.Supp.2d 930 (M.D.Tenn.2001); *Saizan v. Delta Concrete Prods. Co.,* 209 F.Supp.2d 639 (M.D.La.2002); *Hunter v. Sprint Corp.,* 453 F.Supp.2d 44 (D.D.C.2006); *Torres v. Bacardi Global Brands Promotions, Inc.,* 482 F.Supp.2d 1379 (S.D.Fla.2007); *Donihoo v. Dallas Airmotive, Inc.,* No. Civ. A. 3:97-CV-0109P, 1998 WL 47632 (N.D.Tex. Feb.2, 1998); *Naylor v. DAI Envtl., Inc.,* No. 01 C 4253, 2004 WL 42347 (N.D.Ill. Jan.6, 2004); *Tumulty v. FedEx Ground Package Sys., Inc.,* No. CO4-1425P, 2005 WL 1979104 (W.D.Wash. Aug.16, 2005); *Hopkins v. Tex. Mast Climbers, L.L.C.,* No. Civ. A. H-04-1884, 2005 WL 3435033 (S.D.Tex. Dec.14, 2005); *Perez v . R adioshack Corp.,* No. 02 C 7884, 2005 WL 3750320 (N.D.Ill.Dec.14, 2005); *Tuck v. Methanex Mgmt., Inc.,* No. 3-04-CV-1720-N, 2006 U.S. Dist. LEXIS 13751(N. D.Tex. March 29, 2006); *Scott v. OTS, Inc.,* No. 02-CV-1950, 2006 WL 870369 (N.D.Ga. Mar. 31, 2006).

**\*5** The cases which apply the fluctuating workweek method to calculate damages struggle in their analysis with several elements of the bulletin (where the cases actually include analysis [FN5]). These analytic struggles are the result of the old "square peg in a round hole" problem-here, attempting to apply § 778.114 to a situation it was not intended to address. As already noted, the bulletin was adopted to address a very specific issue: whether an employer may satisfy the overtime requirements of the FLSA while paying a non-exempt employee on a flat weekly or monthly basis. The plain language of the bulletin, and the requirements it imposes on employers, are quite difficult to apply to a lawsuit filed by an employee claiming that he has been misclassified. Attempting to ascertain whether there was a "clear mutual understanding," for example,

becomes awkward at best in a misclassification suit, as there was obviously *no* understanding on the issue, given that both employer and employee were acting on the assumption that the employee was exempt from overtime, and thus that the rule had no application to that job.

> FN5. Several of the cases-including all of the decisions in this Circuit-contain no analysis whatsoever of the legal and regulatory issues raised by this question. *E.g.* *Blackmon,* 835 F.2d at 1138;*Cox,* 919 F.2d at 357 (following *Blackmon* );*Saizan,* 209 F.Supp.2d at 640 (following *Blackmon* );*Donihoo,* 1998 WL 47632 (following *Blackmon* );*Tuck v.* 2006 Dist. LEXIS 13751 (not citing any cases; relying solely on § 778.114).

Further, the courts that have addressed this issue have ignored the nature of § 778.114. As noted earlier, it is an interpretive bulletin issued by the Department of Labor, stating the Department's opinion regarding a specific compensation arrangement. Despite the fact that most of the cases on this issue have described it as a "regulation," it is in fact not a rule-it is an interpretive bulletin-and it did not go through the rulemaking requirements of the Administrative Procedure Act (notice, public comment, appeal, etc.). This means that it is not subject to the deference reserved for regulatory measures, *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), but rather is entitled to less deference, such as the "measure of respect" standard described in *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).*See Alaska Dept. of Envtl. Conservation v. E.P.A.,* 540 U.S. 461, 487-88, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004). Virtually none of the courts reviewing these issues have spent any time discussing the appropriateness of using the formula for remedial purposes, and have simply assumed it has the force of law. And the one court that did address the question of the deference § 778.114 is entitled to, did so in re-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

lation to its use for its expressly-stated purpose (a payment formula for non-exempt employees), and even then it failed to recognize that § 778.114 was not a regulation, and thus the court incorrectly applied *Chevron* deference to it. *See Condo v. Sysco Corp.,* 1 F.3d 599, 603-04 (7th Cir.1993).[FN6]

