1   William M. Audet (CA 117456)
    Adel A. Nadji (CA 232599)
2   AUDET & PARTNERS, LLP
    221 Main Street, Suite 1460
3   San Francisco, CA 94105
    Telephone: 415.568.2555
4   Facsimile: 415.568.2556

5   T. Joseph Snodgrass (*Pro Hac Vice*)
    Kelly A. Swanson (*Pro Hac Vice*)
6   LARSON • KING, LLP
    2800 Wells Fargo Place
7   30 East 7th Street
    St. Paul, Minnesota 55101
8   Telephone:    (651) 312-6500
    Facsimile:    (651) 312-6619
9

10  *Attorneys for Plaintiff*

11

12

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15                  **OAKLAND DIVISION**

16  MONTE RUSSELL, on behalf of himself and          Case No. C–07-3993-CW
    others similarly situated,
17
                Plaintiff,
18                                                    **PLAINTIFF'S NOTICE OF MOTION
                                                      AND MOTION FOR CONDITIONAL
19        v.                                          COLLECTIVE ACTION
                                                      CERTIFICATION UNDER FLSA, 29
20  WELLS FARGO AND COMPANY,                          U.S.C. §216(b), AND FOR COURT-
                                                      APPROVED NOTICE OF FLSA
21              Defendant.                            CLAIMS, AND MEMORANDUM OF
                                                      POINTS AND AUTHORITIES IN
22                                                    SUPPORT THEREOF**

23                                                    **Date:  September 4, 2008
                                                      Time:  2:00 p.m.
24                                                    Courtroom: 2, 4th Floor
                                                      Hon. Claudia Wilken**
25

26

27

28

Audet & Partners, LLP
www.audetlaw.com

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES................................................................................................. iii

NOTICE OF MOTION AND MOTION................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES....................................................... 3

I.      INTRODUCTION....................................................................................................... 3

II.     FACTUAL BACKGROUND ..................................................................................... 3

        A.      Plaintiff Monte Russell's Employment At Wells Fargo............................... 3

        B.      There Exist Similarly Situated Wells Fargo Employees. ............................. 4

        C.      Other Similarly Situated PC/LAN Engineers............................................... 4

        D.      Defendant Wells Fargo.................................................................................. 5

        E.      Wells Fargo's Reclassification Of PC/LAN Engineers Immediately After
                Russell Threatens Suit, And Improper Communications With Putative
                Collective Action Class Members .................................................................. 5

        F.      Wells Fargo's Improper Attempt To Unilaterally Settle  FLSA Claims At
                Reduced Rates. .............................................................................................. 6

        G.      Prior Limited Notice Has Already Been Approved. ..................................... 7

III.    STATEMENT OF THE ISSUES TO BE DECIDED ................................................. 7

IV.     ARGUMENT .............................................................................................................. 8

        A.      NOTICE OF THIS ACTION SHOULD BE SENT TO SIMILARLY
                SITUATED WELLS FARGO PC/LAN ENGINEERS. ............................... 8

                1.      Plaintiff Has Met The Lenient Standard For Conditional Certification
                        Of FLSA Claims................................................................................... 9

                2.      Plaintiff And Others Similarly Situated Were Together The  Victims
                        Of A Single Decision, Policy, Or Plan............................................... 12

                3.      Legal And Factual Issues Are Common To Plaintiff And Potential
                        Collective Action Class Members. ...................................................... 13

        B.      THE COURT SHOULD FACILITATE THE CERTIFICATION AND
                NOTICE  PROCESS AS SET FORTH IN PLAINTIFF'S [PROPOSED]
                ORDER AND [PROPOSED] NOTICE. ...................................................... 14

                1.      Wells Fargo Should Produce Contact Information For Putative FLSA
                        Class Members So Counsel For Plaintiff Can Send Notice As Soon As
                        Possible............................................................................................... 14

                2.      Notice Should Include Strongly Worded Corrective Language  That
                        Informs Putative FLSA Class Members That They May Join This
                        Collective Action Despite Wells Fargo's Improper Attempts To
                        Privately Settle FLSA Claims, Offer Partial Payments Of Back Wages,
                        And Obtain Releases Of FLSA Claims. ............................................... 16

3.  Notice Should Be Mailed, Posted, and Distributed Through Wells Fargo's Payroll. .........................................................................................18

V.     CONCLUSION .............................................................................................18

NOTICE OF MOTION AND MOTION FOR CONDITIONAL COLLECTIVE ACTION

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*,
   242 F.R.D. 530, 535 (N.D. Cal. 2007) (Patel, J.) .........................................................14, 16, 18

*Aguayo v. Oldenkamp Trucking*,
   No. CV F 04-6279, 2005 WL 2436477, at *4 (E.D. Cal. Oct. 3, 2005)...................................11

*Ballaris v. Wacker Silttronic Corp.*,
   No. 00-1627, 2001 WL 1335809, at *2-3 (D. Or. Aug. 24, 2001)...........................................11

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
   No. 06-0715, 2007 WL 707475, *6-7 (N.D. Cal. Mar. 6, 2007) (Conti, J.) .................11, 12, 13

*Braunstein v. Eastern Photographic Labs. Inc.*,
   600 F.2d 335, 336 (2d Cir. 1978) .............................................................................................15

*Brown v. Money Tree Mort., Inc.*,
   222 F.R.D. 676, 680 (D. Kan. 2004) ...................................................................................11, 13

*Castle v. Wells Fargo Financial, Inc.*,
   No. C 06-4347, 2008 WL 495705, at *6 (N.D. Cal. Feb. 20, 2008) (Illston, J.)......................13

*Church v. Consol. Freightways, Inc.*,
   137 F.R.D. 294 (N.D. Cal. 1991) .............................................................................................10

*Comer v. Wal-Mart Stores, Inc.*,
   454 F.3d 544, 547 (6th Cir. 2006) ............................................................................................12

*DeAsencio v. Tyson Foods, Inc.*,
   130 F.Supp.2d 660, 663 (E.D. Pa. 2001)..................................................................................11

*Doe v. Texaco. Inc.*.
   No. C06-02820 WHA, 2006 WL 2850035, at *2 (N.D. Cal. Oct. 5, 2006).............................12

*Dybach v. State of Florida Dep't of Corrections*,
   942 F.2d 1562, 1567 (11th Cir. 1991) ......................................................................................15

*Gerlach v. Wells Fargo & Co*,
   No. C 05-0585, 2006 WL 824652 (N.D. Cal. Mar. 28, 2006) (Wilken, J.) ...................9, 10, 12

