1  GLENN L. BRIGGS (SB# 174497)
   E-mail: gbriggs@hbwllp.com
2  THERESA A. KADING (SB# 211469)
   E-mail: tkading@hbwllp.com
3  HODEL BRIGGS WINTER LLP
   8105 Irvine Center Drive, Suite 1400
4  Irvine, California 92618
   Telephone: (949) 450-8040
5  Facsimile:  (949) 450-8033

6  Attorneys for Defendant
   WELLS FARGO BANK, N.A. (erroneously sued herein as
7  WELLS FARGO & COMPANY)

8                    UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

10

11 MONTE RUSSELL, on behalf of himself        CASE NO. C 07-03993 CW
   and others similarly situated,
12                                            JUDGE CLAUDIA WILKEN
              Plaintiff,                      COURTROOM 2
13
       vs.                                    **DEFENDANT WELLS FARGO
14                                            BANK, N.A.'S OPPOSITION TO
   WELLS FARGO & COMPANY,                     PLAINTIFF'S MOTION FOR
15                                            CONDITIONAL COLLECTIVE
                                              ACTION CERTIFICATION
16            Defendants.                     UNDER FLSA, 29 U.S.C. § 216(b),
                                              AND FOR COURT-APPROVED
17                                            NOTICE OF FLSA CLAIMS**

18                                            Hearing Date:  September 4, 2008
                                              Time:  2:00 p.m.
19                                            Location:  Courtroom 2

20                                            Complaint filed:  August 2, 2007

21                                            Trial Date:  None set

22

23

24

25

26

27

28

32255

# TABLE OF CONTENTS

I.    SUMMARY OF DEFENDANT'S OPPOSITION ..................................... 1

    A.    Plaintiff Unnecessarily Made the Task before the Court More Difficult and Less Efficient.................................................................................. 1

    B.    Summary of Wells Fargo's Position and Opposition to Plaintiff's Motion................................................................................................... 1

II.   THE ACCURATE FACTUAL BACKGROUND:  CORRECTION OF PLAINTIFF'S MIS-DESCRIPTION ....................................................... 3

    A.    The Three Job Classifications at Issue – PC/LAN Engineer 3 (reclassified), PC/LAN Engineer 4 (reclassified), and PC/LAN Engineer 5 (*not* reclassified) ................................................................ 3

    B.    Wells Fargo's Good Faith Process to Voluntarily Pay Back Pay to Employees Reclassified to Non-Exempt Status Was Followed with Respect to PC/LAN Engineers 3 and 4.............................................. 4

        1.    Wells Fargo's internal review of the PC/LAN Engineer Positions started before contact by Plaintiff Russell or his counsel ........................................................................................ 4

        2.    Wells Fargo accepted and did not dispute the hours self-reported by employees in calculating the payments .............................. 5

        3.    The payments were neither "dramatically low" nor "fallacious" as misleadingly labeled by Plaintiff.......................................... 6

        4.    Nothing prohibited Wells Fargo from communicating with unrepresented individuals about settlement.............................. 8

        5.    Not a single person was required to sign an FLSA release in order to receive payment – another important fact misstated by Plaintiff.................................................................................... 9

        6.    PC/LAN Engineer 5's were not converted to non-exempt status – a significant fact disguised by ambiguity in Plaintiff's Motion ...................................................................................... 9

    C.    A Significant Portion of the "Collective Action" Now Proposed by Plaintiff Has Already Received Notice and the Opt-In Period Has Closed................................................................................................... 10

    D.    Despite the Parties' Prior Success in Reaching a Stipulation, Plaintiff Made No Effort to Contact Wells Fargo Prior to Filing the Instant Motion ...................................................................................... 11

    E.    Wells Fargo's Proposed Compromises Were Generously Reasonable And Wells Fargo Received Two Non-Negotiable Rejections ............................................................................................. 11

III.   CONDITIONAL CERTIFICATION SHOULD NOT BE EXTENDED
       TO PC/LAN ENGINEER 5'S BECAUSE THEY ARE NOT
       "SIMILARLY SITUATED" TO PLAINTIFF ......................................... 13

       A.   The Governing Standard for Conditional Certifications Is Not
            "Automatic" ......................................................................... 13

       B.   PC/LAN 5's Are Not "Similarly Situated" to Plaintiff....................... 13

IV.    PC/LAN ENGINEERS 3 AND 4 WHO ALREADY RECEIVED
       NOTICE AND AN OPPORTUNITY TO OPT IN SHOULD NOT GET
       A SECOND NOTICE ..................................................................... 17

V.     THE NOTICE PROCESS SHOULD BE ADMINISTERED BY A
       THIRD-PARTY ADMINISTRATOR........................................................ 17

       A.   Plaintiff Previously Agreed to a Third-Party Administrator for the
            First Notice.......................................................................... 17

       B.   Production of Contact Information Would Render Court-Approved
            Notice Superfluous................................................................. 18

       C.   Plaintiff's Counsel Will Be Listed in the Notice and Is Free to Speak
            to Anyone; Wells Fargo Has Never Proposed a Gag Order on
            Plaintiff's Counsel.................................................................. 19

VI.    ADDITIONAL ASPECTS OF PLAINTIFF'S MOTION THAT SHOULD
       BE REJECTED ............................................................................. 20

       A.   A 120-Day Opt-in Period Is Excessive; 60 (or 75 Days) Is
            Adequate ............................................................................. 20

       B.   "Corrective" Notice Is Not Justified Where There Has Been No Abuse
            by Wells Fargo ...................................................................... 20

       C.   Plaintiff Has Not Demonstrated the Need for Notice by Posting or
            Payroll Distribution................................................................. 22

       D.   The Court Should Not Invalidate Releases of Non-FLSA Claims ...... 23

VII.   THE COURT SHOULD DISREGARD ANY NEW ARGUMENT
       OFFERED BY PLAINTIFF DUE TO HIS INEXCUSABLE FAILURE
       TO BRIEF MATTERS HE KNEW WOULD BE DISPUTED ISSUES . 23

VIII.  CONCLUSION................................................................................ 25

32255

ii

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Adams v. Inter-Con Sec. Systems, Inc,*
   242 F.R.D. 530 (N.D. Cal. 2007)........................................................................22

*Bailey v. County of Georgetown,*
   94 F.3d 152 (4th Cir. 1996)...............................................................................8

*Blackmon v. Brookshire Grocery Co.,*
   835 F.2d 1135 (5th Cir. 1988)............................................................................8

*Boler v. Superior Court,,*
   201 Cal.App.3d 467 (1987)................................................................................20

*Bratt v. County of Los Angeles,*
   912 F.2d 1066 (9th Cir. 1990)...........................................................................7

*Clements v. Serco, Inc.,*
   530 F.3d 1224 (10th Cir. 2008)..........................................................................8

*Gerlach v. Wells Fargo & Co.,*
   2006 WL 824652 (N.D. Cal. March 28, 2006)............................................4, 8, 21

*Hoffman-LaRoche Inc. v. Sperling,*
   93 U.S. 165 (1989) .........................................................................................19

*In re Wells Fargo Loan Processor Overtime Pay Litig.,*
   2008 WL 2397424 (N.D. Cal. June 10, 2008)...................................................16-17

*O'Brien v. Encotech Constr. Serv. Inc.,*
   203 F.R.D. 346 (N.D. Ill. 2001).....................................................................10, 21

*Olivo v. GMAC Mortgage Corp.,*
   374 F. Supp.2d 545 (E.D. Mich. 2004)...............................................................13

