GLENN L. BRIGGS (SB# 174497)
E-mail: gbriggs@hbwllp.com
THERESA A. KADING (SB# 211469)
E-mail: tkading@hbwllp.com
HODEL BRIGGS WINTER LLP
8105 Irvine Center Drive, Suite 1400
Irvine, CA 92618
Telephone: (949) 450-8040
Facsimile: (949) 450-8033

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued herein as
WELLS FARGO & COMPANY)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| MONTE RUSSELL, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY,<br><br>Defendants. | CASE NO. C 07-03993 CW<br><br>JUDGE CLAUDIA WILKEN<br>COURTROOM 2<br><br>**DECLARATION OF NOREEN DOUGHERTY IN SUPPORT OF DEFENDANT WELLS FARGO BANK, N.A.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION UNDER FLSA, 29 U.S.C. § 216(b), AND FOR COURT-APPROVED NOTICE OF FLSA CLAIMS**<br><br>Hearing Date: September 4, 2008<br>Time: 2:00 p.m.<br>Location: Courtroom 2<br><br>Complaint filed: August 2, 2007 |

# DECLARATION OF NOREEN DOUGHERTY

I, Noreen Dougherty, declare and state as follows:

1. I have personal knowledge of the facts stated in this Declaration, and, if called upon as a witness, I could and would testify competently as to those facts.

2. I am presently employed by Wells Fargo Bank, N.A. ("Wells Fargo"), as a Compensation Consultant in one of its San Francisco offices. I have been employed by Wells Fargo since 1989, with a break in service between January 2003 and September 2005.

3. I was involved in the process of reviewing and evaluating the exempt/nonexempt classification of PC/LAN Engineers 3, 4 and 5. This process commenced prior to April 25, 2007. It was not undertaken in response to any communication from Monte Russell or an attorney on his behalf.

4. As a result of this review process, all active employees holding the position of PC/LAN Engineer 3 and 4 were reclassified from exempt to nonexempt effective July 22, 2007. The group of employees holding the position PC/LAN Engineer 5 was not similarly reclassified as nonexempt due to the differences in the job duties of the PC/LAN Engineer 5 as compared to the duties of the PC/LAN Engineer 3 and 4. As part of the review process, the job titles for the PC/LAN Engineer 3, 4, and 5 positions were changed to PC/LAN Analyst 3, 4, and 5.

5. Subsequent to the reclassification of PC/LAN Engineers 3 and 4 to nonexempt, Wells Fargo conducted an individualized review of the job duties being performed by each employee holding the position of PC/LAN Engineer 5. Based on

32271_1

these individualized reviews of individual PC/LAN Engineer 5s, some individuals were reclassified as nonexempt and reassigned to a position more reflective of their duties, in most cases, the PC/LAN Analyst 4 position.

6. Wells Fargo has conducted such a review of more than 40 employees holding the position of PC/LAN Engineer 5, of which approximately 10 to 15 have been reclassified to nonexempt as a result.

7. In connection with the reclassification of PC/LAN Engineer 3s and 4s, Wells Fargo elected to voluntarily pay back pay for potential unpaid overtime to its current employees who held or had held the position of PC/LAN Engineer 3 and/or 4. There never was a plan or design to pay back pay to all PC/LAN Engineers 3 and 4 other than Monte Russell. Wells Fargo had confirmed access to all persons in its employ who held the position of PC/LAN Engineer 3 and/or 4 and could receive immediate responses to requests for information made to these individuals.

8. In order to compute back pay for potential overtime, those individuals employed as a PC/LAN Engineer 3 or 4 were sent a written survey to complete. The survey requested the employees to self report their best estimate of their weekly hours worked for purposes of calculating their back pay payment. A copy of the survey is attached hereto as Exhibit "A." Employees were able to complete the surveys at home or other places completely free of supervision. Many of the employees received the survey via email.

