1   William M. Audet (CA 117456)
    Adel A. Nadji (CA 232599)
2   AUDET & PARTNERS, LLP
    221 Main Street, Suite 1460
3   San Francisco, CA 94105
    Telephone: 415.568.2555
4   Facsimile: 415.568.2556

5   T. Joseph Snodgrass, Pro Hac Vice
    Shawn M. Raiter, Pro Hac Vice
6   Kelly A. Swanson, Pro Hac Vice
    LARSON KING, LLP
7   30 E. 7th Street, Suite 2800
    Saint Paul, MN  55101
8   Telephone: 651-312-6500
    Facsimile: 651-312-6618
9
    *Attorneys for Plaintiffs and*
10  *The Class Members*

11

12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                    OAKLAND DIVISION

16  MONTE RUSSELL, on behalf of himself and        Case No. C–07-3993-CW
    others similarly situated,
17
                Plaintiff,
18                                                  **DECLARATION OF T. JOSEPH
         v.                                         SNODGRASS IN SUPPORT OF
19                                                  PLAINTIFF'S REPLY MEMORANDUM
                                                    IN SUPPORT OF MOTION FOR
20  WELLS FARGO AND COMPANY,                        CONDITIONAL COLLECTIVE
                                                    ACTION CERTIFICATION UNDER
21              Defendant.                          FLSA, 29 U.S.C. §216(b), AND FOR
                                                    COURT-APPROVED NOTICE OF FLSA
22                                                  CLAIMS**

23

24

25

26

27

28

1    I, T. Joseph Snodgrass, declare:

2        1.    I am a partner with the firm Larson King, LLP, counsel for the Plaintiff, Monte

3    Russell, and others similarly situated. I am an attorney licensed to practice in the State of

4    Minnesota and my admission to practice in the Northern District of California on a pro hac vice

5    basis was granted on August 17, 2007. I have personal knowledge of the matters stated herein

6    and if called as a witness, I could and would competently testify to the following:

7        2.    Attached hereto as Exhibit A is a true and correct copy of the following

8    unpublished cases:

9    *Gerlach v. Wells Fargo & Co*, No. C 05-0585, 2006 WL 824652 (N.D. Cal. Mar. 28,
     2006);

10   *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715, 2007 WL 707475 (N.D. Cal.
11   Mar. 6, 2007);

12   *Stanfield v. First NLC Fin. Servs., LLC*, No. C 06-392, 2006 WL 3190527 (N.D. Cal.
     Nov. 1, 2006);

13   *Levy v. Verizon Information Systems*, No. 06 CV 1583, 06 CV 5036, 2007 WL 1747104
14   (E.D.N.Y. June 11, 2007);

15   *Jirak v. Abbott Labs., Inc.*, --- F.Supp.2d ---, No. 07 C 3626, 2008 WL 2812553 (N.D. Ill.
     July 22, 2008);

16   *Centurioni v. City and County of San Francisco*, No. 07-1016, 2008 WL 295096 (N.D.
17   Cal. Feb. 1, 2008);

18   *Cranney v. Carriage Servs., Inc.*, No. 2:07-cv-1587, 2008 WL 608639 (D. Nev. Feb. 29,
     2008);

19   *Williams v. Le Caperon Rouge*, No. 1:07-cv-829, 2007 WL 2344738 (N.D. Ohio Aug. 14,
20   2007);

21   *Goldman v. RadioShack Corp.*, No. 2:03-cv-0032, 2003 WL 21250571 (E.D. Pa. Apr. 16,
     2003);

22   *Ballaris v. Wacker Silltronic Corp.*, No. 00-1627, 2001 WL 1335809 (D. Or. Aug. 24,
23   2001);

24   *Delgado v. Ortho-McNeil, Inc.*, No. 07-263, 2007 WL 2847238 (C.D. Cal. Aug. 7, 2007);

25   *Wiegele v. FedEx Ground Package Sys.*, No. 06-01330, 2007 WL 628041 (S.D. Cal.
     Feb. 8, 2008).

26

27

28

Audet & Partners, LLP
www.audetlaw.com

2
DECLARATION OF T. JOSEPH SNODGRASS IN SUPPORT OF REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION

1        I declare under penalty of perjury of the laws of the United States of America and the

2    State of California that the foregoing is true and correct to the best of my knowledge.

3    Executed this 21st day of August 2008, at Saint Paul, Minnesota.

4

5    Dated: August 21, 2008                    /s/ *T. Joseph Snodgrass*
                                              T. Joseph Snodgrass

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Audet & Partners, LLP
www.audetlaw.com

3

DECLARATION OF T. JOSEPH SNODGRASS IN SUPPORT OF REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION

# EXHIBIT A

1 of 1 DOCUMENT

**JASMIN GERLACH and REGGIE PLACE, on behalf of themselves and all others similarly situated, Plaintiffs, v. WELLS FARGO & CO.; WELLS FARGO BANK, N.A.; and WELLS FARGO SERVICES COMPANY, Defendants. WELLS FARGO BANK, N.A., Counterclaimant, v. JASMIN GERLACH, Counterdefendant.**

No. C 05-0585 CW

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2006 U.S. Dist. LEXIS 24823*

March 28, 2006, Decided
March 28, 2006, Filed

**COUNSEL:** [*1] For Jasmin Gerlach, on behalf of herself & those similarly situated, Plaintiff: James M. Finberg, Jahan C. Sagafi, Lieff Cabraser Heimann & Bernstein, LLP, San Francisco, CA; Claire Kennedy-Wilkins, Michelle Lee Roberts, Todd Jackson, Lewis, Feinberg, Renaker & Jackson, Oakland, CA; David A. Lowe, Kenneth John Sugarman, Patrice L. Goldman, Steven Gary Zieff, Rudy Exelrod & Zieff, LLP, San Francisco, CA.

For Reggie Place, on behalf of themselves and those similarly situated, Plaintiff: James M. Finberg, Jahan C. Sagafi, Lieff Cabraser Heimann & Bernstein, LLP, San Francisco, CA; Robert Ira Spiro, Spiro Moss Barness Harrison & Barge LLP, Los Angeles, CA; Claire Kennedy-Wilkins, Michelle Lee Roberts, Todd Jackson, Lewis, Feinberg, Renaker & Jackson, Oakland, CA; David A. Lowe, Kenneth John Sugarman, Patrice L. Goldman, Steven Gary Zieff, Rudy Exelrod & Zieff, LLP, San Francisco, CA.

For Wells Fargo & Co., Wells Fargo Services Co., Wells Fargo Bank N.A, Defendants: Krista A. Stevenson, Nancy E. Pritikin, R. Brian Dixon, Littler Mendelson, PC, San Francisco, CA.

For Jasmin Gerlach, on behalf of herself & those similarly situated, Counter-defendant: Peter S. Rukin, Rukin Hyland [*2] & Doria LLP, San Francisco, CA; Claire Kennedy-Wilkins, Lewis, Feinberg, Renaker & Jackson, Oakland, CA.

For Wells Fargo & Co., Wells Fargo Bank N.A, Counter-claimants: Krista A. Stevenson, Nancy E. Pritikin, R. Brian Dixon, Littler Mendelson, PC, San Francisco, CA.

**JUDGES:** CLAUDIA WILKEN, United States District Judge.

**OPINION BY:** CLAUDIA WILKEN

**OPINION**

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR APPROVAL OF *HOFFMANN-LA ROCHE* NOTICE AND DENYING PLAINTIFFS' MOTION FOR CORRECTIVE NOTICE

Plaintiffs move the Court to certify conditionally this action as a representative collective action and to authorize and facilitate notice of this action to prospective collective action members. Defendants oppose this motion and object to the notice and opt-in form that Plaintiffs have prepared. In a separate motion, Plaintiffs move the Court to order Defendants to issue a corrective written notice to all potential collective action members concerning Defendants' allegedly misleading and coercive communications to them and to prohibit Defendants and their counsel from communicating with them concerning this action. Defendants also oppose that motion.

The matters were heard on February 10, 2006.

Having [*3] considered all of the papers filed by the parties and oral argument on the motions, the Court grants in part Plaintiffs' motion for approval of a *Hoffmann-LaRoche* notice and denies it in part, and denies Plaintiffs' motion for a corrective notice.

### BACKGROUND

Plaintiffs contend that they are owed overtime pay under the Fair Labor Standards Act (FLSA). The FLSA authorizes workers to sue for unpaid overtime wages on their own behalf and on behalf of "other employees similarly situated." *29 U.S.C. § 216(b)*. Plaintiffs bring this action on behalf of themselves and other similarly situated employees. [1] Unlike class actions brought under *Federal Rule of Procedure 23*, however, collective actions brought under the FLSA require that each individual member "opt in" by filing a written consent. *See 29 U.S.C.A. § 216(b)* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

> 1   In addition, Plaintiffs bring State wage law and ERISA claims.

[*4] In *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*, the Supreme Court held that, "in appropriate cases," district courts should exercise their discretion to authorize and facilitate notice of a collective action to similarly situated potential plaintiffs. [2] Plaintiffs contend that this is an appropriate case. They request leave to send a *Hoffmann-La Roche* notice to similarly situated Business Systems Employees (BSEs) [3] who are, or have been, employed throughout the country by Defendants Well Fargo & Co., Wells Fargo Bank, N.A., Wells Fargo Services Company, and any other subsidiaries of Wells Fargo & Co., at any time since February 9, 2002. According to Plaintiffs, this notice will alert potentially aggrieved individuals that, if they want to pursue a similar claim in this pending lawsuit, they must opt in, and will further the broad remedial goals of the FLSA.

> 2   As Plaintiffs note, although *Hoffmann-La Roche* involved claims brought under the Age Discrimination in Employment Act (ADEA), because ADEA incorporates *§ 16(b) of the Fair Labor Standards Act* into its enforcement scheme, the same rules govern judicial management of collective actions under both statutes. *See, e.g.,*

*Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 147 (4th Cir. 1992).*

[*5]

> 3   Plaintiffs define BSEs to include Business Systems Consultants levels 2 through 6; e-Business Systems Consultants levels 2 through 6 and Business Systems Analysts. According to Defendants, there has been no job title in the relevant time period called Business Systems Analysts. Defendants also note that BSE is a job classification invented by Plaintiffs, which does not exist.

### DISCUSSION

#### I. *Hoffmann-La Roche* Notice

As noted above, the FLSA provides for a collective action where the complaining employees are "similarly situated." *29 U.S.C. § 216(b)*. But the FLSA does not define "similarly situated," nor has the Ninth Circuit defined it. As noted by the Tenth Circuit, there is little circuit law defining "similarly situated." *Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001)*.

Although various approaches have been taken to determine whether plaintiffs are "similarly situated," district courts in this circuit have used the *ad hoc*, two-tiered approach. *See Wynn v. National Broadcasting Co., Inc., 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)* [*6] (noting that the majority of courts prefer this approach); *see also Thiessen, 267 F.3d at 1102-03* (discussing three different approaches district courts have used to determine whether potential plaintiffs are "similarly situated".and finding that the *ad hoc* approach is arguably the best of the three approaches); *Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001)* (finding the two-tiered approach to certification of *§ 216(b)* opt-in classes to be an effective tool for district courts to use). Under this approach, the district court makes two determinations, on an *ad hoc*, case-by-case basis. The court first makes an initial "notice stage" determination of whether plaintiffs are similarly situated, determining whether a collective action should be certified for the purpose of sending notice of the action to potential class members. *See, e.g., Thiessen, 267 F.3d at 1102*. For conditional certification at this notice stage, the court requires little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single

decision, policy, [*7] or plan." *Id. at 1102.* The standard for certification at this stage is a lenient one that typically results in certification. *Wynn, 234 F. Supp. 2d at 1082.*

The second determination is made at the conclusion of discovery, usually on a motion for decertification by the defendant, utilizing a stricter standard for "similarly situated." *Thiessen, 267 F.3d at 1102.* During this second stage analysis, the court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit. *Id. at 1103.*

Although Defendants acknowledge that some courts have applied this two-stage analysis, they argue that the Court should consider *Rule 23* requirements for commonality. Plaintiffs' claim, however, is brought as a collective action under the FLSA, not as a class action under *Rule 23.* As noted in *Thiessen,* Congress chose not to apply the *Rule 23* standards to collective actions under [*8] the ADEA and FLSA, and "instead adopted the similarly situated' standard. To now interpret this similarly situated' standard by simply incorporating the requirements of *Rule 23* . . . would effectively ignore Congress' directive." *267 F.3d at 1105. See also Wertheim v. Arizona, 1993 U.S. Dist. LEXIS 21292, 1993 WL 603552, *1 (D. Ariz. Sept. 30, 1993)* ("The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under *Rule 23 of the Federal Rules of Civil Procedure.* All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.") (citations omitted). To determine whether potential plaintiffs are similarly situated and whether notice is appropriate, the Court will apply the two-tiered approach.

As noted above, the standard for certification at the notice stage is a lenient one. Plaintiffs meet their burden of showing that all BSEs are similarly situated with respect to [*9] their FLSA claim: all BSEs share a job description, were uniformly classified as exempt from overtime pay by Defendants and perform similar job duties. Defendants do not dispute that Plaintiffs meet

their burden under this lenient standard.

Instead, Defendants argue that this motion should be decided under the stricter second stage analysis. According to Defendants, extensive discovery has been conducted: Plaintiffs have received over 40,000 pages of documents in response to 116 requests and have deposed sixteen witnesses. Defendants contend that the evidence [4] shows that BSEs are not similarly situated: they are more than 2,500 white-collar employees who work in widely varying jobs in thirty-eight States and in multiple lines of businesses. Business Systems Consultants levels two and three are overtime-exempt, have salaries starting at $ 43,1000, and are not bonus-eligible; Business Systems Consultants levels four through six have salaries ranging up to $ 112,500 and are bonus-eligible; level 6 even includes a Corporate Vice President. Defendants further argue that the employees at issue are subject to every permutation of the executive, administrative, professional and computer [*10] professional exemptions, and therefore a conditional class will not promote judicial efficiency.

> [4] Part of the evidence Defendants rely upon is thirty-nine declarations from its employees, all of whom are potential collective action members. Plaintiffs move to strike these declarations, arguing that they were obtained improperly and in violation of the California Rules of Professional Conduct; in addition, Plaintiffs argue that the declarations should be excluded because Defendants failed to disclose them in their discovery responses. Plaintiffs' motion to strike is denied as moot. Plaintiffs meet their burden at the notice stage, and thus the Court need not consider the declarations at this time.

Defendants cite *Pfohl v. Farmers Ins. Group, 2004 U.S. Dist. LEXIS 6447, 2004 WL 554834, *3 (C.D. Cal. Mar. 1, 2004),* to support their argument that the Court can, and should, proceed to the second stage of the two-tiered analysis. In *Pfohl,* the court proceeded directly to the second stage and weighed relevant factors to [*11] determine whether the plaintiffs there were similarly situated. But, before proceeding to the second stage, the court noted that "the parties did not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action." *Id.* Here, although volumes of paper have been produced and over a dozen witnesses deposed, Plaintiffs state that discovery is

nowhere near complete. After filing their reply, Plaintiffs submitted additional relevant information, which Defendants had only recently produced. Even Defendants do not contend that discovery on the issue of certification is complete; Defendants only contend that discovery has been extensive and that additional discovery will not change the facts or analysis that BSEs are not similarly situated.

To apply the second-tier heightened review at this stage would be contrary to the broad remedial policies underlying the FLSA. In *Thiessen*, the district court conditionally certified the class "during the course of discovery"; it was only at the conclusion of discovery that the court applied the heightened second-tier review. *267 F.3d at 1103*. This Court, too, will conditionally [*12] certify the collective action for the purpose of sending notice of the action to potentially similarly situated employees. After discovery is complete, Defendants can move for decertification, and the Court will then apply the heightened second-tier review.

A. Proposed Notice and Opt-in Form

Although the Court conditionally certifies the collective action, it does not approve the notice and opt-in form Plaintiffs prepared. Nor does the Court approve the notice and opt-in form Defendants prepared.

Defendants' proposed "Responsibility For Costs and Fees" section could be misleading; potential plaintiffs could believe that, if Defendants prevail, plaintiffs will have to pay Defendants' attorneys' fees. Any language in the notice regarding Defendants obtaining "an award of costs to be paid by the individual Plaintiffs" must define those costs and be clear that potential plaintiffs will not bear the burden of paying Defendants' attorneys' fees should Defendants prevail.

Defendants' description of the lawsuit, consisting of four sentences, is not adequate. As Plaintiffs note, potential collective action members are entitled to receive "accurate and timely notice concerning the pendency [*13] of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche, 493 U.S. at 170*. It would be difficult to make an informed decision on the limited information Defendants provide. Plaintiffs' description of the lawsuit, however, is one-sided and argumentative. Although Plaintiffs do use the word "allege," they use it only once in the beginning of each paragraph. The

description fails to note that Defendants deny they have violated the law.

The Supreme Court has instructed, "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id. at 174*. Defendants' notice and form, though inadequate, are neutral. Plaintiffs note that the Court has taken no position on the case, but they do so in a single sentence seemingly tacked onto the end of the notice. Plaintiffs' form has a Court caption, which as Defendants note could be perceived as a judicial endorsement of this action; the caption should be omitted.

[*14] Plaintiffs' proposed 120 day deadline for potential class members to file their consents is too long; Defendants' proposed thirty day deadline is too short. In *Reab v. Electronic Arts, Inc., 214 F.R.D. 623, 632 (D. Colo. 2002)*, the court approved a sixty day opt-in period. The Court sets a seventy-five day deadline. The "Further Information" section approved in *Reab* is preferable to either party's proposed "Further Information" section. [5] Defendants are aware of their ethical duties, as well as the California Rules of Professional Conduct, which they must obey if they are contacted by potential plaintiffs seeking further information.

5  The approved section in *Reab* is as follows:

Further Information

Further information about this Notice, the deadline for filing a "Consent to Become A Party Plaintiff" or questions concerning this lawsuit may be obtained by writing, phoning or e-mailing Plaintiffs' counsel, James Schmehl, at Schmehl, Yowell & Mackler, P.C., at: [TO BE PROVIDED BY COUNSEL], or Defendants' counsel, Victor Schachter and Daniel McCoy, at Fenwick & West LLP, (650)494-0600, vschachter@fenwick.com, dmccoy@fenwick.com.

Id.

[*15] The forms should be returned to a third-party claims administrator, not to the Clerk of the Court. The form should not contain a space for potential plaintiffs to check whether they want to be represented by Plaintiffs' counsel, by their own retained counsel or by themselves.

### B. Equitable Tolling for Potential Plaintiffs

The FLSA statute of limitations runs until a valid consent is filed. *29 U.S.C. § 256(b)*; *Partlow v. Jewish Orphans' Home, Inc., 645 F.2d 757, 760 (9th Cir. 1981)*, abrogated on other grounds by *Hoffmann-La Roche, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480*. Plaintiffs request that the Court equitably toll the limitations period on the claims of the FLSA collective action members from the date that the Complaint was filed on February 9, 2005, through the Court-set deadline for receipt of consents. They argue that equitable tolling is warranted because similarly situated plaintiffs, through no fault of their own, have been unable to opt in to, or even learn of, the lawsuit. Defendants refuse to produce contact information for potential collective action members, which, Plaintiffs claim, prevents Plaintiffs and their counsel [*16] from informing similarly situated potential plaintiffs about this case and their right to opt in.

But, as Defendants note, the two cases Plaintiffs cite to support equitable tolling are distinguishable. In *Partlow*, the Ninth Circuit held that the district court could toll the statute of limitations under the FLSA for forty-five days to permit the class members who had earlier filed invalid consents, due to Plaintiffs' counsel's error, to execute proper consents. Although this holding was based largely on the court's finding that "it would simply be improper to deprive the consenting employees of their right of action," the court also pointed out that the defendant was notified of the claims of the consenting employees within the statutory period because they had filed the improper consents. *645 F.2d at 761*. In *Owens v. Bethlehem Mines Corp., 630 F. Supp. 309, 313 (W.D. Va. 1986)*, the court, relying on *Partlow*, found that equitable tolling was warranted because it had delayed ruling on the plaintiffs' certification motion for over a year.

In their reply, Plaintiffs do not address Defendants' argument that the cases they cited were inapposite. [*17] Instead, Plaintiffs cite a new case where the defendant refused to provide contact information for former employees and the district court granted equitable tolling. *See Baldozier v. Am. Family Mut. Ins. Co., 375 F. Supp. 2d 1089, 1093 (D. Colo. 2005)*. Nonetheless, the Court finds that, under the law of this circuit, equitable relief is not proper in this case.

### II. Corrective Notice

After this action was filed, Defendants instructed their employees to retain documents relating to their work. A document pertaining to this litigation (the Q&A document) was attached to the document retention instructions sent to managers and employees, some of whom were potential plaintiffs. Defendants state that approximately one hundred out of 2,600 BSEs received the Q&A document. Plaintiffs contend that the document was widely disseminated and that hundreds or thousands of potential collective action members were exposed to the information contained in the Q&A document. According to Plaintiffs, the Q&A document, which answers such questions as, "Who is being sued," "What does she want," "If I want to participate in the lawsuit, will that affect my job," "Why do I have to save [*18] documents," and "Can I trust the lawyers who are suing Wells Fargo," contains misleading, deceptive and coercive statements. *See Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 668 (2003)* (recognizing that statements in a letter, encouraging potential class members not to join a class action, sent from an employer to its employees have heightened potential for coercion based on the employer-employee relationship). Plaintiffs request that the Court allow Plaintiffs to issue a corrective notice containing Plaintiffs' answers to the questions posed by the Q&A document. In addition, Plaintiffs request that the Court prevent Defendants from communicating with potential and actual plaintiffs concerning this litigation and require Defendants to identify each individual who received the Q&A document and describe in detail all communications with any potential collective action member related to the Q&A document.

As Plaintiffs acknowledge in their reply, however, pre-certification communications with potential collective action members are generally permitted. *See Gulf Oil v. Bernard, 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981)*. In *Gulf Oil*, the Supreme Court noted that an order [*19] preventing counsel from communicating with potential class members "involved serious restraints on expression." *452 U.S. at 104*. Thus, an order limiting communications between parties and potential collective action members "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of

the parties." *Id. at 101.* While finding that a district court cannot issue an order prohibiting communication between potential plaintiffs and counsel based on the mere possibility of abuse, the Court recognized that district courts have "both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id. at 100.*

Plaintiffs cite several cases where district courts have employed their broad authority to remedy improper communications and ordered that corrective notices be sent and prohibited future communication. Plaintiffs contend that this case is directly analogous to *Pollar v. Judson Steel Corp., 1984 U.S. Dist. LEXIS 19765 (N.D. Cal. Feb. 3, 1984).* After [*20] finding that improper pre-certification communications caused confusion concerning potential class members' rights, the court in *Pollar* prohibited the defendants from further communication with any class member on issues related to the litigation, ordered the defendants to turn over to class counsel all written communications from potential class members and ordered the defendants to pay for corrective notice. But, as Defendants point out, the defendants in *Pollar* caused confusion concerning potential members' rights by running advertisements in newspapers regarding an affirmative action program for women, without disclosing the existence of the class action litigation. Here, the Q&A document discloses the litigation, albeit in an allegedly misleading and coercive fashion.

*Mevorah v. Wells Fargo Home Mortgage, Inc., 2005 U.S. Dist. LEXIS 28615 (N.D. Cal. Nov. 17, 2005),* another case Plaintiffs cite from this district, is also distinguishable. [6] In *Mevorah,* the defendants' counsel contacted potential class members, interviewed them and then attempted to obtain depositions from them, without informing them that these depositions might be adverse to their [*21] interests. In addition, the defendants' counsel mischaracterized the litigation, giving potential class members the mistaken impression that if the lawsuit were successful they would no longer receive commissions and instead would be paid an hourly wage. Here, although the answer to at least one hypothetical question in Defendants' Q&A document does not actually answer the question, Defendants do not mischaracterize the litigation. Furthermore, as Defendants note, in *Mevorah,* a potential class member submitted a declaration that she agreed to be interviewed by defense counsel because she was misled into believing that she

would lose her commissions if the lawsuit was successful. Despite being provided the opportunity to do so, Plaintiffs have not deposed any of the potential collective action members who received the Q&A document to determine whether they were misled or coerced.

> 6  As Plaintiffs note, Defendants' argument that Plaintiffs cannot rely on this case because a notice of appeal was filed on December 14, 2005, is not supported by the case Defendants cite.

[*22] The Court finds that the Q&A document is not sufficiently misleading or coercive to justify the relief sought. It informs potential collective action members that it is their decision whether to speak to any lawyer that contacts them and that, if they decide to speak to Plaintiffs' attorneys, they will not be retaliated against. It reiterates that their jobs will not be affected by participating in the lawsuit or by speaking to Plaintiffs' counsel. As Defendants note, there is nothing improper about telling potential collective action members, at this point in the litigation, to speak with their manager or an HR representative if they want to learn more about the lawsuit. *See Parks v. Eastwood Ins. Servs., Inc., 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002)* (finding that sending an internal memorandum to employees, before the employees opted in to the collective action, which discussed the litigation and suggested that employees direct questions to the employer's general counsel, was permissible). And, like the memorandum in *Parks,* the Q&A document does not give legal advice, does not suggest retaliation if employees opt in, and does not undermine any notice given [*23] by the Court. *Id.*

The Court finds insufficient justification to prohibit Defendants from contacting potential collective action members; nor does the evidence justify a finding that Defendants violated the California Rules of Professional Conduct or the Business and Professions Code by sending the Q&A document. Because the Q&A document was not inherently misleading or coercive, and in light of the *Hoffmann-La Roche* notice that will be sent to potential collective action members, the Court finds that sending the corrective notice prepared by Plaintiffs is not necessary. Plaintiffs' motion for a corrective notice is denied.

CONCLUSION

For the foregoing reasons, the Court GRANTS IN

2006 U.S. Dist. LEXIS 24823, *23

PART Plaintiffs' Motion for Approval of *Hoffmann-La Roche* Notice (Docket No. 45) and DENIES it IN PART. The Court conditionally certifies the class of BSEs so that notice may be sent and authorizes Plaintiffs to send notice to prospective collective action members; however, the Court does not approve the notice and form prepared by Plaintiffs or the alternative notice and form prepared by Defendants. The Court has prepared a notice and form for the parties to use, unless they are able to agree [*24] on an alternative notice and form within ten days of this order. Defendants will produce to Plaintiffs' counsel the names, addresses, alternative addresses, and all telephone numbers, [7] in Microsoft Excel format, of all BSEs, within ten days of this order. The Court will not equitably toll the limitations period on the claims of the FLSA collective action members from the date that the Complaint was filed on February 9, 2005, through the Court-set deadline for receipt of consents. The Court DENIES Plaintiffs' Motion for Corrective Notice (Docket No. 114). Defendants' Motion to strike portions of the

Goldman declaration and to strike portions of Plaintiffs' motion for notice (Docket No. 72) and Plaintiffs' Motion to Strike Defendants' Declarations of Potential Class Members (Docket No. 93) are also DENIED. [8]

[7] Plaintiffs' request for the BSEs' social security numbers is denied.