> FN6. As with *Condo,* in *Samson v. Apollo Resources, Inc.,* 242 F.3d 629 (5th Cir.2001), the Fifth Circuit was also faced with a suit by non-exempt employees who were being paid pursuant to the flexible workweek method. The court did not address the validity of § 778.114, however, as the parties apparently did not challenge the payment scheme on that basis. Rather, the employees challenged the manner in which the payment method was applied to them, and complained that there had not been a clear mutual understanding between them and the employer. *Condo* and *Samson* are both examples of cases in which § 778.114 is being used in the manner clearly contemplated by the bulletin-that is, where an employer is, on an ongoing basis, paying an employee a flat rate with an overtime premium-as opposed to attempting to apply the bulletin retroactively, as a measure of damages, as is being sought here.

EZPawn's argument assumes that the Department of Labor's interpretation contained in § 778.114 should be given the force of law, and that to do so is consistent with the FLSA. The question thus is, assuming that the Department of Labor intended the bulletin to act not only as a permissible way to pay an employee, but also as the appropriate manner to remedy misclassification, is such an interpretation consistent with the remedial provisions of the FLSA?

*6 Where Congress has specifically delegated to an agency the power to make rules to fill gaps in a statute, the rules developed by the agency are entitled to great deference-they are "binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute."*U.S. v. Mead Corp.,* 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). On the other hand. "[i]nterpretations such as those in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-do not warrant *Chevron*-style deference."*Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (citations omitted) (reviewing a Department of Labor opinion letter). Nevertheless, "the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' " *Bragdon v. Abbott,* 524 U.S. 624, 642, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (quoting *Skidmore,* 323 U.S. at 139-40). The amount of deference an agency statement is entitled to will vary with the circumstances, and is dependent upon several factors, including "the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Mead,* 533 U.S. at 228 (footnotes omitted). As the Court noted in *Mead,* the spectrum ranges from "great respect at one end, to near indifference at the other." *Id.* (citations omitted). One indicator that the higher level of deference is merited is the existence of "express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." *Id.* at 239;*see also Christensen,* 529 U.S. at 596-97 (Breyer, J., dissenting) (where it is doubtful that Congress intended to delegate particular interpretive authority to an agency, *Chevron* is "inapplicable").

As already noted several times, § 778.114 is a Department of Labor interpretive bulletin. EZPawn's argument tacitly assumes that in issuing the bulletin, the Department intended to be interpreting not only the overtime provisions of the FLSA (29 U.S.C. § 207(a)), but also the Act's remedial provisions (29 U.S.C. § 216(b)), as they argue that the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

bulletin should be given legal effect for the purpose of calculating damages. Section 216(b), which creates an employee's right of action, states that an employer who violates § 207"shall be liable to the employee affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages."29 U.S.C. § 216(b). Thus, in a misclassification suit a court must assess damages at two times the "unpaid overtime compensation." Section 216(b) does not specifically define "unpaid overtime compensation." However, the compensation due for overtime is set forth plainly in § 207(a), as "a rate not less than one and one-half times the regular rate at which [the employee] is employed."[FN7]The plain language of the statute therefore requires that an employer violating § 207(a) is liable to an employee for the compensation required by § 207(a)-one and one-half times the employee's regular rate. The Department has also issued bulletins addressing calculation of the "regular rate." *See*29 C.F.R. §§ 778.109, 778.113. Subsection 109 provides the general rule that the "regular rate" means an hourly rate, and is determined by dividing an employee's total pay in any workweek by "the total number of hours actually worked by him in that workweek."Subsection 113 deals with the specific situation of an employee receiving a salary, and states that for an employee with a weekly salary, the "regular hourly rate of pay, *on which time and a half must be paid,* is computed by dividing the salary by the number of hours which the salary is intended to compensate."29 C.F.R. § 778.113(a) (emphasis added).[FN8] In sum, the FLSA specifically sets damages at two times the "unpaid overtime compensation," which is set at one-and-a-half times the "regular rate."