*Hoffman v. Sbarro, Inc.*,
   982 F. Supp. 249, 261 (S.D.N.Y. 1997) ...................................................................................15

*Hoffmann-La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989) ..................................................................................................7, 8, 15, 16

*Johnson v. Am. Airlines, Inc.*,
   531 F.Supp. 957, 961 (N.D. Tex. 1982)....................................................................................18

*Kane v. Gage Merchandising, Servs.*,
   138 F.Supp.2d 212, 214-15 (D. Mass 2001) ............................................................................13

*Monroe v. United Air Lines, Inc.*,
  90 F.R.D. 638, 640 (N.D. Ill. 1981) ............................................................................ 15

*Neary v. Metro. Prop. & Cas. Ins. Co.*,
  517 F. Supp. 2d 606, 620-22 (D. Conn. 2007) ............................................................ 12

*O'Brien v. Encotech Const. Servs., Inc.*,
  203 F.R.D. 346, 350 (N.D. Ill. 2001) .................................................................... 16, 17

*Reab v. Elec. Arts, Inc.*,
  214 F.R.D. 623, 628 (D. Colo. 2002) ..................................................................... 11, 13

*Renfro v. Spartan Computer Servs., Inc.*,
  243 F.R.D. 431, 434 (D. Kan. 2007) ..................................................................... 11, 12

*Romero v. Producers Dairy Foods, Inc.*,
  235 F.R.D. 474, 492-93 (E.D. Cal. 2006) ................................................................... 18

*Schwed v. General Electric Co.*,
  159 F.R.D. 373, 375 (N.D.N.Y. 1995) ........................................................................ 15

*Soler v. G & U, Inc.*,
  86 F.R.D. 524, 531 (D.C.N.Y. 1980) .......................................................................... 18

*Stanfield v. First NLC Fin. Servs., LLC*,
  No. C 06-392, 2006 WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006) ......................... passim

*Thiessen v. Gen. Elec. Capital Corp.*,
  267 F.3d 1095, 1102 (10th Cir. 2001) .............................................................. 9, 10, 13

*Walton v. United Consumers Club, Inc.*,
  786 F.2d 303, 306 (7th Cir. 1986) .............................................................................. 16

*Williams v. Sprint/United Mgmt. Co.*,
  222 F.R.D. 483, 487 (D. Kan. 2004) ..................................................................... 11, 13

*Woods v. New York Life Ins. Co.*,
  686 F.2d 578, 580 (7th Cir. 1982) (Posner, J.) .......................................................... 15

*Wynn v. Nat'l Broadcasting Co., Inc.*,
  234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002) .............................................................. 9

**Statutes**

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) ........................................... passim

29 U.S.C. § 256(b) ...................................................................................................... 8

29 U.S.C. § 257 ........................................................................................................... 8

29 U.S.C. § 255 ......................................................................................................... 14

**Rules**

Fed. R. Civ. P. 1 .................................................................................................... 14

Fed. R. Civ. P. 23 .................................................................................................. 10

Fed. R. Civ. P. 83 ........................................................................................... 14, 15

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on September 4, 2008 at 2 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Claudia Wilken of the above-entitled Court, Plaintiff Monte Russell, on behalf of himself and all others similarly situated, will and hereby does move as follows:

(1)    Pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and cases interpreting it, that the Court conditionally certify this action as a representative collective action;

(2)    Pursuant to the FLSA and cases interpreting it, that the Court authorize and facilitate notice of this action to prospective collective action members, consisting of all current and former Technology Information Group employees of Wells Fargo & Company and Wells Fargo Bank, N.A.,[1] who held the position of PC/LAN Engineer 3, PC/LAN Engineer 4, or PC/LAN Engineer 5, who were paid a salary and treated as exempt from the laws requiring overtime for some period of time after November 1, 2004 through the date of the final disposition of this action (hereinafter "FLSA Class");

(3)    That the Court approve the proposed Notice of collective action and Consent to Join form, which are attached hereto as Exhibit P;

(4)    That the Court order Wells Fargo and Company and Wells Fargo Bank, N.A. to produce to Plaintiff's Counsel the names, last-known addresses, social security numbers, email addresses (if any), and all telephone numbers of all members of the proposed FLSA Class; that such information shall be provided in Microsoft Excel format to Plaintiff's Counsel within ten (10) days of the Court's Order granting Plaintiff's Motion;

(5)    That the Court order that all FLSA Class members shall have 120 days from the sending of Notice to postmark their Consents to Join forms and mail such Consents to Plaintiff's Counsel.

This Motion is based upon the Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Plaintiff's Counsel, T. Joseph Snodgrass, in support thereof, the Declarations of Monte Russell, Richard Chow, Greg Diersing, Daniel Friedman, Peter Kennedy, and Greg Weir, in support thereof, the [Proposed] Order and accompanying Notice and Consent to Join lodged herewith, the other records, pleadings, and papers filed in this

---

[1]  Plaintiff has filed a motion for leave to amend the Complaint to, among other things, name Wells Fargo Bank, N.A. as an additional defendant in this matter. Plaintiff's Notice of Motion and Motion for Leave to Amend Complaint, and Memorandum of Points and Authorities in Support Thereof was filed with the Court on July 24, 2008 (ECF No. 31.)

1     action; and upon other such documentary and oral evidence or argument as may be presented to

2     the Court at the hearing of this Motion.

3     Dated: July 25, 2008            Respectfully submitted,

4                                          AUDET & PARTNERS, LLP

5

6                                       */s/ William M. Audet*

7                                       William M. Audet (California State Bar No. 117456)
                                      Adel Nadji (California State Bar No. 232599)

8                                       221 Main Street, Suite 1460
                                      San Francisco, California  94105

9                                       ANadji@audetlaw.com

10                                     Telephone:    (415) 568-2555
                                      Facsimile:    (415) 568-2556

11                                     LARSON • KING, LLP

12                                     T. Joseph Snodgrass (*Pro Hac Vice*)
                                      Kelly A. Swanson (*Pro Hac Vice*)

13                                     2800 Wells Fargo Place
                                      30 East 7th Street

14                                     St. Paul, Minnesota 55101

15                                     Telephone:    (651) 312-6500
                                      Facsimile:    (651) 312-6619

16

17                                     **Attorneys for Plaintiff MONTE RUSSELL and Putative Collective Action Plaintiffs**

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3   Defendant Wells Fargo & Company and Wells Fargo Bank, N.A. ("Well Fargo")

4   misclassified Plaintiff Monte Russell ("Russell") and other similarly "PC/LAN Engineer"

5   employees as "exempt" from the overtime pay requirements of the Fair Labor Standards Act