*Painewebber Ltd. Partnerships Litig.,*
   147 F.3d 132 (2d Cir. 1998)..............................................................................9

*Romero v. Producers Dairy Foods, Inc.,*
   235 F.R.D. 474 (E.D. Cal. 2006) .......................................................................22

*Stanfield v. First NLC Financial Servs., LLC,*
   2006 WL 3190527 (N.D. Cal. 2006)..............................................................17, 21

*Thiessen v. Gen. Elec. Capital Corp.,*
   267 F.3d 1095 (10th Cir. 2001) .........................................................................13

*Torres v. CSK Auto, Inc.,*
   2003 U.S. Dist. LEXIS 25092 (W.D. Tex. 2003) ...............................................19

*Trinh v. JP Morgan Chase & Co.,*
   2008 WL 1860161 (S.D. Cal. Apr. 22, 2008).............................................13, 15-16

iii

*Tumulty v. Fedex Ground Package Sys., Inc.,*
   2005 WL 1979104 (W.D. Wash. Aug. 16, 2005)....................................................8

*Valerio v. Putnam Assoc. Inc.,*
   173 F.3d 35 (1st. Cir. 1999) ..............................................................................8

*Woods v. New York Life Ins. Co.,*
   686 F.2d 578 (7th Cir. 1982)..........................................................................18-19

*Zamani v. Carnes,*
   91 F.3d 990 (9th Cir. 2007) ..................................................................................25

Statutes                                                                                          Page(s)

29 U.S.C. § 255 ........................................................................................................7

1    I.    **SUMMARY OF DEFENDANT'S OPPOSITION**

2        A.  **Plaintiff Unnecessarily Made the Task before the Court More Difficult and**

3            **Less Efficient.**

4        Plaintiff has made the task before the Court more difficult and less efficient than

5    necessary.  First, Plaintiff made no effort to seek a stipulation on conditional certification

6    and notice even though the parties previously stipulated to court approved notice to

7    certain individuals *in this same lawsuit*.  Had Plaintiff engaged Wells Fargo he would not

8    have had to address many of the issues in his Motion because Wells Fargo does not

9    oppose certain aspects of the relief sought (see below).  Plaintiff then could have focused

10   on the few issues on which the parties could not reach agreement.[1]

11       Second, even absent that process, Plaintiff is well aware of certain issues for which

12   the parties were in disagreement based on their discussions regarding the prior stipulation

13   for court-approved notice.  Therefore, those issues should have been clearly identified for

14   the Court and Plaintiff's position set forth with factual and legal support.  Instead, Plaintiff

15   inexplicably submitted a brief that did not do so as though receipt of Wells Fargo's

16   Opposition will be his first notice there is a disagreement on certain issues.  A clear and

17   concise list of the specific areas of disagreement, coupled with Plaintiff's factual and legal

18   arguments in support of his position would have been better.  It also would have afforded

19   Wells Fargo the opportunity to respond to them, which it now will be unable to do.

20       B.  **Summary of Wells Fargo's Position and Opposition to Plaintiff's Motion.**

21       Wells Fargo does not oppose *conditional* certification of a collective action that

22   includes only the PC/LAN Engineer 3's and 4's and notice being sent to those PC/LAN

23   Engineers 3 and 4 *who were not previously sent the notice approved by this Court*.  While

24   Wells Fargo contends that these employees were properly treated as exempt from the laws

25   requiring payment of overtime and that the determination of whether these employees

26   _____

27   [1] Additionally, upon receipt of Plaintiff's Motion, Wells Fargo made several attempts to compromise with
     Plaintiff regarding the issues raised in his Motion.  Its two written proposals were unconditionally rejected
28   and Plaintiff made not one counter-proposal, nor a single concession.

1    were properly treated as exempt cannot be made on a collective basis, Wells Fargo will

2    not oppose conditional certification at this stage.  Wells Fargo will oppose certification at

3    a later stage in the proceedings.  Wells Fargo also opposes certain additional aspects of

4    Plaintiff's Motion.

5        ***First Significant Issue in Dispute***: PC/LAN Engineer 3's and 4's who have

6    already been provided with notice and an opportunity to opt in to this action should not be

7    provided with a second notice.  Plaintiff's Motion implicitly seeks that a second notice be

8    provided to these individuals who have already received notice but it lacks any factual

9    justification or legal authority for a second notice.

10        ***Second Significant Issue in Dispute***: Conditional certification should not

11   include PC/LAN Engineer 5's because PC/LAN Engineer 5's are not "similarly situated"

12   to PC/LAN Engineer 3's and 4's.  While Wells Fargo re-classified all PC/LAN Engineer

13   3's and 4's to non-exempt status, Wells Fargo did not similarly treat PC/LAN Engineer

14   5's.  Indeed, Wells Fargo undertook an individualized person-by-person review of

15   PC/LAN Engineer 5's to confirm their proper classification as exempt.  Moreover, even

16   though Plaintiff's burden for conditional certification is less onerous, the conjecture and

17   hearsay declarations of a few PC/LAN Engineers 3 and 4 concerning the duties of

18   PC/LAN Engineer 5's does not meet his burden.

19        ***Third Significant Issue in Dispute***: Wells Fargo should not be ordered to

20   produce contact information regarding its current and former employees (who have a clear

21   right to privacy in that information) to Plaintiff's counsel.  Notice, if it is ordered by this

22   Court, should be given by a third-party administrator as Plaintiff has previously agreed

23   was proper.  Plaintiff previously agreed to notice by a third-party administrator in

24   connection with the first notice that was distributed in this case and has provided no

25   argument or evidence why such notice was not sufficient, or why he requires the contact

26   information of individuals in order for individuals to receive the "accurate" and "uniform"

27   content of Court-approved notice.

28

32255                                    -2-

1    For the foregoing reasons, Wells Fargo respectfully requests that the Court deny

2  Plaintiff's Motion and adopt Wells Fargo's proposed order: (1) denying Plaintiff's

3  Motion with respect to PC/LAN Engineer 5's on the ground that they are not "similarly

4  situated" to Plaintiff; (2) denying Plaintiff's Motion with respect to sending a second

5  notice to PC/LAN Engineer 3's and 4's who have already received notice of this action

6  and an opportunity to opt in to this action; (3) denying Plaintiff's request for contact

7  information of putative collective action members; and (4) if notice is ordered, that it be

8  distributed by a third party administrator by first class mail only, that it not be "corrective"

9  and that the opt-in period be 60 days.

10

11  II.    **THE ACCURATE FACTUAL BACKGROUND:  CORRECTION OF**

12         **PLAINTIFF'S MIS-DESCRIPTION**

13    In Plaintiff's Motion, Plaintiff goes to great lengths to portray Wells Fargo as

14  an employer that tried to take advantage of its employees by "surreptitiously" offering

15  them "improper and dramatically low" settlements behind Plaintiff's counsel's back.  As

16  will be more fully demonstrated below, Plaintiff's self-serving portrayal could not be

17  further from the truth.