9. Except for approximately 10% of individuals who reported weekly hours believed to be unreasonably high, Wells Fargo accepted the survey responses on their face for purposes of calculating back pay payments for potential overtime. As to the approximately 10% of individuals who reported hours believed to be excessively

high, there was follow-up with these individuals, but they were still paid based on the number of hours they agreed to as part of this follow-up process.

10.  Back pay payments were made based on hours reported during a two-year look back period for employees performing services outside of California and a three-year look back period for employees in California.  The only reduction that was made to the back pay payments was by 12% to take into account paid time off ("PTO") and other time off, such as holidays.  Wells Fargo provides at least six holidays to its employees.  The minimum PTO earned per year by individuals in the PC/LAN Engineer 3 and 4 positions who were re-classified was and continues to be 25 days.

11.  In connection with the above survey to inquire about weekly hours worked by PC/LAN Engineer 3s and 4s, Wells Fargo did not advise the surveyed employees that they would be requested or required to sign a release of claims in connection with the payment of back pay for potential overtime.  However, at the time of giving the employees the hours survey, they were advised that they would be reclassified to nonexempt.

12.  The first communication with PC/LAN Engineer 3s and 4s about a release of claims was when Wells Fargo sent a back pay payment confirmation accompanied by a release agreement and requested the employees execute it.  This confirmation was sent separately but concurrently with the back pay payment.

13.  Many back pay payments were in the range of $20,000 to $30,000, and some even exceeded $50,000.

14.  Copies of the release agreements sent concurrently with the back pay payments made to California and non-California employees are attached hereto as

32271_1                                         -3-

DECLARATION OF NOREEN DOUGHERTY

Exhibits "B" and "C," respectively. Neither release agreement states that it releases claims under the Fair Labor Standards Act and Wells Fargo never intended it to do so.

15. Wells Fargo has more than 165,000 employees in the United States in thousands of different job classifications. There have been other times in past years in which individuals in a position have been reclassified from exempt to nonexempt. The process followed with respect to the review and reclassification of the PC/LAN Engineer 3s and 4s was consistent with Wells Fargo's approach to other reclassifications.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 13th day of August 2008, at San Francisco, California.

_____
NOREEN DOUGHERTY

EXHIBIT "A"

## Team Member Hours Survey

Wells Fargo has evaluated your duties as a **PC/LAN ENGINEER 4** and has determined that your position is not exempt from the federal Wage and Hour laws. We need you to complete the survey below to determine whether you worked overtime during the specified period. Please answer the following questions honestly, accurately and completely and return this form to your manager <u>as soon as possible.</u> If you have any questions regarding this survey, please contact your manager or your Human Resources Consultant (HRC), NAME REDACTED

**Name:** REDACTED          **Employee ID:** REDACTED

**Location:** California     **Current Manager:** REDACTED

**Business Line:** TIG

**Line Comp Representative** REDACTED

1. On what date were you hired into the position of **PC/LAN ENGINEER 4**? _____

2. If you are scheduled to work less than 40 hours per week, what are your standard scheduled weekly hours? _____

3. During the period from **7/22/2004 to 3/5/2006** please indicate the average number of weekly hours you regularly worked in this position. Do not include non-working lunch breaks as hours worked. Please provide one single number (e.g., 40); do not provide a range of hours (e.g., 42-44).

   Average weekly hours worked: _____

   If there were periods when the hours you worked were <u>significantly</u> more or less than the weekly average you indicated above, please provide the dates and hours below. Again, please indicate a single number of hours rather than a range. For example, if on average you worked 42 hours per week, but for a 6 week period you worked 65 hours per week to implement a project, enter the 6 week period here).

   | Period Start Date | Period End Date | Average # of Weekly Hours Worked |
   |---|---|---|
   |  |  |  |
   |  |  |  |
   |  |  |  |
   |  |  |  |

4. While in this position, have you worked an **"alternative work schedule"** – other than the standard 5-day, 40-hour schedule (4 10-hour shifts, 3 12-hour shifts, e.g.)?