[8] To the extent that the Court relied upon evidence to which there is an objection, the parties' objections are overruled. To the extent that the Court did not rely on such evidence, the parties' objections are overruled as moot.

[*25] IT IS SO ORDERED.

Dated: March 28, 2006

CLAUDIA WILKEN

United States District Judge

2 of 4 DOCUMENTS

**GABE BEAUPERTHUY, et al. on behalf of themselves and all others similarly situated, Plaintiffs, v. 24 HOUR FITNESS USA, INC., a California corporation d/b/a 24 Hour Fitness; SPORT AND FITNESS CLUBS OF AMERICA, INC., a California corporation d/b/a 24 Hour Fitness, Defendants.**

No. 06-0715 SC

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2007 U.S. Dist. LEXIS 21315*

March 6, 2007, Decided
March 6, 2007, Filed

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part *Beauperthuy v. 24 Hour Fitness USA, Inc., 2007 U.S. Dist. LEXIS 66030 (N.D. Cal., Aug. 28, 2007)*

**PRIOR HISTORY:** *Beauperthuy v. 24 Hour Fitness USA, Inc., 2006 U.S. Dist. LEXIS 88988 (N.D. Cal., Nov. 28, 2006)* .

**COUNSEL:** [*1] For Gabe Beauperthuy, individually and on behalf of all others similarly situated specifically referenced herein, Michael Chalmers, individually and on behalf of all others similarly situated specifically referenced herein, Alexis Covarrubias, individually and on behalf of all others similarly situated specifically referenced herein, John Davidsson, individually and on behalf of all others similarly situated specifically referenced herein, Lindsay D'errico, individually and on behalf of all others similarly situated specifically referenced herein, Bobby De Soto, individually and on behalf of all others similarly situated specifically referenced herein, Jason A. Digennaro, individually and on behalf of all others similarly situated specifically referenced herein, Lawrence O'Neill Dickerson, individually and on behalf of all others similarly situated specifically referenced herein, Anne Dillon, individually and on behalf of all others similarly situated specifically reference herein, Nathaniel Fennell, individually and on behalf of all others similarly situated specifically reference herein, Kelly Fennelly, individually and on behalf of all others similarly situated specifically

reference [*2] herein, Antoinette Fiedler, individually and on behalf on all others similarly situated specifically referenced herein, Corey Fobes, individually and on behalf of all others similarly situated specifically referenced herein, Patrick A. Frey, individually and on behalf of all others similarly situated specifically referenced herein, Heidi Gabalski, individually and on behalf of all others similarly situated specifically referenced herein, David L. Guy, individually and on behalf of all others similarly situated specifically referenced herein, Nathaniel Hoelk, individually and on behalf of all others similarly situated specifically referenced herein, Garrett Hopkins, individually and on behalf of all others similarly situated specifically referenced herein, Goreal Hudson, individually and on behalf of all others similarly situated specifically referenced herein, David Kaipi, individually and on behalf of all others similarly situated specifically referenced herein, Quin Kaplan, individually and on behalf of all others similarly situated specifically referenced herein, Sean W. Lee, individually and on behalf of all others similarly situated specifically referenced herein, Brian Harrington [*3] Lewis, individually and on behalf of all others similarly situated specifically referenced herein, Kristopher Michael Martino, individually and on behalf of all others similarly situated specifically referenced herein, Danual Meyers, individually and on behalf of all others similarly situated specifically referenced herein, Jude M. Montoya, individually and on behalf of all others similarly situated specifically referenced herein, James Edward Morey,

Case 4:07-cv-03993-CW    Document 49    Filed 08/21/2008    Page 13 of 67

Page 2
2007 U.S. Dist. LEXIS 21315, *3

individually and on behalf of all others similarly situated specifically referenced herein, John Nesmith, individually and on behalf of all others similarly situated specifically referenced herein, Andrew W. Newcomb, individually and on behalf of all others similarly situated specifically referenced herein, Brandon F. Neil, individually and on behalf of all others similarly situated specifically referenced herein, James L. Ogden, individually and on behalf of all others similarly situated specifically referenced herein, Steve Orrico, individually and on behalf of all others similarly situated specifically referenced herein, Annie Ostolasa, individually and on behalf of all others similarly situated specifically referenced herein, Ryan [*4] Parker, individually and on behalf of all similarly situated specifically referenced herein, Timothy F. Paudler, individually and on behalf of all others similarly situated specifically referenced herein, Kyle Phillips, individually and on behalf of all others similarly situated specifically referenced herein, Matthew Popelka, individually and on behalf of all others similarly situated specifically referenced herein, Sabrina Priesman, individually and on behalf of all others similarly situated specifically referenced herein, William E. Rainaldo, Jr., individually and on behalf of all others similarly situated specifically referenced herein, Alfred Ra'oof, individually and on behalf of all others similarly situated specifically referenced herein, James Reed, individually and on behalf of all others similarly situated specifically, referenced herein, Danielle Relph, individually and on behalf of all others similarly situated specifically referenced herein, Matthew Reitter, individually and on behalf of all others similarly situated specifically referenced herein, Anthony Romeo, individually and on behalf of all others similarly situated specifically referenced herein, Chad V. Ruf, individually and on [*5] behalf of all others similarly situated specifically referenced herein, Adam Sherrill, individually and on behalf of all others similarly situated specifically referenced herein, Evan Sooper represented, individually and on behalf of all others similarly situated specifically referenced herein, Kimberly S. Struble, Individually and on behalf of all others similarly situated specifically referenced herein, Rebecca L. Tobin, individually and on behalf of all others similarly situated specifically referenced herein, John Udden, individually and on behalf of all others similarly situated specifically referenced herein, Jason Valley, individually and on behalf of all others similarly situated specifically referenced herein, Adam L. Vest, individually and on behalf of all others similarly situated specifically

referenced herein, Christopher Vincent, individually and on behalf of all others similarly situated specifically referenced herein, Mark White, individually and on behalf of all others similarly situated specifically referenced herein, David Wood, individually and on behalf of all others similarly situated specifically referenced herein, Joshua Woodson, individually and on behalf [*6] of all others similarly situated specifically referenced herein, Plaintiffs: Thomas G. Foley, Jr., LEAD ATTORNEY, Philip D. Dracht, Foley Bezek Behle & Curtis, LLP, Santa Barbara, CA, U.S.; Richard E. Donahoo, Santa Ana, CA.

For 24 Hour Fitness USA, Inc., a California corporation doing business as 24 Hour Fitness Defendant: Henry D. Lederman, Littler Mendelson, P.C., Walnut Creek, CA.; Lisa Chagala, Littler Mendelson, San Francisco, CA.

**JUDGES:** Samuel Conti, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Samuel Conti

**OPINION**

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR FACILITATED NOTICE PURSUANT TO *29 U.S.C. § 216(b)*1. **INTRODUCTION**

Before the Court is a Motion by Plaintiffs Gabe Beauperthuy et al. ("Plaintiffs") for Facilitated Notice Pursuant to *29 U.S.C. § 216(b)*. The Motion seeks conditional certification of a Fair Labor Standards Act (FLSA) collective action, a tolling of the applicable statute of limitations, approval of their proposed optin notice form, and an order granting them limited related discovery. Defendants 24 Hour Fitness USA, Inc. et al. ("24 Hour Fitness" or "Defendants") have opposed [*7] the Motion. For the following reasons, the Motion is GRANTED in part and DENIED in part.

**II. BACKGROUND**

The Court's April 11, 2006 Order Denying Defendants' Motion to Dismiss and Granting Defendants' Motion for a More Definite Statement discussed the substance of the underlying dispute between the parties. Familiarity with it is assumed. The following, in part, reiterates the Background section of the Court's Order Denying Defendants' Motion to Require Amendment of

Pleadings by Plaintiff.

This case first came before the Court on February 1, 2006. See Docket No. 1. However, two prior related actions, one initiated in 2003 and the other in 2004, are relevant to the resolution of the instant motion.

**Boyce Federal Action**

The first of the related actions was a case filed on October 29, 2003 in the Southern District of California, Boyce v. Sports and Fitness Clubs of America, No. 03-CV-2140 (S.D. Cal.), alleging various violations of California and federal law ("Boyce"). See Boyce Docket No. 1. [1] Boyce was brought as a "class action" under both the FLSA and *Federal Rule of Civil Procedure 23.* Id. [*8] at 3. The caption of the complaint lists as plaintiffs "Robert L. Boyce, Jr. and Stephanie Shelter, individuals for themselves, on behalf of all others similarly situated and on behalf of the general public." *Id.* at 1.

> 1   The Court hereby takes judicial notice of the filings and orders in the Boyce action. Citations to these filings and orders will be in the following form: "Boyce Docket No. # #." According to a declaration filed in Boyce by counsel for Plaintiffs in the instant action, the first filed complaint in the consolidated action which became Boyce was Levine et al. v. 24 Hour Fitness USA, Inc., et al., No. 02CC00386 filed in the Orange County Superior Court on December 31, 2002. See Boyce Docket No. 104, P 29.

On October 13, 2004, the Boyce plaintiffs filed a motion for conditional certification of an FLSA collective. See Boyce Docket No. 49. The Boyce motion for conditional certification contains roughly the same allegations as Plaintiffs' instant Motion and seeks [*9] to cover roughly the same persons. See id.; Motion. The important difference between the two is that the instant Motion seeks certification of a class limited to qualifying persons employed by 24 Hour Fitness not in California, see Motion, while the Boyce motion contains no such geographic limitation. See Boyce Docket No. 49. The Boyce court never ruled on the motion for conditional certification because the plaintiffs withdrew the motion before a ruling after reaching settlement with 24 Hour Fitness. See Boyce Docket No. 83. Circumstances surrounding the settlement of the Boyce action and the terms of the settlement are discussed below.

Allen Arbitration - Part 1

On July 2, 2004, approximately six months after the complaint in Boyce was filed, another group of 24 Hour Fitness employees initiated a "class action" arbitration against 24 Hour Fitness at the American Arbitration Association ("AAA"), titled Allen et al. v. Sport and Fitness Clubs of America, et al. (AAA Case No. 11-160-03041-04), alleging violations of the California Labor Code ("Allen"). See Foley Decl., Ex. 4. According to Plaintiffs' Opposition to Defendants' More [*10] Motion for a Definite Statement, the Allen claimants are coextensive with Plaintiffs in the instant action, and were represented by the same counsel. See Opposition to Defendants' Motion for a Definite Statement.

After its initiation, the Allen matter bounced between the AAA and the Los Angeles Superior Court for over a year. The AAA initially refused to hear the matter because it has a policy against hearing class actions without a court order appointing them to do so. In response, on November 4, 2004, 24 Hour Fitness filed a petition in Superior Court to compel arbitration with certain putative members of the class, on an individual basis. See Defendants' Request for Judicial Notice ("DRJN"), Ex. A. The Superior Court granted the petition on December 17, 2004. See id., Ex. B.

**Boyce Settlement Mediation**

Soon after the Superior Court issued its ruling compelling arbitration with certain Allen claimants on an individual basis, a mediation was held to settle the Boyce matter, to which 24 Hour Fitness invited both the attorneys for the Boyce plaintiffs ("Boyce Attorneys") and the attorneys for the Allen claimants, and now Plaintiffs ("Allen [*11] Attorneys"). See Boyce Docket No. 104. The result appears to have been a situation wherein the Boyce Attorneys and the Allen Attorneys fought one another for the attentions of 24 Hour Fitness; the Boyce Attorneys ultimately prevailed. See Id.

According to the Allen Attorneys, on December 17, 2004, 24 Hour Fitness invited both sets of attorneys to a settlement mediation scheduled for January 18 and 19, 2005 in San Francisco. Id., P 10. The Allen Attorneys agreed to attend only after 24 Hour partially mitigated their initial objection to attending on the grounds that they had inadequate information from which to properly make damages evaluations for settlement. Id., P 12. However, once the Allen Attorneys arrived, they were

excluded from the mediation sessions, apparently because of opposition to their attendance on the part of the Boyce Attorneys. Id., PP 13.

Undeterred, and apparently with assurances from 24 Hour Fitness that they would be allowed some sort of participation, the Allen Attorneys continued to "hang out" at the mediation site for four days, but were never allowed to participate in the mediation. Id., PP 13-16. At [*12] one point on the fourth day, January 21, 2004, the Allen Attorneys and Boyce Attorneys discussed cooperating but could not reach an agreement, particularly as it related to fees. Id., P 17. Finally, at one point that day, counsel for 24 Hour Fitness informed the Allen Attorneys he was making progress negotiating a settlement with the Boyce Attorneys, and that the Allen Attorneys' "presence was no longer necessary." Id., P 20.

Allen Arbitration Part 2

On January 20, 2005, the Allen claimants, in apparent response to their exclusion from the settlement mediation, submitted a Second Amended Statement of Claim to the AAA which added collective claims under the FLSA. See Foley Decl., Ex. 9. On March 1, 2005, 24 Hour Fitness responded by filing a motion in Superior Court to stay the Allen arbitration. See Boyce Docket No. 104, Ex. 9. The motion argued the Allen arbitration should be stayed because the pending settlement of the Boyce action "would provide a remedy to the very classes [the Allen claimants] now purport to represent." Boyce Docket No. 104, Ex. 9. On March 9, 2005, the Superior Court denied the motion. See id. [*13] , Ex. 11.

Final Settlement of the Boyce Litigation

On April 22, 2005, 24 Hour Fitness and the plaintiffs in Boyce submitted a joint application for approval of settlement. See Boyce Docket No. 84. The application proposed dividing a total of $ 38 million between four classes of 24 Hour Fitness' current and former employees in the following manner: "$ 12.4 million to the Managers Class, $ 4.6 million to the Commission Class, $ 1.5 million to the Uniform Class, and $ 19.5 million to the Hourly Class." Id. at 8. Membership in all four classes was limited to persons who were working in qualifying positions for 24 Hour Fitness "in the state of California," during designated periods. Id. at 9, 10, 11 (emphasis added). [2] The designated periods were: for the Managers Class, December 31, 1998 through date of the order approving the settlement, id. at 9.; for the Commission

class, the same, id.; for the Uniform Class, May 11, 2000 through date of the order approving the settlement, id. at 10; for the Hourly Class, October 29, 1999 through date of the order approving the settlement. Id. at 11.

> [2]  The proposed settlement agreement also included settlement, on an individual basis, of four non-California employees who had already joined the Boyce action. See Boyce Docket No. 85 at 26.

[*14] On May 19, 2005, the Allen claimants made a motion in the Boyce action to stay the action pending arbitration or in the alternative to intervene. See Boyce Docket No. 103. The motion was based almost entirely on the grounds that approving the proposed settlement would infringe on the Allen claimants' right to resolve their claim against 24 Hour Fitness through arbitration. See id.

On October 31, 2005, the Boyce court denied the Allen claimants' motion to stay or intervene, see Boyce Docket No. 181, and conditionally approved the proposed settlement as described above. See Boyce Docket No. 180. On January 24, 2006, the court issued its final approval of the settlement. See Boyce Docket No. 204.

Allen Arbitration Part 3

During the period in which the Boyce settlement made its way towards final approval, the Allen arbitration stumbled along.

On April 13, 2005, the AAA ruled that a provision in the Arbitration Agreement purporting to forbid arbitration of class claims was unconsionable. See Lederman Decl., Ex. A. 24 Hour Fitness successfully petitioned the Superior Court to vacate this ruling. See Defendants' Request for [*15] Judicial Notice, Ex. C. In the face of this ruling and 24 Hour Fitness's refusal to consent to arbitration of Plaintiffs' FLSA collective claim, on September 19, 2005, the arbitrator dismissed without prejudice the FLSA portion of Plaintiffs' amended claim. See Foley Decl., Ex. 12. The arbitrator did so, specifically, on the grounds that the proceedings before him had been initiated pursuant to an ad hoc agreement between the parties which had only referred to individual and class action claims by the claimants, not to any collective claim under the FLSA. Id.

Following the arbitrator's decision, the attorney for

the Allen claimants requested that 24 Hour Fitness consent to arbitration of their collective claim. See Foley Decl., Ex. 13. 24 Hour Fitness initially responded with requests for additional information. See id., Exs. 14-19. Then, in an email from Defendants' counsel dated January 23, 2006, 24 Hour Fitness refused the request, stating that Plaintiffs' collective claim was a class action claim, which "are impermissible under the arbitration you seek to enforce," and that the provision in the arbitration agreement which so provides "is not unconscionable. [*16] " Id., Ex. 20.

Instant Action

On February 1, 2006, Plaintiffs filed the instant action. See Docket No. 1. The Complaint roughly mimics the complaint in Boyce, but its FLSA collective claims specifically exclude from their coverage the claims of any 24 Hour Fitness employee whose claim was subject to the release of claims in Boyce or various other related actions which are listed. Id. at 19. In light of the settlement terms in Boyce, the collective class proposed by the Complaint is one comprised of certain persons who have worked for 24 Hour Fitness in states other than California. See id.; Boyce Docket No. 84.

24 Hour Fitness filed a motion to dismiss on February 21, 2006, which argued principally that Plaintiffs' FLSA collective claim should be dismissed on the grounds that agreements to arbitrate exist between the parties. See Defendants' Motion to Dismiss. Defendants, however, explicitly declined to request the Court to compel arbitration, arguing that if the Court did so, it would be "highly inconvenient for the parties." Id. at 22. Rather, Defendants suggested, the Court should dismiss Plaintiffs' FLSA collective claim and Rule 23 class [*17] action claim, and each Plaintiff should individually compel arbitration. Id. at 23.

The Court denied Defendants' motion to dismiss but granted Defendants' alternative motion for a more definite statement. See Order Denying Defendants' Motion to Dismiss ("Order Denying Defendants' Motion"). In its Order, the Court noted that "Plaintiffs had consistently sought to arbitrate these claims." Id. at 5. Thus, it was "puzzling," in light of the law, that 24 Hour Fitness would choose to make a motion to dismiss, which was clearly barred by Plaintiffs' colorable arguments against the enforceability of the Arbitration Agreement, instead of compelling arbitration. Id. at 5-6.

On June 16, 2006, a status conference was held before the Court. Following the conference, the Court ordered the "[p]arties to either file a Motion to Compel Arbitration or a Motion to Certify the Class." Docket No. 42. The Order further granted "Plaintiffs' request to proceed with limited discovery for the Class Certification Motion." Id.

On November 28, 2006, this Court denied a motion by 24 Hour Fitness for an order requiring Defendants to amend their pleadings. See Docket No. 66. In this Order, [*18] the Court further held that 24 Hour Fitness had waived any right to make any argument on the basis of the existence of an arbitration agreement between 24 Hour Fitness and any of the Plaintiffs. See id.

Plaintiffs filed the instant Motion on December 8, 2006. See Docket No. 69. On January 11, 2007, the Court granted 24 Hour Fitness' motion for leave to file a surreply. See Docket No. 114.

III. DISCUSSION

A. Conditional Certification

Plaintiffs have requested that the Court conditionally certify an omnibus class consisting of three subclasses: a "Managers' Class"; a "Commission-Based Class"; and an "Hourly Employees" class. Reply at 5-7. For the following reasons the Court conditionally certifies only the Managers' Class.

1. Legal Standard

Section 16(b) of the FLSA provides employees with a private right of action to sue an employer for violations of the Act "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The latter sort of action, often referred to as a "collective action," works somewhat differently than Rule 23 class action: an employee who wishes to join an FLSA [*19] collective action must affirmatively opt-in by filing a written consent to join in the court where the action was brought. Id.

In Hoffman-La Roche Inc. v. Sperling, the Supreme Court recognized the discretion of district courts to facilitate the process by which potential plaintiffs are notified of FLSA collective actions into which they may be able to opt. 493 U.S. 165, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989). [3] Building on this, a majority of

courts, including district courts in the 9th Circuit, have adopted a two-stage certification procedure. See, e.g., *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *Wynn v. National Broadcasting Co.*, 234 F. Supp. 2d 1067, 1082-84; *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001). At the first stage, the district court approves conditional certification upon a minimal showing that the members of the proposed class are "similarly situated"; at the second stage, usually initiated by a motion to decertify, the court engages in a more searching review. *Leuthold*, 224 F.R.D. at 467.

> 3 Sperling addressed a collective action brought under the Age Discrimination in Employment Act, which, the Court recognized, incorporates § 16(b) of the FLSA. 493 U.S. 165, 110 S. Ct. at 486.

[*20] The FLSA does not define "similarly situated," and the 9th Circuit has not spoken to the issue. The Supreme Court, in *Sperling*, also left the term undefined, but indicated that a proper collective action encourages judicial efficiency by addressing in a single proceeding claims of multiple plaintiffs who share "common issues of law and fact arising from the same alleged [prohibited] activity." *493 U.S. 165, 110 S. Ct. at 486.* This has been distilled by courts into a requirement that a proponent for conditional certification present the court with "nothing more than substantial allegations that a putative class members were together the victims of a single decision, policy, or plan." *Thiessen 267 F.3d at 1102* (internal quotations omitted); see also, e.g., *Gerlach v. Wells Fargo & Co.*, No. C 05-0585, 2006 U.S. Dist. LEXIS 24823, 2006 WL 824652, *2 (N.D. Cal. March 28, 2006).* Given that a motion for conditional certification usually comes before much, if any, discovery, and is made in anticipation of a later more searching review, a movant bears a very light burden in substantiating its allegations at this stage. See, e.g., *Aguayo v. Oldenkamp Trucking*, No. 04-6279, 2005 U.S. Dist. LEXIS 22190, 2005 WL 2436477 [*21] (E.D. Cal. Oct. 3, 2005) (disregarding hearsay and foundational challenges to declarations submitted in support of motion for conditional certification); *Ballaris v. Wacker Silttronic Corp.*, No. 00-1627, 2001 U.S. Dist. LEXIS 13354, 2001 WL 1335809 (D. Or. Aug. 24, 2001) (granting motion for conditional certification on basis of two affidavits).

2. An Omnibus Class is Not Appropriate

As noted above, Plaintiffs describe three categories of employees which they argue should be conditionally certified as a single omnibus collective class: "Managers"; "Commission Based Employees"; and "Personal Trainers-Hourly Based Employees." Complaint at 16-18. However, Plaintiffs offer very little argument or evidence which demonstrates "a factual nexus which binds [putative members of the three categories] together as victims of an alleged policy or practice." *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802, 1999 U.S. Dist. LEXIS 18649, 1999 WL 1081357, *2 (D. Or. Dec. 1, 1999)* (internal quotation omitted).

Rather, Plaintiffs describe a different set of practices correlating to each of the three categories. Employees in the Managers category allegedly were misclassified as exempt and so denied overtime. See Motion [*22] at 16-17. Employees in the Commission Based Employees category allegedly were not allowed to submit all their hours for payment and were denied certain types of commissions. See id. at 17-18; Reply at 6-7. And employees in the Hourly category allegedly were not compensated for "time spent 'working the floor' and performing all of the tasks and duties ancillary to their work training clients." Motion at 19.

The Motion does not articulate what single decision, policy, or plan unifies the putative members of all three categories, see Motion, and the Reply all but concedes that none exist. See, e.g., Reply at 5-6 (referring to a "Managers' Class" and "Commission-Based Class"); 10 (identifying "common of questions of law and fact" which are relevant to putative members of the Managers category and other common questions of law and fact relevant to putative members of the other two categories, but making no attempt to identify common questions of law and fact relevant to all three). The Court is similarly incapable of conceiving on its own why judicial efficiency would be facilitated by adjudicating together, in a single proceeding, the claims of employees in all three of these [*23] categories, and so declines to do so.

3. A Managers Class is Appropriate for Conditional Certification

Notwithstanding the Court's finding that it would not be appropriate to adjudicate in a single proceeding the claims of putative members in all three categories, the Court finds that Plaintiffs have met their minimal burden to show that putative members of the Managers class are sufficiently similarly situated to qualify for conditional

certification as a collective class. [4]

4    In making this finding, the Court explicitly declines to address whether the putative members of the other two categories are similarly situated with other putative members of the same respective category or with putative members of the other category. It thus makes no finding as to whether it may, or may not, be appropriate for a court to conditionally certify a collective action consisting of employees which fall in one or both of these categories.

The FLSA requires employers to pay their employees time and one-half for [*24] any work in excess of forty hours in one week. *29 U.S.C. § 207(a)(1).* The Act provides an exemption to this requirement for certain types of employees, including those "employed in a bona fide executive, administrative, or professional capacity, . . . or in the capacity of outside salesman." *29 U.S.C. § 213(a).* But "[i]t is the burden of an employer to show entitlement to an exemption from the FLSA," and "FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1112 (9th Cir. 2001)* (internal quotations omitted).

The FLSA explicitly grants the Secretary of Labor the authority to promulgate regulations to define the exemptions listed in *Section 13*, id., and the Secretary has done so in 29 CFR § 541. *Section 541.100* describes four requirements that must be met for an employee to be properly defined as exempt under the Executive Exemption. *29 CFR § 541.1* These requirements include, in addition to a minimum wage, requirements that an employee classified [*25] as fitting within this exemption be one:

(2)Whose primary duty is management of the enterprise . . .;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees

are given particular weight.

Id.

Plaintiffs have submitted the affidavits of eleven former employees of 24 Hour Fitness who worked for the company over a number of years in several different states, outside of California, as General Managers, Operations Managers, and Fitness Managers. See Beauperthuy Decl. PP 10-18; Davidson Decl. PP 14- 20; DeSoto Decl. PP 19-26; Fennelly Decl. PP 15-38; Guy Decl. PP 13-24; Hudson Decl. PP 25-31; Mathews Decl. PP 25-35; Newcomb Decl. PP 14-25; Sherrill Decl. PP 1-12; Struble Decl. PP 3-16. [5] These declarations uniformly state: that declarants and others in these positions were designated as exempt and so were denied overtime; that this was done according to company policy; and that, pursuant to company policy, declarants and others in [*26] these positions were denied real management authority in a number of ways. See id. These qualify as substantial allegations that the policies and practices of 24 Hour Fitness as they relate to designation as exempt persons in these positions violates the FLSA. See *29 U.S.C. §§ 207, 213; 29 CFR § 541.1.* They are therefore sufficient to qualify for conditional certification a class consisting of persons who have worked for 24 Hour Fitness in states other than California in the positions of General Managers, Operations Managers, and Fitness Managers ("Managers Class") during the period described below.