> FN7. Consistent with this, the definition of "overtime compensation" found in § 207(o)(7) is "the compensation required by subsection (a)." However, the definition in § 207(o)(7) is expressly stated to be "for purposes of this subsection," *i.e.,* subsection 207(o).

> FN8. When the salary is paid on periods other than a week, § 778.113(b) provides the method for converting that rate to a workweek equivalent.

**\*7** Against this statutory backdrop, the Court must determine whether it is consistent with the statute to set damages in a misclassification suit in the manner called for by § 778.114. The difference is not insignificant. Take as an example an employee earning $250 per week, and assume she works 50 hours one week. If the traditional method is used, the regular rate for the employee would be $6.25 per hour, and she would be entitled to overtime pay of $93.75 (10 hours times one-and-a-half of the regular rate, or $9.375 per hour). If the flexible workweek method is used, the regular rate is $5.00 per hour, and the overtime premium would be $25 (10 hours times half the regular rate, or $2.50). Thus, the flexible workweek method results in overtime compensation 375% lower than the traditional method. The declared policy of the FLSA is "to correct and as rapidly as practicable to eliminate [labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers] without substantially curtailing employment or earning power."29 U.S.C. § 202(a) & (b). It is very difficult to see how using the flexible workweek method to compute damages is consistent with Congress' declared policy. Indeed, as the Plaintiffs point out, the application of the fluctuating workweek formula to misclassification cases would permit employers to circumvent the time and one-half compensation requirements of the FLSA. Response at p. 12, n. 10.Under EZPawn's argument, an employer could claim exempt status for an employee, withhold overtime, then after being held liable for failing to pay overtime, escape the time and one-half requirement of the FLSA. *See also Hunter,* 453 F.Supp.2d at 62, n. 19.[FN9]Certainly nothing about allowing this would eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."29 U.S.C. §

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2513682 (W.D.Tex.)
2008 WL 2513682 (W.D.Tex.)

Case 4:07-cv-03993-CW    Document 32    Filed 07/24/2008    Page 41 of 43    Page 9

FN9. A s the court stated in *Hunter,*"if the FWW regulation were interpreted in the manner that Sprint urges, employers would have a substantial incentive to err on the side of classifying employees as FLSA-exempt whenever the functions performed are at the margins of an exemption-rather than to specifically negotiate an overtime compensation arrangement with the employee at the outset-because the financial risk associated with misclassification would be relatively small if retroactive calculation were routinely available ."*Id.*

As noted earlier, as an interpretive bulletin, § 778.114 is not entitled to a high level of deference from the Court. Assuming that the Department of Labor intended for the flexible workweek formula to apply to misclassification cases as a damage remedy, and § 778.114 is thus viewed as the Department of Labor's interpretation of § 216(b) of the Act, the interpretation is flawed. It creates incentives at odds with the express statement of Congressional intent. Indeed, it is likely that the Department never intended the bulletin to have a remedial reach, given its total silence on the issue at the time of its adoption and for the 40 years it has been in place. Regardless, the conclusion that it is consistent with the Act to allow an employer to pay an employee according to the flexible workweek method when it is done contemporaneously and openly-*i.e.* when there is a mutual understanding between the employer and employee-does not mean it is also consistent with the Act to use that same method to calculate damages when the employer violates the Act by misclassifying an employee. So, the fact that the Seventh Circuit found § 778.114 to be consistent with the FLSA as a means to pay a non-exempt employee, *see Condo,* I F.3d 599, says nothing about whether it would also be consistent with the Act to use the formula to calculate damages when the only understanding the employer and employee had was that the employee was exempt from overtime payments.[FN10]The interpretation of the Act EZPawn advocates-and contends is contained within § 778.114-is contrary to the Act's purposes and thus is invalid. As a matter of law, then, the flexible workweek method of calculating overtime pay is not applicable to Plaintiffs' claims and EZPawn's Motion must be denied.