6   ("FLSA").  When Russell sought redress through his attorney, Wells Fargo quickly reclassified

7   hundreds of PC/LAN Engineers as "non-exempt."   Within weeks of requesting Russell's

8   attorney to delay filing a collective action lawsuit, Wells Fargo surreptitiously began offering

9   hundreds of affected employees improper and dramatically low private "settlements" in

10  exchange for "releases" of FLSA claims in direct contravention of the FLSA.   Russell

11  respectfully submits this Memorandum of Points and Authorities in Support of his Motion for

12  Conditional Certification and Notice of FLSA Claims.

13

14  ## II.    FACTUAL BACKGROUND

15  ### A.    Plaintiff Monte Russell's Employment at Wells Fargo

16  Plaintiff Monte Russell worked for Wells Fargo at its Phoenix, Arizona location from

17  1998 to September 2006.  (Ex. A ¶ 2; Compl. ¶ 1, 6 (ECF No. 1).)  Russell was an employee in

18  Wells Fargo's Technology Information Group ("TIG") and held the position title "PC/LAN

19  Engineer 3."  (*Id.*)  Although Russell regularly worked over forty (40) hours per workweek,

20  Wells Fargo did not pay him any overtime compensation.  (Ex. A ¶¶ 3, 4; Compl. ¶ 8.)  Wells

21  Fargo also did not require that Russell maintain timesheets or records reflecting all of his hours

22  worked.  (Ex. A ¶ 10.)

23  Wells Fargo classified Russell's position as "exempt" from overtime pay requirements

24  even though Russell's primary job duties were highly structured and constrained by Wells

25  Fargo's predetermined instructions, specifications, policies, and procedures.  (*Id.* ¶¶ 5, 7.)  As a

26  PC/LAN Engineer 3, Russell's primary job responsibility was server support involving patching,

27  updating, and repairing.  (*Id.* ¶ 7.)  His duties included fixing and troubleshooting computer

28  hardware, installing software, and implementing changes to computer hardware according to

predetermined instructions or specifications established by others in the Technology Information

1    Group.  (*Id.*)  Russell did not normally exercise discretion and independent judgment when he

2    performed his primary duties as a PC/LAN Engineer 3.  (*Id.*; *see also* Compl. ¶ 9.)

3        **B.    There Exist Similarly Situated Wells Fargo Employees.**

4        Russell submits the declarations of five opt-in plaintiffs in support of the instant motion.

5    (*See generally* Exs. B-F.)  Greg Diersing, Richard Chow, Daniel Friedman, Patrick Kennedy,

6    and Greg Weir ("Opt-in Delcarants") are current and former Wells Fargo TIG employees with

7    position titles PC/LAN Engineer 3 and/or 4.  (*See id.* ¶ 2.)  Like Russell, they regularly worked

8    over forty (40) hours per workweek, were not paid overtime compensation, and were not

9    required to keep accurate time records of all the hours they worked each day.  (*Id.* ¶¶ 3, 4, 10.)

10       Although the Opt-in Declarants and Russell worked at seven different Wells Fargo

11   locations,[2] they all shared the same primary duties: server support involving patching, updating,

12   and repairing.  (*Id.* ¶ 7.)  Their duties were highly structured and constrained by Wells Fargo's

13   predetermined instructions, specifications, policies, and procedures.  (*Id.*)  Like Russell, the Opt-

14   in Declarants did not normally exercise discretion and independent judgment when they

15   performed their primary duties as PC/LAN Engineers.  (*Id.*)

16       **C.    Other Similarly Situated PC/LAN Engineers**

17       During their tenure at Wells Fargo, Russell and the Opt-in Declarants knew of and had

18   discussions with other PC/LAN Engineers at Wells Fargo's various locations in states such as

19   Minnesota, California, Arizona, Texas, Iowa, Maryland, South Carolina, West Virginia, and

20   Wisconsin.  (*Id.* ¶¶ 5, 6.)  They understood that other PC/LAN Engineers were similarly not paid

21   overtime.  (*Id.* ¶ 5.)  In particular, other Wells Fargo TIG employees with position titles PC/LAN

22   Engineer 3, PC/LAN Engineer 4, and PC/LAN Engineer 5 had primary duties similar to the

23   duties of Russell and the Opt-in Declarants.  (*See* Exs. A-E ¶¶ 6, 8; Ex. F ¶ 6.)  The primary

24   work of PC/LAN Engineers 3, 4, and 5 was functionally the same and did not vary significantly

25   from location to location.  (*Id.*)

26   _____

27   [2]  Greg Diersing worked and continues to work for Wells Fargo in Indianapolis, Indiana.  (Ex. F ¶ 2.)  Richard Chow worked in San Francisco, California.  (Ex. C ¶ 2.).  Daniel Friedman worked

28   in Carlsbad, California.  (Ex. E ¶ 2.).  Patrick Kennedy worked in Clayton, Missouri.  (Ex. D ¶ 2.)  Greg Weir worked in both Tempe, Arizona, and Roseville, California.  (Ex. B ¶ 2.)  Russell (continued…)

Audet & Partners, LLP
www.audetlaw.com

**D.    Defendant Wells Fargo**

Defendant Wells Fargo is a Delaware corporation with its headquarters in San Francisco, California.   (Compl. ¶ 2.)   It holds itself out as "a diversified financial services company providing banking, insurance, investments, mortgage and consumer finance through more than 6,000 stores, the Internet and other distribution channels across North America and internationally."   (*Id.*; Ans. ¶ 2 (ECF No. 12).)   Wells Fargo employed Russell and other PC/LAN Engineers.   (Compl. ¶¶ 6, 7, 8.)   Wells Fargo willfully refused to pay Russell and other similarly situated employees overtime compensation for overtime hours worked and has failed to keep time records as required by the FLSA.   (*Id.* ¶ 8.)

**E.    Wells Fargo's Reclassification of PC/LAN Engineers Immediately After Russell Threatens Suit, and Improper Communications With Putative Collective Action Class Members**

Wells Fargo misclassified Russell and other similar TIG employees for years and only reclassified PC/LAN Engineers 3, 4, and 5 after Russell threatened legal action.   On April 25, 2007, and again on May 1, 2007, Counsel for Russell contacted Wells Fargo's legal department concerning Counsel's representation of Russell, Counsel's intention to represent other persons similarly situated to Russell, and to gauge Wells Fargo's willingness to amicably resolve Russell's putative FLSA claims for back wages.   (Exs. G, H.)[3]   On May 7, 2007, the parties entered into an agreement to toll the statute of limitations and pursue resolution of Russell's putative claims.   (Ex. I.)