18    A.  **The Three Job Classifications at Issue – PC/LAN Engineer 3 (reclassified),**

19        **PC/LAN Engineer 4 (reclassified), and PC/LAN Engineer 5 (*not***

20        **reclassified).**

21    Plaintiff seeks conditional collective action certification of an "FLSA class"

22  consisting of all employees who held the position of PC/LAN Engineer 3, 4, or 5.  At the

23  outset, it is important to note (since Plaintiff has not) that PC/LAN Engineers 3, 4, and 5

24  have not been treated identically by Wells Fargo.  On July 22, 2007, all employees who

25  held the position of PC/LAN Engineer 3 or 4 were re-classified to non-exempt status.  See

26  Dougherty Decl., ¶ 4.  However, employees holding the position of PC/LAN Engineer 5

27  were not at that time and have not since been re-classified collectively to non-exempt

28  status.  See Dougherty Decl., ¶¶ 4-6.  Furthermore, the process that was used to evaluate

the PC/LAN Engineer 3 and 4 positions was very different than the process that was used to evaluate the PC/LAN Engineer 5 position as will be described *infra*.

**B. Wells Fargo's Good Faith Process to Voluntarily Pay Back Pay to Employees Reclassified to Non-Exempt Status Was Followed with Respect to PC/LAN Engineers 3 and 4.**

Wells Fargo Bank, N.A., employs approximately 165,000 individuals in the United States in more than a thousand different job classifications. There have been other times in past years in which individuals in a position have been reclassified from exempt to non-exempt. The process followed with respect to the review and re-classification of PC/LAN Engineer 3's and 4's was consistent with Wells Fargo's approach to other reclassifications. See Dougherty Decl., ¶ 15.

**1. Wells Fargo's internal review of the PC/LAN Engineer positions started before contact by Plaintiff Russell or his counsel.**

Plaintiff alleges in his Motion that Wells Fargo "surreptitiously" reclassified hundreds of PC/LAN Engineers 3 and 4 to non-exempt status and attempted to settle with them "behind the backs" of Russell and his counsel in response to a demand letter received from Russell's counsel in April 2007. That is simply not true and, even though Plaintiff has been told that it is not true, he continues to assert it in this Motion.

First, and most importantly, Russell's counsel did not file the Complaint in this action until August 2007 and did not represent anyone other than Russell until approximately late April 2008. See FLSA Consent Forms (ECF No. 30). Therefore, Wells Fargo was not required to notify Russell or his counsel of its contacts with unrepresented individuals. See, e.g., Gerlach v. Wells Fargo & Co., 2006 WL 824652, *6 (N.D. Cal. March 28, 2006) ("pre-certification communications with potential collective action members are generally permitted").

Second, counsel for Plaintiff Russell initially contacted Wells Fargo regarding Russell's claims in a letter dated April 25, 2007. See Plaintiff's Motion, Section II.E and Exh. G. However, the process of reviewing and evaluating the duties performed by

employees in the PC/LAN Engineer 3 and 4 positions to determine whether or not they should continue to be classified as exempt from the laws requiring payment of overtime commenced *prior to April 25, 2007*.  See Dougherty Decl., ¶ 3.

When the determination was made out of an abundance of caution to re-classify employees in the PC/LAN Engineer 3 and 4 positions to non-exempt status, Wells Fargo surveyed employees as to their hours worked, just as they have when they have made the same decision in the past with respect to other positions, and voluntarily paid them back pay based on the hours the employees themselves self-reported.  See Dougherty Decl., ¶¶ 7-10, 15; Plaintiff's Motion, Exhs. J, K, L, N.[2]

**2.  Wells Fargo accepted and did not dispute the hours self-reported by employees in calculating the payments.**

In his Motion, Plaintiff suggests that Wells Fargo did not make the back pay payments to its employees in good faith.  Again, that is simply not the case.

Once Wells Fargo had determined that the employees holding PC/LAN Engineer 3 and 4 positions would be re-classified to non-exempt status, Wells Fargo distributed the "Team Member Hours Survey."  For those individuals who currently held PC/LAN Engineer 3 and 4 positions, their supervisors distributed the surveys.  For those individuals currently employed by Wells Fargo but no longer employed in PC/LAN Engineer 3 or 4 positions, the surveys were distributed by e-mail.  See Dougherty Decl., ¶ 8 and Exh. A; Plaintiff's Motion, Exh. J.  Employees were able to complete the surveys at home or other places completely free of supervision.  See Dougherty Decl., ¶ 8.

The "Hours Survey" instructs employees to "answer the following questions honestly, accurately and completely…"  Furthermore, the Hours Survey requests not only the average number of weekly hours regularly worked but also provides an opportunity

---

[2] Plaintiff also makes much of the fact that the e-mail communication containing the hours survey was not sent to Russell – according to Plaintiff, another attempt to "end run" Russell and his counsel.  What Plaintiff does not mention in his Motion (even though he is fully aware of it) is that the hours surveys were not distributed to any former employees of Wells Fargo.  See Dougherty Decl., ¶ 7.  It further defeats Plaintiff's "conspiracy theory" that the entire population of former employees were not contacted, thus ensuring that any ensuing litigation would continue at a minimum as to the employees not contacted.

for employees to identify weeks during which they worked significantly more or less than the average indicated.  <u>See</u> Dougherty Decl., Exh. A.

If, in the manager's estimation, the hours worked reported by the employee were reasonable, as was the case with the vast majority of the employees, the employee's back pay payment was calculated using the hours self-reported by the employee.  If the manager believed that the hours reported were unreasonable based on his or her experience supervising the employee, there was a follow-up process with the employee. Those employees were also paid the number of hours they agreed to in connection with the follow-up process.  <u>See</u> Dougherty Decl., ¶ 9.

### 3. <u>The payments were neither "dramatically low" nor "fallacious" as misleadingly labeled by Plaintiff.</u>

Plaintiff labels the back pay payments made by Wells Fargo as "dramatically low" and "fallacious."  First, on their face, the payments are not "dramatically low" – many of the back pay payments were in the range of $20,000 to $30,000, and some exceeded $50,000.  <u>See</u> Dougherty Decl., ¶ 13.

Second, the explanation of how the back pay payments were calculated makes clear that they are not "fallacious."  Employees were paid for every hour of overtime they self-reported for a two-year look back period for employees outside of California and a three-year look back period for California employees.  The only reduction was by 12% to take into account paid time off ("PTO") and other time off, such as holidays.  For a company that provides six holidays and at least five weeks of PTO (the amount of PTO

varies based upon the length of service but that is the minimum amount), that is more than reasonable.  See Dougherty Decl., ¶ 10; Plaintiff's Motion, Exhs. L and N.[3]

Plaintiff's primary justification for labeling the payments as "fallacious" is that the payments did not include liquidated damages, they were based on a two-year look back period for those performing services outside of California (rather than three years), and that the payments were computed using the fluctuating workweek method for those outside of California.

Plaintiff states in his Motion that Wells Fargo's payments were "required" to include liquidated damages.  See Plaintiff's Motion, Section II.F.  Not so.  Liquidated damages are neither required nor automatically awarded under the FLSA.  The decision of whether to award liquidated damages lies within the sound discretion of the trial court. See Bratt v. County of Los Angeles, 912 F.2d 1066, 1071 (9th Cir. 1990) ("the Court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in Section 216").  If the employer shows that the act or omission giving rise to the FLSA violation was in good faith, the court may exercise its discretion to award no liquidated damages.  See id.

Furthermore, Plaintiff asserts that Wells Fargo should have used a three year look back period based on a three year statute of limitations under the FLSA.  Again, a three year statute of limitations is not the standard under the FLSA but rather is reserved for cases in which violations are found to be "willful."  See 29 U.S.C. § 255(a).