   ( ) Yes, I have worked an alternative work schedule

### <u>If you worked an alternative work schedule, please complete the form on page 2.</u>

By signing below, I am representing that, based on my recollection, the above information correctly reflects the hours I worked.

_____        _____
SIGNATURE                           DATE

**Manager Review Signature** _____    Date Reviewed _____

**Business HR Review Signature** _____   Date Reviewed _____

WF R 0114

Team Member Hours Survey – Page 2

## Alternative Work Schedule Information

***Complete this page ONLY if you worked an Alternative Work Schedule during this period.***

- **What is considered an Alternative Work Schedule?**
    - If you are a regular team member (30 hours or more a week) and you had a schedule that was different than the standard 5-day, 8-hour per day, and/or 40-hour per week schedule.
    - If you are a part-time team member who was regularly scheduled for more than 8 hours on any day.

- **Examples of Alternative Work Schedules**
    - 4 10-hour days per week
    - 3 12-hour days per week
    - 5 9-hour days one week, then 4 9-hour days the next week (9-80 schedule)

Please provide the time period on which you worked an alternative schedule:

Dates on Alternative Work Schedule – from _____ to: _____

Please complete the chart below by entering the average hours you actually worked in this position during the time stated above:

|  | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday | Total hours |
|---|---|---|---|---|---|---|---|---|
| Example | 0 | 10.0 | 10.0 | 10.0 | 10.0 | 0 | 0 | 40.0 |
| Week 1 |  |  |  |  |  |  |  |  |
| Week 2* |  |  |  |  |  |  |  |  |
| Week 3* |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |

*\* If different from Week 1*

# EXHIBIT "B"

## RELEASE OF ALL CLAIMS FOR WAGES

FOR AND IN CONSIDERATION of the gross sum of $ REDACTED, less required payroll deductions, payment of which is hereby acknowledged, REDACTED hereby releases and forever discharges WELLS FARGO BANK N A and all related entities, officers, employees and agents (collectively referred to as "Wells Fargo"), from any and all claims, demands, damages, actions and causes of action arising out of or in any way connected with payment of REDACTED compensation, salary, wages, incentive or bonus pay by Wells Fargo as a PC/LAN Engineer 4 up to the date of the signature below.

IN FURTHER CONSIDERATION of the payment identified above, REDACTED agrees as follows:

1. This release shall apply to and cover all of the claims, demands and causes of action identified above, whether the same are known or unknown or hereafter ascertained. It is understood that the provisions of Section 1542 of the California Civil Code are specifically waived as to this Release. Said Section 1542 states as follows:

   "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

2. This release is the result of a compromise of a disputed claim for payment of compensation, salary, wages, incentive and/or bonus pay, and shall never at any time for any purpose be considered as an admission of liability or responsibility on the part of the parties herein released.

3. This release sets forth the entire agreement between the Parties, and fully supersedes any and all prior agreements or understandings between the Parties, pertaining to the payment of compensation as described above. Any modifications to this release shall be in writing and signed by both Parties.

DATED: _August 22, 2007_

REDACTED
--------------------
Signature of Employee

REDACTED
--------------------
Print Name    REDACTED

--------------------
Employee ID

WF R 0121

EXHIBIT "C"

Name: REDACTED

## Payment Advice and Resolution

On 8/24/2007, Wells Fargo paid you for all overtime hours that you reported working as a PC/LAN Engineer 3 during the period from 7/22/2005 to 7/22/2007.

Your signature below acknowledges the receipt of this payment in the amount of $REDACTED less all regular payroll deductions, and your release of any and all claims related to unpaid wages or other compensation that you now have against WELLS FARGO BANK N A up through the date of your signature below.

DATED: _____8-29-07_____

_____REDACTED_____
Signature of Employee

_____REDACTED_____
Print Name

_____REDACTED_____
Employee ID

Please return this document to Corporate Compensation at A0149-045.