5    Defendants have raised over three hundred objections to the declarations submitted by Plaintiffs, which generally allege hearsay and foundational defects. See Defendants' Evidentiary Objections to Plaintiffs' Declarations in Support of Motion for Facilitated Notice Pursuant to *29 U.S.C. § 216(b).* As the Court stated above, the Plaintiffs' burden at this stage of the proceedings is quite minimal, thus evidence which "may not be sufficient to carry the burden of proof at trial, . . . [may be] sufficient to carry the burden on this motion." *Aguayo, 2005 U.S. Dist. LEXIS 22190, 2005 WL 2436477, at *4.* Therefore, whatever shortcomings Plaintiffs' declarations have in the way of hearsay and foundation, if any, are not relevant to the Court's determination at this stage.

[*27] B. Tolling

Absent any decision by the Court to toll applicable statute of limitations' periods, the limitations period for each putative member of the conditionally approved collective class would be three years from the date he or she opted into the action. See *29 U.S.C. §§ 255(a), 256.* The statute, in other words, contains a look-back provision which limits to three years from opt-in how far back a plaintiff can look to find violations by their employer.

Plaintiffs request the Court toll the statute of limitations periods for all putative class members on both equitable and contractual bases. See Motion at 2. For the reasons set forth, the Court equitably tolls the statute of limitations to allow all Plaintiffs to sue for conduct which occurred any time after January 31, 1998.

1. Equitable Tolling

The Ninth Circuit has implied the doctrine of equitable tolling into the FLSA. *Partlow v. Jewish Orphans Home of Southern Cal., Inc. 645 F.2d 757, 760 (9th Cir. 1981)* (abrogated on other grounds by *Sperling, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480*); see *Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d 1129, 1140 (D. Nev. 1999)* [*28] (recognizing the implication).

Defendants argue that equitable tolling only applies in instances where delay has been caused by a plaintiff's "excusable ignorance of the statute of limitations." Opp'n at 21. This definition is too narrow.

> [E]quitable tolling concerns itself with the equities of dismissal for untimely filing caused by factors independent of the plaintiff. Accordingly, we must ask whether it would be unfair or unjust to allow the statute of limitations to act as a bar to [a plaintiff's] claim.

*Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1004 (9th Cir. 2006).* Thus, "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time," such as its excusable ignorance of the statute of limitations. *Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999)* (emphasis added); see also *O'Donnell v. Vencor, Inc., 465 F.3d 1063, 1068 (9th Cir. 2006)* (applying the doctrine when "defendants created the situation which impeded" the

[*29] plaintiff's filing of her claim).

Plaintiffs argue that the Court should grant equitable tolling because 24 Hour Fitness allegedly took actions "that have delayed and obstructed Plaintiffs having their claims heard in a collective action." Motion at 9. As Plaintiffs note, the Court in its November 28, 2006 Order referred to 24 Hour Fitness' "confusing, contradictory, and time-consuming strategic maneuvering." See Docket No. 66 at 10.

The Court, however, does not base its decision to toll the look-back period on the finding of any wrongdoing by 24 Hour Fitness. Rather, it does so because "it would be unfair or unjust to allow" persons employed by 24 Hour Fitness in California to collect damages for violations which occurred anytime between January 31, 1998 and October 31, 2005, while limiting other persons who happen to have been employed in states other than California to collect only for violations that occurred during a period that would begin, for most, more than five years later. [6] *Huynh, 465 F.3d at 1004.* This discrepancy would not be the result of any action by these Plaintiffs. Rather, it would be the result of the vagaries of the process by which the [*30] Boyce action was settled, the competition which occurred between Plaintiffs' attorneys and the Boyce Attorneys during settlement mediation, and other factors outside of these Plaintiffs' control. Indeed, several Plaintiffs who have already opted into the instant action attempted to participate in the settlement discussion during their tenure as Allen claimants. See Background Supra. It would be unfair and unjust to exclude these Plaintiffs and others similarly situated from the same opportunity to recover for violations as those whose interests were better served by other attorneys.

> [6]    If the Court did not toll the statute of limitations, putative members of the class who have not yet opted in would be limited to collecting for violations which occurred, at earliest, on March 6, 2004.

C. Form of Opt-In Notice and Related Discovery

Plaintiffs and 24 Hour Fitness have each submitted competing arguments and examples regarding how the opt-in notice should be drafted and how the opt-in process [*31] should proceed, including related discovery. The parties have also indicated the possibility of resolving some of these issues through the meet and

confer process. In light of this and given the Court's rulings above, the Court finds it would be in everyone's interest if the parties met, conferred, and sought to resolve as many of the disagreements between them as possible. The Court, therefore, orders the parties to so meet and confer and submit to the Court in ten calendar days from the date of this order: a joint proposed opt-in order which accords with the rulings above; a joint plan for related discovery and the process of notification; and briefing on relevant differences, if any, which still exist between the parties.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' Motion for Facilitated Notice Pursuant to *29 U.S.C. § 216(b)*. Accordingly, the Court: (1) CONDITIONALLY CERTIFIES a FLSA collective class consisting of persons who worked for 24 Hour Fitness as a General Manager, Operations Manager, or Fitness Manager in states outside California; (2) EQUITABLY TOLLS the statute of limitations [*32] for all Plaintiffs to January 31, 1998; (3) ORDERS the parties to meet and confer regarding the opt-in notice and process and make the submissions described above within ten calendar days of this Order; and (4) SETS a further status conference on June 29, 2007, seven days before which the parties are required to file with the Court a joint status statement.

IT IS SO ORDERED.

Dated: March 06, 2007.

Samuel Conti

UNITED STATES DISTRICT JUDGE

1 of 1 DOCUMENT

**JEREMY STANFIELD, et al., Plaintiffs, v. FIRST NLC FINANCIAL SERVICES, LLC, et al., Defendants.**

**No. C 06-3892 SBA**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2006 U.S. Dist. LEXIS 91743*

**December 4, 2006, Decided
December 5, 2006, Filed**

**COUNSEL:** [*1] For Jeremy Stanfield, Romonia Persand, Shabnam Sheila Dehdashtian, Saira Losoya, Eva Williams, individually, and on behalf of all others similarly situated, and on behalf of the general public, Plaintiffs: Peter S. Rukin, John F. Hyland, Rukin Hyland & Doria LLP, San Francisco, CA.; Bryan Jeffrey Schwartz, Donald H. Nichols, Paul J. Lukas, Rachhana T. Srey, Nichols Kaster & Anderson, PLLP, Minneapolis, MN.

For First NLC Financial Services, LLC, Defendant: Michael D. Weil, Orrick, Herrington & Sutcliffe LLP, San Francisco, CA.

**JUDGES:** SAUNDRA BROWN ARMSTRONG, United States District Judge.

**OPINION BY:** SAUNDRA BROWN ARMSTRONG

**OPINION**

**ORDER**

This matter comes before the Court on the parties' memoranda regarding the content of the Notice of Collective Action. [Docket Nos. 121, 124, 126]

**BACKGROUND**

On November 1, 2006, the Court granted Plaintiffs' Motion for Conditional Collective Action Certification. The Court made several rulings regarding the content of the Notice of Collective Action, which will be sent to all potential opt-in Plaintiffs, and ordered the parties to meet and confer within 10 days to draft a mutually-acceptable notice. The parties have now informed the Court [*2] that although they have agreed on most of the content of the notice, there are four sentences which Defendant argues should be included in the notice, to which Plaintiffs object.

**DISCUSSION**

The Court will address each of the four disputed sentences in turn:

1. "Should the lawsuit not succeed, however, any person who joined the lawsuit may be collectively and/or proportionately liable to reimburse First NLC for its costs of suit - such as filing fees or deposition transcripts - and/or First NLC's attorneys' fees." (Page 3, lines 9-12)

Defendants argue that this information should be included in the notice because courts may award costs to prevailing defendants in FLSA suits, citing *Federal Rule of Civil Procedure 54(d)* and *Rodriguez v. Whiting Farms, Inc., 360 F.3d 1180, 1190-91 (10th Cir. 2004).* Further, Defendants contend, although the FLSA does not expressly provide for an award of attorneys' fees to prevailing defendants, courts may make such an award, citing *EEOC v. Complete Dewatering, 16 F. Supp. 2d 1362, 1368-69 (S.D. Fla. 1998)* (noting that courts have allowed prevailing defendants in [*3] FLSA cases to recover only if the plaintiff acted in bad faith) (emphasis added).

Plaintiffs correctly point out that the FLSA only

provides for an award of attorneys' fees and costs to prevailing plaintiffs. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys's fee to be paid by the defendant, and costs of the action.") (emphasis added). Thus, even if Defendants are correct that they may ultimately be able to recover attorneys' fees if they show that Plaintiffs acted in bad faith, the proposed sentence is misleading because it suggests that if Plaintiffs lose the suit, they will automatically be liable for attorneys' fees. Further, according to Plaintiffs, the fee agreement between Plaintiffs and Plaintiffs' counsel specifies that costs will be borne by counsel, not by class members.

The Court's previous Order stated that the Notice should make potential Plaintiffs aware of any fees and costs for which they may be liable before opting in to the lawsuit. The language about attorneys' fees is stricken. *See Bell v. Mynt Entertainment, LLC, 223 F.R.D. 680, 683 (S.D. Fla. 2004)* [*4] ("Attorney's fees are awarded to prevailing plaintiffs, but no similar provision is made for prevailing defendants ... The plaintiffs' potential liability for attorneys' fees is not as broad as the defendants imply, and I do not believe it is necessary for the court-ordered notice to contain language regarding this potential liability."). However, the Court approves the language about potential costs, pursuant to its previous Order. Although Plaintiffs' counsel has agreed to absorb all costs "unless and until Plaintiffs achieve successful resolution through judgment or settlement," potential Plaintiffs should be made aware that they may be liable for costs if they prevail.

Thus, the Court orders that the Notice include the sentence as follows: "Should the lawsuit not succeed, however, any person who joined the lawsuit may be collectively and/or proportionately liable to reimburse First NLC for its costs of suit, such as filing fees or deposition transcripts."

2. "If you file a "Plaintiff Consent Form" your continued right to participate in this action will depend upon a later decision by the Court that you and the named Plaintiffs are "similarly situated" in accordance with applicable [*5] laws, and that it is appropriate for this case to proceed as a collective action." (Page 3, lines 16-19)

Defendants contend that this sentence should be included because it is "a plain statement of the collective action process" and because class members have right to understand that the class may be decertified by the court. Plaintiffs respond that the sentence is a more confusing repetition of a sentence already included on page 2 of the notice: "Your right to participate in this lawsuit may depend on a later decision by the United States District Court that you and the representative Plaintiffs are actually 'similarly situated.'" Defendant concedes that the substance of the proposed sentence is contained elsewhere in the notice, but argues that it should be included under the heading "Effect of Joining or Not Joining This Lawsuit" to ensure that class members clearly understand this point.

The Court agrees with Plaintiffs that the sentence is redundant, and may confuse potential Plaintiffs. Thus, the Court rejects this proposed sentence.

3. "The representative plaintiffs and class counsel will make key decisions concerning the litigation, the method and manner of conducting [*6] this litigation, and all other matters pertaining to this lawsuit. These decisions will be binding upon you, unless you object." (Page 4, lines 19-21)

Defendants argue that this sentence is a true sentence about the relationship between class counsel and class members, citing various out-of-circuit cases in support. They argue that putative class members have the right to know the role of class counsel before consenting to join the collective action. Plaintiffs contend that the sentence is unnecessary because the Notice already states that class members will be bound by any settlement reached, and the fee agreement between Plaintiffs and class counsel also sets forth the nature and details of the relationship. Further, Plaintiffs argue, the proposed sentence "seeks only to frighten putative class members by inferring that, if they join this lawsuit, all decisions will be effectively out of their hands. This untrue. All class members in a collective action have the right to opt-out at any time prior to accepting a settlement agreement or final resolution, and may consult with Plaintiffs' counsel at any point during the litigation."

Again, the Court agrees with Plaintiffs. The proposed [*7] sentence is misleading in that it implies that class members will have no input into the litigation, and it renders the Notice biased in favor of Defendants. Thus, the Court rejects this proposed sentence.

4. "If there is a recovery, Plaintiffs' attorneys will

2006 U.S. Dist. LEXIS 91743, *7

receive a part of any settlement obtained or money judgment entered in favor of all members of the class, which would proportionately reduce the award that each class member would receive." (Page 4, lines 23-26)

Defendants assert that this information is accurate, and that putative Plaintiffs have a right to understand that any recovery would be proportionately reduced by Plaintiffs' attorneys' fee award. Plaintiffs object to the sentence because it is "merely a more confusing way of stating what is already clear elsewhere in the notice, that the attorneys will seek compensation, up to 40% of the recovery (on page 3 of the notice)."

The Court is inclined to agree with Defendants. Although the Notice already states that Plaintiffs' counsel will be compensated up to 40% of the recovery, it does not explicitly state that this will reduce each class members' award. However, rather than adding the sentence proposed by Defendants, [*8] the Court orders

that the sentence on page 3 be amended as follows: "In addition, Nichols Kaster & Anderson and Rukin Hyland & Doria will seek to be compensated for their efforts in litigating this case, up to a combined 40% of all recovery, which will proportionately reduce the award that each class member would receive."

**CONCLUSION**

The parties shall issue the Notice of Collective Action in accordance with this Order forthwith.

IT IS SO ORDERED.

Dated: 12/4/06

SAUNDRA BROWN ARMSTRONG

United States District Judge

2 of 2 DOCUMENTS

**SABRINA LEVY, JOSEPH BAILEY, BONNIE PHILLIPS, VALERIE MACHEMER, JOHN KUPER, and CHARLES ROSSI, individually and on behalf of all others similarly situated, Plaintiffs, - against - VERIZON INFORMATION SERVICES INC., a Division of Verizon Communications Inc., VERIZON DIRECTORIES, CORP., VERIZON ACCOUNTING AND INFORMATION SERVICES, INC., and VERIZON NEW YORK DIRECTORY SALES COMPANY, Defendants. JOSEPH PASQUALE, EVE WEGENER, EDWARD SMITH and KIM COSSART, on behalf of themselves and all other similarly situated and as class representatives, Plaintiffs, - against - VERIZON INFORMATION SERVICES, INC., VERIZON DIRECTORIES, CORP., VERIZON ACCOUNTING AND INFORMATION SERVICES, INC., and VERIZON NEW YORK DIRECTORY SALES COMPANY, Defendants.**

06 CV 1583 (NG) (SMG), 06 CV 5056 (NG) (SMG)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2007 U.S. Dist. LEXIS 43223; 12 Wage & Hour Cas. 2d (BNA) 1373*

**June 11, 2007, Decided
June 13, 2007, Filed**

**SUBSEQUENT HISTORY:** Claim dismissed by *Levy v. Verizon Info. Servs.*, 498 F. Supp. 2d 586, 2007 U.S. Dist. LEXIS 53907 (E.D.N.Y., July 25, 2007)

**COUNSEL:** [*1] For Joseph Pasqualle, on Behalf of Himself and all Other Similarly Situated and as Class Representatives, Eve Wegener, on Behalf of Herself and all Other Similarly Situated and as Class Representatives, Edward Smith, on Behalf of Himself and all Other Similarly Situated and as Class Representatives, Kim Cossart, on Behalf of Herself and all Other Similarly Situated and as Class Representatives, Plaintiffs: Stephen R. Coffey, LEAD ATTORNEY, Pamela A. Nichols, O'Connell & Aronowitz, Albany, NY.

For Verizon Information Services, Inc., Verizon Directories Corp., Verizon Accounting and Information Services, Inc., Verizon New York Directory Sales Company, Defendants: Allan S. Bloom, Andrew L Gurman, LEAD ATTORNEYS, Paul, Hastings, Janofsky & Walker LLP, New York, NY; Patrick W. Shea, LEAD ATTORNEY, Paul, Hastings, Janofsky & Walker, LLP, Stamford, CT.

**JUDGES:** NINA GERSHON, United States District Judge.

**OPINION BY:** NINA GERSHON

**OPINION**

**OPINION AND ORDER**

**GERSHON, United States District Judge:**

On April 6, 2006, plaintiffs Sabrina Levy, Joseph Bailey, Bonnie Philips, Valerie Machemer, John Kuper, and Charles Rossi commenced civil action number 06-CV-1583 on behalf of a putative class [*2] of similarly situated individuals, alleging that defendants Verizon Information Services, Inc., Verizon Directories, Corp., Verizon Accounting and Information Services, Inc., and Verizon New York Directory Sales Company (collectively, "Verizon") violated federal and state wage payment laws by (1) making unlawful deductions from the wages of sales employees and (2) failing to pay its sales employees an overtime premium for working more

Page 2

2007 U.S. Dist. LEXIS 43223, *2; 12 Wage & Hour Cas. 2d (BNA) 1373

than 40 hours in a workweek. In a separate action, transferred to this court on August 29, 2007, under number 06-CV-5056, plaintiffs Joseph Pasqualli, Eve Wegener, Edward Smith, and Kim Cossart, on behalf of a putative class of similarly situated individuals, allege that defendants violated New York state wage payment law. On October 6, 2006, the court ordered that case numbers 06-CV-1583 and 06-CV-5056 be consolidated into lead case number 06-CV-1583 as related actions involving common questions of law and fact.

The motion currently before the court concerns only those plaintiffs who advance overtime claims. Specifically, plaintiffs Joseph Bailey, Valerie Machemer, and John Kuper seek to bring their overtime claims as a collective action under the Fair [*3] Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. These plaintiffs now move the court for (1) conditional certification of an overtime class; (2) judicially approved notice to all potential class members of this lawsuit; and (3) production by defendants of an electronic list of potential class members with their most recent contact information.

## FACTS

The facts alleged by plaintiffs include the following:

Defendants control, oversee, and direct the operation of the offices in which plaintiffs worked, including the payroll. Plaintiffs worked as Telephone Sales Representatives ("TSRs") for Verizon in their offices in New York and New Jersey. They bring this collective action under the FLSA on behalf of themselves and other sales representatives whom defendants allegedly failed to pay overtime wages for all hours worked over forty in a workweek.

To participate in this case, potential plaintiffs must affirmatively "opt-in" to the action by filing a written consent to join, as required by 29 U.S.C. § 216(b). The three plaintiffs mentioned above are joined in this action by 19 former and current TSRs who have signed written consent [*4] forms (the "Opt-In Plaintiffs"). In addition, one non-plaintiff declarant has submitted a declaration in support of plaintiffs' claims. These Opt-In Plaintiffs, and the non-plaintiff declarant, are, or have been, employed by Verizon as sales representatives in facilities or offices in New York, New Jersey, and Pennsylvania.

As TSRs, plaintiffs' job is to sell Yellow Pages and on-line directory advertising. Plaintiffs all make sales over the telephone, are required to follow Verizon's policies and protocol for selling advertising, and are paid under the same compensation scheme. A TSR earns a fixed base wage based on a 40-hour work week schedule and a commission which is dependent on the number of ads he or she sells. Verizon allegedly has no system by which TSRs can record the hours they worked. In fact, plaintiffs allege, TSRs are routinely paid for forty hours per workweek no matter how many hours they actually worked.

Verizon, allegedly by company policy, rarely paid any overtime to TSRs. Verizon managers required that sales representatives be paid for overtime hours only if such payment was "pre-approved" -- a policy that resulted in few if any overtime payments. Yet employees [*5] often arrived early, worked beyond their shifts and during breaks, and took work home. These practices were the norm, and they were encouraged by Verizon policies and practices. Verizon exerted significant pressure on its sales representatives to meet or exceed strict sales quotas. As a result, TSRs routinely worked in excess of forty hours a week.

Plaintiffs allege that they were not paid overtime compensation for most, if not all, of the overtime hours they worked. Plaintiffs' managers and supervisors were well aware of plaintiffs' work schedules and ignored plaintiffs' complaints of unpaid overtime.

Defendants dispute plaintiffs' claims that "Telephone Sales Representatives are routinely paid for forty hours per workweek no matter how many hours they actually worked," and that Verizon, by company policy, "rarely paid any overtime to Telephone Sales Representatives." In fact, defendants argue, the company's overtime policy requires that employees who work in excess of 40 hours per workweek be paid in accordance with the FLSA. Defendants point out that all TSRs, except for those working in the Erie, Pennsylvania office, are represented by a union, the Communications Workers of America, [*6] AFL-CIO, and are subject to collective bargaining agreements ("CBAs"). Each CBA has materially identical provisions regarding overtime, i.e., that overtime will be paid to full-time regular employees who work in excess of forty hours in one week at a rate of one and one-half times their regular rate of pay, in accordance with the FLSA. [1] Any deviations from these provisions, defendants argue, are at best isolated incidents, and do not implicate the company's overtime policy.

2007 U.S. Dist. LEXIS 43223, *6; 12 Wage & Hour Cas. 2d (BNA) 1373

1    Defendants assert that the overtime policy applicable to the non-unionized sales representatives in Erie, Pennsylvania is materially identical to the overtime provisions applicable to the unionized sales representatives in the CBAs.

Plaintiffs filed this motion for conditional certification on March 12, 2007, requesting that the court approve the sending of notice to potential opt-in plaintiffs. In doing so, plaintiffs annexed to their reply papers proposed text for such a notice and for a consent form.

## DISCUSSION

### [*7] I. FLSA Collective Actions

Plaintiffs seek conditional certification and court-facilitated notice pursuant to the FLSA, *29 U.S.C. § 216(b)*. The FLSA specifically contemplates plaintiffs pursuing their claims collectively:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.

*29 U.S.C. § 216(b).* The collective action procedure provides for efficient adjudication of similar claims and affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).*

Three features define an FLSA collective action. First, in order to participate, an employee must "opt-in," meaning that he or she must consent in writing to join the suit, and that consent must be [*8] filed with the court. *29 U.S.C. § 216(b).* Second, the statute of limitations runs on each employee's claim until his individual opt-in form is filed with the court, at which point it is tolled. *See Hoffmann v. Sbarro, Inc., 982 F.Supp. 249, 260 (S.D.N.Y. 1997).* Third, to serve the "broad remedial purpose" of the FLSA, courts can order notice to other potentially

similarly situated employees to inform them of their right to opt into the case. *Hoffmann-La Roche, 493 U.S. at 172-73; Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978).*

## II. Conditional Certification

### A. Standard for Certification

Courts generally follow a two-step process when determining whether a matter should proceed as a collective action. A court first determines whether class members are "similarly situated," based on pleadings and affidavits. *Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).* If the plaintiffs meet the "minimal burden" of showing that the "similarly situated" requirement is met, a court conditionally certifies the class as a collective action. [*9] *Id.* Potential class members are then notified and provided with the opportunity to opt into the action. *Id.*

At the second step, after discovery, a court examines the record and again makes a factual finding regarding the similarly situated requirement. *Id.* If the claimants are similarly situated, the collective action proceeds to trial, and, if they are not, the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims. *Id.*

Plaintiffs may satisfy the similarly situated requirement by making a "modest factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* Plaintiffs' burden is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage. *Id.; Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998)* (allowing notice, but noting that the collective action may be decertified or divided into subgroups "should discovery reveal that [*10] plaintiffs in fact are not similarly situated").

At this conditional certification stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under *29 U.S.C. § 216(b)* with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005). See also Krueger v. N.Y. Tel. Co.,*

*No. 93-0178, 1993 U.S. Dist. LEXIS 9988, 1993 WL 276058, at \*2 (S.D.N.Y. July 21, 1993)* ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists.").

## B. "Similarly Situated"

Plaintiffs move to certify this action as a collective action based on the claim that they and potential plaintiffs are similarly situated because they all are (or have been): (1) TSRs; (2) employed by Verizon; and (3) subject to the same policies and procedures regarding overtime payments. The 23 declarations plaintiffs have submitted were made by employees from facilities and offices located in the three different states targeted in the complaint (*i.e.*, New York, [*11] New Jersey, and Pennsylvania). These declarations and the allegations in the complaint, if proved, establish that defendants classified TSRs as non-exempt under the FLSA but failed to pay them overtime for all hours worked over forty per workweek. They also support plaintiffs' claim that defendants had a policy and practice of maintaining no system by which employees could record their hours worked and show that defendants' refusal to make overtime payments does not vary between offices. Plaintiffs cite numerous cases where courts have granted certification after reviewing summary allegations culled from as few as one affidavit and the complaint. *See, e.g., Sipas v. Sammy's Fishbox, Inc., No. 05-10319, 2006 U.S. Dist. LEXIS 24318, 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006); Young, 229 F.R.D. at 55; Mazur v. Olek Lejbzon & Co., No. 05-2194, 2005 U.S. Dist. LEXIS 30321, 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005)*.

Defendants argue that plaintiffs have failed to show that (1) they are similarly situated to all TSRs currently and formerly employed by Verizon in New York, New Jersey, and Pennsylvania, and (2) they were victims of a common policy or plan that violated the law. Defendants stress that, [*12] while plaintiffs seek certification of all TSRs in New York, New Jersey, and Pennsylvania, they have submitted evidence relating to only nine of the company's 19 division and satellite offices that employ TSRs throughout these three states. Therefore, defendants argue, the court has no way of knowing whether the sales representatives in the other ten locations are similarly situated to the plaintiffs or not, and cannot include them in any proposed FLSA collective action. In addition, defendants have attached to their opposition papers 100 sworn declarations from TSRs working at 14 of the 19

locations where the company employs TSRs. These declarations recite either that the TSR never worked overtime or, if the TSR did work overtime, the TSR was compensated at a rate of one and one-half times the regular rate of pay in accordance with the defendants' overtime policy and the FLSA.

Defendants also point out that the TSRs are unionized employees subject to the terms and conditions of their governing collective bargaining agreements, which clearly state the company's overtime policy: to pay overtime at the rate of one and one-half times employees' regular rate of pay for all hours worked [*13] over forty in a work week, in full compliance with the FLSA. Defendants conclude that "[t]here exists no unlawful 'common policy or plan' here, only a handful of anecdotal, individualized allegations by Plaintiffs that on certain occasions, their managers deviated from the Company's lawful policy and did not pay them for all overtime hours worked."