FN10. The "clear mutual understanding" language contained within the bulletin suggests employee consent is required before the payment scheme is allowed. "Mutuality" is a two-way street, and cannot exist without some participation by the employee. Where an employee is misclassified, it is impossible for there to be the requisite mutuality, as the issue of the structure of the employee's pay vis-a-vis the overtime laws would never have been a topic of conversation.

### E. *Blackmon*

**\*8** Finally, there is the matter of the Fifth Circuit's decision in *Blackmon v. Brookshire Grocery Company.*In *Blackmon,* the Fifth Circuit held that the lower court erred in applying the standard time and one-half overtime calculation after the jury found that two employees were improperly classified as exempt under the FLSA. *Blackmon,* 835 F.2d at 1138. The court held that the standard time-and-a-half computation was "inappropriate when an employer and employee have agreed on a fixed salary for varying hours."*Id.* The court cited § 778.114(a) for its conclusion that the plaintiffs' damages were to be computed by "multiplying all hours over [forty] in the workweek by half the regular rate for that work-week."*Id.* at 1139.Read broadly, *Blackmon* requires the application of the fluctuating workweek method of calculating damages in *every* misclassification case brought under the FLSA. *See id.* at 1138.As recognized by the district judge in *Rainey,* the decision in *Blackmon*"was not supported by any explanation or effort to analyze the relevant statutory and regulatory language."*Rainey,* 26 F.Supp.2d at101. As noted in

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

footnote 5, several district courts in this Circuit have followed *Blackmon,* all without questioning its lack of analysis or its consistency with the statutorily-mandated measure of damages.

While I do not do so lightly, I believe that the conclusion reached in *Blackmon* is fundamentally flawed. It was supported by no discussion or analysis of the issues, and assumed-wrongly-that § 778.114 has the force of law. This Court would ordinarily follow a Fifth Circuit precedent with which it simply disagrees, but there is more here than that. In this case I firmly believe that the decision in *Blackmon* is wholly inconsistent with the FLSA, and cannot be reconciled with the purposes of the Act. With respect, the Court declines to follow that decision, and urges the Circuit to revisit the issue.

### III. CONCLUSION

For all of the reasons set forth above, the Court concludes that as a matter of law the flexible workweek method of paying overtime set forth in 29 C.F.R. § 778.114 is inapplicable to the cases before the Court. ACCORDINGLY, IT IS

ORDERED that EZPawn's Motion is DENIED. It is, further ORDERED that Plaintiff's Objections to Defendant's Summary Judgment Evidence and Defendant's Objections to Plaintiff's Summary Judgement Evidence are hereby OVERRULED as moot.

### APPENDIX-ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CALCULATION OF DAMAGES, IF ANY

1:07CA553-AWA

1:07CA554-AWA

1:07CA556-AWA

1:07CA557-AWA

1:07CA558-AWA

1:07CA559-AWA

1:07CA560-AWA

1:07CA561-AWA

1:07CA562-AWA

1:07CA563-AWA

1:07CA564-AWA

1:07CA565-AWA

1:07CA566-AWA

1:07CA567-AWA

1:07CA569-AWA

1:07CA570-AWA

1:07CA571-AWA

1:07CA572-AWA

1:07CA579-AWA

1:07CA580-AWA

1:07CA581-AWA

1:07CA582-AWA

1:07CA583-AWA

*9 1:07CA584-AWA

1:07CA585-AWA

1:07CA586-AWA

1:07CA587-AWA

1:07CA588-AWA

1:07CA589-AWA

1:07CA590-AWA

1:07CA591-AWA

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

1:07CA592-AWA

1:07CA593-AWA

1:07CA595-AWA

1:07CA596-AWA

1:07CA597-AWA

1:07CA599-AWA

W.D.Tex.,2008.
In re Texas EZPawn Fair Labor Standards Act Litigation
Slip Copy, 2008 WL 2513682 (W.D.Tex.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.