Wells Fargo did not engage in good faith negotiations.   On July 11, 2007, Wells Fargo sent an email directly to all then-current TIG employees who Russell sought to represent.   (Ex. J.)   Wells Fargo's email passively acknowledged that it had misclassified certain TIG employees as "exempt" and notified such employees that their positions would be reclassified as "non-exempt" effective July 22, 2007.   (*Id.*)   The email communication was marked "**CONFIDENTIAL**", was not carbon copied to Counsel for Russell, and did not inform recipients that Wells Fargo and Russell's Counsel had been engaged in negotiations related to the

---

worked in Phoenix, Arizona.  (Ex. A ¶ 2.)
[3]   Initially, and prior to the filing of the Complaint, Plaintiff Monte Russell was represented by the law firm of Zimmerman Reed, PLLP.

1    resolution of the misclassification issue identified in the email.  (*Id.*)

2        Recipients of the Wells Fargo email had only two days to respond to a "Team Member

3    Hours Survey" attached to the e-mail.  (Ex. K.)  The survey advised:

4        Wells Fargo has evaluated your duties as a PC/LAN ENGINEER 4 and
         determined that your position is not exempt from the federal Wage and Hour
5        laws.  We need you to complete the survey below to determine whether you
         worked overtime during the specified period….  [R]eturn this form to your
6        manager <u>as soon as possible.</u>  If you have any questions regarding this survey,
         please contact your manager or your Human Resources Consultant….
7

8    (*Id.* at 1.) (emphasis in original).  The survey did not suggest that the recipient speak with an

9    attorney and did not provide contact information for Russell's Counsel.  (*See id.*)

10       On July 17, 2007, Counsel for Russell advised Wells Fargo that Counsel had learned of

11   its attempted end run around the parties' negotiations and Russell's intention to terminate the

12   tolling agreement and proceed with litigation.  (Ex. M.)

13       **F.    Wells Fargo's Improper Attempt To Unilaterally Settle**
                 **FLSA Claims At Reduced Rates.**
14

15       On August 2, 2007, "Corporate Compensation" sent another email directly to certain

16   PC/LAN Engineer employees.  It provided:

17       If you reported an average number of hours worked <u>in excess of 40 hours</u>, and
         your survey results were reviewed and approved by your manager, you will
18       receive a back wage payment based upon the agreed upon hours worked.

19   (Ex. L.) (emphasis in original).

20       The email detailed how Wells Fargo calculated certain back wage payments.  For certain

21   PC/LAN Engineers employed in states other than California, Wells Fargo calculated back wages

22   according to a "fluctuating work week" formula, which provided for back wages to be computed

23   at 0.5 times the employee's hourly rate times the number of hours the employee worked over

24   forty (40).[4]  (*Id.*)[5]

25   _____

26   [4]  Wells Fargo recognized that it could not calculate back pay for PC/LAN Engineers residing in
     California based on the fluctuating workweek method of computing overtime compensation
27   because California Labor Code § 510(a) expressly requires that overtime compensation for a
     non-exempt employee be calculated at a rate of no less than one and one-half times the regular
28   rate of pay for the employee.  (*See* Ex. N (advising that back pay for a California PC/LAN
     Engineer would be calculated at 1.5 times his or her hourly rate).)
     [5]  At the time they were hired, Wells Fargo led Russell and the Opt-in Declarants to believe that
     (continued…)

Wells Fargo's back pay calculations did not portend to compensate employees "at a rate not less than one and one-half times the regular rate at which [they were] employed." *See* 29 U.S.C. § 207(a)(1). Nor did its calculations include liquidated damages as required by the FLSA, 29 U.S.C. § 216(b). (*See* Exs. L, N.) In addition, Wells Fargo only calculated back pay for a two-year period, rather than a three-year period as allowed by the FLSA, 28 U.S.C. § 255(a). (Ex. L.) Finally, Wells Fargo required those PC/LAN Engineers who wished to accept Wells Fargo's back pay offer to first sign a purported release of their FLSA claims. (Ex. O.)

**G.    Prior Limited Notice Has Already Been Approved.**

Notice of this lawsuit has not been sent to all PC/LAN Engineers 3, 4, and 5. On April 7, 2008, this Court issued an Order approving notice to a select group of putative class members to assist the parties' mediation efforts. (*See generally* Stip. as to Form and Dissemination of Collective Action Notice and Continuation of Case Management and Order (ECF No. 22).) Notice was limited to only PC/LAN Engineers 3 and 4 who had not previously received any payment of back wages from Wells Fargo. (*See id.* at 6.)

To date, an additional twenty-four (24) current and former Wells Fargo employees have joined Russell in this lawsuit as "opt-in" plaintiffs. (*See* FLSA Consent Forms (ECF No. 30).)[6]

**III.    STATEMENT OF THE ISSUES TO BE DECIDED**

Whether notice should be sent to similarly situated Wells Fargo employees as authorized by the U.S. Supreme Court in *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), where Plaintiff has met the lenient standard for conditional certification of FLSA claims; Plaintiff and others similarly situated were together the victims of a single decision, policy, or plan; and legal and factual issues are common to Plaintiff and potential collective action class members?

Whether the Court should facilitate the certification and notice process as set forth in

---

they worked in positions classified as "exempt" from overtime pay requirements. (Exs. A-F ¶ 5.) They never had an understanding with Wells Fargo that they would be paid based on the "fluctuating workweek" method of calculating overtime compensation. (Exs. A-E ¶ 9; Ex. F ¶ 8.)

[6] The opt-in plaintiffs submitted "FLSA Consents Forms" to join to this lawsuit. Their consent forms were filed with the Court on July 24, 2008 pursuant to 29 U.S.C. § 216(b). (ECF No. 30.)

1    Plaintiff's [Proposed] Order and [Proposed] Notice by ordering Wells Fargo to produce contact

2    information for putative FLSA Class members; approving corrective language; and ordering

3    notice by mail, posting, and payroll distribution?

4    **IV.    ARGUMENT**

5           **A.    NOTICE OF THIS ACTION SHOULD BE SENT TO SIMILARLY
                  SITUATED WELLS FARGO PC/LAN ENGINEERS.**

6

7           District courts have the power to authorize and facilitate notice of a collective action to

8    similarly situated potential plaintiffs.  *Hoffmann-La Roche*, 493 U.S. at 170.   The FLSA

9    authorizes "one or more employees" to bring a "collective action" and sue for unpaid overtime

10   wages on behalf the employee(s) and on behalf of "other employees similarly situated."   29

11   U.S.C. § 216(b).  Collective actions require that each individual collective action member "opt-

12   in" to the lawsuit by filing a written consent.  *See id.* ("No employee shall be a party plaintiff to

13   any such action unless he gives his consent in writing to become such a party and such consent is

14   filed in the court in which such action is brought.").