Finally, Plaintiff takes issue with the payment of overtime to employees performing services outside of California calculated on a fluctuating workweek basis,

---

[3] Furthermore, Wells Fargo's good faith is demonstrated by the following fact:  if Wells Fargo had not voluntarily made back pay payments to its employees and rather had addressed the issue through Russell's counsel, the result would have been a motion to conditionally certify a putative collective action several months later.  If that motion was granted and notice was distributed, it is likely that approximately 25% of employees would have opted in to the action and, by then, several months (at least) of the statute of limitations would have run.  As a result, many people who Wells Fargo ensured received a payment never would have opted in to the lawsuit and never would have received a nickel.  The only person that would benefit more had Wells Fargo not paid anyone and gone that route is Russell's counsel.  Perhaps that explains the repeated criticism of Wells Fargo following its well-established practice of voluntarily making back pay payments.

32255

-7-

1   rather than using a time-and-a-half method.  What Plaintiff does not mention is that the

2   clear weight of authority in the federal courts, including all published circuit court

3   opinions on the issue, support Wells Fargo's payment of overtime using a fluctuating

4   workweek method.  See Tumulty v. Fedex Ground Package Sys., Inc., 2005 WL 1979104,

5   *4 (W.D. Wash. Aug. 16, 2005) ("[t]he First and Fifth Circuits have both held that

6   employers who inappropriately misclassified an employee as exempt from the FLSA may

7   rely on § 778.114 [which allows the fluctuating workweek calculation] to determine

8   overtime due because the employees understood that they would be paid a fixed weekly

9   salary regardless of the hours worked") (citing Valerio v. Putnam Assoc. Inc., 173 F.3d

10  35, 39-40 (1st. Cir. 1999) and Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1138

11  (5th Cir. 1988)).[4]

12          In sum, it appears the only way to avoid Plaintiff's label of "dramatically low"

13  and "fallacious" would be to assume every single factual and legal issue, including "long

14  shot" issues, were 100% certain to be resolved in the affected employee's favor.

15          **4.  Nothing prohibited Wells Fargo from communicating with**

16          **unrepresented individuals about settlement.**

17          Plaintiff asserts that Wells Fargo's back pay payments were improper but does

18  not cite a single case holding that an employer is prohibited from communicating with

19  unrepresented employees regarding settlement.  In fact, in his Motion, Plaintiff cites

20  Gerlach v. Wells Fargo & Co., 2006 WL 824652, *6 (N.D. Cal. March 28, 2006), in

21  which *this* Court acknowledges that "pre-certification [employer] communications with

22  potential collective action members are generally permitted."  *The communications*

23  *alleged by Plaintiff to be improper were not only pre-certification but pre-lawsuit.*  See

24  also, e.g., O'Brien v. Encotech Constr. Serv. Inc., 203 F.R.D. 346, 349 (N.D. Ill. 2001)

---

[4] See also Bailey v. County of Georgetown, 94 F.3d 152, 156-57 (4th Cir. 1996) (rejecting the proposition that "an employee must also understand the manner in which his or her overtime pay is calculated" as contrary to Section 778.114); Clements v. Serco, Inc., 530 F.3d 1224, 1230-31 (10th Cir. 2008) (holding that the fluctuating workweek method is the proper method to determine back pay for misclassified employees).

("[A] defendant is allowed to settle with individual plaintiffs before a federal class action is certified."); In re Painewebber Ltd. Partnerships Litig., 147 F.3d 132, 137 (2d Cir. 1998) (acknowledging the right of a defendant to settle with potential class members prior to certification without prior court approval). Although Plaintiff attempts to portray Wells Fargo's back pay payments to its employees as improper, he cites no authority.

**5. Not a single person was required to sign an FLSA release in order to receive payment – another important fact misstated by Plaintiff.**

Plaintiff's misstatements of fact continue. In his Motion, he asserts that "Wells Fargo required those PC/LAN Engineers who wished to accept Wells Fargo's back pay offer to first sign a purported release of their FLSA claims." See Plaintiff's Motion, Section II.F. Again, simply not true. First, a simple reading of the release documents reveals that the releases do not purport to release FLSA claims. See Dougherty Decl., ¶ 14 and Exhs. B and C. Second, Wells Fargo distributed all back pay payments concurrently with a release form. At no time prior to that communication or as part of that communication did Wells Fargo indicate that an employee would be required to sign the release. See Dougherty Decl., ¶ 12.

**6. PC/LAN Engineer 5's were not converted to non-exempt status – a significant fact disguised by ambiguity in Plaintiff's Motion.**

In conjunction with Wells Fargo's review of the PC/LAN Engineer 3 and 4 positions, the PC/LAN Engineer 5 position was also reviewed. Wells Fargo made the determination following its review that the individuals in the PC/LAN Engineer 5 position were properly classified as exempt but, in order to ensure that each incumbent holding the PC/LAN Engineer 5 position was performing the position in an exempt manner, Wells Fargo conducted an individualized review of the job duties being performed by each employee holding the position of PC/LAN Engineer 5. Based on these individualized reviews of individual PC/LAN Engineer 5's, some individuals were reclassified as non-exempt and reassigned to a position more reflective of their duties. See Dougherty Decl., ¶ 5.

1

2

### C. **A Significant Portion of the "Collective Action" Now Proposed by Plaintiff Has Already Received Notice and the Opt-In Period Has Closed.**

3    The back pay payment process outlined above resulted in two distinct groups of

4    PC/LAN Engineer 3's and 4's:  (1) a group of PC/LAN Engineer 3's and 4's who have

5    completed an "hours survey" and have received a back pay payment from Wells Fargo;

6    and (2) a smaller group of PC/LAN Engineer 3's and 4's who have not received a back

7    pay payment from Wells Fargo, most of whom did not receive a back pay payment

8    because they were no longer employed by Wells Fargo at the time of the back pay

9    process.[5]

10    Earlier in this case, the parties stipulated to send notice to the smaller group of

11    employees who had held a PC/LAN Engineer 3 or 4 position during the relevant time

12    period and who had <u>not</u> received a back pay payment from Wells Fargo.  <u>See</u> Plaintiff's

13    Motion, Section II.G.; Stipulation as to Form and Dissemination of Collective Action

14    Notice (ECF No. 22).  A third party administrator selected and agreed to by the parties

15    sent notice of this action in a form approved by this Court to those individuals which

16    provided them with 45 days to opt in to this action.  24 of the individuals who received

17    notice chose to opt in to this action.  <u>See</u> Plaintiff's Motion, Section II.G.; Stipulation as to

18    Form and Dissemination of Collective Action Notice (ECF No. 22).

19    *Despite the fact that these individuals have already received notice, Plaintiff*

20    *seeks as part of this Motion that they be provided with a second notice and a second*

21    *opportunity to opt in.  While Plaintiff references in his Motion that there is a group of*

22    *individuals who have received prior notice, he provides no argument or authority of any*

23    *kind why a second notice is necessary, desirable or proper.*

24    / / /

25    / / /

26    / / /

27

28    [5] A few individuals indicated in their "hours surveys" that they worked 40 or fewer hours per week. Accordingly, they would have no potential claim to overtime and they were not paid any back pay.