Defendants' argument that collective treatment is inappropriate here is not persuasive. Although the declarations submitted by plaintiffs represent only nine of the company's 19 division and satellite offices that employ TSRs, those offices are located throughout the three states that plaintiffs target. Plaintiffs need not submit evidence implicating every office in New York, New Jersey, and Pennsylvania to establish that Verizon TSRs working in those states were and are similarly subjected to Verizon's allegedly unlawful overtime policy. The representative sample provided by plaintiffs is sufficient to permit an inference that the policy governs all 19 offices. Because the allegations of unpaid overtime do not derive from one geographic location, there is no reason to assume that the policy was limited to only certain offices or areas.

[*14] Furthermore, a number of defendants' declarations, from TSRs working in offices not represented in plaintiffs' declarations, actually lend support to plaintiffs' claims. At least 16 of Verizon's own "defense declarants" state in their declarations that they, like the plaintiffs and their 23 declarants, were not paid for the unapproved overtime that they in fact worked. [2] Collectively, the parties' declarations show that TSRs in at least 14 of the 19 offices in New York, New Jersey, and Pennsylvania allege that they are or were subjected to defendants' overtime policies. Defendants' argument that these declarations represent "only a handful of anecdotal,

individualized allegations" is therefore contrary to the facts before the court. Accordingly, I find that all TSRs employed in the 19 division and satellite offices are similarly situated for the limited purpose of receiving notice. "Of course, the issue of who is entitled to receive notice at this stage is not conclusive and is subject to modification should further discovery prove that all plaintiffs are not in fact similarly situated." *Young, 229 F.R.D. at 56.*

    2   That these employees were not *required* to work overtime is of no moment. Plaintiffs do not claim that overtime was required, but rather *permitted* (and unpaid), which is the correct liability standard under the FLSA. *See 29 U.S.C. § 203(g)* (defining "employ" of an employee by an employer as "to suffer or permit to work"). According to Department of Labor regulations, even if an employer does not want work to be performed by an employee, it "cannot sit back and accept the benefits without compensating for them." *29 C.F.R. § 785.13.* Indeed, "it is the duty of management to exercise its control and see to it that the work is not performed . . . ." *Id.*

[*15] **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for conditional certification is granted. Defendants are ordered to produce to plaintiffs, within ten (10) days of the date of this order, a list, in electronic format, of all persons employed by defendants as "Telephone Sales Representatives" from April 6, 2003, to the present, including: name, last known home address, home telephone number, employee number, and social security number. Plaintiffs are ordered to amend the proposed notice and consent form annexed to plaintiffs' reply papers in accordance with the directions provided by the court during oral argument. *See* Oral Argument Tr. 17-22, May, 30, 2007. Finally, plaintiffs' counsel is authorized to mail to the employees identified by defendants the amended notice and consent form, provided the mailing takes place within ten (10) days of the receipt of such names and addresses.

**SO ORDERED.**

**NINA GERSHON**

**United States District Judge**

    Dated: Brooklyn, New York

    June 11, 2007

1 of 1 DOCUMENT

**JAMES JIRAK and ROBERT PEDERSON, on behalf of themselves and all others similarly situated, Plaintiffs, v. ABBOTT LABORATORIES, INC. Defendant.**

No. 07 C 3626

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2008 U.S. Dist. LEXIS 60561*

**July 22, 2008, Decided**
**July 22, 2008, Filed**

**COUNSEL:** [*1] For James Jirak, Plaintiff: Charles E. Joseph, LEAD ATTORNEY, Joseph & Herzfeld LLP, New York, NY; Darren M. Cohen, LEAD ATTORNEY, Eric B. Kingsley, Kingsley & Kingsley, APC, Encino, CA; James A. Jones, LEAD ATTORNEY, Gillespie, Rozen, Watsky, Motley & Jones, PC, Dallas, TX; David Sanford, Shayna Michelle Bloom, Sanford Wittels & Heisler, LLP, Washington, DC; Gregory N. Karasik, Robert Ira Spiro, Spiro Moss Barness LLP, Los Angeles, CA; Terry Rose Saunders, Thomas Arthur Doyle, Saunders & Doyle, Chicago, IL.

For Robert Pedersen, Individually and on behalf of all others similarly situated as Class Representatives, Plaintiff: Darren M. Cohen, LEAD ATTORNEY, Eric B. Kingsley, Kingsley & Kingsley, APC, Encino, CA; James A. Jones, LEAD ATTORNEY, Gillespie, Rozen, Watsky, Motley & Jones, PC, Dallas, TX; Charles E. Joseph, Joseph & Herzfeld LLP, New York, NY; David Sanford, Shayna Michelle Bloom, Sanford Wittels & Heisler, LLP, Washington, DC; Gregory N. Karasik, Robert Ira Spiro, Spiro Moss Barness LLP, Los Angeles, CA; Terry Rose Saunders, Thomas Arthur Doyle, Saunders & Doyle, Chicago, IL.

For Abbott Laboratories, Defendant: Michael J Gray, LEAD ATTORNEY, Brent Daniel Knight, Efrat R Schulman, [*2] Jones Day, Chicago, IL.

**JUDGES:** Ruben Castillo, Judge.

**OPINION BY:** Ruben Castillo

**OPINION**

## MEMORANDUM OPINION AND ORDER

James Jirak and Robert Pederson ("Plaintiffs") bring this putative class action against Abbott Laboratories, Inc. ("Defendant") for alleged violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201, et seq.* (R. 49, First Am. Compl. ("FAC").) Presently before the Court is Plaintiffs' motion for conditional certification of the class and approval of Plaintiffs' proposed notice to potential class members. (R. 54, Pls.' Mot. for Conditional Cert.) For the reasons stated below, the Court grants the motion for conditional certification but declines to approve the notice proposed by Plaintiffs.

## RELEVANT FACTS & PROCEDURAL HISTORY

The named Plaintiffs were employed by Defendant as pharmaceutical representatives. [1] (R. 49, FAC PP 8-9.) They allege that during their employment they regularly worked in excess of 40 hours per week but did not receive overtime pay as required by the FLSA. (*Id.*) Defendant has allegedly employed thousands of pharmaceutical representatives throughout the country, and none have been paid overtime in accordance with the FLSA. (*Id.* PP 12-13.) According [*3] to Plaintiffs, Defendant improperly classifies its pharmaceutical representatives as exempt from the FLSA's overtime requirements; Plaintiffs allege that such positions are not exempt and that they are thus entitled to thousands of dollars in overtime pay. (*Id.* PP 1, 23-28.)

2008 U.S. Dist. LEXIS 60561, *3

1  Since the filing of this lawsuit, three additional pharmaceutical representatives have consented to be plaintiffs: Steve Tyliszczak ("Tyliszczak"), George Resley ("Resley"), and Karen Hobson ("Hobson"). (R. 36, 38, 40.) A few months after Tyliszckak joined the suit, the parties stipulated to the dismissal of his claims without prejudice. (R. 52.)

Plaintiffs move for conditional class certification and Court-authorized notice to potential class members pursuant to Section 16(b) of the FLSA, *29 U.S.C. § 216(b)*. (R. 54, Pl.'s Mot. for Conditional Class Cert.) Plaintiffs seek to send notice to 4,708 individuals who are working or have worked as pharmaceutical representatives and were subject to Defendant's "company-wide policy or plan that it would not pay overtime to pharmaceutical representatives." 2 (*Id.* at PP 2, 5.)

2  Plaintiff seeks to send notice to persons working in a pharmaceutical representative position with [*4] any of the following titles: "pharmaceutical sales representative"; "professional sales representative"; "specialty sales representative"; "senior specialty sales representative:"; and "senior pharmaceutical sales representatives." (R. 49, FAC P 2.) Plaintiffs originally sought to send notice to 4,752 employees within six different pharmaceutical divisions, but in their reply they concede that 44 of these employees are not similarly situated to the others due to distinctions in their job duties. (R. 61, Pls.' Reply at 3-4 & n.5.) Plaintiffs no longer request that notice be sent to these individuals. (*Id.* at 4.)

## ANALYSIS

The FLSA provides: "[N]o employer shall employ any of his employees who in any workweek is engaged in commerce ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *29 U.S.C. § 207(a)(1)*. Section 16(b) of the FLSA allows for a collective action "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *29 U.S.C. § 216(b)*. [*5] Collective actions under the FLSA are different than class actions

authorized by *Federal Rule of Civil Procedure 23*, because in FLSA cases the plaintiff is given notice and an opportunity to *opt in*, rather than notice and an opportunity to *opt out. 29 U.S.C. § 216(b)* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Woods v. N.Y. Life Ins. Co., 686 F.2d 578, 579-80 (7th Cir. 1982)* (explaining differences between collective action under FLSA and class action certified pursuant to *Rule 23*). Potential class members who choose not to opt in are not bound by the Court's decision. *Vanskike v. Peters, 974 F.2d 806, 812-13 (7th Cir. 1992); Woods, 686 F.2d at 580*.

The FLSA does not specify the details of how collective actions are to proceed, and thus, the management of these actions has been left to the discretion of the district courts. *See Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170-72, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*. Although the Seventh Circuit has not decided the issue, the majority of courts--including this Court--have adopted a two-step process for determining [*6] whether an FLSA lawsuit should proceed as a collective action. *See Mielke v. LaidLaw Transit, Inc., 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004); see also Cameron-Grant v. Maxim Healthcare Servs., 347 F.3d 1240, 1243 (11th Cir. 2003); Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102-03 (10th Cir. 2001); Heckler v. DK Funding, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007); Flores v. Lifeway Foods, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2001)*.

In the first step, "Plaintiffs only need to make a minimal showing that others in the potential class are similarly situated." *Mielke, 313 F. Supp. 2d at 762*. This determination is made using a "lenient interpretation" of the term "similarly situated." *Id.* "[A] court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen, 267 F.3d at 1102*. If the plaintiff can make this minimal showing, the class is conditionally certified and notice is sent to potential class members, giving them an opportunity to opt in. *Heckler, 502 F. Supp. 2d at 779; Mielke, 313 F. Supp. 2d at 762*.

In the second step, which occurs after the parties have engaged in discovery [*7] and the opt-in process is completed, "the court's inquiry is more stringent." *Mielke, 313 F. Supp. 2d at 762*. Once it is known which

2008 U.S. Dist. LEXIS 60561, *7

employees will be part of the class, the Court must reevaluate the conditional certification "to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Heckler, 502 F. Supp. 2d at 779.* At step two, the Court must consider: (1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns. *Mielke, 313 F. Supp. 2d at 762.*

## I. Conditional Certification

Here, Plaintiffs argue that conditional certification is appropriate because Defendant "had a company-wide policy or plan that it would not pay overtime pay to pharmaceutical representatives." (R. 54, Pls.' Mot. for Conditional Cert. P 2.) In Plaintiffs' view, permitting this case to proceed as a collective action "allows [for] the efficient resolution in one proceeding of common issues of law and fact, and provides plaintiffs with the opportunity [*8] to lower individual costs to vindicate rights by the pooling of resources." (R. 56, Pls.' Mem. in Supp. of Mot. at 7).

Defendant opposes the motion, arguing that Plaintiffs have "failed to meet their burden to establish a common and unlawful policy" under the FLSA, and further, that there are "significant differences in the job duties of putative class members" such that conditional certification of the class is not appropriate. (R. 60, Def.'s Opp'n to Pls.' Mot. at 8, 10.) Defendant asserts that its pharmaceutical division is comprised of six different "franchises"--primary care, immunology, neurology, virology, renal care, and acute care--and that "the responsibilities of sales representatives vary greatly depending upon franchise, position, product and customer." (*Id.*) In Defendant's view, pharmaceutical representatives may fall under one of the FLSA exemptions, including the outside sales exemption, *29 U.S.C. § 213(a)(1)*, or the administrative exemption, *29 U.S.C. § 213(a)(1)*, and that making this determination will require an individualized inquiry. (*Id.* at 9-13.) Defendant claims that it performed a "separate and independent review of each sales position" to determine the exempt [*9] status of each position, and thus, there is no policy decision common to all potential class members. (*Id.* at 9.)

Contrary to Defendant's argument, there is evidence

in the record developed thus far showing that the potential class members are similarly situated. First, despite some variations in their job duties, there is evidence that pharmaceutical representatives have the same essential responsibility: calling on physicians and promoting Defendant's pharmaceutical products. (*See* R. 57, Pls.' App., Ex. N; R. 60, Def.'s Opp'n, App., Ex. E; Ex. G; Ex. I; Ex. K; Ex. W.) Moreover, Plaintiffs do not have to show that the potential class members have *identical* positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay. [3] *See Delgado v. Ortho-McNeil, No. 07-263, 2007 U.S. Dist. LEXIS 74731, 2007 WL 2847238, at *3 (C.D. Cal. Aug. 6, 2007)* ("[W]hile the jobs of the various [pharmaceutical] sales representatives are not identical, they bear sufficient similarity to warrant conditional certification for the purpose of distributing notice."); *Perry v. Nat'l City Mtge., Inc., No. 05-891, 2007 U.S. Dist. LEXIS 45115, 2007 WL 1810472, *3-4 (S.D. Ill. Jun. 21, 2007)* [*10] (conditionally certifying class of 5,500 loan originators despite defendant's argument that job duties varied depending on their classification, because loan originators had the same "overall mission"); *Garza v. CTA, No. 00-438, 2001 U.S. Dist. LEXIS 6132, 2001 WL 503036, at *3 (N.D. Ill. May 8, 2001)* ("That the plaintiffs and other potential plaintiffs may have different jobs ... [and] earn different amounts of money ... does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay.").

> [3] The Court finds distinguishable the cases from this District cited by Defendant. *See, e.g., Forney v. TTX Co., No. 05-6257, 2006 U.S. Dist. LEXIS 30092, 2006 WL 1030194, at *3 (N.D. Ill. Apr. 17, 2006)* (plaintiff could not satisfy step one because she "fail[ed] to identify a single . . . employee who performed job duties similar to hers."); *Pfaahler v. Consultants for Architects, Inc., No. 99-6700, 2000 U.S. Dist. LEXIS 1772, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000)* (denying conditional certification because determining which plaintiffs were independent contractors and which were employees subject to FLSA would require fact-intensive, individualized inquiry).

There is also evidence that the pharmaceutical representatives were subject to a common [*11] policy classifying them as exempt. Defendant's Rule 30(b)(6)

designee, Tim Hying ("Hying"), [4] testified at his deposition that to his knowledge Defendant has never paid overtime to any its pharmaceutical sales representatives, that Defendant has "always" classified the position as exempt, and that he did not conduct a person-by-person review or interview any pharmaceutical representatives about their job responsibilities as part of the process of classifying them as exempt. (R. 57, Pls.' App., Ex. I, Hying Dep. at 18-33, 72.) Although Defendant performed some type of review of the pharmaceutical representatives' exempt status in 2004 or 2005, it appears that the review was performed on a categorical basis as to the different job titles rather than on an individual basis. [5] (See id. at 72-84; R. 60-2, Def.'s Opp'n to Pls.' Mot., Ex. B, Hying Decl. P 4.) As another court noted in an FLSA case brought by pharmaceutical representatives, "It is somewhat disingenuous . . . for Defendants to argue that they should be permitted to treat all sales representatives as one group for purposes of classifying them as exempt, but that this court can only determine the validity of that classification [*12] by looking to the specific job duties of each individual sales representative." Delgado, 2007 U.S. Dist. LEXIS 74731, 2007 WL 2847238, at *2.

> 4    Hying was formerly Human Resources Director in Defendant's pharmaceutical products division, and is now "Director of the Customer Support Group within the Company's [Human Resources] shared services organization." (R. 60-2, Def.'s Opp'n to Pls.' Mot., Ex. B, Hying Decl. P 2.)
>
> 5    At his deposition Hying refused to answer numerous questions about the process of classifying these positions as exempt based on the attorney-client privilege. (R. 57, Pls.' App., Ex. I, Hying Dep. at 71-72, 82-83.)

Additionally, the application of an FLSA exemption is an affirmative defense on which Defendant carries the burden of proof. Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974); Barefield v. Village of Winnetka, 81 F.3d 704, 710 (7th Cir. 1996). Whether pharmaceutical representatives are exempt from the FLSA cannot be determined based on the limited record developed at this stage. Perez v. RadioShack Corp., No. 02-78844, 2003 U.S. Dist. LEXIS 10152, 2003 WL 21372467, at *11 (N.D. Ill. Jun. 13, 2003) (conditionally certifying class despite concerns that plaintiffs may be exempt from FLSA because record was

not [*13] yet fully developed). The Court does not agree with Defendant that determining the application of an exemption will necessarily require an inquiry with respect to the job duties of each individual plaintiff. The Court finds it more likely that the exemption determination can be made on a categorical basis as to the different franchises; if necessary, the class can be narrowed to include only certain pharmaceutical representatives if not all are similarly situated. Moreover, as Plaintiffs point out, the distinctions in the job duties of pharmaceutical representatives--such as the type of medications they promote, the number and type of physicians they meet with each day, and the level of control they have in tailoring their presentations--may not even be material to the exemption determination. See Delgado, 2007 U.S. Dist. LEXIS 74731, 2007 WL 2847238, at *3 (differences among pharmaceutical representatives in terms of size of regions, sales pitches, products sold, and types of clients were immaterial to whether they were properly classified as exempt from FLSA).

These are issues that must be decided at later stages of the litigation. See Mielke, 313 F. Supp. 2d at 762. Defendant's argument about dissimilarities [*14] in the class is more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery. Bastian v. Apt. Invest. & Mgmt. Co., No. 07-2069, 2007 U.S. Dist. LEXIS 97269, 2007 WL 5234235, at *1 (N.D. Ill. Sept. 17, 2007) (defendant's argument that individual issues would predominate more appropriately decided after discovery at the "more rigorous" step two analysis). The mere potential that individual issues may predominate after further discovery does not preclude conditional certification of the class. Heckler, 502 F. Supp. 2d at 780-81; Gambo v. Lucent Techs., Inc., No. 05-3701, 2005 U.S. Dist. LEXIS 37998, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005).

At this stage, Plaintiff has made the minimal showing necessary for conditional certification and notice to the potential class members. If it turns out that there is no uniform policy common to the class members who opt in, or that the class is "hopelessly heterogenous," Jonites v. Exelon Corp., 522 F.3d 721, 725 (7th Cir. 2008), then the case will not be permitted to proceed as a collective action. See Mielke, 313 F. Supp. 2d at 763 (denying class certification at step two based on existence of individualized [*15] affirmative defenses and other

factors). For these reasons, conditional certification is granted.

## II. Notice

Once a collective action is conditionally approved, "the court has managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche, 493 U.S. at 170-71.* In approving a notice to potential plaintiffs, the Court must be careful not to create an "apparent judicial sponsorship of the notice." *Woods, 686 F.2d at 581.* The Seventh Circuit explained: "[W]e think it improper for the district court to direct that the notice go out on its letterhead, over the signature of the clerk of court or other judicial officer" because "the judicial imprimatur is likely to be misunderstood as a representation that the suit probably has merit." *Id.* Although the notice proposed by Plaintiffs is not on the Court's letterhead, it states at the top of the first page, "United States District Court for the Northern District of Illinois." (R. 57, Pls.' App., Ex. A.). This language could suggest to potential plaintiffs that the Court has lent its imprimatur to the merits of this case. As the Supreme Court observed, [*16] "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of a judicial endorsement of the merits of the action." *Hoffmann-La Roche, 493 U.S. at 174.*

Thus, Plaintiff must remove this heading from the notice or, alternatively, include the entire caption of the case so that it is clear the notice is a court document and not some type of letter from the Court. Further, the revised notice must contain conspicuous language stating that the Court has not taken any position on the merits of this action, and should also advise potential class members not to contact the Court with questions about the litigation.

Although the notice otherwise appears generally proper, Defendant argues in a footnote contained in its opposition that Plaintiffs' proposed notice should not be approved because it "contains language that is unnecessary, misleading and calculated to persuade recipients to join the lawsuit." (R. 60, Def.'s Opp'n to Pls.' Mot. at 15 n.3.) It is unclear specifically what Defendant objects to, because for unknown reasons Defendant does not include [*17] any explanation or analysis on this point. Nevertheless, given that the notice proposed by Plaintiffs must be revised, the Court finds the best course is for Plaintiffs' counsel to meet and confer with defense counsel to devise a fair and accurate notice that is acceptable to both sides. The Court expects this process will be completed by the next status date; if any specific objections to the notice remain at that time, the Court will resolve them on that date.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for conditional certification and approval of proposed notice (R. 54) is granted in part. This case is conditionally certified as a collective action pursuant to *Section 216(b)* of the Fair Labor Standards Act, and notice may be sent to the 4,708 individuals identified in the motion. However, for the reasons stated herein, the notice proposed by Plaintiffs is rejected.

The parties are directed to exhaust all settlement possibilities in light of this opinion. The parties shall appear for a status hearing in open court on **August 6, 2008** at **9:45 a.m.** and shall be prepared to present the Court with a revised notice to potential class members as specified in this opinion. A [*18] firm trial date for this lawsuit will be set at the next status hearing.

**ENTERED:** /s/ Ruben Castillo

**Judge Ruben Castillo**

**United States District Court**

**Dated: July 22, 2008**

1 of 1 DOCUMENT

**JOHN CENTURIONI, and other similarly situated persons, Plaintiffs, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant.**

**No. C 07-01016 JSW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2008 U.S. Dist. LEXIS 10856*

**February 1, 2008, Decided**
**February 1, 2008, Filed**

**COUNSEL:** [*1] For John L Centurioni, Plaintiff: Mary J. Shea, LEAD ATTORNEY, Shea Law Offices, San Francisco, CA; Darci Elaine Burrell, Leslie Fran Levy, Boxer & Gerson, Oakland, CA; Sharon Rachel Vinick, Vinick Law Firm, San Francisco, CA.

For Andrew Cohen, Michael P. Collins, Robert Del Torre, James P. Gaan, David Kranci, James Lewis, Michael Rebollini, Susan Rolovich, Michael Lawson, Martha Fabiani, Jack Wronski, Jeremiah Morgan, Mukesh Chandra, Cecile H. Porter, Plaintiffs: Mary J. Shea, LEAD ATTORNEY, Shea Law Offices, San Francisco, CA; Darci Elaine Burrell, Leslie Fran Levy, Boxer & Gerson, Oakland, CA.

For Steve Moss, David D Wright, Plaintiffs: Mary J. Shea, LEAD ATTORNEY, Shea Law Offices, San Francisco, CA; Leslie Fran Levy, Boxer & Gerson, Oakland, CA.

For City and County of San Francisco, Defendant: Jonathan C. Rolnick, LEAD ATTORNEY, Rose-Ellen Heinz Fairgrieve, City Attorney's Office, San Francisco, CA.

For David D Wright, 3rd party defendant: Leslie Fran Levy, Boxer & Gerson, Oakland, CA.

**JUDGES:** JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JEFFREY S. WHITE

**OPINION**

**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**

Now before the Court is Plaintiffs' motion for conditional certification [*2] of a collective action under the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201, et seq.* The Court finds that this matter is appropriate for disposition without oral argument and it is hereby deemed submitted. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for February 8, 2008 is HEREBY VACATED. Having considered the parties' pleadings and the relevant legal authority, the Court hereby grants Plaintiffs' motion for conditional certification.

**BACKGROUND**

Plaintiffs are current and former sworn police officers of the San Francisco Police Department ("SFPD") and employees of defendant City and County of San Francisco ("the City"). Plaintiffs allege that the City violated the FLSA by failing to pay them for their time spent donning and doffing their uniforms and equipment, as well as for their time engaging in pre- and post-shift activities. Plaintiffs move pursuant to *section 216(b) of the FLSA* to conditional certify a collective action of all sworn officers at or below the rank of sergeant who worked for the SFPD at any time from February 20, 2004 (three years from when this lawsuit was filed) to the present. Plaintiffs also seek permission to send a Court-approved notice to all [*3] putative members of the collective action and to have the Court order the City to produce information identifying the

putative members.

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

## ANALYSIS

### 1. Applicable Legal Standards

Pursuant to the FLSA, employees may bring a collective action on behalf of other "similarly situated" employees based on alleged violations of the FLSA. *29 U.S.C. § 216(b)*. In contrast to class actions pursuant to *Federal Rule of Civil Procedure 23*, potential members of a collective action under the FLSA must "opt-in" to the suit by filing a written consent with the Court in order to benefit from and be bound by a judgment. *Id.; see also Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). Employees who do not opt in may bring a subsequent private action. *Leuthold, 224 F.R.D. at 466* (citing *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1508 n.1 1 (9th Cir. 1990)).

Courts "may authorize the named FLSA plaintiffs to send a notice to all potential plaintiffs and may set a deadline for those potential plaintiffs to join the suit." *Leuthold, 224 F.R.D. at 466; see also Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). [*4] The determination of whether a collective action is appropriate is within the Court's discretion. *See Adams v. Inter-Con Security Sys., Inc.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007). Plaintiffs bear the burden to show that they and the proposed class are "similarly situated." *See id.* (citing *29 U.S.C. § 216(b)*).

The FLSA does not define "similarly situated." Although the Ninth Circuit has not yet articulated the proper test for certification of a FLSA action, district courts in this circuit have applied a two-step inquiry. *See e.g., Leuthold, 224 F.R.D. at 466-67; see also Adams, 242 F.R.D. at 536; Prentice v. Fund for Public Interest Research, Inc.*, 2007 U.S. Dist. LEXIS 71122, 2007 WL 2729187, * 2 (N.D. Cal. Sept. 18, 2007). Under the first step, courts consider whether the proposed class should be given notice of the action based on the pleadings and the affidavits submitted by the parties. *Adams, 242 F.R.D. at 536.* The Court determines whether to allow notice "based on a fairly lenient standard due to the limited amount of evidence before it." *Adams, 242 F.R.D. at 536.* Plaintiffs are only required to "make substantial allegations that the putative class members were subject

to a single illegal policy, plan or [*5] decision." *Leuthold, 224 F.R.D. at 468; see also Adams, 242 F.R.D. at 536.* "Under this lenient standard, the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations." *Adams, 242 F.R.D. at 536* (internal quotes and citation omitted); *see also Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 105 (D. Conn. 2007) ("In order for a plaintiff to meet this modest, preliminary burden, the district court need only be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits") (internal quotes and citation omitted); *Morton v. Valley Farm Transport, Inc.*, 2007 U.S. Dist. LEXIS 31755, 2007 WL 1113999, *2 (N.D. Cal. April 13, 2007) (describing burden as "not heavy" and requiring plaintiffs to merely show a "reasonable basis for their claim of class-wide" conduct) (internal quotes and citation omitted); *Stanfield v. First NLC Fin. Servs., LLC*, 2006 U.S. Dist. LEXIS 91743, 2006 WL 3190527, * 2 (N.D. Cal. Nov. 1, 2006) (holding that the plaintiffs "must be generally comparable to those they seek to represent.").