15          Collective  actions  benefit  the  judicial  system  by  enabling  the  efficient  resolution  of

16   common issues of law and fact in one proceeding and provide plaintiffs with the opportunity to

17   lower individual costs to vindicate rights by the pooling of resources.  *Hoffmann-La Roche*, 493

18   U.S. at 170.   "These benefits, however, depend on employees receiving accurate and timely

19   notice  concerning  the  pendency  of  the  collective  action,  so  that  they  can  make  informed

20   decisions about whether to participate."  *Id.*[7]

21          Notice of Collective Action Claims under the Fair Labor Standards Act should be sent to

22   the following individuals:

23           All persons who were employed by Wells Fargo nationwide as Technology
             Information Group employees, who held the position of PC/LAN Engineer 3,
24           PC/LAN Engineer 4, or PC/LAN Engineer 5, and who were paid a salary and

25   _____

[7]   The Supreme Court supports the "wisdom and necessity" of early trial court involvement in
26   management of opt-in cases.  *Hoffmann-LaRoche*, 493 U.S. at 171-72.  **Prompt notice to
     potential opt-in plaintiffs is _essential_ because, in an FLSA representative action, the statute
27   of limitations on an individual worker's claims are not tolled until that worker "opts in,"
     *i.e.,* files a consent form with the Court**.  29 U.S.C. §§ 256(b), 257.  In consideration of the
28   running of the FLSA's statute of limitations, courts have moved quickly to certify representative
     actions and facilitate notice by granting requests for expedited discovery of employee names and
     addresses.  *Soler v. G&U, Inc.*, 86 F.R.D. 524, 528-31 (S.D.N.Y. 1980).

1

2

treated as exempt from the laws requiring overtime for some period of time after November 1, 2004 through the date of the final disposition of this action (the "FLSA Period").[8]

3    Plaintiff and members of the putative FLSA Class are all similarly situated: during the relevant

4    time period, all PC/LAN Engineers 3, PC/LAN Engineers 4, and PC/LAN Engineers 5 were

5    computer support employees of Wells Fargo, were uniformly misclassified as "exempt" from

6    overtime pay by Wells Fargo, performed the same or similar nonexempt job duties; regularly

7    worked over forty (40) hours in a workweek, and were subject to Wells Fargo's failure to make,

8    keep, or preserve accurate records of hours worked.  As such, Plaintiff respectfully requests that

9    the Court certify this action as a collective action for the purpose of sending notice to putative

10   class members.

11
           **1.    Plaintiff Has Met The Lenient Standard For
                    Conditional Certification Of FLSA Claims.**
12

13         District courts in the Ninth Circuit and elsewhere use an *ad hoc*, two-tiered approach to

14   determine whether potential plaintiffs are "similarly situated."  *See Gerlach v. Wells Fargo &*

15   *Co*, No. C 05-0585, 2006 WL 824652, at *2 (N.D. Cal. Mar. 28, 2006) (Wilken, J.); *Stanfield v.*

16   *First NLC Fin. Servs., LLC*, No. C 06-392, 2006 WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006);

17   *Wynn v. Nat'l Broadcasting Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002).[9]  First, the

18   district court decides whether the case should be "conditionally certified"—that is, the court

19   makes a "notice stage" determination of whether plaintiffs are similarly situated, determining

20   whether a collective action should be certified for the purpose of sending notice of the action to

21   potential class members.  *Gerlach*, 2006 WL 824652, at *2 (referencing *Thiessen v. Gen. Elec.*

22   *Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)).  At the conclusion of discovery, the

23   district court may make a second determination on the issue of whether collective action

24   members are "similarly situated," utilizing a stricter standard.  *Id.* (at this later stage, the court

25   reviews several factors, including the factual and employment settings of the plaintiffs; the

26

27

28

---

[8]   Plaintiff's proposed collective action notice is attached hereto as Exhibit P.  Plaintiff reserves the right to seek conditional certification and notice for employees with other job titles for positions undertaking similar tasks but bearing different job titles.
[9]   Copies of all unpublished opinions cited herein are attached as Exhibit Q to the Declaration of T. Joseph Snodgrass, filed concurrently herewith.

1   various defenses available to the defendant; fairness and procedural considerations; and whether

2   the plaintiffs made any required filings before instituting suit).

3        This case is at the initial, conditional certification stage. Formal discovery has just

4   recently commenced. *Id.* at *3 (it is only at the conclusion of discovery that the district court

5   applies the heightened second-tier review). Accordingly, at this stage, the Court need only make

6   an initial determination of whether Russell and members of the putative FLSA Class are

7   similarly situated.

8        The standard for conditional certification is a lenient one that typically results in

9   certification. *Id.* at *2. Conditional certification requires "nothing more than substantial

10  allegations that the putative class members were together the victims of a single decision, policy,

11  or plan." *Thiessen*, 267 F.3d at 1102. The initial "similarly situated" determination is

12  considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil

13  Procedure. *Gerlach*, 2006 WL 824652, at *2; *Church v. Consol. Freightways, Inc.*, 137 F.R.D.

14  294, 305 (N.D. Cal. 1991). Russell need only show that some identifiable factual or legal nexus

15  binds together the various claims of the members of the putative FLSA Class in a way that

16  hearing the claims together promotes judicial efficiency and comports with the broad remedial

17  policies underlying the FLSA. *Gerlach*, 2006 WL 824652, at *2-3 (plaintiffs met similarly

18  situated burden where Wells Fargo employees (1) shared a job description; (2) were uniformly

19  classified as exempt from overtime pay by defendants; and (3) performed similar job duties).[10]

20  Indeed, district courts do not evaluate the merits of a plaintiff's FLSA claims at the conditional

21  certification stage. *See Stanfield*, 2006 WL 3190527, at *4 ("[E]ven if it turns out that Plaintiffs

22  cannot prevail on their FLSA claim because they are subject to exemptions, a collective action

23  should still be certified if they are similarly situated").