1

2

**D. Despite the Parties' Prior Success in Reaching a Stipulation, Plaintiff Made No Effort to Contact Wells Fargo Prior to Filing the Instant Motion.**

3   As above, the parties have worked together on several significant matters in this

4   case, including the stipulated notice outlined above with respect to those PC/LAN

5   Engineer 3's and 4's who have not received a back pay payment.  Nonetheless, Plaintiff's

6   counsel did not make any effort to meet and confer with Wells Fargo's counsel prior to

7   filing this Motion.  See Briggs Decl., ¶ 2.  While there is no meet and confer requirement

8   in the Northern District local rules, it benefits the Court and behooves all parties to

9   attempt to resolve issues without resorting to motion practice, thus preserving party and

10  Court resources.  Even if agreement is not reached on all issues, the process of meeting

11  and conferring has the potential to result in partial agreement, thus focusing issues for the

12  Court.  Perhaps Plaintiff did not want to be in a position to squarely address issues that

13  would have arisen as part of those discussions, such as providing a second notice to

14  individuals who have already received notice.

15

16

**E. Wells Fargo's Proposed Compromises Were Generously Reasonable And Wells Fargo Received Two Non-Negotiable Rejections.**

17  Despite Plaintiff's counsel's failure to meet and confer, Wells Fargo attempted

18  to compromise regarding the issues raised in Plaintiff's Motion upon receipt of it, in an

19  attempt to conserve the time and resources of the parties and the Court.  Wells Fargo's

20  proposal with respect to this Motion was the following:  (1) Wells Fargo would stipulate

21  to mutually agreed upon notice (similar to the notice the parties had previously agreed

22  upon) being sent to those individuals who held a PC/LAN Engineer 3 or 4 position during

23  the relevant time period and who had not previously received notice; (2) while the notice

24  would not be "corrective," it would advise individuals that they could join the lawsuit

25  even if they had previously received a back pay payment and/or signed a release

26  document; (3) notice would be sent by the same third-party administrator used with the

27  previous notice; and (4) individuals would have 60 days to opt in to the action.

28  / / /

1    In other words, the only compromises asked of Plaintiff were that:  (1)

2  employees who held a PC/LAN Engineer 5 position during the relevant time period, who

3  are not similarly situated with PC/LAN Engineer 3's and 4's, would not receive notice;

4  (2) individuals who held PC/LAN Engineer 3 or 4 positions who had already received

5  notice would not receive a second notice; (3) notice would be sent by a third-party

6  administrator and not Plaintiff's counsel (and contact information would therefore not be

7  provided to Plaintiff's counsel); and (4) there would be a 60-day opt in period rather than

8  a 120-day opt in period.  See Briggs Decl., ¶ 3 and Exh. A.

9    Wells Fargo's proposal was rejected unconditionally by Plaintiff's counsel.  In

10  response to Plaintiff's counsel's rejection, Wells Fargo made yet another proposal to

11  compromise the issues raised in Plaintiff's Motion.  In addition to the terms of the

12  proposal outlined above, Wells Fargo made two additional concessions:  (1) that notice

13  would be sent to PC/LAN Engineer 5's; and (2) that the opt-in period would be 75 days.

14  With Wells Fargo's second proposal, the only two things Plaintiff was being asked to

15  compromise on were:  (1) those who received notice previously would not receive a

16  second notice; and (2) notice would be sent by a third-party administrator (and contact

17  information would therefore not be provided to Plaintiff's counsel).  See Briggs Decl., ¶¶

18  4-5 and Exh. B.  That proposal was also rejected out of hand by Plaintiff's counsel in a

19  telephone conversation that lasted less than one minute, during which Plaintiff's counsel

20  did not speak one word as to why this proposed compromise was inadequate.  See Briggs

21  Decl., ¶ 5.

22    Wells Fargo's proposals were made in the spirit of compromise.  However,

23  because Plaintiff's rejection of Wells Fargo's more than reasonable proposals has forced

24  Wells Fargo to oppose his Motion, Wells Fargo disputes that notice should be sent to

25  PC/LAN Engineer 5's because they are not similarly situated to PC/LAN Engineer 3's

26  and 4's.

27  / / /

28  / / /

32255                                        -12-

1

### III.    CONDITIONAL CERTIFICATION SHOULD NOT BE EXTENDED TO

2

### PC/LAN ENGINEER 5'S BECAUSE THEY ARE NOT "SIMILARLY

3

### SITUATED" TO PLAINTIFF

4        As above, PC/LAN Engineer 5's are not "similarly situated" to Plaintiff, who

5    held the position of PC/LAN Engineer 3, or the other declarants, all of whom were either

6    PC/LAN Engineers 3 or 4.  Therefore, conditional certification should not be extended to

7    employees who hold or have held a PC/LAN Engineer 5 position during the relevant time

8    period.

9        **A.  The Governing Standard for Conditional Certification Is Not "Automatic".**

10        Plaintiff himself states the standard that has been applied in this Court – that

11    "putative class members were together the victims of a ***single decision, policy, or plan***."

12    See Plaintiff's Motion, Section IV.A.1 (quoting <u>Thiessen v. Gen. Elec. Capital Corp.</u>, 267

13    F.3d 1095, 1102 (10th Cir. 2001)) (emphasis added).  However, it is not the case, as

14    Plaintiff suggests, that an employer's decision to classify a group of employees with the

15    same title or titles as "exempt" is sufficient to meet the "similarly situated" standard.

16    Courts look to various factors to determine whether proposed class members are similarly

17    situated, including "the extent to which the members of the proposed action will rely on

18    common evidence."  <u>Trinh v. JP Morgan Chase & Co.</u>, 2008 WL 1860161, *3 (S.D. Cal.

19    Apr. 22, 2008).  By its very nature, a determination of whether or not an employee is

20    "exempt" or "non-exempt" depends upon an analysis of each individual employee's job

21    duties and defies the use of "common evidence."  <u>See id.</u> at *4 (denying conditional

22    certification; "whether or not an employee is 'exempt' under relevant labor laws involves

23    an analysis of each individual [employee's] daily duties and compensation and whether

24    they meet several statutory and administrative exemptions").

25        **B.  PC/LAN 5's Are Not "Similarly Situated" to Plaintiff.**

26        As outlined *supra*, PC/LAN Engineer 3's and 4's were the subjects of a

27    different "decision" and "plan" than were PC/LAN Engineer 5's – in fact, entirely

28    opposite decisions.  While the decision was made to re-classify PC/LAN Engineer 3's and

4's to non-exempt status, the decision was made that PC/LAN Engineer 5's were properly classified as exempt. In fact, every person who holds a PC/LAN Engineer 5 position has been individually determined to be properly classified as exempt. See Dougherty Decl., ¶ 5; see also Olivo v. GMAC Mortgage Corp., 374 F. Supp.2d 545 (E.D. Mich. 2004) (denying conditional certification because the defendant employer provided evidence that the proposed class met the exemption requirement and, therefore, were not "similarly situated" to the plaintiff).

They were determined to be properly classified as exempt because of the duties that they perform every day. They are expected to and do engage in duties including (1) server engineering, including designs and specialized builds of servers and server environments; (2) recommending and designing hardware, software, and other tools in a server environment that will positively impact users; (3) interfacing with other departments and groups to roll out new tools and technologies, including pulling in resources and determining the order for the roll out within the team that will best ensure that the impact of any change to the environment is minimized; (4) acting as a team lead, including mentoring lower level individuals and providing feedback to managers regarding employee performance; (5) identifying risks that may exist within the environment and developing and recommending resolutions; (6) providing input regarding modifications to internal processes, including security specifications; (7) acting as team lead for complex projects, including tool design projects; (8) coordinating with "customers" and other teams to determine how an application will best work in an environment and how to integrate a new application in compatibility with the environment. See Farrington Decl., ¶ 5. These duties clearly require the regular and consistent exercise of discretion and independent judgment.