Courts usually grant conditional class certification at this stage. *Adams, 242 F.R.D. at 536* [*6] ("The usual result is conditional class certification."); *see also Stanfield*, 2006 U.S. Dist. LEXIS 91743, 2006 WL 3190527, * 2 ("The standard is lenient, and conditional collective action is usually granted."). Under this first step, courts do not consider the merits of the claims. *Ayers v. SGS Control Services, Inc.*, 2004 U.S. Dist. LEXIS 25646, 2004 WL 2978296, *6 (S.D.N.Y. Dec. 21, 2004) ("the evaluation of the merits of plaintiffs' claims is unnecessary to determine whether notice is appropriate to the defined similarly situated class"); *see also Adams, 242 F.R.D. at 539* (declining to evaluate the merits at the conditional certification stage); *Morton*, 2007 U.S. Dist. LEXIS 31755, 2007 WL 1113999 at *3; *Stanfield*, 2006 U.S. Dist. LEXIS 91743, 2006 WL 3190527 at *4.

Under the second step, "the party opposing the certification may move to decertify the class once discovery is complete." *Adams, 242 F.R.D. at 536* (citing *Leuthold, 224 F.R.D. at 467*). "[T]he Court then determines the propriety and scope of the collective action using a stricter standard." *Stanfield*, 2006 U.S. Dist. LEXIS 91743, 2006 WL 3190527, * 2. In particular, the Court may consider: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect

to the individual plaintiffs; [*7] and (3) fairness and procedural considerations." *Leuthold, 224 F.R.D. at 467.* At this point, "the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Leuthold, 224 F.R.D. at 467.*

## 2. Plaintiffs Have Shown that Conditional Certification is Warranted.

Applying the lenient standard applicable to the first step, the Court finds that conditional certification of collective action is appropriate. Plaintiffs allege through their complaint, affidavits and supporting exhibits, that the City failed to pay overtime wages for donning and doffing and for conducting preliminary and postliminary work, and that Plaintiffs' experiences are shared by the members of the proposed collective action.

The City's opposing arguments primarily consist of challenges to the merits of Plaintiffs' claims. However, at this stage, courts do not consider the merits of the claims. *See Adams,* 242 F.R.D. at 539; *see also Morton, 2007 U.S. Dist. LEXIS 31755, 2007 WL 1113999 at *3; Stanfield, 2006 U.S. Dist. LEXIS 91743, 2006 WL 3190527 at *4; Ayers, 2004 U.S. Dist. LEXIS 25646, 2004 WL 2978296 at *6.* The City also argues that conditional certification, if any, should be limited to donning and doffing uniforms and to sworn peace officers and sergeants working in Field Operations [*8] and Airport Bureaus. The City contends that Plaintiffs' alleged preliminary and postliminary activities are not sufficiently defined. The Court disagrees. Plaintiffs have submitted evidence to support their allegations that they have not been paid for work conducted before and after their shifts in violation of the FLSA. Whether the particular activities may vary is not a difference the Court finds material to the determination of whether the collective action should be conditionally certified.

The City further contends that the certification should be limited to officers in those specific ranks and departments from which Plaintiffs' submitted affidavits in support of their allegations, *i.e.,* sworn peace officers and sergeants working in Field Operations and Airport Bureaus. However, for conditional certification, Plaintiffs are not required to provide evidence of the alleged violations for every particular rank and department. *See Adams,* 242 F.R.D. at 537 (holding that "[f]or conditional certification, plaintiffs do not need to provide evidence that every facility relevant to the proposed class maintains an illegal policy"). The court in *Adams* held

that the plaintiffs did not need [*9] to demonstrate the existence of similarly situated persons at every location in the proposed class, but rather, "the named plaintiff must demonstrate that there existed at least one similarly situated person at a facility other than his own." *Id.* (citing *Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1235 (M.D. Ala. 2003)).* Here, Plaintiffs easily meet this standard. Accordingly, the Court declines to limit the conditional certification in the manner proposed by the City.

### 3. Scope of Notice.

Plaintiffs seeks to send notice to all persons employed as sworn police officers at or below the rank of sergeant employed by the City from February 20, 2004, three years before this suit was filed. The City argues that period should be restricted to two years for non-willful violations and should be limited to two years from when the notice is issued because an individual's claim does not commence until he or she files a consent to join.

The statute of limitations for violations of the FLSA is ordinarily two years, except that the limitations period is extended to three years for willful violations. 29 U.S.C. § 255(a). Plaintiffs have alleged that the City willfully violated the FLSA. [*10] (Amend. Compl., P 4.) Therefore, at this procedural stage, before discovery has commenced, the Court will not prematurely limit the potential class to those employed during a two-year period. If necessary, the Court may restrict the class after the issue of willfulness is fully adjudicated. *See Herrera v. Unified Management Corp., 2000 U.S. Dist. LEXIS 12406, 2000 WL 1220973, *2 (N.D. Ill. Aug. 18, 2000)* (rejecting argument to restrict time period to two years, finding it more efficient to start with a three-year period, and, if necessary, restricting the class after the issue of willfulness is adjudicated).

The statute of limitations under the FLSA continues to run until a plaintiff files a valid consent to join the suit. *Partlow v. Jewish Orphans' Home of So. Cal., Inc., 645 F.2d 757, 760 (9th Cir. 1981), abrogated on other grounds by Hoffmann-La Roche, Inc., 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480.* Equitable tolling is permissible under the FLSA. *See Partlow, 645 F.2d at 760.* Courts may equitably toll the statute of limitations "when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." [*11] *Stoll v.*

2008 U.S. Dist. LEXIS 10856, *11

*Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999).* Plaintiffs have not provided any argument, let alone any evidence, demonstrating that either basis for equitable tolling is present here. Therefore, the Court will limit the notice period to sworn police officers at or below the rank of sergeant employed by the City from three years before the notice is issued.

## CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Plaintiffs' motion for conditional certification. Pursuant to *29 U.S.C § 216(b),* the Court CONDITIONALLY CERTIFIES an opt-in collective action of all former and current sworn police officers at or below the rank of sergeant employed by the City from February 15, 2005 to the present.

The Court HEREBY DIRECTS the parties to meet and confer on a proposed notice, with a consent form and deadline to file consents to join, and submit such notice to the Court by February 14, 2008. If the parties are unable to reach an agreement, the parties may each submit a proposed notice by February 14, 2008. In the event that the parties do not submit a joint proposed notice, the parties should file objections to the proposed notices by no later than February 19, 2008. The Court FURTHER [*12] ORDERS that the City shall provide Plaintiffs by February 15, 2008, the names and addresses 1 of all current and former sworn police officers at or below the rank of sergeant employed by the City from February 15, 2005 to the present. The City shall provide this information in an electronic format agreeable to Plaintiffs.

  1  Plaintiffs' request for telephone numbers and social security numbers is denied.

The Case Management Conference scheduled for February 8, 2008 at 9:00 a.m. is HEREBY CONTINUED to February 8, 2008 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: February 1, 2008

JEFFREY S. WHITE

UNITED STATES DISTRICT JUDGE

3 of 20 DOCUMENTS

SPENCER CRANNEY, MITCHELL AMOS, CATHERINE SAMUELSON,
DOUGLAS BROWN, and RICHARD MONIGHETTI et al., on behalf of themselves
and all other employees similarly situated, Plaintiffs, vs. CARRIAGE SERVICES,
INC., CARRIAGE FUNERAL HOLDINGS, INC., CFS FUNERAL SERVICES,
INC., CARRIAGE HOLDING COMPANY, INC., CARRIAGE MANAGEMENT,
L.P., CARRIAGE INVESTMENTS, INC., MELVIN C. PAYNE and LORIE
PARAMETER, Defendants.

Case No.: 2:07-cv-1587-RLH-PAL

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA

*2008 U.S. Dist. LEXIS 22630*

February 29, 2008, Decided
February 29, 2008, Filed

**SUBSEQUENT HISTORY:** Motion denied by *Cranney v. Carriage Servs., 2008 U.S. Dist. LEXIS 51156 (D. Nev., Mar. 20, 2008)*

**COUNSEL:** [*1] For Spencer Cranney, Amos Mitchell, Catherine Samuelson, Douglas Brown, Richard Monighetti, Plaintiffs: Charles H. Saul, LEAD ATTORNEY, Liberty J. Weyandt, LEAD ATTORNEY, Law Firm of Margolis Edelstein, Pittsburgh, PA; J Nelson Thomas, LEAD ATTORNEY, Justin M. Cordello, LEAD ATTORNEY, Patrick J Solomon, LEAD ATTORNEY, Dolin Thomas Solomon LLP, Rochester, NY; Kule T. McGee, LEAD ATTORNEY, Margolis Edelstein, Pittsburgh, PA; Leon Marc Greenberg, Leon Greenberg Professional Corporation, Las Vegas, NV.

For Lyle P Meyer, Edward Ball, Janice Johnson, Plaintiffs: Charles H. Saul, LEAD ATTORNEY, Liberty J. Weyandt, LEAD ATTORNEY, Law Firm of Margolis Edelstein, Pittsburgh, PA; Kule T. McGee, LEAD ATTORNEY, Margolis Edelstein, Pittsburgh, PA; Leon Marc Greenberg, LEAD ATTORNEY, Leon Greenberg Professional Corporation, Las Vegas, NV; Justin M. Cordello, Dolin Thomas Solomon LLP, Rochester, NY.

For Carriage Services, Inc., Carriage Funeral Holdings, Inc., Carriage Holding Company, Inc., Carriage Management, L.P., Carriage Investments, Inc., Defendants: Michael L. Banks, LEAD ATTORNEY, Sarah E. Bouchard, Morgan, Lewis & Bockus, LLP, Philadelphia, PA; Rick D Roskelley, Littler Mendelson, PC, Las [*2] Vegas, NV.

For CFS Funeral Services, Inc., Defendant: Michael L. Banks, LEAD ATTORNEY, Sarah E. Bouchard, LEAD ATTORNEY, Morgan, Lewis & Bockus, LLP, Philadelphia, PA; Rick D Roskelley, Littler Mendelson, PC, Las Vegas, NV.

For Melvin C. Payne, Defendant: Michael L. Banks, LEAD ATTORNEY, Sarah E. Bouchard, LEAD ATTORNEY, Morgan, Lewis & Bockus, LLP, Philadelphia, PA.

For Lorie Parmeter, Defendant: Michael L. Banks, LEAD ATTORNEY, Morgan, Lewis & Bockus, LLP, Philadelphia, PA.

**JUDGES:** ROGER L. HUNT, Chief United States District Judge.

**OPINION BY:** ROGER L. HUNT

**OPINION**

**ORDER**

(Motion for Collective Action Notification--# 2;

Motion to Shorten Time--# 3; Motion to Transfer--# 41)

Before the Court is Plaintiffs' **Motion for Collective Action Notification** (# 2), filed November 28, 2007. The Court has also considered Defendants' Opposition (# 45), filed January 28, 2008, and Plaintiffs' Reply (# 53) and accompanying documents (## 54-63), filed February 11, 2008.

Also before the Court is Plaintiffs' **Request for Shortening Time for Defendants' Responsive Briefing to Plaintiffs' Motion for Collective Action Notification** (# 3), filed November 28, 2008.

Also before the Court is Defendants' **Motion to Transfer** (# 41), filed January 16, [*3] 2008. The Court has also considered Plaintiffs' Opposition (## 49-50), filed February 4, 2008, and Defendants' Reply (# 64), filed February 19, 2008.

**BACKGROUND**

Plaintiffs are eighty-four current and former employees of Defendants. Defendants operate 170 funeral homes and thirty-seven cemeteries in twenty-seven different states. Plaintiffs allege that Defendants suffered or permitted them to work and did not pay them their regular or statutorily required rate of pay for all hours worked. As relevant to the present Motions, Plaintiffs allege that Defendants maintained four illegal policies:

*Community Work.* Defendants required their hourly employees to perform volunteer work for local community groups to generate business for Defendants, but did not compensate their employees for the time they spent working for these organizations.

*Failure to Include All Remuneration in Overtime Calculation.* Defendants did not include all remuneration, such as bonuses, commissions, and flat-rate payments, in the calculation of its employees' overtime pay.

*On-Call Pay.* Defendants required employees to handle phone calls and other work-related issues after hours while on "on-call" duty without compensation.

*Pre-Needs* [*4] *Appointments.* Defendants required that certain employees present pre-needs policies (an insurance product that allows an individual to pre-pay for funeral services) to potential customers after normal work hours without compensation.

On November 28, 2007, Plaintiffs filed this collective action against Defendants under the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216(b)*, and a class action for claims pursuant to the Employee Retirement Income Security Act ("ERISA"), *28 U.S.C. §§ 1332(a)(3), 1104(a)(1), 1059(a)(1)* and numerous state statutes.

**DISCUSSION**

Plaintiffs move the Court to authorize notice of this collective action to all of Defendants' current and former affected employees pursuant to Section 16(b) of the FLSA, *29 U.S.C. § 216(b)*. Defendants oppose Plaintiffs' request for collective action notification and move the Court to transfer this case to the Southern District of Texas. Because Defendants' Motion to Transfer potentially moots Plaintiffs' Motion for Collective Action Notification, the Court first addresses Defendants' Motion.

**I. Motion to Transfer**

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for [*5] "the convenience of the parties and witnesses [and] in the interest of justice." *28 U.S.C. § 1404(a)*. A party moving for transfer must first show that the action could have been brought in the transferee district. *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992)*. The court then balances the competing public and private interest factors to determine if transfer is appropriate, recognizing that "*1404(a)* provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," *Van Dusen v. Barrack, 376 U.S. 612, 645-46, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)*. "Transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer," and neither is the court required to determine the best venue for the action. *Gherebi v. Bush, 352 F.3d 1278, 1303 (9th Cir. 2003)* (internal quotations omitted), *vacated on other grounds, 542 U.S. 952, 124 S. Ct. 2932, 159 L. Ed. 2d 835 (2004)*.

**A. Venue in the Southern District of Texas**

For an action brought in federal court "not founded solely on diversity of citizenship," venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." *28 U.S.C. § 1391(b)*

. [*6] "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Here, this federal question case "might have been brought" in the Southern District of Texas because the Defendants are all residents of Texas. The corporate defendants have their principal place of business in Texas and are therefore subject to personal jurisdiction in the state. Mr. Payne and Ms. Parameter are both residents of Houston, Texas. Consequently, venue would be proper in the Southern District of Texas, and this action "might have been brought" there.

## B. Public and Private Interest Factors

"Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 270 (9th Cir. 1979)*. In making its determination, a court must balance the competing public and private interests on a case-specific basis with no single factor necessarily determinative. Several courts have enumerated lists of factors potentially applicable in a given case. *See, e.g.,* [*7] *Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)* (listing four private factors and five public factors); *Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000)* (enumerating eight factors and listing two other significant factors). Here, the Court finds the following factors relevant: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process; (3) the cost of litigation in each forum, including the cost of witness travel; (4) Plaintiffs' choice of forum and the Parties' contacts with that forum, especially as they relate to Plaintiffs' claims; (5) the court most familiar with the governing law; and (6) the public policy of the forum state. As explained more fully below, because these factors do not weigh in favor of transfer, the Court denies Defendants' Motion to Transfer to the Southern District of Texas.

### 1. Access to Sources of Proof

Here, while many of the corporate documents relating to payroll, training, and compensation policies are likely located in the Defendants' headquarters in Houston, other documents are likely located in the various offices scattered throughout the country. Moreover, regardless [*8] of where the proceedings occur, the nationwide scope of this action convinces the Court that transferring to the Southern District of Texas would do little more than shift the convenience of obtaining certain evidence, while making it more difficult to obtain other sources of evidence. By Defendants' own account, it maintains a highly decentralized corporate structure and relies on local managing partners (typically former owners of acquired businesses) for day-to-day operations. As such, it appears that the Parties will need to discover materials and depose witnesses at each of the offices where employees or former employees opt into the collective action. Accordingly, the Court finds this factor disfavors transfer.

### 2. Availability of Compulsory Process

As to this factor, the Court finds the nature and scope of this action are such that transferring to Texas--and thereby providing for compulsory process in Texas--would not significantly affect the prosecution of this lawsuit. It appears to the Court, and Defendants have not shown otherwise, that the major witnesses in this action are the Parties themselves or employees of Defendants. As such, compulsory process likely will not be necessary [*9] to obtain the testimony of these witnesses, and this factor does not favor transfer.

### 3. Cost of Litigation

In the Court's view, transferring this case to the Southern District of Texas is unlikely to significantly reduce the costs of litigation for either Party. While transferring the case would make it easier for Mr. Payne and Ms. Parameter--both Houston residents--to attend the courtroom proceedings, it would also make it more difficult for the three named Plaintiffs who are residents of Nevada. Moreover, both Plaintiffs and Defendants have out-of-state counsel that are not based in Nevada or Texas. Accordingly, the Court finds that transferring the case would not significantly reduce the costs of litigation, and thus, this factor disfavors transfer.

### 4. Plaintiffs' Choice of Forum and the Parties' Nevada Contacts

"The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co., 805 F.2d at 844*. But, "when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987)*. Moreover, "[i]f the operative facts have not occurred within the [*10] forum

of original selection and that forum has no particular interest in the parties or subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)*. Here, the Court must give Plaintiffs' choice of a Nevada forum less weight because Plaintiffs represent a class of individuals comprised of citizens of several states. But the Parties do have sufficient contacts with the state such that Plaintiffs' choice of forum is not unreasonable. Sixteen of the Plaintiffs are Nevada residents, including three of the named Plaintiffs, and Defendants state that they have fifty-one current and former employees in Nevada. Also, Defendants' significant business operations in Nevada subject it to personal jurisdiction within the state. Consequently, the Court finds that Plaintiffs' choice of forum is not unreasonable, that it merits some deference, and that it weighs against transfer.

**5. Court Most Familiar with the Governing Law**

As alleged in Plaintiffs' Complaint, this action involves questions of both federal and state law. The Court finds that transferring this case to the Southern District of Texas would do little [*11] to increase the Court's familiarity with the governing law. First, a court in the Southern District of Texas would not be more with familiar Plaintiffs' FLSA and ERISA claims, which involve purely issues of federal law. Next, while a Texas court would be more familiar with Texas law, it would be less familiar with Nevada law, and likely no more familiar with Plaintiffs' other claims under California, Connecticut, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Rhode Island, Washington, and West Virginia law. As such, this factor weighs against transfer.

**6. Public Policy of the Forum State**

In Nevada's equivalent to the FLSA, Chapter 608 of the Nev. Rev. Stat., it states:

> The Legislature hereby finds and declares that the health and welfare of workers and the employment of persons in private enterprises in this State are of concern to the State and that the health and welfare of persons required to earn their livings by their own endeavors require

certain safeguards as to hours of service, working conditions and compensation therefor.

*Nev. Rev. Stat. § 608.005*. [*12] The Legislature's statement of concern evinces a strong public policy of protecting residents from unlawful wage and labor practices. With three named plaintiffs, sixteen total plaintiffs, and a total of fifty-one current and former employees who worked for Defendants in Nevada, the Court finds that Nevada has a significant interest in providing a Nevada forum for the adjudication of wage and labor claims in this case. Consequently, this factor weighs against transferring the case out of Nevada.

**C. Conclusion**

The Court finds that transferring this case to the Southern District of Texas would do little more than shift some of the inconvenience of this nationwide action from the Defendants to the Plaintiffs. Accordingly, the Court denies Defendants' Motion to Transfer.

**II. Motion for Collective Action Notification**

Section 16(b) of the FLSA authorizes an employee to bring a "collective action" on behalf of all similarly situated employees. 29 U.S.C. § 216(b). While the FLSA does not define "collective action," the legislative history indicates that a "collective action [is] an action brought by an employee or employees for and in behalf of himself or themselves and other employees similarly [*13] situated." *Gray v. Swanney-McDonald, Inc., 436 F.2d 652, 655 (9th Cir. 1971)* (quoting H.R. REP. No. 80-326, at 13 (1947)). Unlike a class action, however, where a class member is bound by the judgment unless she opts-out of the suit, in a collective action an employee must opt-in to a suit by filing written consent with the district court or she is not bound by the result. *Partlow v. Jewish Orphans' Home of S. Cal., Inc., 645 F.2d 757, 758, 759 (9th Cir. 1981), abrogated on other grounds by Hoffmann--La Roche Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*. Consequently, notice in a collective action has less to do with due process. *McElmurry v. U.S. Bank Nat'l Ass'n, 495 F.3d 1136, 1139 (9th Cir. 2007)*. Instead, notice is meant to assist the plaintiffs in lowering their individual costs by pooling their resources, and affords the judicial system an efficient means of resolving common issues of law and fact. *Hoffman--La Roche, 493 U.S. at 170*. As such, a district court has discretion to authorize the named

plaintiffs to send notice to all potential plaintiffs and may set a deadline for when plaintiff consents are due. *Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000).*

In [*14] determining whether potential plaintiffs are "similarly situated," courts generally follow one of two approaches: (1) evaluate the FLSA collective action in a manner analogous to *Fed. R. Civ. P. 23*'s class certification requirements; or (2) apply a two-step approach that involves conditionally certifying the collective action early in the litigation for the purposes of notice based on a lenient "similarly situated" standard and then applying a more rigorous test, usually on defendant's motion for decertification, after the completion of discovery. *See Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004); see generally* 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1807 (3d ed. 2005). As the Ninth Circuit does not appear to have opined on this issue, the Court follows the second approach, which the majority of courts seem to have adopted or approved. *Leuthold, 224 F.R.D. at 466. See, e.g., Mooney v. Aramco Servs. Co., 54 F.3d 1207 (5th Cir. 1995), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); Grayson v. K Mart Corp., 79 F.3d 1086 (11th Cir. 1996); Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208 (11th Cir. 2001);* [*15] *Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095 (10th Cir. 2001).*

At this early stage of the litigation the Court evaluates Plaintiffs' Motion for Collective Action Notification based on the first-tier, more lenient "similarly situated" standard. Courts, at this stage, typically rely only on the pleadings and any affidavits that have been submitted, and some courts only require that plaintiffs make substantial allegations that the putative class members were subject to a common policy. *Leuthold, 224 F.R.D. at 468.* Here, the Court finds that Plaintiffs' affirmations and allegations meet the threshold showing for notice and conditional certification. While Defendants submit substantial briefing and competing declarations that currently create several disputed issues of law and fact, the Court believes that by permitting collective action notification and discovery, it will be better able to evaluate the Parties' contradictory claims. In particular, the Court believes that much of the Parties' conjecture regarding whether Defendants' policies are centralized or decentralized will fade away after Defendants' current and former employees nationwide are given opportunity to opt-in to [*16] this suit and sufficient discovery is taken. The Court recognizes that its decision creates significant costs for the Defendants, especially if Plaintiffs' claims are later shown to lack merit. But the Court finds that Plaintiffs' allegations and declarations satisfy its lenient burden at this first stage of the inquiry. Consequently, the Court grants Plaintiffs' Motion for Collective Action Notification.

Moreover, as the Defendants have not objected to Plaintiffs' proposed notice, the Court approves the notice and orders the following:

> 1. Defendants shall provide Plaintiffs' counsel a list, both electronically and by hard copy, of all individuals who meet the class descriptions specified in this Order, including their current or last known address, phone number, email address, and dates of employment within thirty days.

> 2. Defendants shall post notices and opt-in forms in a conspicuous place, such as break rooms, at Defendants' locations for a period of ninety days.

> 3. Defendants shall email notice to the employees who meet the class descriptions specified in this Order within thirty days.

> 4. Defendants shall publicize notice in their employee newsletter or similar publication, if any, [*17] in the next three issues of such a publication.

> 5. Plaintiffs shall file any additional opt-in consent forms with the Court within one hundred and twenty days. After this time, the class will be closed and the Court will no longer accept additional opt-in consent forms.

## III. Motion to Shorten Time

The Court effectively denied Plaintiffs' request for an order shortening time in its December 12, 2007, Order (Dkt. # 26) that granted Defendants' an extension of time

to respond to Plaintiffs' Motion for Collective Action. The Motion is denied as moot.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Transfer (# 41) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Collective Action Notification (# 2) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Shorten Time (# 3) is DENIED as moot.

Dated: February 29, 2008.

/s/ Roger L. Hunt

**ROGER L. HUNT**

**Chief United States District Judge**

4 of 4 DOCUMENTS

**NICOLE WILLIAMS, on behalf of herself and all others similarly situated, Plaintiff, vs. LE CHAPERON ROUGE, et al., Defendants.**

**Case No. 1:07-CV-829**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION**

*2007 U.S. Dist. LEXIS 59338*

**August 14, 2007, Decided**
**August 14, 2007, Filed**

**SUBSEQUENT HISTORY:** Class certification denied by *Williams v. Le Chaperon Rouge, 2007 U.S. Dist. LEXIS 95510 (N.D. Ohio, Dec. 17, 2007)*

**COUNSEL:** [*1] For Nicole Williams, on behalf of herself and all others similarly situated, Plaintiff: Jason R. Bristol, LEAD ATTORNEY, Cathleen M. Bolek, Cohen, Rosenthal & Kramer, Cleveland, OH; Anthony J. Lazzaro, Law Office of Anthony J. Lazzaro, Cleveland, OH.

For Le Chaperon Rouge, Le Chaperon Company, Defendants: Brent L. English, Cleveland, OH.

**JUDGES:** ANN ALDRICH, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ANN ALDRICH

**OPINION**

**MEMORANDUM AND ORDER**

On March 20, 2007, plaintiff Nicole Williams ("Williams"), on behalf of herself and all others similarly situated, filed a complaint in the Northern District of Ohio, Eastern Division, alleging that defendants Le Chaperon Rouge and Le Chaperon Company violated the Fair Labor Standards Act ("FLSA"), *29 U.S.C. §§ 201-19 (2006)*, and the Ohio Minimum Wage Act, *O.R.C. §§ 4111.01-99 ("OMWA")*, by failing to compensate her and all other hourly, non-exempt employees for all hours worked. (Doc. No. 1.) On March 21, 2007, Catherine

Alexander joined the suit as a party plaintiff, opting in under *29 U.S.C. § 216(b)*. (Doc. No. 3.) On May 7, 2007, Williams filed a motion for conditional certification under *29 U.S.C. § 216(b)*, expedited opt-in discovery, and court supervised notice to potential [*2] opt-in plaintiffs. (Doc. No. 6.) On June 25, 2007, the defendants filed a reply in opposition to this motion. (Doc. No. 20.) On June 29, 2007, Williams filed a reply in support of the motion for conditional certification, expedited opt-in discovery, and court supervised notice to potential opt-in plaintiffs. (Doc. No. 22.)