24       Russell has met the lenient standard for conditional certification through the allegations

25  in his Complaint and the Declarations submitted in support of the present motion. "Courts have

26  repeatedly held that at the notice stage of certification, a court need only consider the substantial

27

28  ───────────────

[10]   In *Gerlach*, the plaintiffs' initial burden was met despite the fact that the Wells Fargo employees in that case comprised a group of 2,500 white-collar workers with widely varying jobs and salaries, located in 38 states and in multiple lines of business. *Id.* at *3.

allegations of the complaint along with any supporting affidavits or declarations." *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 434 (D. Kan. 2007) (relying only on allegations contained in plaintiffs' complaint and in declarations of computer technology employees to grant conditional FLSA certification; citing cases); *see also Stanfield*, 2006 WL 3190527, at *4 (finding that plaintiffs' declarations were sufficient to meet their burden of proving similarity); *Aguayo v. Oldenkamp Trucking*, No. CV F 04-6279, 2005 WL 2436477, at *4 (E.D. Cal. Oct. 3, 2005) (holding that allegations in complaint and declaration of plaintiff adequately demonstrated that plaintiff and other putative collective action members were similarly situated).[11]

In *Renfro*, the district court held that given the allegations of plaintiffs' complaint and supporting declarations, which suggested that computer technology employees – similar to the TIG employees at issue in the present case – maintained similar employment positions and did not receive overtime "satisfied the low threshold" required to demonstrate that all putative class members were similarly situated for purposes of conditional FLSA collective action certification. *Renfro*, 243 F.R.D. at 434; *accord Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715, 2007 WL 707475, *6-7 (N.D. Cal. Mar. 6, 2007) (Conti, J.) (granting FLSA certification where declarations uniformly stated that declarants and others in similar positions were designated as exempt and so were denied overtime, and that this was done according to company policy).

Here, the Declarations of Russell and the Opt-in Declarants commonly state that PC/LAN Engineers 3, 4, and 5 were similarly denied overtime compensation because of Wells Fargo's decision, policy, and plan to classify them as "exempt" from the overtime payment provisions of the FLSA. Additionally, the Declarations universally state that Wells Fargo did not require maintenance of time records, and that each respective declarant routinely worked hours in excess of forty (40) per week during his employment with Wells Fargo as a PC/LAN Engineer.[12]

---

[11] *See also, e.g., Brown v. Money Tree Mort., Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004) (two affidavits sufficient to support conditional certification); *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004) (allegations in complaint make "more than sufficient to support provisional certification"); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 628 (D. Colo. 2002) (allegations in complaint); *Ballaris v. Wacker Silttronic Corp.*, No. 00-1627, 2001 WL 1335809, at *2-3 (D. Or. Aug. 24, 2001) (two affidavits); *DeAsencio v. Tyson Foods, Inc.*, 130 F.Supp.2d 660, 663 (E.D. Pa. 2001) (four affidavits).

[12] The fact that the Declarations submitted in support of this Motion contain substantially similar (continued…)

1    "These qualify as substantial allegations that the policies and practices of [Wells Fargo] as they

2    relate to designation as exempt persons in these positions violates the FLSA," and are therefore

3    sufficient to qualify for conditional certification. *Beauperthuy*, 2007 WL 707475 at *7.

4        Conditional certification and notice of the lawsuit are appropriate because the Complaint

5    and the Declarations, along with other records, pleadings, and papers filed in this action, are

6    more than sufficient to meet Russell's low burden of proving similarity such that notice to the

7    putative FLSA Class is warranted. *See id.*; *Renfro*, 243 F.R.D. at 433-35.

8        **2.**    **Plaintiff And Others Similarly Situated Were Together The
       Victims Of A Single Decision, Policy, Or Plan.**

9

10       Courts in this District regularly certify collective actions involving misclassified workers

     seeking wage and overtime compensation under the FLSA and state wage and hour laws. *See,*

11   *e.g., Beauperthuy*, 2007 WL 707475, at *6-7 (granting certification to health club managers

12   allegedly misclassified as "exempt"); *Gerlach*, 2006 WL 824652, at *2-3 (granting conditional

13   certification to "Business Systems" employees seeking overtime compensation resulting from

14   alleged misclassification by Wells Fargo); *Stanfield*, 2006 WL 3190527, at *3-4 (granting

15   certification and authorizing the dissemination of FLSA notice to loan officers, loan processors,

16   and account managers); *accord Renfro*, 243 F.R.D. at 435 (granting certification to computer

17   technicians and installers).[13]   In so certifying, these courts have found that "job classification"

18

19   _____

20   allegations supports Russell's argument that he and other members of the putative FLSA Class
     are similarly situated and cannot be used to deny this Motion. *See Stanfield*, 2006 WL 3190527,
21   at *4 (denying employer's motion to strike plaintiffs' declarations in support of conditional
     certification where are each was substantially the same); *see also Doe v. Texaco, Inc.*, No. C06-
22   02820 WHA, 2006 WL 2850035, at *2 (N.D. Cal. Oct. 5, 2006) (holding that "'plaintiffs' use of
     identical language is not grounds for striking their declarations"). In *Stanfield*, the district court
23   rejected the employer's argument that plaintiffs' declarations were unreliable and must be
     stricken because they were nearly identical, stating "[i]t is entirely logical that employees in the
24   same job title perform very similar tasks. Plaintiffs' declarations are sufficient to meet their
     burden of proving similarity." 2006 WL 3190527, at *4.
25   [13]   *See also, e.g., Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (FLSA
26   collective action by current and former Assistant Store Managers seeking overtime compensation
     due as a result to "exempt" misclassification; district court had ordered that notice be sent to the
27   1,200 current and former Assistant Store Managers); *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517
     F. Supp. 2d 606, 620-22 (D. Conn. 2007) (FLSA collective action by automobile damage
28   appraisers seeking overtime compensation due as a result of employer's exempt
     misclassification).

MEMORANDUM OF POINTS AND AUTHORITIES

1  cases in which exempt employees challenge their exempt status are particularly amenable to

2  collective treatment because the plaintiffs in such cases are challenging class-wide policies

3  regarding job classification, and evaluation of the plaintiffs' claims depends on common proof.

4  *See Castle v. Wells Fargo Financial, Inc.*, No. C 06-4347, 2008 WL 495705, at *6 (N.D. Cal.

5  Feb. 20, 2008) (Illston, J.) (citing cases, including *Beauperthuy*, 2007 WL 707475, at *6-7).  As

6  the allegations in the Complaint, the Declarations, and other evidence suggest, the present case is

7  no different.

8          Russell, along with members of the putative FLSA Class who have already "opted in" to

9  this suit, seek to bring a "job classification" collective action on behalf of all others similarly

10  situated wherein PC/LAN Engineers 3, 4, and 5 challenge the propriety of their "exempt" status.