Furthermore, the day to day duties performed by PC/LAN Engineer 5's are different than the day to day duties performed by PC/LAN Engineer 3's and 4's. See Farrington Decl., ¶ 4. In his Motion and the declarations he submitted in support of his Motion, Plaintiff identified the duties of PC/LAN Engineer 3's and 4's as "provid[ing]

1   computer support services," "server support involving patching, updating, and repairing,"

2   "fixing or troubleshooting computer hardware and installing software," and

3   "implementing changes to computer hardware." Plaintiff and his fellow declarants assert

4   that they performed their duties "according to predetermined instructions or

5   specifications." <u>See</u> Exhibits A through F to Snodgrass Declaration.

6        PC/LAN Engineer 5's rarely if ever perform any of those duties identified by

7   Plaintiff and the other declarants. <u>See</u> Farrington Decl., ¶ 6. They are only involved in

8   troubleshooting if there is a complex problem that several other people have tried to

9   resolve and have been unable to do so. PC/LAN Engineer 5's are not constrained by pre-

10  determined instructions, specifications or procedures in performing their jobs. <u>See</u>

11  Farrington Decl., ¶ 6.

12       It is clear that the duties performed by PC/LAN Engineer 5's are very different

13  than the duties performed by PC/LAN Engineer 3's and 4's because, after an audit by

14  Wells Fargo of the duties performed by individuals in these positions, PC/LAN Engineer

15  3's and 4's were re-classified to non-exempt status and PC/LAN Engineer 5's were

16  determined to be properly classified as exempt. <u>See</u> Dougherty Decl., ¶ 4. It defies logic

17  to reclassify the vast majority of the PC/LAN Engineer population (the 3's and the 4's),

18  yet continue the exempt classification of PC/LAN Engineer 5's unless there existed a

19  *bona fide* distinction.

20       Furthermore, Plaintiff has not provided any admissible or probative evidence

21  regarding the "similarly situated" standard with respect to PC/LAN Engineer 5's other

22  than conclusory statements in declarations of individuals who held PC/LAN Engineer 3

23  and/or 4 positions that they, although never holding a PC/LAN Engineer 5 position,

24  "came to know" PC/LAN Engineer 5's and their duties are similar. <u>See</u> Plaintiff's

25  Motion, Section II.C. Not one of the named plaintiffs or declarants has held the position

26  of PC/LAN Engineer 5. <u>See</u> Plaintiff's Motion, pg. 4, lns. 4-7 (admitting that the

27  declarants held the titles PC/LAN Engineer 3 and 4). Conclusory declarations are not

28  sufficient to show that a plaintiff is "similarly situated" to the class he or she seeks to

1  represent in connection with an FLSA collective action.  See, e.g., Trinh v. JP Morgan

2  Chase & Co., 2008 WL 1860161, *3 and *4 (S.D. Cal. Apr. 22, 2008) (holding that

3  conclusory declarations are not sufficient to establish "similarly situated"; "***Plaintiffs***

4  ***provide no real evidence***, beyond their own speculative beliefs, suggesting that all … loan

5  officers across the country, regardless of location or experience, receive the same

6  compensation and are required to work in the same manner.") (emphasis added).

7

8  **IV.    PC/LAN ENGINEERS 3 AND 4 WHO ALREADY RECEIVED NOTICE**

9  **AND AN OPPORTUNITY TO OPT IN SHOULD NOT GET A SECOND**

10 **NOTICE**

11      Plaintiff explains the purpose of notice to putative collective action members in

12 his Motion as twofold – first, to provide potential collective action members an

13 opportunity to "make informed decisions about whether to participate" and, second, to

14 facilitate tolling of the statute of limitations for individual collective action members

15 because the statute of limitations is not tolled until an employee opts in to the action.  See

16 Plaintiff's Motion, Section IV.A. and IV.B.  The PC/LAN Engineers 3 and 4 who did not

17 receive a back pay payment have already been given an opportunity to make an informed

18 decision about whether to opt in and have been fully informed that the statute of

19 limitations will continue to run unless they opt in.  In fact, they were given that

20 opportunity in the form of a notice agreed to by Plaintiff and approved by this Court.

21      Plaintiff has not explained anywhere in his Motion why it is necessary for these

22 PC/LAN Engineers 3 and 4 who have already received notice to receive a second notice.

23 And yet, Plaintiff includes them in the group to which he seeks notice to be sent.  See

24 Plaintiff's Motion, Section IV.A.

25      There is no legal authority justifying a second notice to individuals who have

26 already received notice and an opportunity to opt in to an action.  See, e.g., In re Wells

27 Fargo Loan Processor Overtime Pay Litig., 2008 WL 2397424, *4 (N.D. Cal. June 10,

28 2008) (finding it improper to merge two similar cases where one action had already had

1  notices sent out and where the opt-in period had already expired; "To now merge the two

2  collective actions would conflate the issues and class members and would amount to a

3  'do-over' of the [first] collective action.").

4      Moreover, courts have allowed a second notice only where some form of

5  remedial or "corrective" notice is warranted by an inaccurate or coercive communication

6  about the lawsuit.  Not one single published decision allows "do-over" notice.

7

8  **V.    THE NOTICE PROCESS SHOULD BE ADMINISTERED BY A THIRD-**

9  **PARTY ADMINISTRATOR**

10      In his Motion, Plaintiff requests that the Court order Wells Fargo to provide

11  contact information for all putative members of the "FLSA class" to Plaintiff's counsel for

12  purposes of distributing notice to those individuals.  See Plaintiff's Motion, Section

13  IV.B.1., pg. 16.  Plaintiff has provided no reason in his Motion why notice through a

14  third-party administrator would not be sufficient.  In fact, Plaintiff emphasizes in his

15  Motion that the purpose of Court-approved notice is that the notice is "accurate" and

16  "uniform."  See Plaintiff's Motion, pg. 16, lns. 1-10.  Those two purposes are ideally

17  served by notice through a third-party administrator, which also serves the purpose of

18  protecting the privacy rights of individuals who have not yet chosen to be a part of this

19  action.[6]

20  ///

21  ///

22  ///

23  ///

24  ///

25

26  [6] If Plaintiff objects to the third-party administrator on the basis of cost, Defendant is willing to pay for the
costs associated with the third-party administrator in order to alleviate that concern and protect its

27  employees' privacy rights.  See Stanfield v. First NLC Financial Servs., LLC, 2006 WL 3190527, *5
(N.D. Cal. 2006) (rejecting an employer's request for a third-party administrator on the sole grounds that it

28  would add to the plaintiffs' "financial burden").

1    **A. <u>Plaintiff Previously Agreed to a Third-Party Administrator for the First</u>**

2       **<u>Notice.</u>**

3        The initial notice that was sent out in this matter to PC/LAN Engineer 3's and

4    4's who have not received a back pay payment from Wells Fargo was sent out through a

5    third-party administrator selected by the parties. <u>See</u> Stipulation as to Form and

6    Dissemination of Collective Action Notice (ECF No. 22). Plaintiff agreed that notice in

7    that manner was sufficient and the notice process was approved by this Court. Plaintiff

8    has not provided, and cannot provide, any evidence that the notice process that was

9    utilized with respect to the first group of individuals who received notice was improper or

10   insufficient. Furthermore, Plaintiff has provided no evidence why a different notice

11   process is necessary for notice to this second group of individuals.