All of the issues have been fully briefed and are ripe for adjudication. For the following reasons, the court grants Williams's motion for conditional certification, expedited opt-in discovery, and court supervised notice to potential opt-in plaintiffs (Doc. No. 6).

**I. FACTUAL BACKGROUND**

Williams is a former employee of Le Chaperon Company, the owner and operator of childcare centers and elementary schools in Northeastern Ohio. She alleges that during the approximately six months that she worked for Le Chaperon Company at its Rocky River, Ohio location, she, and other similarly situated employees, were subject to numerous violations of the FLSA and its regulations, including:

1) a policy in violation of *29 CFR § 785.11*, which allowed only five minutes at the end of the work day to perform state mandated classroom clean up, forcing employees to work beyond regular business [*3] hours without compensation;

2) practices in violation of *29 CFR § 785.16*, which regularly deprived employees of appropriate paid break time;

3) practices and a policy in violation of *29 U.S.C. § 207(a)(1)*, which led to a failure to pay overtime for hours that employees worked in excess of 40 per week;

4) policies in violation of *29 CFR § 785.27-29*, which declared employee participation in mandatory training sessions, open houses, and staff meetings to be without compensation;

5) a policy in violation of *29 CFR § 531.32(a)*, which required deduction of the cost of involuntary training sessions from employees' paychecks if they resigned prior to a full year of employment, thereby reducing each of the employees' earnings below the minimum wage for that pay period. (Doc. No. 1.)

In support of these allegations and to demonstrate that she is representative of other similarly situated employees of Le Chaperon Company, Williams has submitted a sworn affidavit and a copy of a Le Chaperon Company employee handbook for teachers, which sets out the policies that she alleges are in violation of the FLSA and its regulations. (Doc. No. 6-2; Doc. No. 6-3.) Williams also cites the parallel allegations that [*4] appear in the affidavit of consent filed by Catherine Alexander, a former teacher for Le Chaperon Company, who joined this suit as a party plaintiff under *29 U.S.C. § 216(b)*. (Doc. No. 3.)

Le Chaperon Company counters that Williams cannot represent a class of similarly situated workers from its childcare centers and schools because, unlike Alexander and the majority of other members of the class she proposes, Williams worked part-time and did not hold the position of teacher. (Doc. No. 9; Doc. No. 20.) The company further alleges that the employee handbook that Williams submitted as evidence was not in effect during her employment there, and, therefore, it in no way applies to either her or other employees she intends to notify to opt into the suit and it in no way suggests that she and these other employees are similarly situated under *29 U.S.C. § 216(b)*. (Doc. No. 20.)

## II. DISCUSSION

### A. Standard for a Motion for Conditional Certification Under *29 U.S.C. 216(b)*

Conditional class certification is the first phase of a two-phase process to determine whether proposed co-plaintiffs in a suit filed under the FLSA are, in fact, "similarly situated," and, therefore, capable of exercising the [*5] right to collective action that the statute provides. *Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006); see also 29 U.S.C. § 216(b)*. Throughout this process, the plaintiff bears the burden of establishing that she and the class she wishes to represent are similarly situated. *Smith v. Lowe's Cos., No. 2:04-CV-774, 2005 U.S. Dist. LEXIS 9763, at *8 (S.D. Ohio May 11, 2005)* (internal citations omitted); *England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 507 (M.D. La. 2005)*. The plaintiff need not show, however, that her position is identical to the position held by putative class members, but rather only that her position is similar. *Comer, 454 F.3d at 546-47* (citing *Pritchard v. Dent Wizard Int'l, 210 F.R.D. 591, 595 (S.D. Ohio 2002))*.

During the first or "notice" phase of the certification process, when the parties have yet to initiate discovery, the standard for determining whether the plaintiff has met this burden is "fairly lenient." *See Comer, 454 F.3d at 546-47* (internal citations omitted). The plaintiff must make only a "modest factual showing sufficient to demonstrate that [the plaintiff] and potential plaintiffs together were victims of a common policy or [*6] plan that violated the law." *Id. at 547* (quoting *Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 238 (N.D.NY. 2002))*. Courts evaluating the plaintiff's factual showing during the conditional certification phase may consider "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted." *Smith, 2005 U.S. Dist. LEXIS 9763, at *10* (internal citations omitted). If the plaintiff successfully makes the modest factual showing necessary for conditional certification, then the court may play a role in ensuring that potential opt-in plaintiffs receive timely, accurate, and informative notice. *See Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170-72, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*.

The second phase of the class certification process under the FLSA takes place upon the completion of discovery, when the court has more information about the plaintiff and potential class members. *Comer, 454 F.3d at 547*. During this phase, the court employs a stricter standard to determine whether the plaintiff and the class

members are similarly situated. *See id.* (citing *Morisky v. Pub. Serv. Elec. & Gas. Co., 111 F. Supp. 2d 493, 497 (D. N.J. 2000))*. [*7] At this point, the defendant may move to decertify the class, making a "fact-specific inquiry" into the plaintiff's showing that she is similarly situated to the opt-in plaintiffs. *See Goldman v. Radioshack Corp., No. 03-CV-0032, 2003 U.S. Dist. LEXIS 7611 at *27, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003)* (citation omitted).

**B. Analysis**

Williams has made the "modest factual showing" necessary for conditional certification of a class action under *29 U.S.C. § 216(b). See Comer, 454 F.3d at 547.* Not only did she identify the teachers working for Le Chaperon Company as potential opt-in plaintiffs, she also submitted an affidavit from former teacher Catherine Alexander alleging that Le Chaperon Company subjected her to the same practices and policies described in Williams's complaint. *See Smith, 2005 U.S. Dist. LEXIS 9763, at * 10* (considering affidavits of potential plaintiffs as relevant factor). Most significantly, Williams submitted a copy of an employee handbook, which may be evidence of a widespread discriminatory plan. *See id.* (considering evidence of a widespread discriminatory plan). This evidence clearly identifies practices and policies as being in violation of the FLSA and it therefore merits conditional [*8] certification of the class, which would allow the parties to proceed to discovery and resolve whatever factual disputes arise regarding the validity of the evidence itself. *See Johnson v. TGF Precision Haircutters, Inc., 319 F. Supp. 2d 753, 755 (D. Tex. 2004)* (holding that during the conditional certification phase, "the affidavits and employee handbook submitted by Plaintiff constitute sufficient

evidence that putative class members were the victims of a common policy violating the FLSA."). Indeed, Le Chaperon Company's effort to attack the validity of Williams's evidence is inappropriate during the conditional certification phase. *See Goldman, 2003 U.S. Dist. LEXIS 7611 at *27, 2003 WL 21250571, at *8* ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant."). Thus, any questions as to whether Williams worked as a teacher for Le Chaperon Company or whether the employee handbook was, in fact, in effect during her employment, must be left for a later stage of litigation, after discovery, when both parties have more information about the validity of the class that is conditionally certified in the initial phase. *See id.* To facilitate the resolution [*9] of these issues, the parties should, therefore, begin discovery and the process of notifying possible opt-in plaintiffs about the litigation in progress. Accordingly, Williams's motion is granted.

**III. Conclusion**

For the foregoing reasons, Williams's motion for conditional certification, expedited opt-in discovery, and court supervised notice to potential opt-in plaintiffs is granted. (Doc. No. 6.) A Case Management Conference is set for September 7, 2007 at 11:00 a.m. in Chambers 17b.

IT IS SO ORDERED.

*/s/ Ann Aldrich*

UNITED STATES DISTRICT JUDGE

Dated: August 14, 2007

4 of 4 DOCUMENTS

**MARK A. GOLDMAN, Plaintiff, v. RADIOSHACK CORPORATION, Defendant.**

Civil Action No. 2:03-CV-0032

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

*2003 U.S. Dist. LEXIS 7611*

April 16, 2003, Decided
April 17, 2003, Filed, Entered

**SUBSEQUENT HISTORY:** Class certification granted by *Goldman v. Radioshack Corp., 2005 U.S. Dist. LEXIS 8742 (E.D. Pa., May 9, 2005)*

**DISPOSITION:** [*1] Motion for class certification denied. Motion for conditional certification of Federal Fair Labor Standards Act claim GRANTED.

**COUNSEL:** For MARK GOLDMAN, Plaintiff: ELIZABETH FEGAN HARTWEG, THE WEXLER FIRM, CHICAGO, IL.

For MARK GOLDMAN, Plaintiff: MICHELE S. EAGAN, RODA & NAST PC, LANCASTER, PA.

For RADIOSHACK CORPORATION, Defendant: MARYBETH S. CHRISTIANSEN, MCKENNA, LONG & ALDRIDGE, LLP, DEVON, PA.

For RADIOSHACK CORPORATION, Defendant: ROBERT S. BREWER, JR., ROSS H. HYSLOP, MCKENNA LONG AND ALDRIDGE LLP, SAN DIEGO, CA.

**JUDGES:** Franklin S. Van Antwerpen, U.S.D.J.

**OPINION BY:** Franklin S. Van Antwerpen

**OPINION**

MEMORANDUM AND ORDER

Van Antwerpen, J.

April 16, 2003

Presently before this court is Plaintiff Mark A. Goldman's Motion for Conditional Certification of a *Federal Fair Labor Standards Act* ("FLSA") Claim and Facilitation of Notice Pursuant to [*2] *29 U.S.C. § 216(b)*, and for Class Certification of *Pennsylvania Minimum Wage Act* ("MWA") and *Wage Payment and Collection Law* ("WPCL") Claims Pursuant to *FED. R. CIV. P. 23* filed on February 14, 2003 [Docket # 18]. Plaintiff's motion will be granted in part and postponed in part. We will grant Plaintiff's motion for conditional certification of the FLSA claim. We also believe that the proposed state law class action meets all the requirements of *FED. R. CIV. P. 23(a)* and the superiority requirement of *FED. R. CIV. P. 23(b)(3)*, but we will postpone class certification because further discovery is needed regarding the predominance test of *FED. R. CIV. P. 23(b)(3)*. We will therefore refrain from a complete *Rule 23(a)* and partial *Rule 23(b)(3)* inquiry until we rule on the entire *Rule 23(b)(3)* motion.

I. Background & Procedural History

Goldman brings a three count complaint against Defendant RadioShack Corporation ("RadioShack") on behalf of himself and all other similarly situated plaintiffs. He worked at RadioShack from November 1985 to September 2001. Goldman alleges that RadioShack violated federal and state minimum wage laws because it did not pay [*3] its "Y" Store Managers [1] overtime wages when they worked in excess of forty hours per week. RadioShack claims that Store Managers are exempt from both federal and Pennsylvania overtime pay requirements because they are exempt executive

personnel under *29 U.S.C. § 213(a)(1)*, or *29 C.F.R. §§ 541.1-541.119*. Goldman alleges that the Store Managers were actually nothing more than sales associates with a few extra tasks to preform. He alleges that RadioShack merely put an executive sounding label on the Store Managers to avoid paying overtime wages. Goldman has filed affidavits of himself and four other former "Y" Store Managers that describe their day-to-day activities. Each affidavit and the complaint alleges that Store Managers performed sales associate tasks including: sales; restocking shelves; and cleaning. Moreover, they do not have the discretionary powers associated with executive or managerial positions, including but not limited to: merchandising; hiring or terminating employees; determining employee salaries; controlling inventory levels; setting store hours; training employees; and designing store layout. Goldman further alleges [*4] that Store Managers were required to keep their managerial activities to less than 22% of their work week through the RadioShack "7-1-1" plan. The "7-1-1" plan required Store Managers to work as sales associates for seven out of every nine hours worked. The "1-1" in the plan refers to one hour of paperwork and one hour of training per day. See Pl.'s Motion for Conditional Certification: Exs. 6 & 7, filed on Feb. 14, 2003 [# 18]. The plan also required Store Managers to work at least 54 hours per week without any overtime compensation.

> 1    RadioShack "Y" stores are RadioShack locations that had over $ 500,000 in annual gross revenues in fiscal year 2000 and thereafter.

In defense, RadioShack argues that the percentage of time spent on managerial duties is not the correct test for whether an employee is exempt from the overtime pay statutes; and that the Store Managers are exempt employees because they are actual managers.

Goldman filed his complaint against RadioShack in Court of Common Pleas of Philadelphia [*5] County on December 17, 2002. Defendant properly removed the complaint to this court in January 2003. Goldman now moves to conditionally certify an FLSA opt-in representative action, and moves to certify a *Rule 23(b)(3)* opt-out class action alleging violations of MWA and WPCL. The FLSA suit would therefore include only those plaintiffs who expressly decide to take part while conversely the state actions consist of "all persons who were employed by RadioShack as a "Y" Store Manager in Pennsylvania at any time on or after December 11,

1999." See Pl.'s Motion filed on Feb. 14, 2003, at 2 [Docket # 18]. [2]

> 2    Goldman's complaint defines both the FLSA and the MWA/WCPL classes as:
>
>> All persons who were employed by RadioShack as a "Y" store manager in Pennsylvania at any time on or after December 11, 1999, and during at least one workweek during that period worked in excess of 40 hours without receiving compensation for the excess hours at a rate not less than one and one-half times the regular rate at which the person was employed.
>
> See Def.'s Notice of Removal Exhibit: Pl.'s Complaint filed on Jan. 3, 2003 [# 1].

[*6] II. Jurisdiction

This case was properly removed to this court pursuant to *28 U.S.C. § 1441*. We have original federal question jurisdiction over Plaintiff's FLSA claim pursuant to *28 U.S.C. § 1331*. We have supplemental jurisdiction over Plaintiff's state law claims pursuant to *28 U.S.C. § 1367(a)* because the MWA and WPCL claims form part of the same controversy between the parties as the FLSA claim. The FLSA and the MWA require overtime pay for each hour in excess of forty hours per week that the employee works. Compare *29 U.S.C. § 207(a)*; with *PA. STAT. ANN. tit. 43 § 104(c)*. The WPCL requires overtime compensation to be paid in the next period. See *PA. STAT. ANN. tit. 43 § 260.3*. If the overtime wages are not timely paid, then the employer may be liable for liquidated damages under the WPCL. See *PA. STAT. ANN. tit. 43 § 260.10*. The FLSA, MWA and WPCL comprise the same case or controversy between Goldman, the proposed class and RadioShack.

RadioShack argues that we do not have jurisdiction over the state law claims brought on behalf of proposed class members [*7] who do not opt-into the FLSA representative action because in the absence of an accompanying individual federal claim we would not have original jurisdiction over their individual claims. RadioShack argues that the state law class should not encompass any proposed plaintiff that does not expressly

opt-into the FLSA representative action. It argues that to exercise jurisdiction would be an impermissible and unauthorized use of so-called "pendent-plaintiff" jurisdiction. See Def.'s Mem. in Opp'n, at 44-45 filed on Feb. 2, 2003 [# 26-1].

In support, RadioShack cites two types of cases. First, RadioShack lists a series of cases decided before § 1367 was extensively altered in 1990. See *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 411-14(D.N.J. 1988) (finding no pendent-party question because plaintiff voluntarily defined the *Rule 23* state claims class as only those members in the opt-in ADEA representative class); *Robinson v. Sizes Unlimited, Inc.*, 685 F. Supp. 442, 444-49 (D.N.J. 1988) (exercising discretion to refuse pendent-party jurisdiction over state law claims because court wanted to "effectively eliminate defendant's concerns" regarding [*8] the jurisdictional problems but not deciding the jurisdictional issues when the ADEA class and the New Jersey state law class have few overlapping plaintiffs); *Pirrone v. No. Hotel Assocs.*, 108 F.R.D. 78, 83-84 (E.D. Pa. 1985) (exercising discretion to refuse pendent-party jurisdiction because Congress had not yet extended pendent-party jurisdiction beyond the scope of the FLSA); Isaac v. Wm. H. Pflaumer & Sons, Inc., 1990 U.S. Dist. LEXIS 8892, Civ. A. No. 90-1622, 1990 WL 102808 (E.D. Pa. July 17, 1990) (exercising discretion pursuant to § 1441(c) to remand pendent-party class members to state court). In each of these four cases, the court declined to reach the issue of whether pendent-party jurisdiction existed. Instead, in three of the cases, court refrained from reaching the issue by exercising discretion pursuant to § 1441 or § 1367 to remand or refuse jurisdiction over the pendent-parties. In Sperling, the court did not face the question because the plaintiff did not move the court to exercise jurisdiction over non-opt-in potential class members. These cases are not analogous to the instant case.

Moreover, these cases have no relevance since Congress altered § [*9] 1367 to overrule the Supreme Court's Finley decision. In Finley, the Supreme Court held that exercising pendent-party jurisdiction in federal question cases exceeded the statutory authority granted to the courts by Congress. See *Finley v. United States*, 490 U.S. 545, 549, 104 L. Ed. 2d 593, 109 S. Ct. 2003 (1989). The 1990 amendments to § 1367 combined pendent and ancillary jurisdiction into supplemental jurisdiction, and allowed supplemental jurisdiction to extend to the full limits of Article III in federal question cases, thus

overruling Finley. *Section 1367(a)* states:

> In any civil action of which the district courts have original jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such jurisdiction shall include claims that involve the joinder or intervention of *additional parties.*

*28 U.S.C. § 1367(a)* (emphasis added).

The text of the statute does not limit the additional parties to defendants, as RadioShack argues. Instead, § 1367(a) expressly [*10] allows supplemental jurisdiction over "additional parties" which we believe would include related claims of any additional party. By creating a class of all Pennsylvania "Y" Store Managers under *Rule 23*, Goldman is seeking their joinder to this action as additional parties with claims that form part of the same case or controversy. See *Zahn v. International Paper Co.*, 414 U.S. 291, 296, 299-300, 38 L. Ed. 2d 511, 94 S. Ct. 505 & n.6, 414 U.S. 291, 38 L. Ed. 2d 511, 94 S. Ct. 505 (comparing class action and joinder cases) (citations omitted); *Snyder v. Harris*, 394 U.S. 332, 337, 22 L. Ed. 2d 319, 89 S. Ct. 1053 (1969) (same); 7A Charles Alan Wright et al., Federal Practice and Procedure, § 1752 (discussing history of *Rule 23*, spurious class actions and joinder). Goldman is properly using § 1367(a). The proposed opt-out class members are "additional parties" bringing "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *28 U.S.C. § 1367(a)*.

Second, RadioShack cites four post-1990 cases for the proposition that courts do not have supplemental jurisdiction over state law claims related [*11] to an FLSA representative action. See *Marquis v. Tecumseh Prods.*, 206 F.R.D. 132, 162-65 (E.D. Mich. 2002) (exercising discretion to decline certifying state law class action which included pendent-parties, because the named plaintiffs failed to exhaust their administrative remedies regarding their Title VII claims that gave court original jurisdiction and state law issues predominated); *Zelaya v. J.M. Macias, Inc.*, 999 F. Supp. 778, 782-83 (E.D.N.C. 1998) (questioning federal jurisdiction over pendent-plaintiffs and declining jurisdiction under the court's discretion pursuant to § 1367(a)); Ballaris v.

Wacker Siltronic Corp., 2002 U.S. Dist. LEXIS 2746, No. Civ. 00-1627-KI, 2002 WL 926272, at *3 (D. Or. Feb. 7, 2002) (noting absence of pendent-party issue because plaintiff intended to move for certification of a state law *Rule 23* class that consisted of only the FLSA opt-in members); De La Fuente v. FPM Ipsen, 2002 U.S. Dist. LEXIS 24040, No. 02-C-50188, 2002 WL 31819226, at *1-2 (N.D. Ill. Dec. 16, 2002) (declining to rule on class certification until the conclusion of discovery; not addressing jurisdictional concerns). Zelaya is the only case cited by Defendant that [*12] is on point, because the court in the other three cases did not reach the pendent-plaintiff jurisdictional issue. We decline to follow Zelaya.

*Zelaya* was concerned with the risk that plaintiffs could manufacture original jurisdiction over the case in an attempt to gain federal jurisdiction over the tenuously related state law claims. See Kelley v. SBC, Inc., [5 Wages-Hours] Lab. L. Rep. (BNA) 16, 1998 U.S. Dist. LEXIS 18643, at *38 (N.D. Cal. Nov. 13, 1998) (exercising supplemental jurisdiction over state law claims when original jurisdiction was founded upon FLSA claims and distinguishing Zelaya because Kelley was removed by the defendant). No such risk exists here because Goldman filed in state court and it was RadioShack which chose to remove this case to federal court. RadioShack had the option of litigating the claims in state court because the FLSA allows concurrent state and federal court jurisdiction. See *29 U.S.C. § 216(b)* ("An action ... may be maintained against an employer in any Federal or State court of competent jurisdiction ....") (parenthetical omitted). If the case had remained in Pennsylvania state court, [*13] Goldman would have been able to maintain the FLSA opt-in representative action and bring the state law claims under Pennsylvania's opt-out class action mechanism. See PA. R. CIV. P. 1702 & 1708 (listing requirements and factors to be considered for certifying a class). Goldman did not choose the federal forum to gain federal jurisdiction over tenuously related state claims.

We note also that *Zelaya* has not received a welcomed reception in federal courts. See *Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 95-96 (S.D.N.Y. 2001)* (criticizing Zelaya and citing cases holding that supplemental jurisdiction is proper) (citations omitted); *Kelley, 1998 U.S. Dist. LEXIS 18643,* *38 (distinguishing Zelaya and exercising supplemental jurisdiction). Zelaya has not been followed. District

Courts routinely exercise supplemental jurisdiction over related state labor law claims when the original jurisdiction is founded on *28 U.S.C. § 1331* and the plaintiffs are bringing an FLSA representative action. See *Scott v. Aetna Servs., Inc., 210 F.R.D. 261 (D. Conn. 2002)* (certifying FLSA opt-in and *Rule* [*14] 23 opt-out classes without limiting opt-out class to only opt-in members); *O'Brien v. Encotech Constr. Servs., 203 F.R.D. 346, 350-53 (N.D. Ill. 2001)* (same); *Ansoumana, 201 F.R.D. at 89-96* (providing an extensive history and discussion of the topic and exercising supplemental jurisdiction because *§ 1367(a)* retained the pre-1990 restrictions only for cases where original jurisdiction was founded solely on *§ 1332* diversity jurisdiction); *Brzychnalski v. Unesco, Inc., 35 F. Supp. 2d 351 (S.D.N.Y. 1999)* (same as *Scott, 210 F.R.D. 261*); *Ladegaard v. Hard Rock Concrete Cutters, Inc., 2000 U.S. Dist. LEXIS 17832, No. 00-C-5755, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000)* (same); *DeAsencio v. Tyson Foods, Inc., [8 Wages-Hours 2d] 2002 U.S. Dist. LEXIS 13038, Lab. L. Rep. (BNA) 190, 2002 WL 1585580, at *5 (E.D. Pa. July 17, 2002)* (exercising supplemental jurisdiction); *Kelley, 1998 U.S. Dist. LEXIS 18643, at *38* (same); cf. *Dunlop-McCullwn v. Parham, 2002 U.S. Dist. LEXIS 21854, No. 97-Civ.-0195, 2002 WL 31521012, at ** 9-10 (S.D.N.Y. Nov. 13, 2002)* (exercising supplemental jurisdiction over state law claims when original jurisdiction was founded [*15] on *§§ 1331& 1337* when plaintiff brought a LMRDA case). The clear weight of authority is in favor of exercising supplemental jurisdiction.

We find that *§ 1367(a)* gives us the power to exercise supplemental jurisdiction over the opt-out plaintiffs who are not opt-in members of the FLSA action. The question remains as to whether we will exercise that power because *§ 1367* allows us to exercise our discretion and retain or remand these claims. We choose to retain these claims. It is prudent to try these related claims together in the interest of judicial economy. See *West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)* ("'Considerations of judicial economy, convenience and fairness to litigants' weigh in favor of hearing the state law claims at the same time as the federal law claims.") (quoting *United Mine Workers v. Gibbs, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)*). The FLSA and WPCL claims "are premised on the same events" and "parallel one another." DeAsencio, 2002 U.S. Dist. LEXIS 13038, 2002 WL 1585580, at *5. "It is likely that the two claims will either

prevail or fail together." Id. If we were to remand certain class members, [*16] the two cases would be so related that any decision on the merits in one action would have preclusive effects on the other action. If the preclusive effects did not come to fruition, the cases may result in conflicting findings or judgments. Proceeding in both forums would needlessly increase litigation expenses for both parties. [3]

> 3   Judge Hellerstein stated the reasoning well:
>
>> If the related FLSA and [state] *Minimum Wage Act* claims were to be litigated in parallel fashion, ..., there would be great potential for confusion of issues; considerable unnecessary costs, inefficiency and inconsistency of proceedings and results; and other problems inherent in parallel class action litigation .... Congress enacted *§ 1367* to avoid such problems. Defendants short-sightedly argue to reverse the Congressional wisdom. I decline to do so.
>
> See *Ansoumana*, *201 F.R.D. at 96*; see De Asencio, 2002 U.S. Dist. LEXIS 13038, 2002 WL 1585580, at *5 (exercising discretion for the sake of judicial economy).

Moreover, [*17] we do not want to create incentives for defendant forum shopping. This action could have easily been maintained in state court because the Pennsylvania courts have jurisdiction over the FLSA and state law claims. RadioShack choose this forum. Defendants might be encouraged to remove to federal court, not because they are an out of state defendant, but because the federal forum's jurisdictional limitations would complicate plaintiffs' case and increase plaintiffs' litigation expenses.

Pursuant to *§ 1331*, we have original jurisdiction over the opt-in FLSA representative class. For the reasons stated, we will exercise our discretion to assume supplemental jurisdiction pursuant to *§ 1367(a)* over the related state law claims and the proposed *Rule 23* opt-out class as well.

III. FLSA Representative Class

A. Applicable Law

Employers are required to pay time and a half for each hour in excess of forty hours that the employee works. See *29 U.S.C. § 207(a)*. There are exceptions to the rule, including one which provides that employees who are employed in a bona fide executive capacity are not entitled to overtime wages. See *29 U.S.C. § 213* [*18] *(a)(1)*. An employee may bring an action on behalf of himself and other similarly situated employees pursuant to *29 U.S.C. § 216(b)*. FLSA claims are not subject to the usual *Rule 23* class action requirements. Instead, *29 U.S.C. § 216(b)* provides a special opt-in representative action mechanism for joining claims and plaintiffs. Each employee who wishes to join the action must affirmatively consent to be a member of the action by filing written consent to that effect. See *29 U.S.C. § 216(b)*; *Lusardi v. Lechner, 855 F.2d 1062, 1068 n.8 (3d Cir. 1988)*.