11  (*See generally* Compl.; Exs. A-F.)  Wells Fargo made a decision, policy, and/or plan to

12  categorically treat Russell and other PC/LAN Engineers 3, 4, and 5 employees as "exempt" from

13  the overtime pay requirements of the FLSA.  (*Id.*)  Russell challenges Wells Fargo's uniform

14  misclassification of PC/LAN Engineers 3, 4, and 5, and evaluation of his claims depends on

15  proof common to all members of the putative FLSA Class.  The fact that all members of the

16  putative FLSA Class were subject to the same Wells Fargo decision, policy, and/or plan, alone,

17  supports a finding of similar situation, a provisional certification of the case as an FLSA

18  collective action, and an order sending notice to putative class members.  *Thiessen*, 267 F.3d at

19  1102; *Kane v. Gage Merch. Servs., Inc.*, 138 F.Supp.2d 212, 214-15 (D. Mass 2001) (notice

20  stage certification appropriate where plaintiff showed that employer classified a group of

21  employees as exempt and did not pay them overtime); *Brown*, 222 F.R.D. at 679; *Williams*, 222

22  F.R.D. at 485; *Reab*, 214 F.R.D. at 628.

23              **3.    Legal And Factual Issues Are Common To Plaintiff And**
                      **Potential Collective Action Class Members.**
24

25          Alternatively, Russell need only establish that some identifiable factual or legal nexus

26  binds together the various claims of Russell and the putative FLSA Class members in such a way

27  that hearing the claims together promotes judicial efficiency and comports with the broad

28  remedial policies underlying the FLSA.  Here, there are numerous legal and factual issues

   common to the back wage claims of Russell and the putative FLSA Class members.  For

1   example, back wage claims of Russell and the putative FLSA Class members would involve:

2   (1) whether they were entitled to liquidated damages under the FSLA; (2) whether Wells Fargo's

3   misclassified their positions willfully thereby allowing for a three year, as opposed to two year,

4   statute of limitations under the FLSA; and (3) whether overtime wages due should be paid at the

5   standard 1.5 overtime rate.  (*See* Compl. ¶¶ 15-22, Prayer for Relief ¶ 3.)  Wells Fargo has also

6   highlighted the same factual and legal issues common to Russell and the putative FLSA Class in

7   its Answer.   Therein, Wells Fargo has asserted: (1) an affirmative defense arguing that "no

8   liquidated damages may be awarded to Plaintiff, or those similarly situated, if any, pursuant to 29

9   U.S.C. § 260" (Ans. ¶ 33); (2) an affirmative defense that Russell's claims are barred in whole or

10  in part by the statute of limitations, "including but not limited to 29 U.S.C. § 255" (*id.* ¶ 28); and

11  (3) a general denial that it must pay Russell overtime due at a rate not less than one and one-half

12  times the regular rate of pay (*id.* ¶ 20).

13      Separate hearings on these issues and others would be a waste of judicial resources and

14  may subject Russell and members of the putative FLSA Class to divergent legal opinions from

15  different federal courts.   Hearing Russell's legal claims separate from those of other putative

16  FLSA Class members would hamper the judicial efficiency that the FLSA seeks to promote.

17  Russell respectfully requests that the Court conditionally certify this action as a collective action

18  under the FLSA so that the Court might determine the rights and claims of all similarly situated

19  putative FLSA Class members in one action.

20  **B.    THE COURT SHOULD FACILITATE THE CERTIFICATION**
        **AND NOTICE PROCESS AS SET FORTH IN PLAINTIFF'S**
21      **[PROPOSED] ORDER AND [PROPOSED] NOTICE.**

22          **1.    Wells Fargo Should Produce Contact Information For**
                **Putative FLSA Class Members So Counsel For Plaintiff**
23              **Can Send Notice As Soon As Possible.**

24      The Court should facilitate notice as soon as possible to all potential plaintiffs and set a

25  deadline for those potential plaintiffs to join the suit.  *See Stanfield*, 2006 WL 3190527, at *4;

26  *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007) (Patel, J.).  The FLSA

27  requires a district court to facilitate accurate and timely notice to potential plaintiffs concerning

28  the pendency of a collective action so that potential plaintiffs can make informed decisions about

    whether to participate.  *Adams*, 242 F.R.D. at 539 (referencing *Hoffmann-La Roche*, 493 U.S. at

170); *see also Stanfield*, 2006 WL 3190527, at *4 ("Court-approved notice must be timely, accurate, and informative").

Rule 1 of the Federal Rules of Civil Procedure requires that the rules be "construed and administered to secure the just, speedy and inexpensive determination of every action." Further, the "broad remedial purpose" of the FLSA is best served if district courts are deemed to have the power to provide notice to potential members of the class to "opt-in" to the lawsuit if they so desire. *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991). Even further, a plaintiff's First Amendment rights and the power of federal courts to regulate their own practice under Rule 83 of the Federal Rules of Civil Procedure support federal courts' authority to order notice. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) (Posner, J.) (both the duty and the power of the district court to regulate the content and distribution of notice to potential class members "may fairly be inferred from section 16(b) [of the FLSA] itself and from Rule 83 of the Federal Rules of Civil Procedure, which provides that 'in all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with" the Federal Rules.'"); *Monroe v. United Air Lines, Inc.*, 90 F.R.D. 638, 640 (N.D. Ill. 1981) (First Amendment support plaintiff's right to notify putative collective action members).[14]

Until a particular individual is notified and consents to join this collective action, the statute of limitations continues to run for that individual. Given the short three-year time period allowed for back wages under the FLSA, time is of the essence when attempting to notify potential plaintiffs of their right to join a collective action. 29 U.S.C. § 255. Every day that passes, until an employee "opts-in" to a collective action, is a day's less pay that she can recover from her employer who paid her in violation of the FLSA.[15]

---

[14]   *See also Braunstein v. Eastern Photographic Labs. Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) (sensible conclusion was to interpret the FLSA as allowing for notice "in light of the 'opt-in' provision"); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (relying on *Hoffmann-LaRoche* to conclude that the court's ability to send notice to potential FLSA class members is "well settled").

[15]   Now is the proper time for notice to be given. "Even if it turns out that Plaintiffs cannot prevail on their FLSA claim because they are subject to exemptions, a collective action should still be certified [and notice issued] if they are similarly situated." *Stanfield*, 2006 WL 3190527, at *4; *accord Schwed v. General Electric Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995) ("even where later (continued...)

Providing prompt notification to potential collective action class members serves the interests of not only those who desire to join the class, but the goals of the parties and Court as well. First, potential plaintiffs will benefit from the receipt of accurate, timely, and uniform notice of the action, which will facilitate informed decision making as to whether they are eligible to participate in the action. Second, the process enables the Court to resolve any disputes the parties may have about the content of the notice before it is distributed. Third, sending timely class-wide notification of the pending suit to potential class members will prevent the proliferation of numerous individual suits arising from the same set of circumstances. Finally, granting this Motion will expedite the attainment of a final resolution of the action because the Court can set a cut-off date for the receipt of consents to "opt-in" to the litigation.