12   **B. <u>Production of Contact Information Would Render Court-Approved Notice</u>**

13      **<u>Superfluous.</u>**

14       In his Motion, Plaintiff does not outline any reason for his request that the

15   Court order production of contact information other than to send notice to members of the

16   putative collective action. If that is Plaintiff's only intent, then producing the names and

17   addresses to a third-party administrator would serve the same purpose. In fact, a third-

18   party administrator has access to resources to which Plaintiff does not, such as change of

19   address registries, and specializes in these processes.

20       If, however, Plaintiff intends to use that contact information to have contact

21   with putative class members beyond the Court-approved notice, then Court-approved

22   notice is superfluous. The purpose of Court-approved notice, even as stated by Plaintiff,

23   is accurate and uniform notice. If Plaintiff intends to have contact with the putative

24   members of the collective action outside of the notice, then the communications are no

25   longer uniform and there is no Court oversight to ensure that they are accurate.

26       Furthermore, Plaintiff is not entitled to discovery of names and addresses of

27   potential collective action members prior to the completion of the opt-in process. In

28   <u>Woods v. New York Life Ins. Co.</u>, 686 F.2d 578 (7th Cir. 1982), the distinguished Judge

1  Posner articulates his view (supported by the U.S. Supreme Court in <u>Hoffman-LaRoche</u>

2  <u>Inc. v. Sperling</u>, 493 U.S. 165 (1989)) that, once the case is filed, the Court has the

3  authority to supervise all communication with potential collective action members:

4           After suit was filed, however, we do not think it would have been

5           proper for [plaintiff] or his counsel to have sent out such

6           initiations [to join the lawsuit] without first communicating to the

7           defendant's counsel his intention to do so, so that the defendant's

8           counsel would have an opportunity to verify the accuracy of the

9           notice, and if he wished, to move for an order amending the

10          notice or limiting its distribution in an appropriate manner.

11

12  <u>Woods</u>, 686 F.2d at 580.  Furthermore, in <u>Torres v. CSK Auto, Inc.</u>, 2003 U.S. Dist.

13  LEXIS 25092 (W.D. Tex. 2003), the Court denied Plaintiffs' request for names and

14  addresses of potential "opt in" plaintiffs citing privacy concerns and ordered *defendants* to

15  give notice to its employees in a letter approved by plaintiff's counsel.  This approach is

16  of course consistent with the foundation of the FLSA provisions requiring both judicial

17  approval of notice and supervision of the process.  Delivery of all names and addresses to

18  counsel for Plaintiff would render this process superfluous and unnecessary. [7]

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  _____

27  [7] At this point, Plaintiff also represents 25 individuals and has not asserted that he needs contact
information for discovery.  In any event, that would need to be addressed through a discovery motion and

28  not simultaneously with the notice process.

1

2

3

### C. **Plaintiff's Counsel Will Be Listed in the Notice and Is Free to Speak To Anyone; Wells Fargo Has Never Proposed a Gag Order on Plaintiff's Counsel.**

4
5
6
7
8
9
10
11
12
13

Wells Fargo does not assert in this Opposition that Plaintiff's counsel should be prohibited from contact with putative members of the collective action.[8]  Furthermore, Wells Fargo does not disagree that Plaintiff's counsel's contact information should be provided in the notice so that members of the putative collective action can contact Plaintiff's counsel if they wish to do so.  Wells Fargo's interest is twofold:  (1) the privacy rights of its employees and former employees with respect to their names, home addresses, home telephone numbers, e-mail addresses, and social security numbers, all of which is requested by Plaintiff;[9] and (2) that the primary substance of information communicated to potential collective action members is that contained in the court-approved notice.

14
15
16
17
18
19
20
21

Wells Fargo also does not propose that this is just a one-way street – in order to ensure that the court-approved notice is the primary source of information, as part of Wells Fargo's proposed compromise, one term of which was notice through a third-party administrator, Wells Fargo also indicated its willingness to agree to not initiate any contact with individuals receiving notice about the opt-in process during the opt-in period. See Briggs Decl., Exh. B.  Wells Fargo remains willing to agree to such a restriction provided putative collective action members' contact information is provided solely to a third-party administrator for distribution of notice.

22

/ / /

23

/ / /

24
25
26
27

[8] In prior discussions, Plaintiff's counsel has claimed he has a "First Amendment right" to contact information.  However, there is a fundamental difference between the Constitutional right to free speech, on the one hand, and arguing that the Constitution requires an employer to turn over contact information for anyone with whom Plaintiff's counsel desires to speak, on the other hand, in complete disregard of another Constitutional right – the right to privacy.  Wells Fargo has never proposed any condition that infringes Plaintiff's counsel's free speech.

28

[9] A California employer has an affirmative obligation to assert the privacy rights of its current and former employees. See, e.g., Boler v. Superior Court, 201 Cal. App.3d 467, 472 n.1 (1987).

1

## VI.    ADDITIONAL ASPECTS OF PLAINTIFF'S MOTION THAT SHOULD BE

2    REJECTED

3    ### A. A 120-Day Opt-in Period Is Excessive; 60 (or 75 Days) Is Adequate.

4    In his Motion, Plaintiff requests a 120 day opt-in period.  Plaintiff provides no

5    argument why a 120 day opt-in period is necessary and no authority allowing for a 120-

6    day opt-in period.[10]  Furthermore, when the parties agreed to the previous notice that was

7    sent in this case, the opt-in period was 45 days, an admission by Plaintiff that 45 days is

8    sufficient notice.  This Court has held previously that a 120-day opt-in period is "too

9    long."  Gerlach v. Wells Fargo & Co., 2006 WL 824652, *4 (N.D. Cal. March 28, 2006)

10    (setting a 75-day opt in period; "Plaintiffs' proposed 120 day deadline for potential class

11    members to file their consents is too long."); see also Stanfield v. First NLC Financial

12    Servs., LLC, 2006 WL 3190527, *5 (N.D. Cal. 2006) (approving a 60-day opt in period).

13    ### B. "Corrective" Notice Is Not Justified Where There Has Been No Abuse by

14    Wells Fargo.

15    Plaintiff asserts in his Motion that "corrective notice" is justified in this case

16    because of Wells Fargo's back pay payments to its employees.  In support of his request

17    for such "corrective notice," Plaintiff cites only one case -- O'Brien v. Encotech Const.

18    Serv., Inc., 203 F.R.D. 346 (N.D. Ill. 2001).  O'Brien is distinguishable on several

19    grounds.  First, Plaintiff implies that the Court in Encotech held that corrective notice

20    must be sent.  That is not the case.  The Court denied the plaintiffs' motion for a

21    corrective notice as moot because the defendant agreed that a corrective notice would be

22    sent.  See id. at 350.  Furthermore, the factual situation in O'Brien is distinguishable.  In

23    O'Brien, the employer met with each employee one on one, offered each employee a

24    check for "some additional compensation" that was not tied in any way to the potential

25    unpaid wages, gave the employee a release and asked them to sign it immediately.

26    _____

27    [10] In fact, Plaintiff emphasizes in his Motion that notice is necessary because the statute of limitations is
running for each putative collective action member until he or she opts in to the action.  A longer opt-in

28    period means that the statute of limitations is running for a longer period of time.

1    Furthermore, the plaintiffs provided evidence that some management employees believed

2    that employees who did not sign the releases would be laid off.  Finally, the employer

3    unilaterally sent out notice to the putative collective action members describing the

4    lawsuit.  See id. at 348.