Although the FLSA creates an opt-in mechanism, district courts nevertheless have wide discretion in managing joinder of parties and notice to parties. See *FED. R. CIV. P. 83(b)* (allowing court discretion to manage cases when the rules are silent on an issue); cited by *Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170-72, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989)* (urging early trial court management of the notice process in *§ 216(b)* opt-in actions to ensure that parties are made aware of the action's benefits and avoiding multiple lawsuits); *De Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660, 662 (E.D. Pa. 2001)*. [*19]

Before facilitating notice, we must first find that the action can proceed as an FLSA representative action. See *De Asencio, 130 F. Supp. 2d at 662*. There are only two requirements under *§ 216(b)* for an action to proceed as a representative action: (1) class members must be "similarly situated"; and (2) all members must affirmatively consent to join the action. See *29 U.S.C. § 216(b)*; *Sperling v. Hoffman-La Roche, Inc., 862 F.2d 439, 444, aff'd 493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482; De Asencio, 130 F. Supp. 2d at 662*. The statute does not provide an express test for determining who are "similarly situated" employees under *§ 216(b)*. In the absence of Third Circuit or Supreme Court guidance, a two-tiered test structure has developed among the district courts in the Third Circuit. See *De Asencio, 130 F. Supp. 2d at 662-63*; *Mueller, 201 F.R.D. 425, 427-28 (W.D. Pa. 2001)*; *Morisky v. Public Serv. Elec. & Gas Co., 111 F.*

*Supp. 2d 493, 497 (D.N.J. 2000); Lusaridi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987),* modified *122 F.R.D. 463 (D.N.J. 1988)* (decertifying [*20] class because representative action members not "similarly situated"); Bunnion v. Consol. Rail Corp., [5 Wages-Hours 2d] 1998 U.S. Dist. LEXIS 7727, Lab. L. Rep. (BNA) 717, 1998 WL 372644, at * 17 (E.D. Pa. May 14, 1998); see also *Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208 (11th Cir. 2001)* (adopting the two-tiered approach and citing *Lusardi, 118 F.R.D. 351); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)* (adopting the *Lusardi, 118 F.R.D. 351,* two-tiered test).

The first tier of the test occurs at the beginning of the case when the court has minimal evidence. See *De Asencio,, 130 F. Supp. 2d at 662-63.* At this stage, the court may only conditionally certify the class so that the Plaintiff may send notice to the potential representative action members.*Id.; Mueller, 201 F.R.D. at 428.* "A court may conditionally certify the class for purpose of notice and discovery under a comparatively liberal standard, i.e., by determining that the members of the putative class 'were together the victims of a single decision, policy or plan.'" *Mueller, 201 F.R.D. at 428* [*21] (quoting *Sperling, 118 F.R.D. at 407).* The conditional certification is by no means final.

The second tier of the test occurs after all opt-in forms have been received and discovery has concluded. At that time, the court may make a more thorough finding regarding the "similarly situated" requirement. Id. The court will conduct a "fact-specific review of each class member who has opted-in, taking into account factors such as employment setting," variations in employment activities, employment oversight and instruction, and discretionary powers entrusted to individual opt-in plaintiffs. *See id.* If the court then decides that the plaintiffs are not "similarly situated," the FLSA representative action will be decertified and the plaintiffs will proceed with their individual claims. See *De Asencio, 130 F. Supp. 2d at 663.*

B.  RadioShack's  Arguments  Against  Conditional Certification

RadioShack argues that the first tier conditional certification is unwarranted in this case because: (1) there is a pending FLSA representative action in United States District Court of the Northern District of Illinois which has yet to be certified; (2) Goldman [*22] is not an

appropriate representative because he is an exempt employee under the FLSA; and (3) the proposed representative action members are not "similarly situated." We do not find RadioShack's arguments persuasive.

### 1. The Illinois Action

Comity does not dictate that we postpone first tier conditional certification until certification of the FLSA representative action in Illinois is decided. RadioShack claims that Pennsylvania "Y" Store Managers could simply join the nationwide representative action in Illinois, rendering this action redundant. RadioShack's arguments fail for two reasons. First, we are dealing with two different *opt-in* actions. If the Illinois court were entertaining a motion to certify a nationwide *opt-out* class, then our proceeding with a Pennsylvania -wide action could well complicate and frustrate our sister court's jurisdiction. Creating two overlapping opt-out classes would create conflict. This is not the present situation. We are dealing with two *opt-in* actions. No plaintiff will be a member of both representative actions because they must choose one or the other. [4]

> [4] If RadioShack is dissatisfied with this result it may make a *28 U.S.C. § 1407* request for transfer to the Judicial Panel on Multidistrict Litigation to consolidate the two actions. See Manual for Complex Litigation § 31.13 (discussing multidistrict transfers under *§ 1407).*

[*23] Second, while the two cases are similar, they provide different relief and benefits. The Illinois FLSA action does not include any state claims. Therefore, the opt-in plaintiffs will be entitled to two years of back overtime wages if they prevail. They could also recoup three years of back overtime wages but only if they prove RadioShack's alleged willfulness to the court. Damages under the FLSA are limited to "the payment of wages lost and an additional equal amount as liquidated damages." *29 U.S.C. § 216(b).* The FLSA statute of limitations is not tolled until the employee opts-in.

The Pennsylvania action in our case may allow greater relief to class members because Goldman filed a class action alleging violations of the MWA and the WPCL. Unlike the FLSA, the state statute of limitations is three years without the extra burden of proving willful conduct. Damages under the MWA and the WPCL amount to the unpaid wages, plus liquidated damages

equal to the greater of $ 500 or 25% of the lost wages due, plus reasonable attorney's fees and costs. See *PA. STAT. ANN. tit. 43 §§ 260.10& 333.113*. Thus, the Pennsylvania action allows a longer period of recovery [*24] without the extra burden of proving willful conduct, but provides for lower liquidated damages. The Illinois case does not provide these extra opportunities for recovery.

Moreover, the opt-out nature of the potential *Rule 23(b)(3)* class allows potential class members to be included in the class without making a public declaration. Although the FLSA protects current workers from employer retribution, the reality is that some current employees may be hesitant to join a opt-in class out of fear of retribution. The opt-out class will allow current employees relief--albeit not identical relief--as the opt-in plaintiffs without the same concerns regarding retribution.

*2. Goldman's Exempt Status Is Irrelevant At This Stage*

RadioShack argues that Goldman should not be allowed to pursue an FLSA representative action because he is an exempt employee who is not entitled to overtime wages. See Def.'s Memo. in Opp'n, at 19-31, filed on Mar. 21, 2003 [# 26]. We will not consider the substance of RadioShack's arguments on the merits at this stage because only a motion for conditional certification is presently before us. See *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974)* [*25] ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits ...."); *Ansoumana, 201 F.R.D. at 85* (merits of the case are irrelevant to class certification); *Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997)* (merits of the case are irrelevant to "similarly situated" test); *Jackson v. New York Tel. Co., 163 F.R.D. 429, 432 (S.D.N.Y. 1995)* (merits of the case irrelevant to motion for authorization of notice). All of RadioShack's arguments on this issue go to the merits of Goldman's case. The conditional certification inquiry only focuses on the lenient first tier "similarly situated" test. At this stage, with little evidence before us, we believe that Goldman and other "Y" Store Managers were similarly situated because they all had the same minimum weekly hours and did not receive overtime compensation. If Goldman is an exempt employee under the FLSA, it is

likely that the other "Y" Store Managers are also exempt employees. However, the merits of the plaintiff's case are not at issue today because this is a motion for [*26] conditional certification and not a summary judgment motion. [5]

> 5    RadioShack's discussion of Department of Labor's newly proposed regulations, *68 Fed. Reg. 15560*, governing exemptions to the FLSA's overtime requirements are not relevant. See Def.'s Supp. Br. in Opp'n filed on Apr. 8, 2003 [# 31]; Def.'s Notice of Errata filed on Apr. 10, 2003 [# 32]. First, the regulations defining exempt employees go to the merits of the case which are not currently at issue. Second, the proposed regulations are just that, only proposed regulations and not actual regulations. If and when they are enacted, and if they are binding on this case which was filed before *68 Fed. Reg. 15560* was proposed, the new regulation will be relevant only when the merits of Goldman's case are at issue.

*3. A Fact-Specific "Similarly Situated" Inquiry Is Premature*

RadioShack contends that Goldman was a special "Y" Store Manager that was not similar to regular "Y" Store Managers because: (1) his store had fifteen [*27] employees instead of the normal two employees; (2) Goldman was trained three times to become a District Manager; and (3) Goldman was designated a "Hiring Manager" with the responsibility to hire employees at several locations; and (4) RadioShack labeled Goldman a "Team Captain."

This may or may not be the case, but we will not delve into a fact-specific "similarly situated" inquiry at this time. As discussed supra Section III.A., conditional certification requires a lax showing of "similarly situated." During this first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members allegedly suffered from the same scheme. A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant. Moreover, any class certification effort should not turn on the merits of the case even after the discovery period has closed. See *Eisen, 417 U.S. at 178; Ansoumana, 201 F.R.D. at 85; Hoffmann, 982 F. Supp. at 262; Jackson, 163 F.R.D. at 432*. It is simply premature to do so now because we lack sufficient evidence to

conduct a more rigorous [*28] inquiry.

C. Conditional Certification is Warranted

We find that the potential members of Goldman's FLSA representative action are "similarly situated" under the first tier test because they were all subjected to the same employment contract with RadioShack. They were all required to work at least 54 hours per week and all were denied overtime pay. We will conditionally certify the FLSA representative action at this time so that Goldman may send notification to potential opt-in plaintiffs. To this end, we will order RadioShack to produce the names and last known addresses of all potential members of the FLSA representative action. This potential group consists of all RadioShack "Y" Store Managers who worked at Pennsylvania RadioShack locations at any time on or after December 11, 1999. [6]

> [6]  This group may be over inclusive after a more thorough analysis of the FLSA statute of limitations. For our present purposes, we would rather be over inclusive rather than under inclusive so that potential action members may state their claim and influence any future statute of limitations debate.

[*29]  IV. MWA and WCPL *Rule 23(b)(3)* Class Action

Unlike the FLSA claims, Pennsylvania's MWA and WCPL do not provide independent joinder mechanisms. Therefore, the proposed MWA and WCPL class actions are opt-out classes governed by *FED. R. CIV. P. 23*. In order to certify a class under *Rule 23*, the class representative must fully comply with the four requirements of *Rule 23(a)* and fulfill the requirements of either *Rule 23(b)(1), 23(b)(2)* or *(b)(3)*. See *Monahan v. City of Wilmington, 49 Fed. Appx. 383, 384 (3d Cir. 2002)*. Goldman seeks to certify a *Rule 23(b)(3)* class of all Pennsylvania RadioShack "Y" employees who worked as Store Managers at any time on or after December 11, 1999. At this time, we believe that Goldman's proposed *Rule 23(b)(3)* class complies with all of the requirements of *Rule 23(a)* and the superiority requirement of *Rule 23(b)(3)*. However, we believe it is premature to find that the proposed class complies with the predominance requirement of *Rule 23(b)(3)*. Specifically, we are concerned that common issues may not predominate over individual issues relating to each manager's employment setting, employment activities, and discretionary powers.

RadioShack [*30] discussed how Goldman's "Y" store differed from other stores because the larger number of employees meant that he may have spent more time on managerial duties and less time on sales associate duties when compared to average "Y" Store Managers. RadioShack mentioned these allegations and theories in an effort to prevent conditional certification of the FLSA claim. We have already stated that such discussions are premature during an FLSA conditional certification inquiry. However, we believe they are relevant to a *Rule 23(b)(3)* class certification analysis because it is not a conditional or preliminary certification mechanism. In light of RadioShack's contentions, a more developed record is obviously required before we rule that common issues of fact and law predominate over individual variations. [7]

> [7]  At this time, we are not predisposed to either finding regarding predominance.

We will postpone a *Rule 23(b)(3)* finding, pursuant to Local *Rule 23.1(c)*, until the close of discovery, at which time Goldman may move [*31] anew for *23(b)(3)* class certification. See *E.D. PA. R. 23.1(c)* ("In ruling upon a motion, the Court may allow the action to be so maintained, may disallow and strike the class action allegations, or *may order postponement of the determination pending discovery* or such other preliminary procedures as appear to be appropriate and necessary in the circumstances.") (emphasis added); Salter v. Philadelphia Hous. Auth., 1999 U.S. Dist. LEXIS 16960, 1999 WL 997758, at * 5 (E.D. Pa. Nov. 2, 1999) (denying defendant's motion to dismiss plaintiff's class action complaint because the court's earlier denial of class certification without prejudice was a delay of the class action certification pending discovery pursuant to Local *Rule 23.1(c)* and not a denial on the merits) (citations omitted); Gomberg v. Western Union Corp., 1997 U.S. Dist. LEXIS 8700, 1997 WL 338938, *5 (E.D. Pa. June 16, 1997) (allowing motion for certification to proceed following discovery pursuant to Local *Rule 23.1(c)* when the parties treated the action as a class action throughout litigation, defendant refused to participate in discovery because the motion was delayed, and defendant suffered no undue hardship); see also De La Fuente, 2002 U.S. Dist. LEXIS 24040, 2002 WL 31819226, [*32] at *1-2 (declining to rule on class certification until after discovery concluded). We will not discuss the requirements of *Rule 23* because any such discussion would be dicta at this time. We acknowledge

Case 4:07-cv-03993-CW    Document 49    Filed 08/21/2008    Page 55 of 67

Page 9
2003 U.S. Dist. LEXIS 7611, *32

receipt of RadioShack's March 21, 2003 letter requesting oral arguments on all certification issues. We believe that oral arguments may well be appropriate, but it would be more productive if the oral arguments and accompanying testimony were heard following discovery. The parties should remember that a proposed class action shall proceed as if it is a class action until class certification is denied or the class is decertified. See Manual for Complex Litigation § 30.11 ("When an action has been filed as a class action, the court must treat it as one until it has determined otherwise.").

V. Conclusion

We will conditionally certify Goldman's proposed FLSA federal representative action because he has fulfilled the first tier test for certification. RadioShack's fact-specific arguments on the merits are premature. We will postpone Goldman's motion for class certification of the state claims until discovery is concluded. We believe that it is proper to rule on the final FLSA [*33] certification and the *Rule 23* class certification at the same time because: (1) the parties and the court will have a better understanding of the facts after conducting discovery; and (2) the second tier of the similarly situated inquiry overlaps with the *Rule 23* inquiry such that they are properly analyzed together. Goldman may move for class certification after discovery and the parties may request oral argument at that time.

An appropriate Order follows.

ORDER

AND NOW, this 16th day of April, 2003, upon consideration of Plaintiff Mark A. Goldman's Motion for Conditional Certification of the Federal Fair Labor Standards Claim Pursuant to *29 U.S.C. § 216(b)* and for Class Certification of the Pennsylvania Minimum Wage Act and Wage Payment and Collection Law Claims Pursuant to *FED. R. CIV. P. 23* filed on February 14, 2003 [Docket # 18]; Plaintiff's Supplemental Memorandum in Support filed on February 25, 2003 [# 21]; Defendant RadioShack Corporation's Memorandum in Opposition filed on March 21, 2003 [# 26]; Plaintiff Mark A. Goldman's Reply Memorandum filed on April 4, 2003 [# 30]; and Defendant RadioShack Corporation's Supplemental Brief in Opposition [*34] filed on April 8, 2003 [# 31], it is hereby ORDERED consistent with the foregoing memorandum that:

1. Plaintiff Mark A. Goldman's Motion for Class Certification of the Pennsylvania Minimum Wage Act and Wage Payment and Collection Law Claims Pursuant to *FED. R. CIV. PRO. 23(b)(3)* is DENIED at this time pursuant to Local Rule *E.D. PA. R. 23.1(c)* WITHOUT PREJUDICE to Plaintiff Mark A. Goldman's right to move for Class Certification of these Pennsylvania claims following the close of discovery;

2. Plaintiff Mark A. Goldman's Motion for Conditional Certification of the Federal Fair Labor Standards Act Claim and Facilitation of Notice Pursuant to *29 U.S.C. § 216(b)* is GRANTED at this time subject to further review as set forth in our memorandum;

3. Pursuant to *29 U.S.C. § 216(b)* and *FED. R. CIV. P. 83*, this Court conditionally certifies an opt-in Class of all former or current employees of RadioShack Corporation (and/or Tandy Corporation) who managed a RadioShack "Y" store in Pennsylvania at any time on or after December 11, 1999, for the claim under the Federal Fair Labor Standards Act;

4. Plaintiff Mark A. Goldman is conditionally designated [*35] as the representative of the Class;

5. Plaintiff's Counsel, Roda & Nast, P.C. and the Wexler Firm, are hereby appointed as Counsel for the Class;

6. Within thirty (30) business days from the date of this Order, Defendant RadioShack Corporation SHALL PRODUCE to Plaintiff's Counsel a list of the names and last known addresses of all potential members of the Class described in the Paragraph Three of this Order;

7. Plaintiff's Counsel SHALL CAUSE to be sent by first-class mail, to all members of the Class described in Paragraph Three of this Order, a Notice Packet consisting of a Notice and Notice of Consent form that are substantially in the form of Exhibits Six and Nine attached to Plaintiff's Supplemental Memorandum in Support filed on February 28, 2003 [Docket # 21]; and

8. Any person who fits within the Class described in Paragraph Three of this Order may join this action by sending a completed Notice of Consent form to Plaintiff's Counsel postmarked on or before July 31, 2003. Any person who does not send a completed Notice of Consent form to Plaintiff's Counsel postmarked on or before July 31, 2003 SHALL NOT be permitted to participate in the

2003 U.S. Dist. LEXIS 7611, *35

Federal Fair Labor Standards Act [*36] Representative    Franklin S. Van Antwerpen, U.S.D.J.
Action.

   BY THE COURT:

3 of 3 DOCUMENTS

**MICHAEL BALLARIS; individually, and on behalf of all persons similarly situated, Plaintiff, v. WACKER SILTTRONIC CORPORATION, a Foreign Corporation, Defendant.**

**Civil No. 00-1627-KI**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON**

*2001 U.S. Dist. LEXIS 13354; 144 Lab. Cas. (CCH) P34,351*

**August 24, 2001, Decided**

**DISPOSITION:**    [*1] Plaintiffs motion to allow notice to all employees of their opt-in rights (# 26) granted.

**COUNSEL:** A. E. Bud Bailey, James Dana Pinney, Bailey, Pinney & Associates, LLC, Tualatin, Oregon, for Plaintiff.

John F. Neupert, J. Michael Porter, Miller Nash LLP, Portland, Oregon, for Defendant.

**JUDGES:** GARR M. KING, United States District Judge.

**OPINION BY:** GARR M. KING

**OPINION**

OPINION AND ORDER

KING, Judge:

Plaintiff, Michael Ballaris, is a former employee of the defendant, Wacker Siltronic Corporation ("Wacker"). Plaintiff brings this action alleging that Wacker had a policy and practice of denying its workers required overtime wages, requiring its workers to conduct preparatory and concluding activities while "off the clock," and altering employee time records in order to reduce its obligation to pay overtime wages. Plaintiff alleges that he and other hourly workers at Wacker were not paid for their overtime work and that Wacker's failure to pay overtime wages constitutes a willful violation of the Fair Labor Standards Act, *29 U.S.C. §§ 201 et seq.*

("FLSA"). Plaintiff further alleges that Wacker's failure to pay overtime wages violates the Employee Retirement Income Security [*2] Act, *29 U.S.C. §§ 1001 et seq.* ("ERISA"), and Oregon wage laws, including *O.R.S. 652.020* and *652.140*.

Before the court is plaintiff's Motion to Allow Notice to All Employees of Their Opt-In Rights (# 26). The court understands this motion to be one seeking approval of notice to similarly situated persons of their right to "opt-in" to a collective action as to plaintiff's claims under the FLSA, pursuant to *29 U.S.C. § 216(b)*. For the reasons set forth below, and subject to the restrictions set forth below, I grant the motion for approval of notice to similarly situated persons. In so doing, I certify a collective action under the FLSA, but only for the purposes of notice and discovery.

**DISCUSSION**

The FLSA allows for a type of class action, known as a "collective action," for employees who are "similarly situated" to the plaintiff(s) and who file a consent in writing with the court (i.e., "opt in" to the case). *29 U.S.C. § 216(b).* [1] If employees do not opt in by filing a written consent, they are not bound by the outcome of the collective action and may bring a subsequent private action. *EEOC v. Pan Am. World Airways, Inc., 897 F.2d 1499, 1508 n.11* [*3] (9th Cir.), *cert. denied, 111 S. Ct. 55 (1990).*

1   The statute provides in pertinent part:

An action.. may be maintained against any employer...in any

2001 U.S. Dist. LEXIS 13354, *3; 144 Lab. Cas. (CCH) P34,351

Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.

This district and a number of other courts have held that the full extent of procedural restrictions that apply to class actions, pursuant to *Fed. R. Civ. P. 23*, do not apply to certification of a class under *Section 216(b)* of FLSA. *See Daggett v. Blind Enterprises of Oregon, et al., 1996 U.S. Dist. LEXIS 22465*, No. 95-421-ST, p.9 (D.Or. April 18, 1996)("I am persuaded that FRCP 23 does not apply to a *§ 216(b)* class action."); *Jackson v. New York Tel. Co., 163 F.R.D. 429, 432 (S.D.N.Y. 1995)*(holding [*4] that *Fed. R. Civ. P. 23* should not be applied at the preliminary notice stage of an ADEA class action brought under *Section 216(b)* of FLSA).

The procedural protections of *Fed. R. Civ. P. 23* are generally not necessary for a *§ 216(b)* collective action because of that statute's opt-in requirement. As Judge Stewart explained in *Daggett*:

A plaintiff who opts in presumably has decided that the benefits of joining the class outweigh any benefits of bringing an individual action... There is no need for the court to determine whether a class action is the most efficient method to proceed because each individual plaintiff has already concluded that a sufficiently common issue of fact or law exists and that he or she will be adequately represented. In addition, the due process protections of FRCP 23 are not as crucial when absent class members are not bound by the judgment.

*Daggett* at 10.

Along these lines, the "similarly situated" standard under *Section 216(b)* is less stringent than the requirement under *Fed. R. Civ. P. 23(b)(3)* that common questions of law or fact predominate over questions affecting only individual members. *Church v. Consolidated Freightways, Inc., 137 F.R.D. 294, 306 (N.D. Cal. 1991)*; [*5] *see also Wertheim v. State of Arizona, 1993 U.S. Dist. LEXIS 21292, 1993 WL 603552*, *1 (D.Ariz. Sept. 30, 1993)*("The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under *Rule 23 of the Federal Rules of Civil Procedure*"). In fact, the Eleventh Circuit has held that the similarly situated requirement is more flexible than the requirements of *Fed. R. Civ. P. 20* (joinder) and 42 (severance). *Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir.), cert. denied, 117 S. Ct. 435 (1996)*. As such, the claims and positions of employees need not be identical in order to meet the lower standards of *§ 216(b)*. *Id.*

In *Thiebes v. Wal-Mart Stores, Inc., 1999 U.S. Dist. LEXIS 18649*, *6-7 (D.OR 2001)*, this court outlined the standard that applies in determining if a collective action is appropriate:

"For prospective plaintiffs to be similarly situated, there must be a factual nexus which binds them together as victims of an alleged policy or practice." *Wyatt v. Pride Offshore, Inc., 1996 U.S. Dist. LEXIS 13335, 1996 WL 509654*, *2 (E.D.La. Sept. 6, 1996)*; *see also Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)* [*6] (plaintiffs can show that potential class members are similarly situated "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law."); *Wertheim, supra* ("All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA").

In this case, plaintiff alleges that Wacker's policy

Page 3

2001 U.S. Dist. LEXIS 13354, *6; 144 Lab. Cas. (CCH) P34,351

requiring workers to change into and out of their plant uniform and clean room suit while off the clock, as well as Wacker's practice of adjusting employee time sheets so as to limit overtime hours, constituted a specific scheme that resulted in consistent under-compensation of all Wacker employees working in clean rooms.

The affidavits submitted by the plaintiff, together with the allegations of the Amended Complaint, are sufficiently specific regarding how the alleged policies and practices are manifested and how they generally affect those employees working in Wacker's clean rooms. [*7] *See Bonilla v. Las Vegas Cigar Company, 61 F. Supp. 2d 1129, 1139 n.6 (D.Nev. 1999)*(noting that plaintiffs bear the burden of showing that they are similarly situated, but that it "is a lenient burden for plaintiffs to meet, and can be supported by affidavits"). Plaintiff Ballaris and Julie Duncan, another former Wacker employee, both assert in their affidavits that Wacker's workplace policies necessitated their working off the clock. In particular, they allege that Wacker did not compensate them for the time required to change into and out of their plant uniforms and clean suits, and that Wacker required them to be "on the floor" for debriefing before the start of their scheduled shift. Mr. Ballaris and Ms. Duncan further allege that on those instances where Wacker employees did clock in prior to the start of the shift, Wacker supervisors altered the time cards.

I acknowledge that employees in the clean room in Fab 1 did not have to change into the plant uniform while some or all of the employees in the clean rooms of Fab 2 were required to make that change. I also realize that there is a discrepancy on whether workers in some of the clean rooms punch in before or [*8] after changing into their bunny suits. I think the overriding factor at this stage of the litigation is that all of the employees in the proposed class must change into and out of bunny suits. Classes can be adjusted after discovery if necessary. Consequently, I approve the class as:

> all hourly employees of the defendant having been assigned to work in clean rooms of Wacker Siltronic corporation in Portland, Oregon, from November 27, 1997 to November 27, 2000.

In addition to the employee affidavits, the plaintiffs have submitted documents detailing the findings of the

Oregon Bureau of Labor and Industries (Affidavit of A.E. Bud Bailey In Support of Motion to Allow Notice to Present and Former Employees of Wacker Siltronic Corporation, Exhibits B-E). Given defendant's concern that consideration of these documents could result in unfair prejudice, and because the affidavits of Mr. Ballaris and Ms. Duncan alone are sufficient to certify the collective action, I will not rely on the BOLI documents at this time.