Russell requests that the Court order Wells Fargo to submit to his Counsel contact information for all putative members of the FLSA Class, including names, addresses, phone numbers, social security numbers, and email addresses (if any). The Supreme Court has expressly authorized production of this type of information for notice purposes. *See Hoffmann-La Roche*, 493 U.S. at 170 ("discovery [of names and addresses] was relevant to the subject matter of the action and ... there were no grounds to limit the discovery under the facts and circumstances of the case"); *accord Adams*, 242 F.R.D. at 539. Russell proposes that an opt-in deadline of 120 days following the mailing of the notice be established, all as provided in the attached [Proposed] Order.

> **2.    Notice Should Include Strongly Worded Corrective Language That Informs Putative FLSA Class Members That They May Join This Collective Action Despite Wells Fargo's Improper Attempts To Privately Settle FLSA Claims, Offer Partial Payments Of Back Wages, And Obtain Releases Of FLSA Claims.**

Corrective notices must be sent to employees who received would-be releases of claims related to the FLSA from their employer. *O'Brien v. Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 350 (N.D. Ill. 2001). Releases prohibiting suit under the FLSA are invalid. *Id.* at 349 (referencing *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (discussing rational for why courts refuse to enforce wholly private settlements in FLSA cases)).

---

discovery proves the putative class members to be dissimilarly situated, notice to those (continued…)

1    In *O'Brien*, an employee asserted FLSA claims on behalf of himself and others similarly

2   situated against his employer, alleging that he and other employees were not compensated for

3   overtime hours worked.  203 F.R.D. at 347.  The employer attempted to unilaterally settle the

4   potential claims of similarly situated employees and sought releases from putative collective

5   action members.  *Id.* at 348.  The releases provided that the employees agreed to fully release the

6   employer from all liability relating to claims for overtime or straight-time compensation under

7   the FLSA.  *Id.*  The releases were accompanied by a letter which offered compensation but

8   disputed the employer's responsibility to do so:

> It has come to [Encotech's] attention that there has been a claim that some
> employees have not been paid properly for travel to the day's first job site and
> from the day's last job site…. [Encotech] believe[s] that Encotech has fairly and
> properly compensated employees for all hours worked….    Nevertheless,
> [Encotech] want[s] to be sure that all employees are satisfied with their
> experience at Encotech…  [Encotech] therefore [has] decided to offer you some
> additional compensation for your work at Encotech.

*Id.*  Two plaintiffs signed the releases.  *Id.*  The court determined that the releases of FLSA

claims were invalid and held that "corrective notice must be sent to apprise employees that they

retain their rights to sue under the FLSA."  *Id.* at 349-50.[16]

16    Here, a number of putative FLSA Class members were offered private settlements of

17   back wages claims in exchange for releases of their FLSA claims.  (*See* Ex. O.)  Moreover,

18   putative members of the FLSA Class have learned of Wells Fargo's improper attempts to

19   circumvent Russell's Counsel and privately payoff other similarly situated TIG employees.  (*See*

20   Ex. E ¶¶ 11-15; Ex. F ¶ 12.)  Russell respectfully requests that the Court invalidate all releases

21   entered into by similarly situated employees and issue corrective notice to all putative members

22   of the FLSA Class as provided in Exhibit P at Section III.C.

---

preliminarily identified as potential plaintiffs prior to full discovery is appropriate....").
[16]    However, because the Encotech was discussing ways to give notice to all employees that the
language in its prior releases prohibiting claims under the FLSA was invalid, and because the
parties had already agreed to submit a proposed corrective notice to the court for review, the
(continued…)

1

2

### 3. Notice Should Be Mailed, Posted, And Distributed Through Wells Fargo's Payroll.

Russell requests that the Court allow his Counsel to mail notice, order Wells Fargo to post notice at work locations, and order Wells Fargo to distribute notice through its payroll to putative members of the FLSA Class. The mailing of notice alone is insufficient because Wells Fargo's database may have errors and because potential plaintiffs may discard the notice, unaware of its significance. Moreover, potential plaintiffs from whom Wells Fargo attempted to secure unilateral private "settlements" in contravention of the FLSA should receive ample notification that they may still opt-in as collective action class members despite their acceptance of Wells Fargo's fallacious "settlement" offers and purported releases of FLSA claims.

Courts facilitate notice through first class mail in addition to other methods, such as publication, broadcast announcements, or posting to insure that potential collective action class members receive sufficient notice. *See Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-93 (E.D. Cal. 2006) (authorizing notice by first class mail and through postings at the putative plaintiffs' workplaces); *Johnson v. Am. Airlines, Inc.,* 531 F.Supp. 957, 961 (N.D. Tex. 1982) (notice reasonable when communicated by direct mail, publication, and postings on company bulletin boards at various locations); *Soler v. G & U, Inc.*, 86 F.R.D. 524, 531 (S.D.N.Y. 1980) (plaintiffs authorized to post and mail the proposed notice). Posting of notice would present only a small burden on a large, national corporation like Wells Fargo, and the combination of mailing, posting, and payroll distribution of notices would lead to the "best notice practicable." *See Romero*, 235 F.R.D. at 492-93; *Adams*, 242 F.R.D. at 542 (posting and mailing authorized).

### V. CONCLUSION

For the foregoing reasons, Russell respectfully requests that the Court grant certification of a collective action FLSA claim and issue notice as requested in the [Proposed] Order.

//

---

court denied the employee's motion to provide corrective notice as moot. *Id.* at 350.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: July 25, 2008                    Respectfully submitted,

                                        AUDET & PARTNERS, LLP


                                        */s/ William M. Audet*
                                        William M. Audet (California State Bar No. 117456)
                                        Adel Nadji (California State Bar No. 232599)
                                        221 Main Street, Suite 1460
                                        San Francisco, California  94105
                                        ANadji@audetlaw.com
                                        Telephone:    (415) 568-2555
                                        Facsimile:    (415) 568-2556

                                        LARSON • KING, LLP
                                        T. Joseph Snodgrass (*Pro Hac Vice*)
                                        Kelly A. Swanson (*Pro Hac Vice*)
                                        2800 Wells Fargo Place
                                        30 East 7th Street
                                        St. Paul, Minnesota 55101
                                        Telephone:    (651) 312-6500
                                        Facsimile:    (651) 312-6619

                                        **Attorneys for Plaintiff MONTE RUSSELL and
                                        Putative Collective Action Plaintiffs**

MEMORANDUM OF POINTS AND AUTHORITIES