5         None of the facts present in O'Brien are present in the instant case.  Most

6    importantly, Wells Fargo made back pay payments to its employees based on hours

7    worked *self-reported* (and almost uniformly unquestioned) by those employees, the

8    process was written and not face-to-face, and Wells Fargo did not require any employee to

9    sign a release.  There is no evidence that any employee felt coerced or pressured in any

10   way in connection with the "hours survey," the back pay payment, or the release

11   document that they were requested to sign.  Finally, Wells Fargo has not distributed any

12   notice to any putative collective action member describing the lawsuit.

13        Wells Fargo nonetheless continues to be reasonable and agrees that notice, if it

14   is ordered, can contain a provision informing putative collective action members that they

15   can join the lawsuit even if they have previously received a back pay payment from Wells

16   Fargo and/or if they have signed a release document.  However, the notice should also

17   provide that employees who have previously received a back pay payment may not

18   receive any additional compensation from joining the lawsuit and that Wells Fargo is

19   entitled to an off-set for any back pay it has already paid to them.

20        Attached as Exhibit C to the Declaration of Glenn Briggs, served and filed

21   concurrently herewith, is the notice proposed by Wells Fargo if notice is ordered by this

22   Court.  The notice is identical to the notice that was previously agreed to by the parties

23   and that was previously approved by this Court, except for the provisions outlined above

24   with respect to previous back pay payments.  The notice is "red-lined" to show the minor

25   differences between the notice proposed by Wells Fargo in connection with this Motion

26   and the notice that was previously approved by the Court in this matter, which primarily

27   reflect the changed procedural posture of the case.

28

C. **Plaintiff Has Not Demonstrated the Need for Notice by Posting or Payroll Distribution**.

Plaintiff requests that the Court order not only the mailing of notice to putative collective action members but also that Wells Fargo post notice at work locations and distribute notice through its payroll. The reasons given by Plaintiff as to why notice by posting or payroll distribution is necessary is that the "database may have errors and because potential plaintiffs may discard the notice, unaware of its significance." Plaintiff was not concerned about these potential issues when the first notice was distributed by first-class mail only and has not provided any examples where these concerns arose in connection with the first notice that was distributed in this case.

In Adams v. Inter-Con Sec. Systems, Inc., 242 F.R.D. 530, 541-42 (N.D. Cal. 2007), a case cited by Plaintiff in his Motion, the Court noted that "[f]irst class mail is ordinarily sufficient to notify class members who have been identified." (citing Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 492-93 (E.D. Cal. 2006)). In Romero, the primary case cited by Plaintiff, the Court ordered notice to be posted, in addition to being distributed by mailing, because the defendant employer had failed to provide contact information for some putative members of the collective action. Plaintiff has provided no evidence specific to this case that would justify notice by any method other than first class mail. Plaintiff has not cited any case in which the court ordered notice to be provided through the payroll process.[11]

D. **The Court Should Not Invalidate Releases of Non-FLSA Claims**.

In Plaintiff's memorandum of points and authorities, he casually requests that the Court "invalidate all releases entered into by similarly situated employees." See Plaintiff's Motion, pg. 17, Section IV.B.2.[12] Plaintiff provides no authority that would

---

[11] It is worth noting at this point that, in response to Wells Fargo's two proposed compromises to avoid this motion practice, Plaintiff was not even willing to compromise this extraordinary relief for which there is neither a factual justification nor legal authority.

[12] Plaintiff has not included this request in his notice of motion and it is also not part of the proposed order on the Motion submitted by Plaintiff. Furthermore, this Motion is not the procedurally proper method for challenging the validity of these releases.

1    support such a result.  Wells Fargo never asserted that the releases signed by individual

2    employees unsupervised by a court or the Department of Labor are valid as to FLSA

3    claims and, for that reason, the releases that employees were requested to sign do not

4    purport to include FLSA claims.  However, even if the releases expressly included FLSA

5    claims, only the FLSA portion would be invalid.  <u>See</u>, <u>e.g.</u>, <u>Encotech</u>, 203 F.R.D. at 349

6    ("Only the FLSA portion of the release is invalid.  The court cannot declare the rest of the

7    releases invalid without proof of fraud, duress, or misrepresentation.  The court sees no

8    reason why it cannot practicably sever the invalid portions of the releases.").

9    **VII.    <u>THE COURT SHOULD DISREGARD ANY NEW ARGUMENT OFFERED</u>**

10    **<u>BY PLAINTIFF DUE TO HIS INEXCUSABLE FAILURE TO BRIEF</u>**

11    **<u>MATTERS HE KNEW WOULD BE DISPUTED ISSUES</u>**

12    It is almost as though there was a pink elephant in Plaintiff's presence when

13    he wrote this Motion, but he decided to ignore it.  Instead, Plaintiff chose to write a

14    motion that does not directly address several material matters that he knew for certain

15    would be disputed, apparently hoping to slip them by Wells Fargo and/or the Court, or

16    alternatively, deprive Wells Fargo of a fair opportunity to respond to his arguments.

17    Indeed, if these matters were important enough to include in Plaintiff's proposed order,

18    they warranted being addressed in the brief and supported with facts and law.  The

19    following are several examples:

20    • **Notice to PC/LAN Engineer 5's**:  Plaintiff clearly knew this would be

21    an issue because the parties discussed it previously.  <u>See</u> Briggs Decl., ¶

22    7.

23    • **Production of contact information to Plaintiff's counsel during the**

24    **opt-in process**:  In connection with the first notice that was distributed

25    in this case, Wells Fargo refused to agree to provide Plaintiff's counsel

26    the contact information for those individuals receiving notice.  This point

27    was discussed on more than one occasion, and Wells Fargo's position

28

did not waver.  In connection with those discussions, Wells Fargo asserted some of the same points set forth herein.  <u>See</u> Briggs Decl., ¶ 8.

- **Use of a third-party administrator to send notice**:  Wells Fargo similarly refused to agree in connection with the first notice that was distributed in this case to a notice procedure that entailed Plaintiff's counsel's office mailing the notice.  <u>See</u> Briggs Decl., ¶ 8.

- **Second notice to PC/LAN Engineers 3 and 4 who already received notice**:  A second notice in an FLSA collective action is an extraordinary request.  Counsel experienced in FLSA collective actions would know that a defendant employer would not agree to it.  <u>See</u> Briggs Decl., ¶ 9.

Nonetheless, Plaintiff has not squarely addressed any of these issues in his Motion.  Wells Fargo anticipates that he will attempt to do so in his reply brief when Wells Fargo does not have an opportunity to respond.  Plaintiff's arguments should be disregarded.  <u>See</u>, <u>e.g.</u>, <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007) ("The District Court need not consider arguments raised for the first time in a reply brief.").

## VIII.  <u>CONCLUSION</u>

Wells Fargo respectfully requests that the Court deny Plaintiff's Motion for Conditional Collective Action Certification and Notice with respect to PC/LAN Engineer 5's on the ground that they are not "similarly situated" to Plaintiff and with respect to providing a second notice to PC/LAN Engineer 3's and 4's who have already received notice and an opportunity to opt in to this action.  Furthermore, Wells Fargo requests that this Court deny Plaintiff's request for contact information of putative collective action members at this time and, if notice is ordered, that it be distributed by a third-party administrator by first class mail only, that it not be "corrective," and that the opt-in period be 60 days.

Dated:  August 14, 2008             HODEL BRIGGS WINTER LLP
                                    GLENN L. BRIGGS
                                    By:    /s/ GLENN L. BRIGGS
                                    _____
                                           GLENN L. BRIGGS
                                    Attorneys for Defendant