I find that plaintiff's burden has been met and thereby grant the motion to allow notice to similarly situated persons. I emphasize, however, that I am certifying the [*9] collective action only for notice and discovery purposes. I am not holding at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated to plaintiffs. Far too little discovery has been taken for me to make such a determination now. Furthermore, should discovery reveal that plaintiffs are not similarly situated to some or all of the persons who may choose to opt in, I may later decertify the class or divide the class into subgroups, if appropriate. Reservation of this right to subdivide or decertify members of the class should alleviate defendant's concern, expressed in its response to the plaintiff's motion, that the proposed notice targets too large a class. Plaintiff's reply suggests a notice that addresses some of the defendant's concerns. I will allow a revised notice to be sent after September 4, 2001. This gives the parties time to reach a final agreement on the form of the notice. If the parties are unable to reach agreement, I am available to assist via a telephone conference.

## CONCLUSION

Subject to the above qualifications, plaintiffs motion to allow notice to all employees of their opt-in rights (# 26) is granted.

[*10] IT IS SO ORDERED.

Dated this *24th* day of August, 2001.

/s/

GARR M. KING

United States District Judge

**FELIPE DELGADO, et al. v. ORTHO-MCNEIL, INC., et al.**

**Case No. SACV 07-263 CJC (MLGx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 74731*

**August 6, 2007, Decided**
**August 6, 2007, Filed**

**COUNSEL:** [*1] For Felipe Delgado, an individual behalf of himself and on behalf of all others similarly situated, Quinton Bickley, an individual on behalf of himself and on behalf of all others similarly situated, Plaintiffs: Aashish Y Desai, LEAD ATTORNEY, Mower Carreon & Desai, Irvine, CA; Christopher M. Heikaus Weaver, LEAD ATTORNEY, Rutan and Tucker, Costa Mesa, CA; Jeffrey Wertheimer, LEAD ATTORNEY, Rutan & Tucker, Costa Mesa, CA.

For Ortho-McNeil Inc, a New Jersey corporation, Janssen Ortho-McNeil Primary Care Inc, a New Jersey corporation, Janssen LP, Defendants: Jill Ann Porcaro, John S Battenfeld, LEAD ATTORNEYS, Morgan Lewis and Bockius, Los Angeles, CA.

**JUDGES:** PRESENT: HONORABLE CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CORMAC J. CARNEY

**OPINION**

**CIVIL MINUTES -- GENERAL**

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION** [filed 06/08/07]

Plaintiffs Felipe Delgado and Quinton Bickley (collectively, "Plaintiffs") seek conditional certification of a nationwide opt-in class of sales representatives under the Fair Labor Standards Act, *29 U.S.C. §§ 201 et seq.*

("FLSA"). Defendants Ortho-McNeil, Inc., Janssen Ortho-McNeil Primary Care, Inc., and Janssen, L.P. (collectively, [*2] "Defendants") object to any certification, arguing that the jobs performed by the putative class members are each individually unique. For the following reasons, the Court GRANTS conditional certification in this action. However, there were certain defects with the proposed notice that prevent the Court from approving it at this time.

District courts have discretion, in appropriate cases, to implement the collective action provisions of *§ 216(b)* by facilitating notice to potential plaintiffs. *Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).* Under *§ 216(b)*, a plaintiff may proceed with a collective action where the complaining employees are similarly situated. *29 U.S.C. § 216(b); Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001).* The FLSA does not define "similarly situated," and there is little circuit case law on the subject. *Thiessen, 267 F.3d at 1102; Pfohl v. Farmers Ins. Group, No. CV 03-3080 DT (RCx), 2004 U.S. Dist. LEXIS 6447, 2004 WL 554834 at *2 (C.D. Cal. Mar. 1, 2004).* In determining whether employees are similarly situated, courts have typically proceeded on an *ad hoc* case-by-case basis utilizing a two-stage inquiry. *Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213 (5th Cir. 1995).* [*3] The court first makes an initial "notice stage" determination of whether plaintiffs are similarly situated. *Thiessen, 267 F.3d at 1102.* "In doing so, a court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (internal quotations omitted). However, unsupported assertions of widespread

violations will not suffice to satisfy the plaintiff's burden of showing substantial similarity. *Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).* Given the limited amount of evidence generally available at this stage, the court will generally apply a fairly lenient standard. *Edwards v. City of Long Beach, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006).* At the notice stage, conditional certification is commonly granted. *Id.*

After a plaintiff has made an initial showing that the proposed class consists of similarly situated individuals and the class is conditionally certified, the court directs the distribution of notice to potential class members. After the opt-in period is closed and discovery has been concluded, the court then makes a second determination employing a stricter similarly [*4] situated standard. *Thiessen, 267 F.3d at 1102-03.* During this "second stage" analysis, a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and other procedural considerations. *Id. at 1103.*

Defendants argue that Plaintiffs are required to show more at the notice stage than that the members of the proposed class are similarly situated. Relying on case law from the Eleventh Circuit, Defendants argue that conditional certification is not available unless a plaintiff makes an affirmative showing that there are other individuals who desire to opt in to the class. *See Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991); MacKenzie v. Kindred Hosps. E., LLC, 276 F. Supp. 2d 1211 (M.D. Fla. 2003); Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d 1272 (M.D. Ala. 2004).* However, this additional requirement at the notice stage has almost never been applied outside of the Eleventh Circuit, and has never been applied in the Ninth Circuit. *See, e.g., Edwards, supra* (only discussing similarly situated [*5] requirement); *Leuthold v. Destination Am., Inc., 224 F.R.D. 462 (N.D. Cal. 2004)* (same). Indeed, at least one district court has identified the language in *Dybach* as "dicta" and criticized it for "conflict[ing] with [the] United States Supreme Court's position that the [FLSA] should be liberally 'applied to the furthest reaches consistent with congressional direction.'" *Reab v. Elec. Arts, Inc., 214 F.R.D. 623, 629 (D. Colo. 2002) (quoting Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985)).* The *Dybach* court provided no explanation for

requiring plaintiffs to show that other class members desire to opt in, nor does the County indicate why this Court should adopt such a rule. The Court finds the *Dybach* rule inappropriate at the "notice stage." Conditional certification at this stage is designed to provide notice to potential plaintiffs specifically because they might not yet be informed of the action or their ability to participate in it. Accordingly, the Court will not require Plaintiffs to demonstrate at this stage that other sales representatives from Ortho-McNeil and Janssen seek to participate in this action.

Plaintiffs' FLSA claim alleges that Defendants improperly classified [*6] all of their sales representatives as exempt for purposes of overtime compensation. They allege that Defendants made this classification regardless of the actual individual job duties of any given employee; rather, there was a blanket policy at both Ortho-McNeil and Janssen to classify all sales representatives as exempt. Defendants, on the other hand, argue that the jobs performed by their sales representatives are not substantially similar, but differ from individual to individual in a variety of material respects. In support of this argument, they submitted several declarations from current sales representatives and field sales directors (the sales representatives' supervisors) detailing the unique feature of each employee's job.

At the notice stage, Plaintiffs need not show that their positions were identical to the putative class members' positions. *Freeman, 256 F. Supp. 2d at 945.* Instead, it is sufficient if they can show that their position was "similar to those of the absent class members." *Id.* Here, the allegations of the complaint and the evidence submitted by both Plaintiffs and Defendants establish that the job duties of sales representatives are sufficiently similar to [*7] warrant conditional certification at the notice stage. [1] First and foremost, Plaintiffs have argued, and Defendants do not dispute, that Defendants had a custom, policy, or practice of classifying all sales representatives as exempt without performing any individualized analysis of their job duties. Thus, Defendants have found sufficient similarity in the job duties of their sales representatives that they treat them as one homogenous group for purposes of the FLSA. *Cf. Tierno v. Rite Aid Corp., 2006 U.S. Dist. LEXIS 66436, 2006 WL 2535056 at *9 (N.D. Cal. Aug. 31, 2006).* It is somewhat disingenuous, then, for Defendants to argue that they should be permitted to treat all sales

representatives as one group for purposes of classifying them as exempt, but that this Court can only determine the validity of that classification by looking to the specific job duties of each individual sales representative. *Cf. Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) ("Defendant cannot, on the one hand, argue that *all* reporters and account executives are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each reporter and account executive in order [*8] to determine whether that individual is 'exempt.'") (emphasis added).

> 1 The Court sustains Defendants' objections to the deposition testimony of Robert Gibney and Russell Stough submitted, for the first time, on reply. Thus, the Court does not consider that testimony in reaching its decision on this motion.

Moreover, while the jobs of the various sales representatives are not identical, they bear sufficient similarity to warrant conditional certification for the purpose of distributing notice. First, Plaintiffs submitted a sample of job postings from several states, all of which use identical language to describe the sales representative position. Second, the duties described by Defendants' employees in their declarations demonstrate substantial similarity in the essential functions of their jobs; namely, all sales representatives visit medical care providers to promote certain Ortho-McNeil and/or Janssen products. Defendants point to certain differences, such as size of sales region, differences in sales pitches, differences in products sold, and differences in specific clients. However, these differences are immaterial to whether or not the sales representatives are properly classified [*9] as exempt employees. At this stage, Plaintiffs have made a sufficient showing that the propriety of exempt status can be determined on a class-wide basis.

As part of their motion, Plaintiffs ask the Court to approve the proposed Notice to be distributed to the class. Defendant objects to the proposed Notice on several grounds. Plaintiffs have acceded to some of the objections raised by Defendants, but the parties continue to dispute several provisions. The Court finds that the proposed notice needs modification, and orders the parties to meet and confer over the content of the notice. In order to help facilitate the joint crafting of an acceptable notice, the Court will address some of the points of contention.

Plaintiffs request that the Court order Defendants to provide the names, addresses, telephone numbers, email addresses, and social security numbers for each potential plaintiff in the collective action. Defendant argues that it should not be required to do so on the grounds that it would violate the privacy rights of its employees. However, the Supreme Court has expressly authorized production of names and addresses of potential plaintiffs for notice purposes in a class action. [*10] *See, e.g., Hoffman-LaRoche*, 493 U.S. at 170. Accordingly, the Court finds that production of the names and addresses of potential class members to Plaintiffs is appropriate. However, the Court agrees with Defendants that production of telephone numbers, email addresses, and social security numbers is inappropriate. Notice will be distributed by mail only, and counsel may gather the necessary contact information from anyone who elects to participate in the action by responding to the mailed notice.

Defendants next argue that Plaintiffs' proposed notice does not properly respect judicial neutrality. They argue that even providing the case caption at the top of the notice improperly indicates judicial authorization for the notice. Defendants also argue that the proposed notice gives short shrift to their defenses in this action, thus overstating the merits of Plaintiffs' claim. "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche, 493 U.S. at 174.* The Court finds [*11] that the appearance of the caption at the top of the notice does not violate judicial neutrality. However, the notice must include conspicuous language, immediately below the caption, that the Court has not taken any position on the merits of the case and that the mere distribution of notice does not necessarily mean that the plaintiff class will ultimately prevail. This language should also advise potential class members not to contact the Court with any questions about the litigation. As to the statement of the case, the Court expects that, through the meet and confer process, the parties will be able to craft a statement that is acceptable to each side.

Plaintiffs propose a 120-day deadline for potential plaintiffs to file the form consent to join, while Defendants suggest that a 60-day deadline would be more appropriate. Plaintiffs have not articulated a sufficient basis for providing putative class members four months

2007 U.S. Dist. LEXIS 74731, *11

in which to opt-in to the action. Sixty days is sufficient time for a class member to receive the notice, ask any questions of Plaintiffs or their counsel, and make an informed choice as to whether or not they wish to participate.

Defendants dispute the four-year statute [*12] of limitations referred to by Plaintiffs in their notice. Normally, the statute of limitations for an FLSA violation claim is two years, but if the violation is willful the statute of limitations is extended to three years. *See 29 U.S.C. § 255(a).* However, Plaintiffs argue that California's Unfair Competition Law ("UCL") provides the appropriate statute of limitations, which is four years. This argument is unfounded. Plaintiffs are distributing notice to an opt-in class seeking statutory relief under the FLSA. They are not, at this time, seeking certification of a class for a UCL cause of action. This cause of action is entirely separate from and unrelated to any UCL cause of action, and as such, it would be inappropriate to adopt the UCL statute of limitations, particularly when Congress has set forth a clear limitations period in the text of the FLSA. The Court finds that the limitations period should be three years, at least for purposes of notice. Plaintiffs have alleged that Defendants' conduct was willful, and at this stage, there is not sufficient evidence to show that such an allegation would fail as a matter of law. [2]

> 2    Defendants are of course free to contest the willfulness [*13] of their conduct, either through a dispositive motion at the appropriate time, or at trial, or both. If Defendants' conduct is found not to have been willful, the two-year limitations period will apply to limit Plaintiffs' ultimate potential relief.

Finally, Plaintiffs argue that the statute of limitations should be equitably tolled from the filing of the initial complaint, or at least the filing of the amended complaint that first asserted the FLSA cause of action. Under the FLSA, individual plaintiffs in a collective action must file a valid consent to opt-in within the applicable statute of limitations. *See 29 U.S.C § 256(b).* Equitable tolling is extended sparingly and only where claimants exercise diligence in preserving their legal rights. *See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)* (citing *Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 151, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984)*). Courts will typically grant equitable tolling in two limited circumstances: (1) where the plaintiffs actively pursued their legal remedies by filing defective pleadings within the statutory period, or (2) where the defendant's misconduct induces failure to meet the deadline. *See Irwin, 498 U.S. at 96.* Plaintiffs [*14] argue that Defendants' failure to provide them with the contact information for potential class members is sufficient misconduct to warrant equitable tolling as of the date of the filing of the Complaint. However, Plaintiffs did not request this information from Defendants until July 20, 2007, over six weeks *after* the certification motion was initially filed. Moreover, Plaintiffs waited more than five months after filing their original complaint before seeking to add an FLSA cause of action. Thus, the Court finds that neither of the two *Irwin* circumstances is present in this case, and further equitable tolling would be inappropriate. Accordingly, consistent with the Court's prior order tolling the limitations period from July 2 through August 6, notice may be distributed to current and former employees whose claims arose on or later than July 3, 2004.

The other points of contention between Plaintiffs and Defendants are relatively minor, and the Court expects that the parties can resolve these through meaningful use of the meet and confer process. The parties are thus directed to meet and confer on a proposed notice, and submit such notice to the Court within 20 days of the date of this [*15] order. This notice should be consistent with the Court's rulings above.

2 of 3 DOCUMENTS

**MICHAEL WIEGELE, Plaintiff, vs. FEDEX GROUND PACKAGE SYSTEM, Defendant.**

**CASE NO. 06-CV-01330-JM(POR)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 9444*

**February 8, 2007, Decided**
**February 8, 2007, Filed**

**SUBSEQUENT HISTORY:** Class certification granted by *Wiegele v. FedEx Ground Package Sys., 2008 U.S. Dist. LEXIS 10246 (S.D. Cal., Feb. 12, 2008)*

**PRIOR HISTORY:** *Wiegele v. FedEx Ground Package Sys., 2006 U.S. Dist. LEXIS 90359 (S.D. Cal., Dec. 12, 2006)*

**COUNSEL:** [*1] For Michael Wiegele, on behalf of himself and all others similary situated, Plaintiff: Michael D Singer, LEAD ATTORNEY, Cohelan and Khoury, San Diego, CA.

For Fedex Ground Package System, Inc., a Delaware Corporation, Defendant: Allan W Brown, LEAD ATTORNEY, FedEx Ground Package System, Coraopolis, PA, US.; Mark Riera, Samantha Hardy, LEAD ATTORNEYS, Sheppard Mullin Richter and Hampton, Los Angeles, CA.

**JUDGES:** Hon. Jeffrey T. Miller, United States District Judge.

**OPINION BY:** Jeffrey T. Miller

**OPINION**

**ORDER DENYING OBJECTIONS TO DISCOVERY ORDER; LIFTING STAY OF DISCOVERY**

Defendant FedEx Ground Package System ("Fedex") objects to Magistrate Judge Porter's December 12, 2006

Order Granting Plaintiff's Motion to Compel and Issuing Limited Protective Order ("Discovery Order"). Plaintiff opposes the Objections. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the court denies the Objections to the Discovery Order. The court also lifts the stay of discovery entered on December 28, 2006.

**BACKGROUND**

On June 26, 2006 Fedex removed this state wage and hour law case to federal court pursuant to *28 U.S.C. §§ 1332(d)(2)* [*2] and *1441(a)-(c)*, based upon diversity jurisdiction and that the amount in controversy exceeds $ 5 million, exclusive of interests and costs. Plaintiff, an employee of Fedex, generally alleges that he was paid a salary for his duties while working as a "Sort Manager," "Service Manager," "Pick Up and Delivery Sort Manager," and "Outbound Sort Manager." (Compl. P 7). Plaintiff generally alleges that he and similarly situated former and current Fedex employees performed non-exempt work in excess of the maximum regular rate set by the Industrial Welfare Commission. Contrary to California law, Plaintiff alleges that Fedex failed to pay Plaintiff and all similarly situated individuals overtime compensation and rest and meal compensation (Compl. P 7-8, 15-17, 22-28). No class has yet to be certified.

At issue here are two interrogatories propounded by Plaintiff. Special Interrogatory No. 1 requests the names, last known home addresses, home telephone numbers, and email addresses of formerly-employed Pickup and Delivery Managers, Service Managers, Sort Managers,

Pre-Load Sort Managers, and related positions. Special Interrogatory No. 2 requests the same information but [*3] with regard to currently employed individuals in the same positions. Magistrate Judge Porter ordered Fedex to provide the "names, last known home addresses and home telephone numbers, and email addresses of formerly and currently-employed" similarly situated individuals. (Discovery Order at p.3:17-10). In addition, Judge Porter entered a protective order to limit disclosure of the discovery to Plaintiff's counsel, their investigators and experts, and not to any individual plaintiff.

In the Objections, Fedex argues that (1) the Discovery Order circumvents the privacy rights of putative class members and (2) requiring production of the e-mail addresses of Fedex employees will result in a disruption to Fedex's business and operations.

## THE OBJECTIONS

### Legal Standards

This court may set aside or modify a Magistrate Judge's discovery order only if found to be "clearly erroneous or contrary to law. " *Fed.R.Civl.P. 72(a); 28 U.S.C. § 636(b)(1)(A); Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1414 (9th Cir. 1991)*. While findings of fact are reviewed under the clearly erroneous standard of review, [*4] legal conclusions are reviewed *de novo. See United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir. 1984)*. Each objection is discussed in turn. *The Privacy Issue*

The thrust of Fedex's argument is that disclosure of putative class members' names and addresses is constitutionally protected from compelled disclosure. Fedex also contends that the Discovery Order should have required that any contact with putative class members be initiated through a neutral third party. The court rejects these Objections.

When the constitutional right of privacy is involved, "the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced." *Lantz v. Superior Court, 28 Cal.App. 4th 1839, 1853-54, 34 Cal. Rptr. 2d 358 (1994)*. Compelled discovery within the realm of the right of privacy "cannot be justified solely on the ground that it may lead to relevant information." *Britt v. Superior Court, 20 Cal.3d 844, 856,* *143 Cal. Rptr. 695, 574 P.2d 766 (1978)*. "Even when discovery of private information is found directly relevant to the issues of ongoing litigation, [*5] it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'" *Lantz, 28 Cal.App.4th at 1854* (citations omitted).

Here, the Magistrate Judge properly balanced Plaintiff's need and due process right to conduct discovery on class action issues, *see Bartold v. Glendale Federal Bank, 81 Cal. App. 4th 816, 827, 97 Cal. Rptr. 2d 226 (2000)* (due process requires an opportunity to conduct discovery on class action issues prior to class certification proceedings, and discovery of putative plaintiffs' names and addresses should be provided before the class is certified, not after), against the putative plaintiffs' right to privacy. In analyzing the issue, the Magistrate Judge was persuaded by the reasoning in a similar wage and hour dispute. In *Jimenez v. Domino's Pizza, LLC, Case No. 04cv11107 JVS(RCx), 2006 U.S. Dist. LEXIS 66510 (January 11, 2006)* the court held:

> "Wage and hour disputes (and others in the same general class) routinely proceed as class actions." *Prince v. CLS Transportation, Inc., 118 Cal.App.4th 1320, 1328, 13 Cal.Rptr. 3d 725 (2004)*. [*6] "[A]s a general rule, before class certification has taken place, all parties are entitled to 'equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." *Koo v. Rubio's Restaurants, Inc. 109 Cal.App.4th 719, 135 Cal. Rptr. 2d 415 (2003)*.

*Jimenez, 2006 LEXIS 66510 at *5*. Here, the Magistrate Judge determined that putative class members possess relevant discoverable information concerning issues dealing with Plaintiff's wage and hour claims, as well as class certification issues. [1] Further, the privacy interests at stake in the names, addresses, and phone numbers must be distinguished from those more intimate privacy interests such as compelled disclosure of medical records and personal histories. Moreover, the Magistrate Judge imposed a protective order to assure that the information provided to Plaintiff is protected from disclosure. The discovery, concerning approximately 250 to 500 current or former Fedex employees, is to be produced to

Plaintiff's counsel only, can only be used in this litigation, and provides that any disclosure to the court must be redacted to preserve the identities of [*7] the putative plaintiffs. (Discovery Order at p.3:22-4:3). Under these circumstances, the Discovery Order is not clearly erroneous as the potential privacy interests of putative class members are adequately balanced to protect Plaintiff's ability to prosecute this action.

> 1  The court notes that the identified employees are likely percipient witnesses to Plaintiff's wage and hour claims. Not only will any contact with Plaintiff's counsel be minimally intrusive, but it will also inform similarly situated individuals about Plaintiff's alleged wage and hour claims and alert them that they may have a significant wage and hour claim.

Fedex contends that *Experian Information Solutions, Inc. v. Superior Court, 138 Cal.App.4th 122, 41 Cal. Rptr. 3d 219 (2006)* and *Best Buy Stores L.P. v. Superior Court, 137 Cal. App. 4th 772, 778, 40 Cal. Rptr. 3d 575 (2006)* provide persuasive authority to support its claim that a neutral third party should be appointed to contact putative class members. This argument is not persuasive. In *Experian,* [*8] the defendant Experian and the plaintiff voluntarily entered into a stipulated protective order whereby Experian would provide the identifies of all putative class members in order to permit plaintiff to "conduct discovery . . . regarding class certification." *Experian, 138 Cal.App.4th at 126.* After denial of the motion for class certification on the ground that individual issues predominated, plaintiff requested relief from the protective order in order to contact once putative class members to running statutes of limitations and requesting each recipient's consent to be contacted by [plaintiff's] counsel to determine whether he or she has evidence relating to the issue of [Plaintiff's] damages." *Id. at 127.* The trial court then balanced the need for the discovery against the individual's right to privacy. The court initially denied the request but then plaintiff's counsel suggested that contact be made by letter through a neutral third party. The trial court then approved the modified proposed letter notice. Experian then petitioned for a writ of mandate, raising two issues pertinent here: (1) [*9] whether, after denial of class certification, there is any legal basis permitting letter notification of former putative class members of potential claims and (2) whether that portion of the letter notification dealing with

discovery adequately protected the recipients' privacy rights.

On the issue of permitting contact with any putative class member, the appellate court reversed the trial court holding that "there is no legal basis supporting court-approved notifications of possible rights to putative class members after a motion for class certification has been denied." *Experian 138 Cal.App.4th at 131.* On the issue of discovery, the court noted that the requested discovery on the punitive damages issue was relevant and a proper subject for discovery. However, in balancing the need for disclosure against the recipient's privacy rights, the appellate court required greater protections of the recipient's privacy rights and identified six specific items to be either included or deleted from the letter notice. Notably, the *Experian* court did not establish a black letter rule requiring that such disclosures can only be made through a neutral third party.

In [*10] *Best Buy,* the plaintiff, an attorney, sought to bring a class action with himself acting as both class representative and class counsel. Plaintiff alleged that Best Buy charged an alleged illegal restocking fee for returned merchandise. When informed by the trial court that plaintiff could not serve as both class representative and class counsel, he sought leave of court to have notice sent to putative class members "to seek a new class representative." *137 Cal.App.4th at 775.* The trial court approved the request and required notice be provided by a neutral third party. Defendant Best Buy then petitioned for a writ of mandate, seeking review of five issues, only one relevant here: whether the order and letter notice adequately protected the recipients' privacy rights. The appellate court denied the writ on all issues raised, but required that the letter notice provide greater privacy protections for the recipients. Among other things, the letter notice was required to state that the notice could be ignored and that the identify of the recipient would not be disclosed to plaintiff unless the recipient provided written consent.

The court notes that both *Experian* [*11] and *Best Buy* applied the same general legal standard applied by the Magistrate Judge here, that is, a balancing of the compelled need for discovery and the recipient's privacy rights. *See Lantz, 28 Cal.App. 4th at 1853-54. Experian* and *Best Buy* are distinguishable from the case at bar in the nature of the claims asserted, the rights to be vindicated, and the procedural posture of the cases.

2007 U.S. Dist. LEXIS 9444, *11

Significantly, *Experian* and *Best Buy* do not stand for the proposition that contact of putative class members may only occur through a neutral third party. As noted in *Koo v. Rubio's Restaurants, Inc., 109 Cal.App.4th 719, 736, 135 Cal. Rptr. 2d 415 (2003),*

> [B]efore class certification has taken place, all parties are entitled to "equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." (*Atari, Inc. v. Superior Court, supra, 166 Cal.App.3d at p. 869.*) Moreover cases have stressed "the importance of permitting named plaintiffs to communicate with persons for whose benefit their action was ostensibly filed." (Citations omitted).

Finally, the court notes [*12] that the Discovery Order includes a protective order to limit the disclosure of any confidential information thereby further protecting the privacy rights of putative class members. Further, any contact by Plaintiff's counsel with putative class members must be reasonable and comply with California Rules of Professional Conduct.

In sum, the Discovery Order is narrowly tailored to balance Plaintiff's right to conduct discovery with the privacy interests of putative class members. Under these

circumstances, the court rejects Fedex's Objections and lifts the stay of discovery imposed by this court. *The e-mail Issue*

Fedex argues that it should not be compelled to provide the e-mail addresses of the 250 to 500 Fedex employees at issue because, among other things, increased e-mail traffic could threaten or cripple the company's e-mail system. (Stormfels Decl. PP 2-4). Further, Fedex argues that the e-mails will likely be opened by the recipients during business hours and potentially threaten its time sensitive delivery business. (Stormfels Decl. P 5).

The court notes that this argument was not specifically raised before Magistrate Judge Porter. Consequently, there is no record to [*13] review. Under these circumstances, the court declines to review this claim. Should it desire to do so, Fedex may bring this argument before Magistrate Judge Porter.

In sum, the court denies the Objections and lifts the stay of discovery.

**IT IS SO ORDERED.**

DATED: February 8, 2007

Hon. Jeffrey T. Miller

United States District Judge